# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| IN RE: GRANULATED SUGAR ANTITRUST LITIGATION | MDL No. 24-3110 (JWB/DTS) |
| This Document Relates To: *All Consumer Indirect Purchaser Plaintiff Actions* | |

# MEMORANDUM IN SUPPORT OF THE CONSENSUS GROUP'S MOTION TO APPOINT ROBINS KAPLAN LLP, LOWEY DANNENBERG P.C., AND FEGAN SCOTT LLC AS INTERIM CO-LEAD CLASS COUNSEL FOR THE CONSUMER INDIRECT PURCHASER CLASS

## <u>TABLE OF CONTENTS</u>

I.      INTRODUCTION ................................................................................................ 1

II.     BACKGROUND ................................................................................................. 3

III.    ARGUMENT ...................................................................................................... 5

    A.    The Consensus Group's Proposed Class Counsel Is Best Able to Represent the Interests of the Consumer Class ............................................................ 5

        1.    Robins Kaplan ................................................................................... 6

            a.    Robins Kaplan is an antitrust powerhouse. ................. 6

            b.    The Robins Kaplan team is experienced in antitrust and class action litigation. ........................................... 8

        2.    Lowey ............................................................................................. 10

            a.    Lowey possesses vast experience and deep familiarity with all aspects of complex class action antitrust litigation ...................................................................... 10

            b.    Lowey litigates cases nationwide, including antitrust cases involving commodities and food products ....... 14

            c.    Lowey represents end payers, from overcharged Fortune 100 companies to overcharged consumers ... 15

            d.    Lowey's resources will benefit the Class. .................. 16

            e.    The Lowey litigation team ......................................... 16

        3.    Fegan Scott has the expertise and proven track record in complex antitrust and consumer class action litigation to best represent the Consumer Class. ................................................................................ 22

    B.    The Consensus Group's Proposed Class Counsel have done substantial work identifying, investigating, and litigating the claims and continue to do so. ....................................................................................................... 25

    C.    The Consensus Group's Proposed Class Counsel Supports Diversity In Leadership. ....................................................................................... 27

    D.    Additional Important Factors Support This Application ........................... 30

        1.    The Consensus Group's Proposed Class Counsel enjoy the support of a majority of firms and plaintiffs that represent the preponderance of cases and (critically) indirect purchaser states ................................. 30

2.    Minnesota Presence ........................................................... 30

3.    Resources ........................................................................ 31

IV.    CONCLUSION ........................................................................ 32

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Amaranth Natural Gas Commodities Litig.*,
No. 1:07-cv-06377 (S.D.N.Y.)........................................................................14

*In re Aqueous Film-Forming Foams (AFFF) Prods. Liab. Litig.*,
MDL No. 2873, No. 2:18-mn-02873 (D.S.C.) (Gergel, J.) ...................22

*In re Automotive Parts Antitrust Litig.*,
No. 2:12-md-02311 (E.D. Mich.) ...................................................................7

*In re Baby Prods. Antitrust Litig.* (*McDonough v. Toys "R" Us*),
No. 2:06-cv-00242 (E.D. Pa.) .......................................................................23

*In re Beacon Associates Litig.*,
No. 09 CIV. 777 (CM), 2013 WL 2450960 (S.D.N.Y. May 9, 2013)....................13

*In re Broiler Chicken Antitrust Litig.*,
No. 1:16-cv-08637 (N.D. Ill.) ................................................................20, 23

*In re Cardizem CD Antitrust Litig.*,
No. 2:99-md-01278 (E.D. Mich.) .................................................................15

*In re Cattle and Beef Antitrust Litig. ("Cattle")*,
No. 0:20-cv-01319 (D. Minn.).........................................................................5

*In re Cattle and Beef Antitrust Litig.*,
No. 0:22-md-03031 (D. Minn.).......................................................................9

*In re Cattle Antitrust Litig.*,
No. 0:19-cv-01222 (D. Minn.).......................................................................17

*Chen v. Target Corp.*,
No. CV 21-1247, 2021 WL 6063632 (D. Minn. Dec. 22, 2021)...........5, 6

*In re Crop Protection Prods. Loyalty Program Antitrust Litig.*,
No. 1:23-md-03062 (M.D.N.C.) ..............................................................14, 20

*In re Dairy Farmers of America, Inc. Cheese Antitrust Litig.*,
No. 1:09-cv-03690 (N.D. Ill.) .......................................................................15

*Dennis v. JPMorgan Chase & Co.*,
No. 1:16-cv-06496 (S.D.N.Y.)......................................................................12

*Duane Smith and Brooke Smith v. Martin Brothers Distrib. Co. Inc.*,
No. CVCV036641 (Iowa Dist. Ct., Dallas Cnty.) ..................................23

*Fund Liquidation Holdings v. UBS AG*,
    No. 1:15-cv-05844 (S.D.N.Y.)................................................................................12, 13

*In re Generic Pharmaceuticals Pricing Antitrust Litig.*,
    No. 2:16-md-02724 (E.D. Pa.)........................................................................................16

*Giles v. California*,
    554 U.S. 353 (2008)........................................................................................................18

*In re Google Assistant Privacy Litig.*,
    No. 5:19-cv-04286 (N.D. Cal.)......................................................................................16

*In re GSE Bonds Antitrust Litig.*,
    No. 19-cv-1704 (JSR), 2020 WL 3250593 (S.D.N.Y. June 16, 2020)....................13

*In re Kia Hyundai Vehicle Theft Mktg., Sales Prac. and Prods. Liab. Litig.*,
    MDL No. 3052, No. 8:22-ml-03052 (C.D. Cal.)........................................................22

*Kirk Dahl v. Bain Capital Partners, LLC*,
    No. 1:08-cv-10254 (D. Mass.)....................................................................................7, 9

*Kohen v. Pacific Inv. Mgmt. Co. LLC*,
    571 F.3d 672 (7th Cir. 2009).........................................................................................14

*In re Korean Ramen Indirect Antitrust Litig.*
    No. 3:13-cv-04115 (N.D. Cal.)......................................................................................20

*Langan v. Johnson & Johnson Consumer Cos., Inc.*,
    897 F.3d 88 (2d Cir. 2018).............................................................................................20

*Laydon v. Mizuho Bank, Ltd.*,
    No. 1:12-cv-03419 (S.D.N.Y.).......................................................................................12

*Leegin Creative Leather Prods., Inc. v. PSKS, Inc.*,
    551 U.S. 877 (2007)........................................................................................................18

*Marrero-Rolon v. Puerto Rico Elec. Power Auth.*,
    No. 3:15-cv-01167 (D.P.R.)...........................................................................................23

*McCormack v. Am. Equity Inv. Life Ins. Co.*,
    No. 2:05-cv-06735 (C.D. Cal.)......................................................................................23

*Moehrl v. Nat'l Assoc. of Realtors*,
    No. 19-cv-01610, 2020 WL 5260511 (N.D. Ill. May 30, 2020)...............................31

*Morales v. Unilever U.S., Inc.*,
    No. 2:13-cv-02213 (E.D. Cal.).......................................................................................20

*In re Natural Gas Commodity Litig.*,
    No. 1:03-cv-06186 (VM) (S.D.N.Y.) ............................................................................14

*In re Packaged Seafood Prods. Antitrust Litig.*,
No. 3:15-md-02670 (S.D. Cal.) ....................................................................5, 15, 20

*In re Passenger Vehicle Replacement Tires Antitrust Litig.*,
No. 5:24-md-03107 (N.D. Ohio July 3, 2024).................................................14

*In re Payment Card Interchange Fee & Merchant Discount Antitrust Litig.*,
No. 1:05-md-1720 (E.D.N.Y.) .........................................................................7, 9

*Ploss v. Kraft Foods Group, Inc.*,
No. 1:15-cv-02937 (N.D. Ill.) ...........................................................................15

*In re Pork Antitrust Litig.*,
No. 0:18-cv-01776 (D. Minn. June 28, 2018).................................................5, 23

*In re Pre-Filled Propane Tank Mktg. Sales Practices*,
MDL No. 2086, No. 4:09-md-2086 (W.D. Mo.) ..............................................23

*In re Rail Freight Fuel Surcharge Antitrust Litig. (Fayus v. BNSF R'R Co.)*,
602 F.3d 444 (D.C. Cir. 2010), (D.D.C. 2008) ..............................................18

*In re RealPage Rental Software Antitrust Litigation (No. II)*,
No. 3:23-md-3071 (M.D. Tenn.) .......................................................................9, 10

*In re Robinhood Outage Litig.*,
No. 3:20-cv-01626 (N.D. Cal., July 14, 2020) ................................................27

*In re Rough Rice Commodity Litig.*,
No. 1:11-cv-00618 (N.D. Ill) .............................................................................15

*Segal v. Amadeus IT Group, S.A.*,
No. 1:24-cv-01783 (N.D. Ill.) ...........................................................................21

*Sheet Metal Workers Local No. 20 Welfare and Benefit Fund v. CVS Health Corp.*, No. 1:16-cv-00046 (D.R.I.) ....................................................................23

*In re Southeastern Milk Antitrust Litig.*,
No. 2:08-md-01000 (E.D. Tenn.)......................................................................17

*State of Minnesota and Blue Cross & Blue Shield of Minnesota v. Philip Morris Inc.*, No. Cl-95-1324 (Minn.)..........................................................................7

*Sullivan v. Barclays PLC*,
No. 1:13-cv-02811 (S.D.N.Y.)..........................................................................12

*In re Sumitomo Copper Litig.*,
Master File No. 1:96-cv-04854 (S.D.N.Y.) .....................................................14

*In re TikTok, Inc., Consumer Priv. Litig.*,
MDL No. 2948, No. 1:20-cv-04699 (N.D. Ill.) ...............................................22, 24

v

*In re Treasury Sec. Auction Antitrust Litig.*,
    No. 15-md-2673 (PGG), 2017 WL 10991411 (S.D.N.Y. Aug. 23, 2017)...............................31

*In re Wholesale Grocery Prods. Antitrust Litig.*,
    No. 0:09-cv-03191-ADM-TNL (D. Minn. Dec. 15, 2009).......................................31

*Zakikhani v. Hyundai Motor Co.*,
    No. 8:20-cv-01584 (C.D. Cal.) .............................................................................22

**Statutes/Other Authorities**

Federal Rule of Civil Procedure Rule 23(g) ..............................................1, 4-6, 25-26

MANUAL FOR COMPLEX LITIGATION (FOURTH) ("MANUAL") § 21.11 (2004).....................4

MANUAL § 21.11 ...........................................................................................................5

MANUAL § 10.22 ...........................................................................................................30

## I.     INTRODUCTION

Consumer Indirect Purchaser Plaintiffs Evan Annis, Rey Borge, Michael Cervellino, Miranda Cofino, Rebecca D'Amico, Donald Friedman, Mikhail Gershzon, Nancy Goodman, Debbie Hale, Bruce Johnson, Stacy Kurtz, Matt Marek, Andrew Mathisen, Anthony Minicuci, Renee Newton, Francisco Olivares, Stephen Reeves, Mary Reilly, Michael Santilli, Victor Sathler, Robert E. Sunseri, Tammy Tacito, Thomas Tombarello, David Ulery, and James Venziano ("the Consensus Group")[1] respectfully request that this Court appoint Robins Kaplan LLP ("Robins Kaplan"), Lowey Dannenberg P.C. ("Lowey"), and Fegan Scott LLC ("Fegan Scott") as Interim Co-Lead Counsel for the proposed Consumer Indirect Purchaser Class ("Consumer Class") under Rule 23(g)(3) of the Federal Rules of Civil Procedure.[2]     The appointment of the Consensus Group's Proposed Class Counsel is in the best interests of the Consumer Class for several fundamental reasons:

*First*, Robins Kaplan, Lowey, and Fegan Scott have a proven track record of success in large-scale multidistrict and other complex antitrust and consumer class action litigation. Robins Kaplan is an AmLaw 200 firm recognized as one of the nation's premier law firms for antitrust and complex litigation, including antitrust trial experience.     Lowey is an award-winning firm ranked among the very top plaintiffs' antitrust firms for its individual

---

[1] The Consensus Group Plaintiffs are Plaintiffs in the actions listed in Exhibit 1 to the Declaration of Peter Barile ("Barile Decl."), filed herewith.  A listing of all Consumer Indirect Purchaser Actions is attached as Ex. 2 to the Barile Decl.

[2] Robins Kaplan, Lowey, and Fegan Scott as proposed Interim Co-Lead Counsel for the Consumer Class are collectively referred to herein as the "Consensus Group's Proposed Class Counsel."

and aggregate recoveries for clients and the classes they represent. And, with the approval of class action settlements exceeding $14 billion in just five years, Fegan Scott was named Consumer Protection Law Firm of the Year at the National Law Journal's 2023 Elite Trial Lawyers Awards. Together, the firms have nearly 275 lawyers across 10 states. Robins Kaplan, Lowey and Fegan Scott possess the resources to prosecute this case through its resolution, and the firms are committed to doing so. By appointing this experienced and well-resourced team, the Consumer Class will be positioned for success.

*Second,* the Consensus Group's Proposed Class Counsel have advanced their clients' cases, even at this early stage, through conferring with Defendants' counsel, conferring with all Plaintiffs' counsel, ensuring the widest representation among indirect purchaser states, and engaging and working with a leading agricultural economist and Berkley professor David Sunding, Ph.D. in service of advancing this case.[3] The preliminary work done by the Consensus Group's Proposed Class Counsel will benefit the Consumer Class.

*Third*, the Consensus Group Plaintiffs (representing 69% of the plaintiffs filing actions on behalf of the Consumer Class), as well as the law firms representing the Consensus Group Plaintiffs, support this application for leadership. Together with movants, a total of nine law firms representing 25 plaintiffs from a significant share of all indirect purchaser states—including the most populous states—believe that the team assembled by Robins Kaplan, Lowey, and Fegan Scott is best suited to represent the

---

[3] A copy of Dr. Sunding's CV is attached as Exhibit 9 to the Barile Decl.

Consumer Class. Their confidence in the Consensus Group's Proposed Class Counsel is based on the standing of these firms in the antitrust and class action bar, the qualifications and composition of the team that will prosecute the case, and the team's ability to work vigorously, professionally, and collegially with each of the Plaintiff class groups, defense counsel, and this Court.

*Fourth,* the Consensus Group's Proposed Class Counsel advances diversity in leadership. Ms. Slaughter from Robins Kaplan and Ms. Fegan from Fegan Scott are women leaders in the antitrust bar who would take a leading role in this litigation if appointed. Further, Robins Kaplan, Lowey, and Fegan Scott each have a demonstrated commitment to advancing diversity in the workplace and in leadership.

Accordingly, the Consensus Group Plaintiffs respectfully request that this Court appoint Robins Kaplan, Lowey, and Fegan Scott as Interim Co-Lead Class Counsel for the Consumer Class.

## II.    BACKGROUND

Since March 2024, at least 54 class actions have been filed against the Defendants. All allege a price-fixing conspiracy by major sugar producers to inflate the price of granulated sugar in the United States. The only substantive differences between the complaints are the individual plaintiffs and the proposed classes on whose behalf the claims have been filed. Cases have been filed on behalf of direct purchasers, commercial and institutional indirect purchasers, and consumer indirect purchasers. 20 cases have been filed on behalf of the Consumer Class. This motion relates to the cases filed on behalf of

the Consumer Class.  Collectively, the Consensus Group accounts for the majority of Consumer Class cases, plaintiffs, firms, and representative states.

|  | Consensus Group | Others | Consensus Group Share (%) |
|---|---|---|---|
| Firms | 9 | 7 | 56% |
| Cases | 14 | 6 | 70% |
| Plaintiffs | 25 | 11 | 69% |
| Indirect Purchaser States | 19 | 10 | 66% |

Federal Rule of Civil Procedure 23(g)(3) provides that "[t]he court may designate interim counsel to act on behalf of a proposed class before determining whether to certify the action as a class action." Fed. R. Civ. P. 23(g)(3).  Doing so is appropriate where, as here, there are "a number of overlapping, duplicative, or competing suits." MANUAL FOR COMPLEX LITIGATION (FOURTH) ("MANUAL") § 21.11 (2004).  It is standard practice in multidistrict class action litigation for the transferee court to appoint interim lead class counsel as part of early case management prior to and through the class certification stage. *See, e.g.*, *id.* (cited in DAVID F. HERR, MULTIDISTRICT LITIGATION MANUAL § 9:10 (2020)).  The role of interim lead class counsel is to prosecute the case on behalf of plaintiffs and represent the interests of the proposed class in all aspects of what may be years of pretrial litigation leading up to and through formal class certification proceedings.

*See* MANUAL § 21.11; *Chen v. Target Corp.*, No. CV 21-1247 (DWF/DTS), 2021 WL 6063632, at *2 (D. Minn. Dec. 22, 2021).

Where, as here, there is more than one proposed class with competing interests, appointing individual interim lead class counsel for each respective proposed class is standard practice as well. This is especially true for antitrust cases where the proposed classes occupy different levels of the distribution chain, due to legal and economic issues that distinguish direct purchasers (such as wholesalers), from commercial indirect purchasers (such as retailers), from consumers. This method has been employed in cases involving commodity food products in this District and elsewhere.[4]

## III.    ARGUMENT

### A.    The Consensus Group's Proposed Class Counsel Is Best Able to Represent the Interests of the Consumer Class.

Selecting interim lead class counsel means selecting counsel "best able to represent the interests of the class." Fed. R. Civ. P. 23(g)(2)-(3). Courts generally look to the criteria

---

[4] *In re Cattle and Beef Antitrust Litig. ("Cattle")*, No. 0:20-cv-01319 (D. Minn.), ECF No. 71 (appointing Co-Lead Counsel for Direct Purchaser Class), ECF No. 423 (appointing Co-Lead Counsel for Commercial and Institutional Indirect Purchasers); *Cattle,* No. 0:19-cv-01222 (D. Minn.), ECF No. 88 (appointing Co-Lead Counsel for cattle ranchers); *Cattle*, No. 0:19-cv-01129 (D. Minn.), ECF No. 68 (appointing Co-Lead Counsel for consumers); *In re Pork Antitrust Litig.*, No. 0:18-cv-01776 (D. Minn. June 28, 2018), ECF No. 149 (appointing Interim Co-Lead Counsel for Direct Purchaser Plaintiffs), ECF No. 150 (appointing Interim Co-Lead Counsel for Commercial and Institutional Indirect Purchaser Plaintiffs), ECF No. 151 (appointing Interim Co-Lead Counsel for Proposed Consumer Indirect Purchaser Class); *In re Packaged Seafood Prods. Antitrust Litig.*, No. 3:15-md-2670 (S.D. Cal. Mar. 24, 2016), ECF No. 119 (appointing separate counsel for "Indirect Purchaser Commercial Food Preparer" and "Indirect Purchaser End Payer" classes).

set forth for class counsel in Rule 23(g)(1)(A) and (B). *See, e.g.*, *Target,* 2021 WL 6063632, at *2 (cited in 1 NEWBERG AND RUBENSTEIN ON CLASS ACTIONS § 3:85 (6th ed. 2024)).

Rule 23(g)(1) calls for consideration of a number of factors in appointing lead counsel. These factors include the prospective interim lead class counsel's work on the case to date, relevant experience in litigating class actions in relevant claims and areas of law, and the resources that counsel can bring—and commit to bring—to bear in litigating and resolving the case favorably for the class. *See* Fed. R. Civ. P. 23(g)(1)(A)(i)-(iv). No one factor is determinative. *Target*, 2021 WL 6063632, at *2. The Court's discretion is broad; it may consider any "matter pertinent to counsel's ability to fairly and adequately represent the interests of the class," Fed. R. Civ. P. 23(g)(1)(B), including diversity.[5]

### 1. Robins Kaplan

#### a. Robins Kaplan is an antitrust powerhouse.

Robins Kaplan, home to more than 200 lawyers in seven offices throughout the U.S., has distinguished itself as one of the premier law firms representing plaintiffs in complex antitrust and consumer litigation and winning cases at trial. The firm has been involved in numerous legal cases of lasting civic importance, cases that will live in history long after the women and men who litigated them are gone. Robins Kaplan broke new ground when it obtained a $6.6 billion landmark settlement on behalf of the State of Minnesota in an

---

[5] JAMES F. HUMPHREYS COMPLEX LITIGATION CENTER, GEORGE WASHINGTON LAW SCHOOL, INCLUSIVITY AND EXCELLENCE: GUIDELINES AND BEST PRACTICES FOR JUDGES APPOINTING LAWYERS TO LEADERSHIP POSITIONS IN MDL AND CLASS-ACTION LITIGATION 1 (2021) ("The judge should recognize that diversity enhances the quality of the decision-making process and results, and should make appointments consistent with the diversity of our society and justice system.")

antitrust lawsuit against the tobacco industry. *State of Minnesota and Blue Cross & Blue Shield of Minnesota v. Philip Morris Inc.*, No. Cl-95-1324 (Minn.). In the class action antitrust case *Kirk Dahl v. Bain Capital Partners, LLC,* No. 1:08-cv-10254 (D. Mass.) ("*Private Equity*"), the firm achieved a settlement of nearly $600 million on behalf of investors against the country's largest private equity firms for alleged collusion to buyout large public companies. As co-lead counsel in MDL No. 1720, the firm secured a $5.54 billion settlement for merchants who paid excessive fees to Visa and MasterCard in violation of antitrust laws—the largest antitrust settlement in U.S. history. *In re Payment Card Interchange Fee & Merchant Discount Antitrust Litig.*, No. 1:05-md-01720 (E.D.N.Y.) ("*Interchange*"). Robins Kaplan also served as co-lead class counsel for consumers in *In re Automotive Parts Antitrust Litig.*, No. 2:12-md-02311 (E.D. Mich.), a multidistrict litigation with over 160 defendants, 41 separate coordinated actions, and $1.2 billion in settlements. These are just some of the many cases in which Robins Kaplan lawyers have led or been court-appointed to prosecute cases of price-fixing, industry cartels, and predatory pricing, or for consumers who were victimized by more powerful actors.

The firm has been awarded and recognized consistently for its antitrust work. Last year, Global Competition Review named Robins Kaplan as one of four elite antitrust law firms in the U.S. The firm has been ranked in Tier 1 for antitrust by Chambers USA, Benchmark Litigation, and U.S. News & World Report, and named one of the nation's top firms for antitrust class actions by The Legal 500 each of the past six years. The Robins Kaplan resumé outlines additional information about the firm's antitrust practice. *See*

7

Declaration of Stacey P. Slaughter in Support of the Motion to Appoint as Interim Co-Lead Class Counsel for Consumer Indirect Purchaser Plaintiffs: Robins Kaplan LLP, Lowey Dannenberg P.C., and Fegan Scott LLC ("Slaughter Decl.") at Ex. 1.

Robins Kaplan is willing and able to commit the necessary resources for this litigation, regardless of whether it settles or proceeds to trial. The firm has invested substantial resources to develop in-house expertise for complex litigation, including Ph.D. economists and forensic financial consultants, and e-discovery experts. Slaughter Decl. at Ex. 2. Robins Kaplan is prepared to contribute any of these resources, together with attorney time and capital, for the benefit of the sugar indirect consumer class. This commitment is consistent with Robins Kaplan's core value of "doing well by doing good," as demonstrated by its national track record for *pro bono* legal service. Slaughter Decl. at Ex. 3.

> **b.    The Robins Kaplan team is experienced in antitrust and class action litigation.**

The team that will lead Robins Kaplan in this matter are experienced litigators with substantial practices in antitrust and class actions, and their commitment to this case is fully supported by firm leadership. The core team working on this case will include Stacey Slaughter and Caitlin Keiper. This core team will be assisted by other attorneys in the firm's Antitrust Group, who will be available to help depending on the needs of the case. Selected attorney biographies are included in the firm resumé. Slaughter Decl. at Ex. 1.

Stacey Slaughter is a partner at Robins Kaplan and co-chair of the firm's Antitrust and Trade Regulation Group. She will have primary responsibility for this matter at the

firm. She has handled complex litigation for more than 25 years. After graduating from the University of Minnesota School of Law, she clerked for both Judge Michael J. Davis and Chief Judge Paul A. Magnuson in the United States District Court, District of Minnesota. Her experience as a judicial clerk gave her a unique perspective on how to approach complex cases, which she took with her into private practice at Robins Kaplan. Her first two cases as a trial attorney were different: a complex financial case on behalf of sophisticated plaintiffs and a class action employment matter for a defendant. She continued to cultivate a well-rounded practice until she found her passion for representing plaintiffs on issues of economic justice. Since then, she has become an experienced and skilled advocate for plaintiffs in both antitrust and consumer class action cases, including in the *Interchange* and *Private Equity* antitrust matters. Slaughter Decl. at 12, Ex. 1. She serves as court-appointed co-lead counsel in *In re RealPage Rental Software Antitrust Litigation (No. II),* No. 3:23-md-03071 (M.D. Tenn.) ("*Realpage*") and lead liaison counsel for the cattle rancher class in *In re Cattle and Beef Antitrust Litig.*, No. 0:22-md-03031 (D. Minn.), and has also represented consumers in a number of cases where they sought redress as victims of fraud, negligence, or other unlawful conduct. *Id.*

In recognition of her achievements, Ms. Slaughter was named one of the "Elite Women of the Plaintiffs' Bar" by *The National Law Journal*, a "Local Litigation Star" by *Benchmark Litigation*, and one of *Lawdragon*'s 500 Leading Litigators in America. She is active in the Minnesota legal community, serving as Director and Co-chair of the FBA, Minnesota Chapter's Antitrust Practice Group and Multi-District Litigation, Class Action, Mass Tort Group. Slaughter Decl. Ex. 1 at 13.

Caitlin Keiper is an associate in Robins Kaplan's antitrust and trade regulation practice group. She is an active member of the firm's lead counsel team in *RealPage*. Ms. Keiper has experience representing plaintiffs in multidistrict class actions in antitrust and consumer protection cases. She is skilled in the adversarial process, including managing discovery, motion practice, witness examination, and class certification. Ms. Keiper is engaged in the antitrust community and is an active member of the Committee to Support the Antitrust Laws ("COSAL"). Before joining Robins Kaplan, Ms. Keiper served as a Special Assistant U.S. Attorney in the District of Massachusetts, representing the United States in criminal appeals. She also clerked for the Honorable Chief Justice Robert J. Lynn of the New Hampshire Supreme Court.  Slaughter Decl. at Ex. 1 at 18.

    **2.**    **Lowey**

    **a.**    **Lowey possesses vast experience and deep familiarity with all aspects of complex class action antitrust litigation.**

Founded more than fifty years ago, Lowey is one of the premier firms in the United States that represents antitrust plaintiffs in class actions and multidistrict litigation, regularly serving as lead or co-lead counsel in the most important and complex cases against the world's largest corporations.  The firm has more than 40 attorneys devoted to prosecuting antitrust and other class action cases on behalf of its diverse client list, comprising consumers, investors, small businesses, pension funds, municipalities, and Fortune 500 companies.

Lowey has been recognized by federal courts and the bar for its performance in multidistrict and other complex antitrust cases. Owing to its performance and reputation

for substantial results for its clients in antitrust cases, the firm is regularly appointed lead or co-lead in complex class action and multidistrict litigation nationally.  Moreover, the firm has unparalleled experience in commodities generally and agricultural commodities like sugar specifically, and Lowey regularly represents end payers indirect purchasers and consumers.  In recognition of the complexity of its practice, Lowey has institutionalized certain resources, such as investing in an in-house document review platform, that allows the firm to achieve substantial cost savings for plaintiffs and the class in litigating large and multifaceted cases.  Lowey is committed to winning this case and has staffed this matter with some of its top lawyers, which, if appointed, would bring a wealth of successful and relevant experience to bear in representing the Consumer Class.

In just the past decade, Lowey has recovered more than $1.8 billion as lead or co-lead counsel for its clients and the classes they represent.  Indeed, Lowey is now ranked as the #1 Law Firm based on Antitrust Settlements in the ISS Securities Class Action Services' Top Plaintiff Law Firms of 2023.[6]  For 2020, 2021 and 2022, Lowey's work received recognition in the Antitrust Annual Report published by The Huntington Bank and the Center for Litigation and Courts at UC Law in San Francisco as a Top 25 Lead Counsel in Class Recovery, and the firm had multiple cases in the list of Top 50 Cases with Settlements Reaching Final Approval since 2009.[7]

---

[6]  *Available at* https://www.issgovernance.com/library/top-plaintiff-law-firms-of-2023/ (last accessed Sept. 13, 2024).

[7]  *See* JOSHUA P. DAVIS & ROSE KOHLES, 2022 ANTITRUST ANNUAL REPORT: CLASS ACTIONS IN FEDERAL COURT (2023), *available at* https://ssrn.com/abstract=4586022 (last accessed Sept. 13, 2024); JOSHUA P. DAVIS & ROSE KOHLES, 2021 ANTITRUST ANNUAL

The firm has achieved numerous nine-figure settlements in class actions against the most formidable defendants, such as the world's largest multinational banks, including in:

- **Euribor.** *Sullivan v. Barclays PLC*, No. 1:13-cv-02811 (S.D.N.Y.) (co-lead class counsel in actions regarding conspiracy to manipulate a global financial benchmark interest rate, the Euro Interbank Offered Rate ("EURIBOR"); $651.5 million in settlements);

- **Yen Libor.** *Laydon v. Mizuho Bank, Ltd.*, No. 1:12-cv-03419 (S.D.N.Y.) and *Fund Liquidation Holdings v. UBS AG*, No. 1:15-cv-05844 (S.D.N.Y.) (sole lead counsel in actions regarding conspiracy to manipulate the London Interbank Offered Rate for the Japanese Yen ("Yen LIBOR") and the Euroyen Tokyo Interbank Offered Rate ("TIBOR"); $364.5 million in settlements) (Daniels, J.); and

- **BBSW.** *Dennis v. JPMorgan Chase & Co.*, No. 1:16-cv-06496 (S.D.N.Y.) (co-lead counsel in case regarding conspiracy to manipulate Australian Bank Bill Swap Reference Rate ("BBSW"); $185.875 million in settlements) (Kaplan, J.).

These are but examples of the firm's relatively recent successes for clients and the classes they represent. A firm resume is attached hereto as Exhibit 3 to the Barile Decl.

Courts and the bar have recognized the quality of Lowey's leadership and advocacy. For example, in June 2020, Judge Jed Rakoff of the Southern District of New York opined:

The Court itself had occasion to notice the high quality of [Lowey Dannenberg's] work, both in briefs and oral argument. Moreover, counsels' achievement in obtaining valuable recompense and forward-looking protections for its clients is particularly noteworthy given the caliber and vigor of its adversaries.

---

REPORT: CLASS ACTION FILINGS IN FEDERAL COURT (2022), *available at* https://ssrn.com/abstract=4117930 (last accessed Sept. 13, 2024); JOSHUA P. DAVIS & ROSE KOHLES, 2020 ANTITRUST ANNUAL REPORT: CLASS ACTION FILINGS IN FEDERAL COURT (2021), *available at* https://ssrn.com/abstract=3898782 (last accessed Sept. 13, 2024).

*In re GSE Bonds Antitrust Litig.*, No. 19-cv-1704 (JSR), 2020 WL 3250593, at *4 (S.D.N.Y. June 16, 2020) (approving settlements of $386.5 million). For its work as co-lead counsel in *GSE Bonds*, the American Antitrust Institute recognized Lowey with the 2020 Outstanding Antitrust Litigation Achievement in Private Law Practice Award.

More recently, Judge Alvin Hellerstein similarly remarked on Lowey's leadership in another complex antitrust class action:

> Well, I think you've done astounding work. You've been persistent, took on a field of law that's extremely difficult. You were pressed by excellent counsel into successive motion practices in my court and defended in the Second Circuit.

*Fund Liquidation Holdings, LLC v. Citibank, N.A.* (alleging manipulation of Singapore Interbank Offered Rate ("SIBOR") and the Singapore Swap Offer Rate ("SOR")). Transcript of Conference Proceedings at 29:18-22, No. 16-cv-05263 (AKH), (S.D.N.Y. Dec. 13, 2022), Dkt 571 (approving $155 million settlement). Likewise, Chief Judge McMahon observed in another class action case:

> The quality of representation is not questioned here, especially for those attorneys (principally from Lowey Dannenberg) who worked so hard to achieve this creative and, in my experience, unprecedented global settlement. . . . I thank everyone for the amazing work that you did in resolving these matters. Your clients—all of them—have been well served.

*In re Beacon Associates Litig.*, No. 09 CIV. 777 (CM), 2013 WL 2450960, at *14, 20 (S.D.N.Y. May 9, 2013) (granting final approval to $219.9 million settlement).

**b.    Lowey litigates cases nationwide, including antitrust cases involving commodities and food products**

Lowey has a national antitrust and commodities practice based out of its New York and Pennsylvania offices. Courts throughout the nation routinely appoint Lowey to

13

leadership positions in complex and multidistrict class actions, including recently appointing Lowey as interim co-lead counsel in large antitrust MDLs:

- *In re Crop Protection Prods. Loyalty Program Antitrust Litig.*, No. 1:23-md-03062 (M.D.N.C. June 4, 2023) (Schroeder, J.), ECF No. 60 (appointing Lowey as interim co-lead counsel in multidistrict litigation of at least 29 civil actions and 52 plaintiffs concerning alleged monopolization of crop protection products).

- *In re Passenger Vehicle Replacement Tires Antitrust Litig.*, No. 5:24-md-03107 (N.D. Ohio July 3, 2024) (Lioi, J.), ECF No. 137 (appointing Lowey as interim co-lead counsel for direct purchasers in multidistrict litigation of at least 35 civil actions concerning alleged price fixing of tires).

Lowey is a vanguard in commodities litigation and in antitrust litigation involving commodities, including agricultural commodities. Lowey is honored to have served as: (1) co-lead counsel in what was, at the time, the third and fourth largest recoveries under the Commodity Exchange Act ("CEA") (*see In re Natural Gas Commodity Litig.*, No. 1:03-cv-06186 (VM) (S.D.N.Y.); *In re Amaranth Natural Gas Commodities Litig.*, No. 1:07-cv-06377 (S.D.N.Y)); (2) on the executive committee in the largest CEA recovery at that time (*In re Sumitomo Copper Litig.*, Master File No. 1:96-cv-04854 (S.D.N.Y.)); and (3) as individual plaintiff's counsel in the second largest CEA settlement at the time (*Kohen v. Pacific Inv. Mgmt. Co. LLC*, 571 F.3d 672 (7th Cir. 2009)).

Representative actions involving agricultural commodities include:

- **Wheat**. *Ploss v. Kraft Foods Group, Inc.*, No. 1:15-cv-02937 (N.D. Ill.); *see* 431 F. Supp. 3d 1003 (lead counsel; achieved certification of nationwide antitrust class granted in ongoing case involving manipulation of prices of wheat) (Chang, J.);

- **Cheese.** *In re Dairy Farmers of America, Inc. Cheese Antitrust Litig.*, No. 1:09-cv-03690 (N.D. Ill.) (allocation counsel in $46 million settlement in

case alleging CEA and Sherman Act violations by purchasers of dairy products);

- **Rough Rice**. *In re Rough Rice Commodity Litig.*, No. 1:11-cv-00618 (N.D. Ill) (lead counsel in case alleging claims for both primary and aiding and abetting manipulation under the CEA relating to rough rice futures contracts); and

- **Packaged Seafood.** *In re Packaged Seafood Prods. Antitrust Litig.*, No. 3:15-md-02670 (S.D. Cal.) (member of Plaintiffs' Steering Committee for direct purchasers through the Court's grant of class certification).

Lowey's experience in litigating complex nationwide class action antitrust litigation, including cases involving agricultural commodities, makes Lowey well-suited to lead this case.

### c.    Lowey represents end payers, from overcharged Fortune 100 companies to overcharged consumers.

Lowey has significant experience litigating cases involving state antitrust and consumer protection laws that allow indirect purchasers to recover monetary damages. In 1998, Lowey Dannenberg filed the first-ever generic delay class action antitrust cases for end payers (a term encompassing consumers and insurers) — *In re Cardizem CD Antitrust Litig.*, No. 2:99-md-01278 (E.D. Mich.). After the court certified the class, 200 F.R.D. 326 (E.D. Mich. 2001), and partial summary judgment for plaintiffs was affirmed, 332 F.3d 896 (6th Cir. 2003), this first case was settled for $80 million.  Since this landmark case, Lowey's indirect purchaser end payer practice continued to grow to the point where it now has an entire practice group devoted to such indirect purchaser claims. Lowey represents thirty-nine (39) top health insurance companies in litigating indirect end purchaser antitrust claims in *In re Generic Pharmaceuticals Pricing Antitrust Lit*ig., No. 2:16-md-02724 (E.D.

Pa.) (price fixing challenged under state antitrust and consumer protection laws).  Fortune 100 insurers, such as Aetna and Humana, have publicly lauded Lowey in Corporate Counsel Magazine as their "Go To" outside counsel.

### d.    Lowey's resources will benefit the Class.

In addition to its 40-lawyer strong experienced antitrust team, Lowey is uniquely situated in its ability to efficiently manage discovery.  Lowey has developed an in-house proprietary platform for the cost-efficient handling of documents and discovery. This allows for the reduction of costs of voluminous electronic discovery, resulting in a tremendous savings to the class when it comes time for settlement distribution over those who bring in third-party vendors. Lowey also has a national consumer privacy and data breach practice, from which the antitrust litigators here could draw support as warranted as the matter proceeds.  *See, e.g.*, *In re Google Assistant Privacy Litig.,* No. 5:19-cv-04286 (N.D. Cal.) (co-lead class counsel in one of the largest privacy cases in the country, representing a class of consumers).

### e.    The Lowey litigation team

The members of the team that will lead Lowey's litigation of this case are each experienced class action litigators with substantial practices in antitrust and commodity manipulation cases in their own right, and their commitment to this case is fully supported by firm leadership.  The case will be led by three of the firm's top antitrust and commodities litigation lawyers: Peter Barile, Sitso Bediako, and Nicole Veno.

Peter Barile[8] is Of Counsel to the firm.  He has more than twenty years of experience as an antitrust litigator and counselor, representing class action plaintiffs, as well as individual clients, on both sides of the docket in a variety of industries and contexts both in court and before antitrust regulators.  As lead, co-lead, or class counsel, he has played an integral role in dozens of major national antitrust class actions, with Lowey and other top-tier firms.  Before joining the plaintiffs' antitrust bar, Mr. Barile practiced with national firms known for their historically leading antitrust practices, successfully defending clients in antitrust matters, including in MDLs against multistate indirect purchaser claims and in merger investigations.

For his work as co-lead counsel for plaintiffs in the ISDAfix Antitrust Litigation (*Alaska Electrical Pension Fund v. Bank of America, N.A.*), No. 1:14-cv-70126 (S.D.N.Y.) (Furman, J.), in which more than $500 million in settlements were achieved against fifteen multinational banks, he and his co-lead counsel were awarded the *American Antitrust Institute Outstanding Antitrust Litigation Achievement in Private Law Practice Award for 2018*.  Mr. Barile's experience in agricultural-related antitrust litigation, including representation of cattle ranchers as co-lead counsel in *In re Cattle Antitrust Litig.*, No. 0:19-cv-01222 (D. Minn.) and classes of dairy farmers as lead counsel in *In re Southeastern Milk Antitrust Litig.*, No. 2:08-md-01000 (E.D. Tenn.), would serve consumers well in this case.

---

[8] Mr. Barile's biography is attached to the Barile Decl. as Ex. 4.

Also relevant to this case is Mr. Barile's experience representing clients in merger investigations by federal antitrust authorities. Mr. Barile has years of experience representing merger applicants before the Department of Justice and Federal Trade Commission. This relatively unique experience among plaintiff-side class action litigators will benefit the consumer plaintiffs as merger proceedings involving United States Sugar and Imperial Sugar play a role in this litigation.

Mr. Barile also has considerable appellate experience, including in indirect purchaser cases. *See, e.g., In re Rail Freight Fuel Surcharge Antitrust Litig. (Fayus v. BNSF R'R Co.),* 602 F.3d 444 (D.C. Cir. 2010), *aff'g,* 593 F. Supp. 2d 29 (D.D.C. 2008) (affirming dismissal of all indirect purchaser damages claims). He also has filed amicus curiae briefs in major U.S. Supreme Court cases to give voice to, among others, nonprofit advocacy in matters of national importance. His work has included *Leegin Creative Leather Prods., Inc. v. PSKS, Inc*., 551 U.S. 877 (2007), in which he served as lead counsel for amicus curiae Consumer Federation of America in a landmark antitrust case, and *Giles v. California*, 554 U.S. 353 (2008), in which he served as lead counsel for the Battered Women's Justice Project, in a case concerning the Confrontation Clause.

Mr. Barile is the Chairman of the Antitrust and Trade Regulation Section of the Connecticut Bar Association. His antitrust publications have been cited by regulators, litigants, and academics. He has been recognized as a New York Metro Area Super Lawyer annually from 2014 through 2024.

Sitso Bediako[9] is a member of the Minnesota and New York bars and partner at Lowey.  He is a key member of the Firm's Antitrust and Commodities & Derivatives Practice Group.  Mr. Bediako has helped recover more than $1 billion in settlements on behalf of classes of individual investors, pension funds, state governments and institutional investors impacted by alleged manipulation of financial and commodities markets. In addition to investigating and prosecuting claims against defendants, Mr. Bediako has negotiated class action settlements and guided these settlements through the approval process, managing the work of settlement administrators and escrow agents, supervising the notification of potential class members, and directing the implementation of the court-approved plans to distribute funds to class members.  By way of example, he has played and continues to play an integral role in many of the firm's most important cases, including Euribor ($651.5 million in settlements); Yen LIBOR ($364.5 million in settlements), GSE Bonds ($386.5 million in settlements), and  BBSW ($185.875 million in settlements). Over the course of his career, Mr. Bediako has represented a range of clients including charitable organizations, small business owners, and large corporations as plaintiffs and defendants in a broad array of complex litigation matters, including federal securities and antitrust class actions, shareholder and director disputes, sensitive internal investigations, regulator inquiries, and whistleblower complaints.

Mr. Bediako gives back to the community.  For instance, he completed two terms of volunteer service on the University of Minnesota Law School's Board of Advisors.  In

---

[9] Mr. Bediako's biography is attached to the Barile Decl. as Ex. 7.

2014, Mr. Bediako received The Legal Aid Society's Award for Outstanding Pro Bono Service.  He has served as co-president of his local elementary school PTA and volunteers as a coach for a community-based recreational soccer league.  Mr. Bediako earned his B.A. from Harvard University and his J.D., cum laude, from the University of Minnesota Law School.  As a law student, he was a judicial extern to the Honorable Michael J. Davis, United States District Court for the District of Minnesota.

Nicole Veno[10] is a Senior Associate with over a decade of experience investigating and litigating complex cases on behalf of plaintiffs, including antitrust and consumer class actions brought under state antitrust and consumer protection laws. Early in her career, she successfully litigated a number of consumer protection cases involving mislabeling of cosmetics products as "natural," including *Morales v. Unilever U.S., Inc.*, No. 2:13-cv-02213 (E.D. Cal.), settled for $3.25 million and *Langan v. Johnson & Johnson Consumer Cos., Inc*., 897 F.3d 88 (2d Cir. 2018), settled for $2.4 million.

Ms. Veno has worked on large and complex antitrust cases involving food products including *In re Broiler Chicken Antitrust Litig*., No. 1:16-cv-08637 (N.D. Ill.), *In re Packaged Seafood Prods. Antitrust Litig*., No. 3:15-md-02670 (S.D. Cal.), and *In re Korean Ramen Indirect Antitrust Litig*. No. 3:13-cv-04115 (N.D. Cal.). Ms. Veno currently leads a large discovery team in *In re Crop Protection Prods. Loyalty Program Antitrust Litig*., No. 1:23-md-03062 (M.D.N.C.) and serves as co-lead counsel litigating antitrust

---

[10] Ms. Veno's biography is attached to the Barile Decl. as Ex. 8.

claims based on information sharing in the luxury hotel industry in *Segal v. Amadeus IT Group, S.A.,* No. 1:24-cv-01783 (N.D. Ill.).

Ms. Veno also serves as co-chair of the Climate and Antitrust Committee of Committee to Support the Antitrust Laws ("COSAL") and serves on the Board of Directors of Women in eDiscovery's New York chapter.  She was recognized by Super Lawyers as a "Rising Star" in Antitrust Litigation in 2022-2024.

The case team will benefit from the input and full support of firm leadership, including Vincent Briganti,[11] Firm Chairman and Chair of Lowey's Antitrust and Commodities & Derivatives Practice Group, and Peter St. Phillip,[12] Chair of Lowey's Litigation Department.  Both are nationally recognized for their long and successful records in the antitrust and commodities arenas, including serving as lead or co-lead counsel in most of the cases noted above and more. Mr. Briganti is an experienced litigator who, over the course of his career, has litigated some of the most complex federal class action cases, including multiple cases involving the manipulation of global Interbank Offered Rates ("IBORs") in which Mr. Briganti and his co-counsel have secured recoveries exceeding $1.3 billion. Mr. St. Phillip is a seasoned antitrust litigator known for representing institutional clients, including major health insurers, in large-scale cost recovery litigation in the medical and pharmaceutical space. The class will benefit from the direction and support of these preeminent litigators.

---

[11] Mr. Briganti's biography is attached to the Barile Decl. as Ex. 5.
[12] Mr. St. Phillip's biography is attached to the Barile Decl. as Ex. 6.

3. **Fegan Scott has the expertise and proven track record in complex antitrust and consumer class action litigation to best represent the Consumer Class.**

With nearly 30 years of experience representing plaintiffs in complex and class action litigation, Ms. Fegan founded Fegan Scott LLC in 2019 as a nationwide class action law firm after 15 years as Managing Partner of Hagens Berman's Chicago office. *See* www.feganscott.com. In the relatively short existence of Fegan Scott, Ms. Fegan has recovered more than $14 billion on behalf of class members:

- *In re Aqueous Film-Forming Foams (AFFF) Prods. Liab. Litig.*, MDL No. 2873, No. 2:18-mn-02873 (D.S.C.) (Gergel, J.): as appointed Co-Class Counsel, Ms. Fegan obtained final approval of combined $13.5 billion settlement for public water systems in *Dupont* and *3M* class actions;

- *Zakikhani v. Hyundai Motor Co.,* No. 8:20-cv-01584 (C.D. Cal.) (Blumenfeld, Jr., J.): as appointed Co-Lead Counsel, Ms. Fegan achieved final approval of class settlement valued between $300 and $650 million;

- *In re TikTok, Inc., Consumer Priv. Litig.*, MDL No. 2948, No. 1:20-cv-04699 (N.D. Ill.) (Lee, J.): Ms. Fegan was *sua sponte* appointed Co-Lead Counsel by the Court and subsequently obtained final approval of a $92 million class settlement;

- *In re Kia Hyundai Vehicle Theft Mktg., Sales Prac. and Prods. Liab. Litig.*, MDL No. 3052, No. 8:22-ml-03052 (C.D. Cal.) (Selna, J.): Ms. Fegan was *sua sponte* appointed interim Class Counsel, subsequently appointed Co-Lead Counsel, and has obtained preliminary approval of $200 million class settlement (final approval is pending).

At final approval in *In re AFFF Prods. Liab. Litig.*, the Honorable Richard Gergel complimented Ms. Fegan and Class Counsel as some of the "best lawyers in America." No. 2:18-mn-02873, Transcript of Proceedings, at 14:15, 114:19-21 (Feb. 2, 2024) (copy available upon request).

Ms. Fegan's experience and success also includes a focus on Section 1 price-fixing cases and deceptive pricing practices. *See, e.g., In re Pre-Filled Propane Tank Mktg. Sales Practices*, MDL No. 2086, No. 4:09-md-2086 (W.D. Mo.) (as Co-Lead Counsel, Ms. Fegan achieved combined settlements of $35 million for consumers in Section 1 antitrust case against providers of pre-filled propane tanks); *In re Baby Prods. Antitrust Litig.* (*McDonough v. Toys "R" Us*), No. 2:06-cv-00242 (E.D. Pa.) (as Co-Lead Counsel, Ms. Fegan certified the first litigated class of consumers in a resale price maintenance antitrust class action and received final approval of $35.5 million settlement); *Duane Smith and Brooke Smith v. Martin Brothers Distrib. Co. Inc.,* No. CVCV036641 (Iowa Dist. Ct., Dallas Cnty.) (as Lead Counsel, Ms. Fegan obtained a $1.9 million settlement for a class of Iowa families who overpaid for school lunches). *See also, e.g., McCormack v. Am. Equity Inv. Life Ins. Co*., No. 2:05-cv-06735 (C.D. Cal.) (as co-lead counsel in RICO and consumer protection class action on behalf of senior citizen purchasers of deferred indexed annuities, achieved a $129 million settlement); *Marrero-Rolon v. Puerto Rico Elec. Power Auth.,* No. 3:15-cv-01167 (D.P.R.) (as Lead Counsel, Ms. Fegan certified a class of consumers alleging RICO violations for a conspiracy to overcharge for fuel oil used to combust electricity, with damages estimated to exceed $1 billion).[13]

---

[13] And Ms. Fegan has been a member of multiple lead counsel teams challenging price-fixing practices. *See, e.g., Sheet Metal Workers Local No. 20 Welfare and Benefit Fund v. CVS Health Corp.*, No. 1:16-cv-00046 (D.R.I.) (as part of the lead counsel team, certified a class of third party payors alleging conspiracy to overstate the Usual & Customary (U&C) price for generic drugs with damages estimated to exceed $650 million); *In re Broiler Chicken Antitrust Litig.,* No. 1:16-cv-08637 (N.D. Ill.) (previously part of Hagens Berman lead counsel team for indirect purchaser consumers); *In re Pork Antitrust Litig.*, No. 0:18-

While the above cases are examples of Ms. Fegan's work as lead class counsel, the successes are the result of her litigation ethic: zealous advocacy with a core commitment to professionalism. For example, the Honorable John Z. Lee appointed Ms. Fegan *sua sponte* as Co-Lead Counsel in *In re TikTok, Inc., Consumer Privacy Litig.*, after other attorneys had formed competing coalitions, explaining:

> Ms. Fegan demonstrated to me during her work in the *NCAA Student-Athlete Concussion MDL* that she is very astute, hard-working and, perhaps most important of all in this circumstance, fair and level-headed.

No. 1:20-cv-04699*,* Transcript of Proceedings, at 12:22-25 (Sept. 24, 2020) (copy available upon request). Upon final approval of the groundbreaking $92 million *TikTok* settlement, one of the largest privacy class action settlements ever achieved, the National Law Journal recognized the firm she founded, Fegan Scott LLC, as Consumer Protection Law Firm of the Year in its 2023 Elite Trial Lawyers Awards.

Ms. Fegan's accomplishments and successes have been widely recognized. She has been named, *inter alia*, one of America's Top 200 Lawyers, Forbes (2024); Sports/Gaming/ Entertainment Law Trailblazer, The National Law Journal (2022); Midwest Trailblazer, The American Lawyer (2022); Illinois Super Lawyer, Super Lawyers Magazine (annually 2016-2024); 500 Leading Plaintiff Consumer Lawyers, Lawdragon (annually 2019-2024); Top 50 Women in Law Honoree, Chicago Daily Law Bulletin/Chicago Lawyer (2021); and Woman of Influence 2017, Best Lawyers, Business Edition (Spring 2017).

---

cv-01776 (D. Minn.) (previously part of Hagens Berman lead counsel team for indirect purchaser consumers).

Ms. Fegan is supported by a well-rounded team at Fegan Scott, including but not limited to: Of Counsel Mike von Klemperer (Washington D.C. office), who played a leading role in cases seeking to hold the pharmaceutical industry accountable for its role in the opioid crisis and represented states and other government entities in litigation against manufacturers, distributors, and retail pharmacies, ultimately helping to recover over $1 billion for his clients; Senior Associate Megan Shannon (Chicago office), who has significant MDL experience working on class certification discovery and bringing successful privilege challenges; and a staff attorney team dedicated to document review in large-scale class actions like this one.

## B.    The Consensus Group's Proposed Class Counsel have done substantial work identifying, investigating, and litigating the claims and continue to do so.

When appointing lead counsel, a court considers the work counsel has done thus far to prosecute the claim at this early stage. Fed. R. Civ. P 23(g)(1)(A)(i). While the case is based on filings in a federal merger case, from which certain counsel for the direct purchaser plaintiffs initially investigated and filed the first complaint here, Robins Kaplan, Lowey and Fegan Scott have independently studied the viability of the claims pled on behalf of the Consumer Class.

Importantly, Lowey has engaged David Sunding Ph.D., one of the leading agricultural economists in the country.[14]  Dr. Sunding has direct experience in the sugar industry through his work as senior economist on President Clinton's Council of Economic

---

[14] A copy of Dr. Sunding's CV is attached as Exhibit 9 to the Barile Decl.

Advisers, and in other governmental roles.  Dr. Sunding's testimony has supported certification in other major consumer indirect purchaser class action cases, including concerning commodity food products.  The Consensus Group's Proposed Class Counsel also believes that if the Court wishes experts to present at the anticipated Tutorial Day, Dr. Sunding would be an invaluable resource in providing the Court with helpful information.

The Consensus Group's Proposed Class Counsel also have worked to organize consumer plaintiffs' counsel, resulting in the support of nine law firms representing 70% of the 20 consumer cases currently on file.  The Consensus Group's Proposed Class Counsel has played a significant role in preparing the various submissions to the court. In addition to collaborating with counsel for direct purchasers and indirect commercial purchasers to address case management issues raised by the Court, Proposed Class Counsel conferred with defendants as to pretrial matters, including prior to the Court's issuance of PTO No. 1.  Likewise, Proposed Class Counsel worked with consumer plaintiffs' counsel to develop a consensus on leadership and determined that the Consumer Class is best served by a diverse leadership proposal with national power and a significant local presence to align with the respective leadership teams proposed by the direct and commercial indirect purchasers. The Consensus Group's Proposed Class Counsel thus satisfy Rule 23(g)(1)(A)(i).

## C.    The Consensus Group's Proposed Class Counsel Supports Diversity In Leadership.

Diversity of gender, race, and ethnicity leads to better results in all business contexts,[15] including in the prosecution of class actions.[16]  Courts have emphasized the need to avoid "the 'repeat player' problem in class counsel appointments that has burdened class action litigation and MDL proceedings." *See* Order re Consolidation and Interim Class Counsel (ECF No. 59), at 3, *In re Robinhood Outage Litig.*, No. 3:20-cv-01626 (N.D. Cal., July 14, 2020).[17]  The lack of women in leadership roles particularly plagues the antitrust and unfair competition bar.[18]  Thus, the Duke Law Center for Judicial Studies—a

---

[15] *See, e.g.,* Vivan Hunt et al., *Why Diversity Matters*, MCKINSEY (Jan. 2015), available at https://www.mckinsey.com/~/media/mckinsey/business%20functions/people%20and%20 organizational%20performance/our%20insights/why%20diversity%20matters/why%20di versity%20matters.pdf (last accessed Sept. 13, 2024); Thomas Barta et al., *Is There Payoff From Top-Team Diversity?*, MCKINSEY (Apr. 1, 2012), available at https://www.mckinsey.com/capabilities/people-and-organizational-performance/our-insights/is-there-a-payoff-from-top-team-diversity (last accessed Sept. 13, 2024).

[16] JAMES F. HUMPHREYS COMPLEX LITIGATION CENTER, GEORGE WASHINGTON LAW SCHOOL, INCLUSIVITY AND EXCELLENCE: GUIDELINES AND BEST PRACTICES FOR JUDGES APPOINTING LAWYERS TO LEADERSHIP POSITIONS IN MDL AND CLASS-ACTION LITIGATION 1 (2021) ("The judge should recognize that diversity enhances the quality of the decision-making process and results, and should make appointments consistent with the diversity of our society and justice system.")

[17] *See also* Elizabeth Chamblee Burch and Margaret S. Williams, *Repeat Players in Multidistrict Litigation: The Social Network*, 102 Cornell L. Rev. 1445 (2017).

[18] *Diversity in the Antitrust Bar: Is it Truly a Pipeline Problem?*, CALIFORNIA LAWYERS ASSOC., Competition: Fall 2022, Vol. 32, No. 2, available at https://calawyers.org/publications/antitrust-unfair-competition-law/competition-fall-2022-vol-32-no-2-diversity-in-the-antitrust-bar-is-it-truly-a-pipeline-problem/ (last accessed Sept. 13, 2024). *See also, e.g.,* Stephanie A. Scharf & Roberta D. Liebenberg, *First Chairs at Trial: More Women Need Seats at the Table*, ABA (Mar. 1, 2015), available at https://www.americanbar.org/groups/diversity/women/publications/perspectives/2018/ winter/first-chairs-trial-more-women-need-seats-the-table/ (last accessed Sept. 13, 2024); Chamblee Burch, *Judging Multidistrict Litigation*, 90 N.Y.U. L. Rev. 71, 93 n.102 (Apr.

coalition of 22 MDL practitioners and 17 federal and state court judges—adopted MDL Best Practice 4E, which provides that a "transferee judge should take into account whether the leadership team adequately reflects the diversity of legal talent available and the requirements of the case."[19] This proposed leadership slate has two top-ranking women attorneys with ample years of experience in antitrust and complex class action litigation.

Fegan Scott is the only plaintiffs' firm among counsel representing consumers in this proceeding that is both founded and led by a woman. Ms. Fegan is a fierce advocate for gender equity within the legal profession, authoring "An Opportunity or Landmine: Promoting Gender Diversity From The Bench" (The Federal Lawyer, May 2016), participating in The Duke Judicial Law Center's Distinguished Lawyers conference on "Guidelines and Best Practices Addressing Chronic Failure to Diversify Leadership Positions in the Practice of Law," and regularly mentoring and supporting her female colleagues for MDL leadership and committee positions.

At Robins Kaplan, Ms. Slaughter also advocates for diversity. Ms. Slaughter has demonstrated efforts to promote diversity both within Robins Kaplan and the legal community. When she served on the Robins Kaplan Executive Board from 2020-2022, she oversaw broader firm strategy around recruitment, retention, and advancement of diverse attorneys along with the firm's Diversity, Equity, and Inclusion Committee. During 2019-

---

2015); Jaime Dodge, *Facilitative Judging: Organizational Design in Mass-Multidistrict Litigation*, 64 Emory L.J. 329, 364 (2014).

[19] DUKE LAW CENTER FOR JUDICIAL STUDIES, STANDARDS AND BEST PRACTICES FOR LARGE AND MASS-TORT MDLS 44 (May 2014). *See* The Hon. Stanwood R. Duval Jr., *Considerations in Choosing Counsel for Multidistrict Litigation Cases and Mass Tort Cases*, 74 LOUISIANA LAW REVIEW 390 (Winter 2014).

2022, when she served as the Minneapolis Business Litigation Deputy Office Manager, one of her duties was to ensure equitable distribution of meaningful case assignments and opportunities to diverse lawyers in the department. Similarly, as chair of the department's advancement committee during that time, she endeavored to ensure that performance discussions focused on work quality and that all associates had the same opportunities for training and advancement. She is active in the Women of Robins Kaplan (WoRK) group and a member of Minnesota Women Lawyers (MWL). She also served as a committee member for Twin Cities Diversity in Practice (TCDIP) from 2019-2023, which aims to promote a diverse and inclusive legal community. Slaughter Decl. at 20. The Robins Kaplan resume includes additional information about diversity at the firm. Slaughter Decl. at Ex. 1.

Lowey's commitment to promoting diversity and inclusion in the legal profession is in part evident in the diversity of its workforce. More than 50% of the attorneys and 46% of the partners at the firm are female and/or come from other diverse backgrounds. This reflects the attention by firm leadership to considering diversity and inclusion in its hiring and promotion process. Consistent with industry aspirations, Lowey has considered diversity when hiring attorneys and promotion attorneys for leadership opportunities in our firm, such as partnership and membership on firm committees, and maintains a Diversity, Equity, and Inclusion ("DEI") Committee to ensure those considerations continue to be a focus of the firm.

The experience of the Consensus Group's Proposed Class Counsel supports diversity in leadership.

**D.    Additional Important Factors Support This Application**

    **1.    The Consensus Group's Proposed Class Counsel enjoy the support of a majority of firms and plaintiffs that represent the preponderance of cases and (critically) indirect purchaser states.**

The Consensus Group's Proposed Class Counsel have assembled a majority of firms, plaintiffs, cases, and indirect purchaser states. This reflects the quality leadership that the Consensus Group's Proposed Class Counsel would bring to the table if appointed. This majority is the result of cooperative private ordering. *See* MANUAL § 10.22 ("In some cases the attorneys coordinate their activities without the court's assistance, and such efforts should be encouraged."). By agreeing to work together, the Consensus Group has reduced the number of applications before this Court.

Notably, many of the core attorneys on each firm's team know each other well and have worked together on multiple occasions in various combinations for years. The familiarity and trust built up through these prior experiences means that the group will be able to delegate tasks to the attorneys best suited to handle them. This includes the supporting counsel, whose participation lead counsel would utilize as necessary on an efficient and effective basis.[20]

    **2.    Minnesota Presence**

Like the proposed co-lead counsel for the direct purchasers and the indirect commercial purchasers (Gustafson and Lockridge, respectively), selection of the Consensus Group benefits from a significant Minneapolis law firm as co-lead counsel—Robins Kaplan. Robins Kaplan is one of the largest and most accomplished antitrust

---

[20] Declarations of supporting counsel are being filed contemporaneously.

litigation firms in the country, with its headquarters in Minneapolis.  In addition, among the supporting counsel for Proposed Lead Counsel is Rachhana Srey of Nichols Kaster, PLLP.  Ms. Srey has substantial experience in class and collective actions in this District and, in particular, before this Court.

### 3.    Resources

While the Consensus Group's Proposed Class Counsel's local resources are unmatched, their national resources even further outpace the competition. This case involves a conspiracy impacting businesses and consumers nationwide against big agriculture — deep pocketed defendants represented by formidable defense counsel. All three Proposed Class Counsel are nationally recognized and are collectively supported by nearly 275 lawyers across offices in in Minnesota, New York, California, Pennsylvania, Massachusetts, the District of Columbia, Illinois, Texas, North Dakota, and South Dakota.

In complex antitrust cases, as here, which require significant resources to successfully litigate, a three firm co-lead structure is a tested and effective structure. *See Moehrl v. Nat'l Assoc. of Realtors*, No. 19-cv-01610, 2020 WL 5260511, at *2 (N.D. Ill. May 30, 2020) ("a three-firm leadership structure is warranted in light of the magnitude and complexity of this action"); *In re Treasury Sec. Auction Antitrust Litig.*, No. 15-md-2673 (PGG), 2017 WL 10991411, at *2 (S.D.N.Y. Aug. 23, 2017) (appointing a three-firm leadership); Order, *In re Wholesale Grocery Prods. Antitrust Litig.*, No. 0:09-cv-03191-ADM-TNL (D. Minn. Dec. 15, 2009), ECF No. 12 (appointing three-firm leadership); Order, *Alaska Elec. Pension Fund v. Bank of Am. Corp.*, No. 1:14-cv-07126 (S.D.N.Y. Nov. 25, 2014), ECF No. 137 (appointing three-firm leadership). Appointment of the

Consensus Group's Proposed Class Counsel will ensure the Consumer Class has ample resources to litigate this action.

## IV.    CONCLUSION

For the foregoing reasons, the Consensus Group respectfully requests that this Court grant their motion and that this Court appoint Robins Kaplan LLP, Lowey Dannenberg, P.C., and Fegan Scott LLC as Interim Co-Lead Class Counsel for the Proposed Consumer Indirect Purchaser Class and grant such further relief as the Court may deem appropriate.

A [Proposed] Order is filed herewith.

Dated: September 13, 2024

Respectfully submitted,

By: *s/ Stacey P. Slaughter*

**ROBINS KAPLAN LLP**
Stacey P. Slaughter
800 LaSalle Avenue, Suite 2800
Minneapolis, MN  55402
Telephone: 612-349-8500
Facsimile: 612-339-4181
sslaughter@robinskaplan.com

Vincent Briganti
Peter St. Phillip
Sitso Bediako
Peter Barile
Nicole Veno
**LOWEY DANNENBERG, P.C.**
44 South Broadway, Suite 1100
White Plains, NY 10601
Telephone: (914) 997-0500
Facsimile: (914) 997-0035
vbriganti@lowey.com
pstphillip@lowey.com
sbediako@lowey.com
pbarile@lowey.com
nveno@lowey.com

Elizabeth A. Fegan
**FEGAN SCOTT LLC**
150 S. Wacker Dr., Suite 2400
Chicago, IL 60606
Telephone: (312) 741-1019
beth@feganscott.com

*Proposed Interim Co-Lead Class Counsel*
*for Consumer Indirect Purchaser Plaintiffs*
*and the Proposed Consumer Indirect*
*Purchaser Plaintiff Class*

Rachhana T. Srey
**NICHOLS KASTER PLLC**
80 South 8th Street
4700 IDS Center
Minneapolis, MN 55402
Telephone: (612) 256-3239
Facsimile: (612) 338-4878
srey@nka.com

Robin F. Zwerling
Jessica Hermes
**ZWERLING, SCHACHTER &**
**ZWERLING, LLP**
41 Madison Avenue

33

New York, NY 10010
Telephone: (212) 223-3900
rzwerling@zsz.com
jhermes@zsz.com

Michelle C. Clerkin
**SPIRO HARRISON & NELSON**
1111 Lincoln Road, Suite 500
Miami Beach, Florida 33139
Tel: (786) 841-1181
Fax: (973) 232-0887
mclerkin@shnlegal.com

Rachel Dapeer
**DAPEER LAW, P.A.**
20900 NE 30th Avenue, #417
Aventura, FL 33180
Telephone: (954) 799-5914
rachel@dapeer.com

Ronen Sarraf
Joseph Gentile
**SARRAF GENTILE LLP**
10 Bond Street, Suite 212
Great Neck, NY 11021
516-699-8890
ronen@sarrafgentile.com
joseph@sarrafgentile.com

Ian W. Sloss
John Seredynski
**SILVER GOLUB & TEITELL, LLP**
1 Landmark Square
Stamford, CT 06901
Telephone: (203) 325-4491
isloss@sgtlaw.com
jseredynski@sgtlaw.com

***Additional Counsel for Consumer Indirect
Purchaser Plaintiffs and the Proposed
Consumer Indirect Purchaser Consumer
Plaintiff Class***

34