```
 1                    UNITED STATES DISTRICT COURT
                        DISTRICT OF MINNESOTA
 2
      ------------------------------------------------------------
 3                                  )
      IN RE: GRANULATED SUGAR       )   File No. 24-md-3110
 4    ANTITRUST LITIGATION          )           (JWB/DTS)
                                    )
 5                                  )
                                    )   St. Paul, Minnesota
 6                                  )   October 28, 2024
                                    )   1:16 p.m.
 7                                  )
                                    )
 8                                  )
      ------------------------------------------------------------
 9

10

11

12

13

14            BEFORE THE HONORABLE JERRY W. BLACKWELL
                 UNITED STATES DISTRICT COURT JUDGE
15             AND THE HONORABLE DAVID T. SCHULTZ
          UNITED STATES DISTRICT COURT MAGISTRATE JUDGE
16
                       (STATUS CONFERENCE)
17

18

19

20

21

22

23

24        Proceedings recorded by mechanical stenography;
      transcript produced by computer.
25
```

2

```
1       APPEARANCES:

2       For Direct Purchaser        Gustafson Gluek, PLLC
        Plaintiff Northern          DANIEL E. GUSTAFSON, ESQ.
3       Frozen Foods, Inc.,         Suite 2600
        d/b/a Northern Haserot:     120 South Sixth Street
4                                   Minneapolis, Minnesota 55402

5       For Consumer Class          Robbins Geller Rudman & Dowd LLP
        Plaintiffs Laura Fowler     ALEXANDRA S. BERNAY, ESQ.
6       and Isabella Benmeleh:      655 West Broadway
                                    Suite 1900
7                                   San Diego, California 92101

8       For Consumer Indirect       Lowey Dannenberg
        Purchaser Plaintiffs        PETER A. BARILE III, ESQ.
9       Evan Annis, Bruce           Suite 1100
        Johnson, Stacy Kurtz,       44 South Broadway
10      Donald Friedman, Thomas     White Plains, New York 10601
        Tombarello, Francisco
11      Olivares and James
        Veneziano:

12
        For Commercial Class        Larson King
13      Plaintiffs 2nd Pit LLC;     SHAWN M. RAITER, ESQ.
        Madison Pizza LLC,          Suite 2800
14      d/b/a Rosati's of           30 East Seventh Street
        Madison(East);              St. Paul, Minnesota 55101
15      Moretti's Ristorante &
        Pizzeria (Schaumburg);
16      Portland Hunt-Alpine
        Club, LLC; RRG
17      Scottsdale Pizza LLC
        d/b/a Rosati's of
18      Scottsdale; Sugar Bake
        Shop, Inc.; Up at 4,
19      Inc. d/b/a/ Great
        Harvest Bread Co.
20      (Duluth, MN); and
        Wilson Coffee House,
21      LLC, d/b/a Linden
        Street Coffee House:

22

23      For the Defendants          Latham & Watkins LLP
        United Sugar Producers      LAWRENCE E. BUTERMAN, ESQ.
24      & Refiners Cooperative:     ELYSE GREENWALD, ESQ.
                                    1271 Avenue of the Americas
25                                  New York, New York 10020
```

```
 1       For the Defendants        A&O Shearman
         Domino Foods, Inc; ASR    DJORDJE PETKOSKI, ESQ.
 2       Group International,       401 9th Street, NW
         Inc.; and American        Suite 800
 3       Sugar Refining, Inc.:     Washington, DC 20004

 4       For the Defendant         Wilkinson Stekloff, LLP
         Cargill, Incorporated:    KOSTA S. STOJILKOVIC, ESQ.
 5                                 2001 M. Street NW
                                   10th Floor
 6                                 Washington, DC 20036

 7       For the Defendant         Eimer Stahl LLP
         Michigan Sugar Company:   VANESSA G. JACOBSEN, ESQ.
 8                                 224 South Michigan Avenue
                                   Suite 1100
 9                                 Chicago, Illinois 60604

10       Court Reporter:           ERIN D. DROST RMR-CRR
                                   Suite 146
11                                 316 North Robert Street
                                   St. Paul, Minnesota 55101

12

13    Also present on behalf of Plaintiffs:
                  William Hoese
14                Vildan Teske
                  Caitlin Keiper
15                Lee Albert
                  Thomas Burt
16                Bryan Clobes
                  Mindee Reuben
17                Anthony Carter
                  Kimberly Justice
18                Sarah Sterling Aldridge
                  Robin Zwerling
19                Michelle Clerkin
                  Elizabeth Castillo
20                Dan Hedlund
                  Linda Nussbam
21                Stacey Slaughter
                  Jon Tostrud
22                Heidi Silton
                  Dave Cialkowski
23                Josh Rissman
                  Michael Flannery
24                Daniel Warshaw
                  Melissa Weiner
25                Abou Amara
```

```
 1                 Mike Roberts
                   Garrett Blanchfield
 2                 Elizabeth Fegan
                   Rachhana Srey
 3                 Scott Martin
                   Christopher Le
 4                 Andrew Wolinsky
                   Arthur Shingler
 5                 Peter Prieto
                   Greg Asciolla
 6                 Alexander Barnett

 7
        Also present on behalf of Defendants:
 8                 Jessica Nelson
                   Amelia Rasmussen
 9                 Gina Tonn

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1              **P R O C E E D I N G S**

2                **IN OPEN COURT**

3

4         THE COURT:  Please be seated.

5         UNIDENTIFIED SPEAKER:  Afternoon, Your Honors.

6         THE COURT:  Good afternoon.  Let's get the case

7    called first before I give any more good afternoons.

8         THE COURTROOM DEPUTY:  We are here in the matter

9    of In Re Granulated Sugar Antitrust, Case Number 24-md-3110

10   JWB/DTS.

11        THE COURT:  So I won't have all of you note your

12   appearances.  I'll just ask you to have signed then the

13   sign-in sheet, and that would be my way of knowing that you

14   were here and having a record of it.  But for those who are

15   sitting at the speaking table, why don't you identify

16   yourselves.

17        MR. GUSTAFSON:  Good afternoon, Your Honor.  Dan

18   Gustafson on behalf of the plaintiffs.

19        THE COURT:  Good afternoon.

20        MR. RAITER:  Good afternoon, Your Honor.  Shawn

21   Raiter, Larson King, on behalf of the plaintiffs.

22        THE COURT:  Good afternoon.

23        MS. BERNAY:  Good afternoon, Your Honor.

24   Alexandra Bernay from Robbins Geller Rudman & Dowd on behalf

25   of the consumer plaintiffs.

```
 1                    THE COURT:  Good afternoon.
 2                    MR. BARILE:  Good afternoon, Your Honor.  Peter
 3      Barile from Lowey Dannenberg here on behalf of the consumer
 4      plaintiffs.
 5                    THE COURT:  All right.  Good afternoon to you all.
 6                    MR. BUTERMAN:  Good afternoon, Your Honor.
 7      Lawrence Buterman from Latham & Watkins on behalf of United
 8      Sugar.
 9                    THE COURT:  Good afternoon, Mr. Buterman.
10                    MS. GREENWALD:  Good afternoon, Your Honor.  Elyse
11      Greenwald from Latham & Watkins on behalf of United Sugar.
12                    THE COURT:  Good afternoon.
13                    MR. PETKOSKI:  Good afternoon, Your Honor.
14      Djordje Petkoski, A&O Shearman, on behalf of the Domino
15      defendants.
16                    THE COURT:  Good afternoon to you.
17                    MR. STOJIKOVIC:  Good afternoon, Your Honor.
18      Kosta Stojilkovic from Wilkinson Stekloff on behalf of
19      Cargill.
20                    THE COURT:  Good afternoon.
21                    MS. JACOBSEN:  Good afternoon.  Vanessa Jacobsen
22      from Eimer Stahl for Michigan Sugar Company.
23                    THE COURT:  Good afternoon.  And we have a number
24      of lawyers on Zoom I am told.  And for their information,
25      I'm also told that there's been some audio problems with the
```

1    Zoom that at least as of this point are corrected.  They are

2    subject to not being corrected as we proceed along; and so

3    if that occurs, then hang on.  It may be back.  And if it

4    isn't, then I can promise you it will be better the next

5    time or we'll be in a different courtroom.

6           So why don't I first start with whether there are

7    any kind of general remarks.  I'd like to hear whether --

8    what's been happening since we last met and if there's been

9    nothing, you just all are waiting for me, that's fine.

10          But let me hear first what's going on.

11   Mr. Gustafson.

12          MR. GUSTAFSON:  I think the answer is we've been

13   waiting for you, Your Honor.  We have kept -- had

14   conversations with defendants of course on various matters,

15   but all of it depends on the leadership appointments before

16   we can really get going.

17          On the Wistisen service matter, which is a little

18   bit later in the agenda, I can tell you that he has retained

19   counsel and we have been in contact with those counsel and

20   that service issue is going to be worked out in the short

21   order.

22          But that's really all that's new, I would say.

23          THE COURT:  Well, that's the 1 and 2.  And so

24   really nothing much more to say about Mr. Wistisen and the

25   Commodity Information.  That that's in progress?

```
 1              MR. GUSTAFSON:  Yeah.  As I said, he's retained
 2      counsel.  They've agreed to accept service.  We just haven't
 3      gotten the stipulation finished yet, and it will be a few
 4      weeks but it will be before the consolidated complaints.
 5              THE COURT:  All right.  Thank you.
 6              MR. GUSTAFSON:  You're welcome.
 7              THE COURT:  Mr. Buterman, are you the spokesperson
 8      today as well?
 9              MR. BUTERMAN:  I guess so, Your Honor.
10              THE COURT:  Well, what do you have to say for
11      yourself?
12              MR. BUTERMAN:  We agree with the plaintiffs.
13      There's really -- from our perspective, we're just waiting
14      for the leadership to be decided and then to see the
15      consolidated amended complaints.
16              THE COURT:  All right.  Thank you.
17              Then it's my objective to try to get this show on
18      the road then and to get -- to get the case going in earnest
19      and to get at discovery.  So there will be quite a few
20      things that I say today that will help to bring some clarity
21      to where we are going.
22              I do not at all in any respect expect total
23      agreement from both sides of this.  If I had it, it probably
24      wouldn't be an adversarial proceeding.  But I've thought
25      about your case quite a lot and how I think I'd like to
```

 1    proceed with it.
 2              Let me first then kind of walk through some of the
 3    decision points that were raised in the status letter that
 4    you all sent.  And I appreciated you all sending it.
 5              I should tell you that I put in the agenda court
 6    status conferences through year end next year just so you
 7    can plan for them.  The dates may, in some instances, be
 8    subject to change.  And also depending on how many issues
 9    and what kind of issues you have each month to raise with
10    the Court, I may turn the proceeding -- our status updates
11    into kind of a two-day process.  Not two whole days, but I
12    would just have you come in the day before, get together in
13    a conference room and hash it out, depending on the nature
14    of the issues and how many there are.  And we're just going
15    to see how this evolves.
16              As is now, we'll keep it as a singular date as you
17    see in the agenda, but I'm certainly open to getting a room
18    in the court, having you hash it out, and I'd be perfectly
19    fine getting the agenda the afternoon before because the
20    agenda will simply reflect what's left that didn't get
21    hashed out.  And if you have those kinds of meetings, either
22    I or Judge Schultz would be available on the day before,
23    come down there with the court reporter, and can make
24    certain rulings and put things on the record to get it
25    rolling.

1          I don't see a need for it now.  I can foresee that

2     there may be before we are done, because we want to be --

3     keep close to this case and to keep it moving.  And there

4     are certain cases where things seem to only get discussed at

5     the status hearing before the Court and the lawyers sort of

6     fall back to doing letter exchanges that aren't always the

7     most effective things for trying to talk through things and

8     reach resolution.  So stay tuned on that is my general

9     remark.

10          So let me first take up the issue of phased

11     discovery.  Should discovery be conducted in phasing -- the

12     phases beginning with threshold issues like collusion -- or

13     proceed concurrently?

14          So I think there was an overlap between the

15     plaintiffs' and defense positions on this as at the end of

16     the day, even the defendant was saying that a phased

17     approach may not be feasible at this stage, I read.  And I

18     took that to heart because the issues may be so intertwined

19     that it may do not much more than to introduce just sort of

20     delay and redundancy and overlapping and so on.  And I

21     haven't been on the bench that long and I couldn't believe I

22     almost forgot my own experience with such.

23          So I'm not going to phase discovery.  And so just

24     to know that.  Once discovery starts, it is going to be one

25     stage, and that one stage will be called discovery.  And the

1    discovery will be on all things.  It will be on the merits

2    discovery.  It will be class discovery.  It will be all

3    discovery.

4           And I understand that not phasing any aspect of it

5    means there could be a larger volume of depos and documents.

6    It will probably mean having to retain certain experts

7    earlier because you'll be then focusing on both class and

8    merits stuff earlier in the case since that won't be phased.

9    That's fine.  I think I just want to get all the discovery

10   done to have it out; and then once the discovery is

11   finished, we'll sort out the various motions.  But discovery

12   at that point at least will be finished.

13          The plaintiff has projected 15 months to do all

14   the discovery and, Mr. Buterman, does that seem like too

15   much time to you?

16          MR. BUTERMAN:  No, Your Honor.

17          THE COURT:  That was a joke, Mr. Buterman.

18          (Laughter)

19          THE COURT:  And so -- so that's certainly, you

20   know, tight, and I am going to revisit the -- what the

21   schedule should be after today, but -- but I see it taking

22   kind of easily 18 to 24 months with the discovery.  But

23   we'll see.  It will, in all likelihood, be less than you

24   want, but there will always be the window to kind of show

25   cause for why it should be extended because I'd like to see

1    you kind of getting after it.  If the discovery window were

2    three years, I'm pretty sure discovery would take three

3    years, and then there would be a motion to extend it.  So I

4    know that also.  So I'm not going to phase discovery.

5         The other thing that I wanted to say too in not

6    phasing discovery, at our last proceeding, I was

7    contemplating staying discovery for the motions to dismiss.

8    I have now thought more about that as well, and so I won't

9    do that either.

10        So once the discovery period begins, I know there

11   will be motions to dismiss.  I will take those up in due

12   course, but I want to go ahead and get after the discovery.

13   And even while you are awaiting to get the rulings and

14   formal orders from the Court on who is in what leadership

15   position -- and I'll tell you who is where in the proceeding

16   today -- but you can certainly be getting ready on your ESI

17   protocols and the rest because you know it's coming so...

18        You know, from all -- and you all are, by the way,

19   very experienced and impressive.  I really did enjoy reading

20   the applications for the plaintiffs' steering committee.

21   It's a -- you know, your, I think, clients should be proud

22   with the kind of expertise that you have here in this room.

23   But it was clear to me that most of you have been to quite a

24   few rodeos, and this is also a horse you have ridden before

25   as well.

1          So I can tell you that you know that the ESI

2     issues are coming up, but you already know that, and so

3     there's no point in just kind of waiting to get that going.

4          All right.  So I will take under advisement each

5     of the proposed schedules from each side but know that when

6     the schedule comes out, it will be, in all likelihood, in

7     the ballpark of 18 to 24 months for the discovery window and

8     period.

9          Now, I read in some detail the proposals for the

10    leadership committees and that is with respect to the

11    plaintiffs' subgroups and the plaintiffs' steering committee

12    and as well the defense position.  And I understood that the

13    defense wasn't altogether sure you even needed a steering

14    committee.  And you may be right, ultimately.  But I feel it

15    is better to have it and not need it than need it and not

16    have it.

17         And at this point, I don't really know what we're

18    going to be dealing with in this case.  I'm pretty sure that

19    if I asked the plaintiffs, they would tell me that they are

20    planning to prove up per se kind of violations, and we'll

21    see about that.  But if it isn't that kind of case and this

22    devolves into talking about product markets and geographic

23    markets and proving injuries and damages, I'm not sure that

24    it wouldn't be all -- wouldn't be helpful to have

25    coordination on the defense side because I don't know to

1    what extent you are the same with respect to some of those

2    issues.  So we have a structure, in any event, if it's

3    needed.

4         Now, having said that, let me talk about the

5    leadership.  As I said, I reviewed all of your papers and

6    took into account the directions and guidance of Rule 23(g).

7    And here is my ruling on the plaintiffs' steering committee.

8    It will be an appointment that will be for one year; and at

9    the end of one year, you have to re-up and reapply and

10   basically say something about what you've done for why you

11   should continue to be doing it after a year.

12        I have had an experience, not as a judge but as a

13   practitioner, where I have seen at least a person appointed

14   to a plaintiffs' steering committee and I saw them the day

15   they were appointed and I saw them again when their name was

16   in the newspaper for the appointment and I didn't see them a

17   whole lot after that.  And that wasn't you, Mr. Gustafson,

18   just so you know.

19        (Laughter)

20        THE COURT:  But I have seen it before, but I do

21   want an active, you know, plaintiffs' steering committee.

22   And there are cases too where you have certain members who

23   are experienced and wise and so on who might be better

24   serving in an advisory role or something, but...

25        So we'll take a year -- a look back after the

```
 1    year.  As well, I don't know how well the different members

 2    will work together on the committee either, and that's

 3    pretty important.

 4             So here are the firms -- I limited it to seven --

 5    on the plaintiffs' steering committee with the idea that I

 6    wanted competent, capable members but not so big you can't

 7    get anything done and can't meet, so I'll list the firm but

 8    the appointment is to the individual on the plaintiffs'

 9    steering committee.

10             So the Gustafson firm, and, Mr. Gustafson, I'm

11    sorry, but it is you, Mr. Gustafson, who is named, Dan

12    Gustafson.

13             Robins Kaplan, Stacey Slaughter.

14             And if I mispronounce any name, then you all

15    please correct me because we'll be together a while.

16             Is it Lowey Dannenberg?

17             Okay.  Peter, is it Ba-ril (phonetic)?

18             MR. BARILE:  Ba-ril (phonetic), yes, Your Honor.

19             THE COURT:  Yes, Peter Barile.

20             Lockridge Grindal, Heidi Silton.

21             Freed Kanner, Kimberly Justice.

22             Fegan Scott.  Is it Fee-gan (phonetic) or Fay-gan

23    (phonetic)?

24             MS. FEGAN:  Fay-gan (phonetic), Your Honor.

25             THE COURT:  Fay-gan (phonetic), all right.  Okay.
```

```
 1              MS. FEGAN:  Thank you.

 2              THE COURT:  Elizabeth Fegan.

 3              MS. FEGAN:  Yes.

 4              THE COURT:  The Roberts Law Firm, U.S., Michael

 5    Roberts.

 6              (Mr. Roberts stands up.)

 7              THE COURT:  All right.  Okay.  So the plaintiffs'

 8    steering committee will then be tasked with appointing a

 9    liaison counsel from among its members to act as the primary

10    contact for communications and coordination with the

11    defendants' steering committee, with the plaintiffs'

12    subgroups, which I'll talk about here in just a moment, and

13    with the Court.

14              The liaison counsel should be appointed within

15    30 days of this order and included in the status report --

16    the next status report to the Court.

17              Now, as for the defendants' steering committee,

18    there are no surprises here that Mr. Buterman with United

19    Sugar Producers and Refiners Coop at Latham, and -- you're

20    the liaison, Mr. Buterman?

21              I guess I should say that and it not sound like a

22    question.

23              MR. BUTERMAN:  Understood, Your Honor.

24              THE COURT:  So ASR Group International, American

25    Sugar Refining, and you'll have to help me with this.  Is it
```

1    Georgie (phonetic)?

2              MR. PETKOSKI:  It's George (phonetic), Your Honor.

3              THE COURT:   Djordje.  And is it Pet-kos-kee

4    (phonetic)?

5              MR. PETKOSKI:  Pet-kos-kee (phonetic), perfect.

6              THE COURT:  Okay.  All right.  Mr. Petkoski.

7              Cargill, all right, and there's Kosta --

8              MR. STOJIKOVIC:  Stoy-yoke-a-vich (phonetic),

9    Your Honor.

10             THE COURT:  Kosta Stojilkovic.

11             And Michigan Sugar Company, and Vanessa Jacobsen.

12             All right.  So that's the defense group.

13             Now, for the plaintiffs' subgroup committees --

14   I'm telling this to you all now, but I will convert it into

15   an order.

16             The following firms are appointed to serve as

17   co-leads on the plaintiffs' subgroup committees representing

18   the direct purchaser plaintiffs, the indirect consumer

19   purchaser plaintiffs, and indirect commercial purchaser

20   plaintiffs.

21             So the first subgroup for direct purchaser

22   plaintiffs will be the Gustafson Gluek firm and the Roberts

23   Law Firm as co-lead for the direct purchaser plaintiffs.

24             For the indirect consumer purchaser plaintiffs:

25   Robins Kaplan, Lowey Dannenberg, and Fegan Scott.

1          And then for the indirect commercial purchaser

2     plaintiffs:  Lockridge Grindal, Freed Kanner, Larson King,

3     Cuneo Gilbert, Zimmerman Reed, and the Tostrud Law Group.

4          Now let me say a few words about how the subgroups

5     are expected to work with the plaintiffs' steering

6     committee, and this relates to the authority and oversight

7     structure for the plaintiffs' steering committee and

8     subgroup leadership.

9          So I want to ensure that the plaintiffs' steering

10    committee retains the ultimate authority and strategic

11    control over the litigation and that the subgroups don't

12    just take off and -- kind of on their own and have a weak

13    plaintiffs' steering committee and then it creates chaos and

14    disorder and it's not clear who the defendants should be

15    dealing with and, as well, the various subgroups start to

16    work in cross-purposes and it becomes confusing.  So I want

17    the ultimate authority and the strategic control to remain

18    in the plaintiffs' steering committee, which will be the

19    central authority.  And the plaintiffs' steering committee

20    will have authority over all decisions affecting litigation

21    strategy, settlement negotiations, and interactions with

22    the -- the defendant steering committee.

23         The subgroup co-leads will provide advisory

24    support specific to their plaintiff's interest, but must

25    defer to the plaintiffs' steering committee on all major

1    decisions.  So the subgroup co-leads in general then may

2    manage routine activity for their respective plaintiff

3    classes, including subgroup-specific discovery and

4    communications with clients and law firms within the

5    subgroup.

6              The subgroups should organize themselves and may

7    appoint whatever the roles and/or committees as they feel

8    appropriate to achieve their purposes.  But -- and this is

9    with a capital B -- the subgroups are required to have the

10   approval of the plaintiffs' steering committee for all major

11   strategic decisions, including, but not limited to,

12   settlement proposals, dispositive motions, and expert

13   witness selection.

14             The plaintiffs' steering committee liaison counsel

15   will be responsible for coordinating all subgroup activities

16   and ensuring effective communications between both the

17   plaintiffs' group, the plaintiffs' subgroups, the defense

18   steering committee, and the Court.  And I'll ask at each

19   status hearing from the liaison counsel for an update from

20   the liaison counsel.  And I just want to make sure that the

21   various subgroups remain aligned and that there are no

22   issues there and to try to monitor that.

23             There will need to be a common benefit fund

24   established to compensate those who work for the benefit of

25   the MDL on the plaintiffs' side, and I'm going to solicit

 1    the input from the plaintiffs' steering committee to confer

 2    with counsel representing the various plaintiff classes.

 3    And I want to hear from you on the percentage of assessment

 4    on recoveries to be allocated to the common benefit fund.

 5    And I'll hear from you before I decide what that is.  And I

 6    will oversee the common benefit fund and approve all the

 7    payments to counsel for common benefit work.

 8            And having said that, to the extent we're talking

 9    about the time and expense, there will be a requirement for

10    reporting, as some of you are used to from other litigation,

11    that I'll ask on a quarterly basis for reports for the work

12    that's been performed that might be subject to the common

13    benefit fund where it commonly benefits all the plaintiffs,

14    and I will specify what should be in that report.

15            So I may ultimately -- I haven't decided yet, but

16    I may ultimately appoint a -- either a fee committee or even

17    a special master to review and recommend appropriate

18    compensation for all the submitted time and expenses.

19    That's down the road a little bit for me.  But it's in the

20    back of my mind in thinking about what to do and just

21    haven't decided yet.

22            So I will reserve the right to review and approve

23    all appointments made by the plaintiffs' steering committee

24    and/or the defense, which you are free also to create any

25    specialized roles.  And I certainly encourage you to create

1    any roles that will make more room for junior attorney

2    participation in this, and each steering committee is free

3    to do that, but I want to make sure that everything remains

4    aligned so that the litigation just remains efficient and

5    fairly managed.  But I do encourage you to create spaces

6    that -- where junior attorneys, less experienced attorneys,

7    can have roles that actually sometimes brings them up to the

8    podium.

9            You know, I sometimes have hearings on issues that

10   I might otherwise decide on the papers but I will kind of

11   have oral argument but only if a junior lawyer can argue it.

12   And it's fine then to have one of the more senior ones

13   shadow them if need be, but it's hard nowadays for the more

14   junior lawyers to get on their feet, to have an opportunity

15   to present in a court.  And I want to encourage that when

16   and where I can.

17           So in terms of the duties and responsibilities of

18   plaintiffs' and defendants' steering committees, that's been

19   set forth in an earlier PTO, and I don't think there's

20   anything earth-shattering in it.  It's what you all know

21   from having done this before in terms of what you do.  But

22   you'll see that again referenced in the order when I submit

23   the order.

24           So all of the appointments, again, are for one

25   year.  And each firm on the steering committees, on the

1    plaintiffs' steering committee and defense steering

2    committee, will reapply annually to ensure your continued

3    dedication, alignment with litigation needs, and adherence

4    to any standards set by the Court.

5           So I will stop there and allow each side to either

6    comment or let me know if you have questions.

7           MR. GUSTAFSON:  Would you like me to start, Judge?

8           THE COURT:  Please.

9           MR. GUSTAFSON:  Thank you for that.

10          Again, for the record, Dan Gustafson on behalf of

11   Northern Frozen Foods and the plaintiffs.  We understand

12   your order.  We'll look for it in writing.

13          There were a couple things that I thought should

14   be added to PTO Number 3 in your list of duties.  It should

15   have a provision about selecting and retaining experts, in

16   my view.  It should have a provision of the ability to

17   assess other counsel to pay for those common expenses.

18          You reference common benefit fees and expenses,

19   but this is a situation in which money is going to have to

20   be advanced by the plaintiffs' bar to pay for experts before

21   there's a fund for which to pay those expenses.  And as you

22   know, we normally do that by assessing each firm that's

23   involved and we put that money in an escrow account and we

24   use it to pay experts.  We're happy to have you oversee that

25   or be privy to the payments that are made, but the power to

1    assess those counsel should be included in them.

2              I think this is implied of course, but the power

3    to make decisions, strategy decisions about the consolidated

4    complaint should probably be in there.  By the way, Judge, I

5    understand you have a catchall provision in that order that

6    says all the power necessary to do the job you're supposed

7    to do, and so maybe that covers all of this, but those are

8    things that you might want to consider adding.

9              THE COURT:  And what I'm thinking too,

10   Mr. Gustafson, is that I may well push the order out kind of

11   as is, and I may ask you to speak with the other members of

12   the PSC and just send a proposal to the Court and I will

13   amend it.

14             MR. GUSTAFSON:  Yeah, all right.  That would be

15   great, Judge, I think because -- because I do think there

16   are some things.

17             The last thing I was going to say was, I fully

18   expect to try this case if you don't grant summary judgment

19   for the plaintiffs and order that we don't need a trial and

20   the defendants should just pay.  But I think there might be

21   a reference -- should maybe be a reference to trial,

22   selecting trial counsel, things like that, in the power of

23   the PSC.

24             So those were the things that I would add or

25   suggest that get added.

1          THE COURT:  No.  Thank you.

2          And, again, what I'll do is I think I will leave

3     the door open for both the PSC and the DSC, to the extent

4     you think there are other things that will be added, to

5     submit and propose those to the Court kind of afterward and

6     I will take them up.

7          MR. GUSTAFSON:  Perfect.  Perfect.

8          THE COURT:  That way I don't hold up the show

9     because I'd like to otherwise get this -- get the ball

10    rolling.

11         MR. GUSTAFSON:  Yeah.  As I understood your order,

12    you want the PSC to select liaison counsel.

13         THE COURT:  Mm-hmm.

14         MR. GUSTAFSON:  And I think that's fine.  Then we

15    will get that to you promptly.  We could do it yet this week

16    or we could do it yet today probably.  I don't think it will

17    be hard to make that selection.

18         But I was just going to suggest that you make that

19    liaison person the chair of the PSC for the sole purpose of

20    getting meetings together and all the rest of it.  It's

21    always good to have somebody in charge of scheduling --

22         THE COURT:  Are you concerned that the -- because

23    the PSC can organize itself --

24         MR. GUSTAFSON:  Yeah.

25         THE COURT:  -- and designate whomever as chair.

1          You're concerned that if I don't do it, you won't

2     agree on it?

3          MR. GUSTAFSON:  No, we'll agree on it for sure.

4     We just want to -- we just want to make sure you're aware of

5     it.

6          THE COURT:  Yeah, you know, you have that

7     authority to do that.

8          MR. GUSTAFSON:  Yeah, okay.

9          The last thing I would say to you, Judge, is the

10    PSC has people from each track, and your comments about the

11    subgroups working at the behest of the PSC I understand and

12    agree with.  But we need to make sure that like me, as

13    counsel for the direct purchasers, doesn't overrule

14    something the consumers are doing, because there's going to

15    be situations in which the consumers make choices that I

16    wouldn't necessarily make as a direct purchaser.  And so we

17    just need to be cognizant of that in how we frame the order

18    and you giving us a chance to suggest some wording on that

19    will be helpful.

20         THE COURT:  No.  That's fine.  And thank you for

21    bringing that up too, because I don't mean to suggest that

22    to the extent there are areas where there isn't an

23    agreement, that it can't be brought to the Court, you know,

24    when all is said and done.  Because I will take them up at

25    the status conference or in between as well if you reach a

1    point where you all aren't of one mind and there simply has

2    to be a call made, then --

3              MR. GUSTAFSON:  Certainly.

4              Let me just say on that issue, Judge, I think I

5    know every single lawyer in this room.  That's a privilege

6    of being older.  And this group will work together.  We have

7    a common goal to represent our clients for the benefit of --

8    of winning the case, and I think that those kinds of

9    disagreements that you just described will be very few, if

10   any, ever in the case because we've done this for a long

11   time and we know how to work those things out.  But we

12   always have to guard against the potential conflicts that

13   arise when you have different groups that have slightly

14   different requirements and things like that, so...

15             THE COURT:  And for that matter, I understand that

16   the structure that I am constructing now works for the

17   litigation at this phase.  That I'm looking forward to the

18   discovery and working through the expert stuff.  I'm not

19   sure that this doesn't in some ways evolve as the case

20   matures.  And so I think we just kind of start and then we

21   see kind of how well it fits.

22             MR. GUSTAFSON:  Very well.  That's all the

23   comments I have, Your Honor.  Thank you.

24             THE COURT:  All right.  Thank you, Mr. Gustafson.

25             Mr. Buterman.

1              MR. BUTERMAN:  Thank you, Your Honor.

2              The only comment the defendants have is with

3     respect to discovery, and we understand Your Honor's ruling

4     that discovery will proceed.

5              We would -- we certainly believe that there are

6     things like the ESI protocol, the protective order that

7     irrespective of what's in the consolidated amended

8     complaints we would need to get going on and we certainly

9     will work with the plaintiffs on that.

10             With respect to substantive discovery, we would

11    request that at a minimum we see what's in the amended

12    complaints before we start getting discovery requests.  As I

13    mentioned at the last conference, for instance, Your Honor,

14    my client, United, hasn't even spoken to Mr. Wistisen in two

15    years.  So if I start getting discovery for -- you know, for

16    communications and doing searches for --

17             THE COURT:  And, Mr. Buterman, just to be clear,

18    and I probably wasn't -- no, I wasn't.  Not probably, I

19    wasn't clear -- is that the discovery would commence as of

20    the time you have the complaint at least.

21             MR. BUTERMAN:  Okay.

22             THE COURT:  Because you're not going to be

23    answering discovery completely in the dark.  It's

24    potentially relevant to what if you don't have the

25    complaint?

1          MR. BUTERMAN:  That -- thank you, Your Honor.

2    Okay.  Thank you.

3          THE COURT:  So we'll certainly do that.

4          MR. BUTERMAN:  Thank you.

5          THE COURT:  Mr. Gustafson.

6          MR. GUSTAFSON:  We agree with that, Judge.

7          THE COURT:  Well, that makes it right.

8          (Laughter)

9          THE COURT:  All right.  Let me see.  There are, I

10   think, a number of motions that are pending yet that have to

11   do with consolidating complaints and other things.  I'm

12   going to let those sit for a minute, but I'm probably going

13   to clear those up at our next status hearing and most will

14   go away as moot, I think, since they are more or less asking

15   for what I'm doing now.

16         Does anyone have anything else that we need to

17   take up this afternoon?  Mr. Gustafson?

18         MR. GUSTAFSON:  Your Honor, real quickly.

19         I do think you could dismiss all the pending

20   motions as moot based on what you did today.  And if we have

21   anything we need to file, we'll file it.  We do know how to

22   do that.

23         The one thing I wanted to make sure that I --

24         THE COURT:  Let me stop first and see if anybody

25   here disagrees with you on that score.

1              Mr. Buterman, do you care?

2              MR. BUTERMAN:  We certainly have no position on

3    that, Your Honor.

4              THE COURT:  All right.  All right.  Then that's

5    what I'll do, not hearing any objections to that.

6              MR. GUSTAFSON:  Your Honor, I want to make clear,

7    and I think I understood your order to include this, but I

8    want to make clear that the PSC has the authority to employ

9    lawyers who are not on the PSC or not on the subgroup to

10   work.  You mentioned younger lawyers.  We all endeavor to do

11   that.  We think that's great that you are supportive of

12   that.

13             We will talk to your court folks when motions come

14   up and tell them when we have young lawyers coming up so

15   that you can help make decisions about oral argument.  But

16   there will be people who are not named to one of those

17   leadership spots who will work on these cases and ultimately

18   will submit time for reimbursement.

19             THE COURT:  And that's expected actually too.  And

20   there will be rules of reason, and at some point of course

21   I'll want to know who and what -- what they are doing on the

22   case.  But the plaintiffs' steering committee is meant to be

23   that, a committee that steers.  You're able to appoint

24   others to do things.  You're able to create committees, et

25   cetera.  And what I hope to do each month is be able to

1    check in on what's kind of happening where and thinking that

2    surprises aren't in the best interests of the Court or you.

3            But I do understand there will be others that will

4    be employed in different roles, and I didn't put more on the

5    steering committee because I thought it would be unwieldy to

6    get things done.  But I thought there were many others in

7    here who were qualified to have been on it.

8            MR. GUSTAFSON:  Thank you, Your Honor.

9            As to the status conferences, we are -- we are

10   happy to meet and confer.  We're happy to come to the

11   courthouse and meet and confer.  I think you'll find that

12   we're going to work out far more disputes than you're used

13   to, or maybe not used to, but we're going to work out a lot

14   of disputes.

15           This group of defense lawyers are professionals.

16   This group of plaintiffs' lawyers have been around a long

17   time.  And we're going to work out most of the disputes that

18   we have.  And when we -- when we do have disputes, we're

19   going to be able to brief them up clearly and discretely so

20   that you can -- you or Magistrate Judge Schultz can rule on

21   them.  And so, happy to come here and have those meet and

22   confers, but they will occur before we get here for sure.

23   We are not letter writers by nature.

24           THE COURT:  Yeah, we'll just see how it all

25   evolves, you know.

 1              MR. GUSTAFSON:  Yes.

 2              THE COURT:  And I'm hoping that you are right.  I

 3     think the start of every litigation begins with statements

 4     just like that.

 5              (Laughter)

 6              THE COURT:  And --

 7              MR. GUSTAFSON:  I'm looking forward to the

 8     opportunity to show you that it's true.

 9              (Laughter)

10              THE COURT:  And I had certainly many a case where

11     the joint status letters were supposed to go in and, you

12     know, we can't seem to get our part in until late in the

13     day, and then they don't want to submit exactly what you

14     said.  So there's a lot of what I call kind of pitty pat

15     stuff that can happen in litigation that I want to keep

16     down.

17              And I say, I hope it's not necessary.  And I don't

18     mean to suggest that all your issues will be simple ones

19     that you could resolve just by discussing.  You're going to

20     have hard things to work through, and there's going to be a

21     lot of it if all the discovery is kind of happening at once.

22              And so I just want to create maximum opportunity

23     for you to get in the room and discuss and then to have the

24     Court there to make rulings kind of on the spot even and the

25     day before to keep the ball rolling and to keep it moving.

1    And it will help to keep the, I think, relationships

2    collegial too.  If calls just get made, there's no point

3    then giving any more thunder to an issue when the Court's

4    already decided it.

5              MR. GUSTAFSON:  Agreed.

6              Two more things, Judge.  I wouldn't mind it a bit

7    if you put a 5:00 p.m. deadline for filings on the day

8    things are due.  I think electronic filing has been a great

9    addition, and it has allowed us to work remotely and do all

10   sorts of things, but having people file things at 11:35 or

11   11:55 p.m. has never been good for anyone's work-life

12   balance.  So if you want to put that 5:00 p.m. deadline in,

13   just like when the courthouse had to have the paper, we'd be

14   good with that.

15             The last thing I would say, Judge, is that the

16   November 25th conference, it just doesn't -- I talked with

17   Mr. Buterman before the conference.  We just don't see

18   anything there because the consolidated complaint is not

19   going to be done yet.  It's 40 days from the order, which

20   even if you put it today, it's not going to be then.  So we

21   think it would probably be better off to put that one off.

22             But, again, you're the Judge, so if you want to

23   see us, we're happy to come in.

24             THE COURT:  And I'm -- I always want to see you.

25             So why don't we just see kind of what evolves and

1    you'll no doubt give me a status report, and I may pull it

2    if there's no reason to meet.  I don't --

3            MR. GUSTAFSON:  Yeah, just to think about, Judge.

4    It might be more useful to have something around, you know,

5    the 12th or 15th of December, somewhere in there, after the

6    consolidated complaint has been filed and we're off and

7    running, because then we can avoid all the holidays and be

8    ready to see you and talk about what's -- what the issues

9    are.  Thank you, Your Honor.

10           THE COURT:  I hear you, and I will take it under

11   advisement.

12           MR. GUSTAFSON:  Thank you.

13           THE COURT:  Does anyone have anything else then?

14           Mr. Buterman?

15           MR. BUTERMAN:  Thank you, Your Honor.

16           Just that we did confer, and I think that we

17   certainly will work together to put in a status conference

18   letter and with maybe a recommendation to Your Honor, if

19   Your Honor's willing to accept it, as to whether there's a

20   need for the conference coming up on the 25th.

21           THE COURT:  On the 25th.  And, Mr. Buterman, that,

22   to me, will apply to any of the conferences, frankly.  I put

23   them in here as plug dates so that we know what to expect,

24   but if you can already see well ahead of time there won't be

25   a need for this one or that one, at least let me know that's

```
 1     your perspective and I will take it under advisement.
 2              MR. BUTERMAN:  Thank you, Your Honor.
 3              And then while I appreciate the work-life balance
 4     issue, for the defendants, we have people all across the
 5     United States.  We would respectfully request that the
 6     normal deadlines apply and so that it would be the day of.
 7     Even if that is 11:59, that will fall on us.
 8              THE COURT:  All right.  So I've heard
 9     Mr. Gustafson and I've heard you.
10              MR. BUTERMAN:  Thank you.
11              THE COURT:  And will take it under advisement.
12              So, now, is there anything further?
13              MR. GUSTAFSON:  Nothing further from plaintiffs,
14     Your Honor.
15              MR. BUTERMAN:  Nor from the defendants,
16     Your Honor.
17              THE COURT:  All right.  Thank you all.  Good to
18     see you, and we'll stand adjourned.
19              MR. GUSTAFSON:  Thank you, Your Honor.
20          (Court adjourned at 1:55 p.m.)
21                        *      *      *
22
23
24
25
```

1

2            I, Erin D. Drost, certify that the foregoing is a

3    correct transcript from the record of proceedings in the

4    above-entitled matter to the best of my ability.

5

6                      Certified by:  *s/ Erin D. Drost*

7                                     Erin D. Drost, RMR-CRR

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25