# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| **IN RE: GRANULATED SUGAR ANTITRUST LITIGATION** | **MDL No. 24-3110 (JWB/DTS)** |
| | **CONSUMER INDIRECT PURCHASER PLAINTIFFS' SHORT FORM COMPLAINT** |
| | **CLASS ACTION JURY TRIAL DEMANDED** |

This Document Relates to:

CONSUMER INDIRECT PURCHASER ACTIONS

Member Case Docket Numbers:

*Annis, et al.* (0:24-cv-02937)
*Borge, et al.* (0:24-cv-02654)
*Cervellino, et al.* (0:24-cv-02652)
*Edlin* (0:24-cv-02341)
*Golden* (0:24-cv-01129)
*Humphreys* (0:24-cv-02342)
*Johnson* (0:24-cv-02973)
*Kluessendorf* (0:24-cv-01913)
*Kurtz* (0:24-cv-02348)
*Marek, et al.* (0:24-cv-02343)
*Olivares, et al.* (0:24-cv-03648)
*Reilly, et al.* (0:24-cv-03250)
*Salazer, et al.* (0:24-cv-01847)
*Sathler* (0:24-cv-03313)
*Sunseri, et al.* (0:24-cv-03646)
*Ulery* (0:24-cv-02480)
*Veneziano* (0:24-cv-02933)

# TABLE OF CONTENTS

I.      INTRODUCTION .................................................................................................. 1

II.     CONSUMER PLAINTIFFS ................................................................................. 5

III.    CLASS ACTION ALLEGATIONS ..................................................................... 6

IV.     CONSUMER PLAINTIFFS' STATE-SPECIFIC CLAIMS FOR RELIEF ....... 11

        COUNT III: STATE ANTITRUST STATUTES ................................................ 11

        COUNT IV: STATE CONSUMER PROTECTION STATUTES ..................... 17

        COUNT V: STATE COMMON LAW UNJUST ENRICHMENT AND
                RESTITUTION ......................................................................................... 21

V.      PRAYER FOR RELIEF ...................................................................................... 25

VI.     DEMAND FOR JURY TRIAL .......................................................................... 27

## I.    INTRODUCTION

1.    Consumer Indirect Purchaser Plaintiffs ("Consumer Plaintiffs"), on behalf of themselves and all others similarly situated (the "Class" or "Class Members"), bring this action against Defendants for their unlawful price fixing and information sharing conspiracy, and overt acts in furtherance thereof, during the Class Period.

2.    Defendants have conspired with the purpose and effect of artificially inflating the price of Granulated Sugar in the United States.

3.    The conspiracy has resulted in artificially increased supra-competitive prices of Granulated Sugar at the retail level. During the Class Period, the retail prices of Granulated Sugar have increased at a rate far greater than the rate of general inflation and far greater than any increase in production or input costs. In some instances, retail prices of Defendants' Granulated Sugar products have increased by 100%.

4.    Consumer Plaintiffs and Class Members indirectly purchased Granulated Sugar for end use, and not for resale, at retail, such as at the grocery store, at artificially high prices. As end users, Consumer Plaintiffs have borne the brunt of Defendants' anticompetitive price increases. These price increases have been passed on directly or through a chain of distribution to retailers, such as grocers, supermarkets, or online sellers, where Consumer Plaintiffs have purchased and paid more for Granulated Sugar than they would have paid in a competitive market absent Defendants' violations of law. Defendants' conspiracy thus directly, proximately, and materially caused Consumer Plaintiffs and Class Members to suffer injury-in-fact, injury to their business or property, and actual damages. The agreement, conspiracy, and overt acts in furtherance thereof, have unjustly enriched

Defendants at the expense of Consumer Plaintiffs and Class Members.

   5.    The following shows the dramatic increases in the retail price of Granulated

Sugar in U.S. cities on a per pound basis:



   6.    On December 9, 2024, Consumer Plaintiffs filed and served a Consolidated

Class Action Complaint, alleging violations of federal and state law against Defendants.

(ECF No. 292).

   7.    On January 28, 2025, the Court entered Pretrial Order No. 7 ("PTO 7") (ECF

No. 315), by which the Court ordered that Consumer Plaintiffs, with two other classes of

Plaintiffs in this MDL, namely Direct Purchaser Plaintiffs ("DPPs") and Commercial

Indirect Purchaser Plaintiffs ("CIPPs"), jointly file and serve one Master Consolidated Complaint, which would plead common allegations and claims, and that each of the three classes also file and serve class-specific Short-Form Complaints, which would make class-specific allegations and claims.

8.      As directed by the Court in PTO 7, Consumer Plaintiffs, jointly with Direct Purchaser Plaintiffs and Commercial Indirect Purchaser Plaintiffs, have filed and served a Master Consolidated Complaint ("MCC") (ECF No. 332). Consumer Plaintiffs allege factual allegations common to the three classes and two common causes of action in Counts I & II of the MCC, alleging that Defendants have violated federal antitrust law, specifically Section 1 of the Sherman Act, 15 U.S.C. §§ 1 & 3, for price fixing (Count I) and for unlawful information exchange (Count II); for those violations Consumer Plaintiffs seek injunctive relief under Section 16 of the Clayton Act, 15 U.S.C. § 26 (MCC, ¶¶ 235, 244).

9.      Consumer Plaintiffs file this Short Form Complaint ("CSFC") under PTO 7 in support of their class-specific claims and the class-specific relief they seek. As set forth below and in the appendices filed herewith, Consumer Plaintiffs assert claims under (1) state antitrust laws; (2) state consumer protection laws; and (3) state unjust enrichment laws. Consumer Plaintiffs assert claims for money damages under the statutory state antitrust and consumer protection claims they assert, and seek equitable relief, primarily for disgorgement and restitution, for unjust enrichment under state common law.

10.     As called for by PTO 7, Consumer Plaintiffs attach three appendices hereto, identifying Consumer Plaintiffs, relevant state statutory laws, state-based allegations for state antitrust and consumer protection claims, and relief sought, all in chart format:

    a. **Appendix A** identifies each Consumer Plaintiff and sets forth in chart form each of their respective states of residence, states of purchase, and brands purchased;

    b. **Appendix B** sets forth each state-based antitrust claim, including state statute, type of claim, state-specific allegations, and relief sought; and

    c. **Appendix C** identifies each state-based consumer protection claim, including state statute, type of claim, state-specific allegations, and relief sought.

11.    Appendices A through C are filed herewith and incorporated herein as allegations of this CSFC.

12.    Part II of this CSFC identifies Consumer Plaintiffs, including by incorporating Appendix A.

13.    Part III defines the proposed Class and three subclasses of Consumer Plaintiffs. The "Nationwide Class" adopts Counts I & II of the MCC for violations of federal antitrust laws as alleged therein. The Nationwide Class is divided into three subclasses, corresponding to the three types of state law causes of action pled: (1) a "Multistate Antitrust Subclass;" (2) a "Multistate Consumer Protection Subclass;" and (3) a "Multistate Restitution Subclass" (collectively, the "Subclasses"). The Nationwide Class and each of the Subclasses are defined below.

14.    Part IV alleges Consumer Plaintiffs' state-based causes of action in three additional Counts, including by incorporating Appendices B and C. Count III pleads violations of state antitrust laws. Count IV pleads violations of state consumer protection laws. Count V pleads unjust enrichment and restitution.

15.    In accordance with PTO 7, Consumer Plaintiffs adopt by reference the

Master Consolidated Complaint (ECF No. 332), and hereby incorporate by reference all allegations in the MCC as though fully set forth herein. Plaintiffs also incorporate by reference all allegations in the Consumer Plaintiffs' Consolidated Complaint, (ECF No. 292) ("CPCC"), as though fully set forth herein. However, to the extent that the allegations of this Short Form Complaint conflict with the MCC and/or the CPCC, the pleadings should be construed such that this CSFC supersedes and controls.

## II.    CONSUMER PLAINTIFFS

16.    Each Consumer Plaintiff is a resident of the United States and indirectly purchased Granulated Sugar for end use and not for resale during the Class Period.

17.    Defendants' unlawful agreement, conspiracy, and overt acts in furtherance thereof are and were a direct, proximate, and material cause of each Consumer Plaintiff's payment(s) of supra-competitive prices at retail for Granulated Sugar. As a result, each Consumer Plaintiff suffered injury-in-fact, injury in their business or property, and actual damages.

18.    Each Consumer Plaintiff is also threatened with future injury to their business or property by reason of Defendants' continuing violations of law, absent Court intervention.

19.    Each Consumer Plaintiff resided in or purchased Granulated Sugar in a State that has been held to recognize antitrust, consumer protection, and/or unjust enrichment claims for indirect purchasers.

20.    Each Consumer Plaintiff and their respective states of residence, states of purchase, and brands of purchase are identified in Appendix A, hereto, and incorporated

5

herein by reference, in accordance with PTO 7.

## III.    CLASS ACTION ALLEGATIONS

21.    Consumer Plaintiffs repeat and reassert each of the preceding allegations as if fully set forth herein.

22.    Consumer Plaintiffs bring this action on behalf of themselves, and as a class action under the Federal Rules of Civil Procedure, Rule 23(a) and (b)(2), seeking injunctive relief under Section 16 of the Clayton Antitrust Act on behalf of a consumer indirect purchaser end-user class, the "Nationwide Class," as follows:

> **Nationwide Class:** All persons that indirectly purchased Granulated Sugar at retail for end use and not for resale in the United States during the Class Period.

23.    Consumer Plaintiffs also bring this action on behalf of themselves, and as a class action under the Federal Rules of Civil Procedure, Rule 23(a) and (b)(3), seeking damages and other relief pursuant to certain state antitrust statutes, state consumer protection statutes, and for common law unjust enrichment on behalf of the following three proposed multistate consumer indirect purchaser subclasses of the Nationwide Class: the (1) "Multistate Antitrust Subclass," (2) "Multistate Consumer Protection Subclass," and (3) "Multistate Restitution Subclass" (collectively the "Multistate Subclasses"), respectively, as follows:

**Multistate Antitrust Subclass:** All persons that indirectly purchased Granulated Sugar at retail for end use and not for resale in or while residing in one of the Repealer States during the Class Period.

**Multistate Consumer Protection Subclass:** All persons that indirectly purchased Granulated Sugar at retail for end use and not for resale in or while residing in one of the Consumer Protection States during the Class Period.

**Multistate Restitution Subclass:** All persons that indirectly purchased Granulated Sugar at retail for end use and not for resale in or while residing in a Restitution State during the Class Period.

24.    The "Repealer States" consist of: Alabama, Arizona, California, Colorado, Connecticut, Delaware, District of Columbia, Hawaii, Illinois, Iowa, Kansas, Maine, Maryland, Michigan, Minnesota, Nebraska, Nevada, New Hampshire, New Jersey, New Mexico, New York, North Carolina, North Dakota, Oregon, Rhode Island, South Dakota, Tennessee, Utah, Vermont, West Virginia, and Wisconsin.

25.    The "Consumer Protection States" consist of Alaska, Arkansas, California, Connecticut, District of Columbia, Florida, Hawaii, Illinois, Massachusetts, Minnesota, Missouri, Montana, Nebraska, Nevada, New Hampshire, New Jersey, New Mexico, New York, North Carolina, Oregon, Pennsylvania, Rhode Island, South Carolina, Utah, Vermont, and Wisconsin.

26.    The "Restitution States" consist of all States in the United States and the District of Columbia, excluding Indiana and Ohio.

27.    Defendants' violations of law were in or had a substantial effect on the residents of, purchasers in, and intrastate commerce of the Repealer States, the Consumer

Protection States, and the Restitution States.

28.     The "Class Period" is the period from at least as early as January 1, 2019, through the date by which the anticompetitive effects of Defendants' violations of law shall have ceased, but in any case, no earlier than the present.

29.     "Defendant," as set forth in the definitions above, includes any current or former owner, parent, subsidiary, or affiliate or co-conspirator thereof.

30.     The following persons are excluded from the proposed Class and Subclasses: Any officers, directors, managers, or employees of the Defendants, any current or former owner, parent, subsidiary, or affiliate of a Defendant, or any co-conspirator of the Defendants; and the Court and any of its Staff.

31.     The Class and Subclasses readily satisfy the elements called for by Rule 23(a)(2), as well as Rule 23(b)(2) and (b)(3).

32.     **Numerosity.**  The members of the Class and Subclasses are so numerous and geographically dispersed that joinder is impracticable. Millions of consumers purchased Granulated Sugar in the United States during the Class Period.

33.     **Typicality.**  Consumer Plaintiffs' claims are typical of the claims of the Class Members. Consumer Plaintiffs and the Class Members were damaged by the same conspiracy of Defendants and make the same and similar claims for relief.

34.     **Commonality.** Although only one common question of fact or law is required, numerous questions of law and fact common to Class Members include, but are not limited to:

a.   Whether Defendants engaged in a combination or conspiracy among

themselves to fix, raise, maintain, or stabilize the prices of Granulated Sugar in the United States;

b.  Whether Defendants agreed to unreasonably restrain trade in violation of federal antitrust laws;

c.  Whether Defendants engaged in an unlawful information exchange;

d.  The scope and duration of the alleged conspiracy;

e.  The effect of the alleged conspiracy on the price of Granulated Sugar during the Class Period;

f.  The injury suffered by Consumer Plaintiffs and Class Members;

g.  Aggregate damages suffered by Consumer Plaintiffs and Class Members;

h.  The extent to which Defendants were unjustly enriched; and

i.  Whether Defendants acted or refused to act on grounds generally applicable to Consumer Plaintiffs and Class Members, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to Class Members as a whole.

35.  **Adequacy.** Consumer Plaintiffs will fairly and adequately protect and represent the interests of Class Members. The interests of the Consumer Plaintiffs are coincident with, and not antagonistic to, those of Class Members.

36.  Consumer Plaintiffs are represented by counsel with substantial experience and success in the prosecution and leadership of antitrust class actions and other complex litigation, including class actions involving agricultural food staple products and other commodities, indirect purchaser cases, and consumer protection litigation.

37.  **Predominance.** Questions of law and fact common to the members of the Subclasses predominate over individualized questions, if any, that may affect only individual members. The common questions of law and fact set forth above will

9

predominate at trial. No individual issues could or would overwhelm these common issues. As defined, all members of the Subclasses suffered common impact as they were injured by the same unlawful conspiracy and unlawful acts in furtherance thereof. Consumer Plaintiffs are aware of no uninjured members of the Subclasses. Apportionment of aggregate damages is not an individualized issue that can defeat predominance as a matter of law.

38.    **Superiority.** Class action treatment is a superior method for the fair and efficient adjudication of the controversy. Such treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of evidence, effort, or expense that numerous individual actions would require.

39.    The benefits of proceeding through the class mechanism, including providing injured persons or entities a method for obtaining redress on claims that could not practicably be pursued individually, substantially outweigh any potential difficulties in management of this class action.

40.    The Class's definition provides clear, objective criteria understood by Class Members and Defendants.

41.    Consumer Plaintiffs have defined Class Members based on currently available information. Subject to additional information obtained through further investigation and discovery, Consumer Plaintiffs hereby expressly reserve the right to amend the class definition or to define additional classes or subclasses of the Nationwide Class, including, without limitation, to amend the Class Period.

## IV.    CONSUMER PLAINTIFFS' STATE-SPECIFIC CLAIMS FOR RELIEF

42.    Consumer Plaintiffs repeat and reassert each of the preceding allegations as if fully set forth herein.

43.    In the MCC, Consumer Plaintiffs jointly plead with DPPs and CIPPs Counts I & II, alleging that Defendants have violated federal antitrust law, specifically Sections 1 & 3 of the Sherman Act, 15 U.S.C. §§ 1 & 3, for price fixing (Count I) and for unlawful information exchange (Count II), and for those violations Consumer Plaintiffs and the Nationwide Class seek injunctive relief under Section 16 of the Clayton Act, 15 U.S.C. § 26. (MCC, ¶¶ 235, 244).

44.    Counts III and IV, below, plead class-specific claims for money damages and other relief against Defendants for violations of state antitrust and state consumer protection statutes by Consumer Plaintiffs and the Multistate Antitrust and Consumer Protection Subclasses, respectively. Count V, below, plead class-specific claims for common law unjust enrichment for disgorgement and restitution by Consumer Plaintiffs and the Multistate Restitution Subclass.

## COUNT III: STATE ANTITRUST STATUTES

### On Behalf of Consumer Plaintiffs and the Multistate Antitrust Subclass

45.    Consumer Plaintiffs repeat and reassert each of the preceding allegations as if fully set forth herein.

46.    During the Class Period, ASR/Domino directly sold and delivered sugar to customers in at least all forty-eight states in the contiguous United States.

47.    During the Class Period, United directly sold and delivered sugar to

11

customers in at least forty-four states.

48.    During the Class Period, Michigan directly sold and delivered sugar to customers in at least seven states.

49.    The United States sugar supply chain is deliberately configured to withstand shocks, particularly from weather.

50.    The state antitrust laws pled herein allow for indirect purchaser plaintiffs to recover money damages for violations of the state antitrust laws, which are co-extensive with Section 1 of the Sherman Act.

51.    The violations of the Sherman Act pled in Counts I & II of the MCC, for price fixing and information sharing, constitute violations of the state antitrust laws pled herein, all of which outlaw agreements and conspiracies in restraint of trade, look to federal law for guidance in interpreting antitrust law, and allow for indirect purchaser plaintiffs to recover money damages and other relief, despite such relief being unavailable to indirect purchasers under the federal antitrust laws.

52.    Defendants have conspired with the purpose and effect of artificially inflating the price of Granulated Sugar in the United States. Defendants' unlawful conduct resulted in artificially inflated retail prices for Granulated Sugar during the Class Period. During the Class Period, the retail prices of Granulated Sugar have increased at a rate far greater than the rate of general inflation. Defendants' unlawful conduct directly, proximately, and materially caused retail prices of Granulated Sugar to increase to supra-competitive levels at the retail level during the Class Period.

53.    Consumer Plaintiffs and Class Members indirectly purchased Granulated

Sugar for end use and not for resale at artificially high prices at retail. As end users, Consumer Plaintiffs have borne the brunt of Defendants' anticompetitive pricing, which have been passed on through a chain of distribution to retailers, such as grocers, supermarkets, pharmacies, office supply stores, or online stores, where Consumer Plaintiffs have purchased and paid more for Granulated Sugar than they would have paid in a competitive market absent Defendants' violations of law.

54.    As a matter of economics, pass-through occurs at each stage of the manufacturing and distribution process. When a firm's costs increase due to an overcharge or increasing raw materials costs, the firm will tend to pass through the cost increase by raising its price so as to prevent losses. Similarly, when a firm's costs decrease, the firm will tend to pass through the cost decrease by lowering its price to meet its competition. When distributors pay a higher price, their prices increase as well. This process continues throughout the entire distribution chain.

55.    Granulated Sugar prices increased as much as 100% during the Class Period. For instance, Defendants' widely purchased four-pound bags of sugar sold at supermarkets and other retailers has doubled. By way of example, in 2020, the price of a four-pound bag of Domino brand Granulated Sugar was $2.49 at Target. By 2022, the price of the same four-pound bag of Granulated Sugar was $3.49 at Target, a 40% increase in two years. By 2024, the price for the same Domino four-pound bag of Granulated Sugar doubled from its 2020 price to $4.99 at Target.

56.    Similarly, the price of C&H brand Granulated Sugar was $2.49 for a four-pound bag at Target in 2020. The same C&H four-pound bag is now priced at $4.99, as of

March 2025. Other brand-name Granulated Sugar, including Michigan Sugar's Pioneer and United's Crystal, have seen similar price increases during the Class Period and are similarly priced at artificially high levels.

57.    Consumers also have faced artificially increased pricing with respect to private label Granulated Sugar, most of which is manufactured by the Producer Defendants. By way of example, the price of Target's Good & Gather private-label brand Granulated Sugar has increased 90% from $1.99 in June 2021 to $3.79 in March 2025 for a four-pound bag.

58.    Overall, the average consumer price for a pound of Granulated Sugar in U.S. cities increased from $0.595 in January 2019 to $1.011 in January 2025, reflecting a 70% increase:

| Date | Average Price for White Sugar (Cost per Pound) in U.S. Cities |
|---|---|
| January 2019 | $0.595 |
| January 2020 | $0.603 |
| January 2021 | $0.682 |
| January 2022 | $0.706 |
| January 2023 | $0.86 |
| January 2024 | $0.975 |
| January 2025 | $1.011 |

59.    One or more Producer Defendants has pretextually blamed the increased prices on increased costs since the COVID-19 pandemic. But Producer Defendants' costs do not explain the degree to which Granulated Sugar prices have so dramatically risen

14

during the Class Period.

60.    By engaging in the conduct alleged in this CSFC and the MCC, Defendants intentionally and wrongfully engaged in a contract, combination, or conspiracy in restraint of trade by their price fixing and unlawful information exchange conspiracy in violation of the antitrust laws of the following states: Alabama, Arizona, California, Colorado, Connecticut, Delaware, District of Columbia, Hawaii, Illinois, Iowa, Kansas, Maine, Maryland, Michigan, Minnesota, Nebraska, Nevada, New Hampshire, New Jersey, New Mexico, New York, North Carolina, North Dakota, Oregon, Rhode Island, South Dakota, Tennessee, Utah, Vermont, West Virginia, and Wisconsin.

61.    Specifically, by engaging in the unlawful conduct set forth in this CSFC and the MCC, Defendants intentionally and wrongfully engaged in a contract, combination, or conspiracy in restraint of trade in violation of the following state antitrust laws:

    a.  Alabama Antitrust Statute, Ala. Code § 6-5-60, *et seq*.;

    b.  Arizona Uniform State Antitrust Act, Ariz. Rev. Stat. §§ 44-1401, *et seq*., § 44-1402, § 44-1408;

    c.  California Cartwright Act, Cal. Bus. & Prof. Code, §§ 16720, *et seq*., § 16750(a);

    d.  Colorado State Antitrust Act of 2023, Colo. Rev. Stat. Ann. §§ 6-4-104, *et seq*., § 6-4-115;

    e.  Connecticut Antitrust Act, Conn. Gen. Stat. Ann. §§ 35-26, *et seq*., § 35-34, § 35-35;

    f.  Delaware Antitrust Statute, Del. Code Ann. Tit. 6, § 2101, *et seq*., § 2108;

    g.  District of Columbia Antitrust Act, D.C. Code Ann. §§ 28-4502, *et seq*., § 28-4508;

h.  Hawaii Antitrust Act, Haw. Rev. Stat. § 480-1, *et seq.*, § 480-13;

i.  Illinois Antitrust Act, 740 Ill. Comp. Stat. Ann. 10/1, *et seq.*, 10/7;

j.  Iowa Competition Law, Iowa Code §§ 553.4, *et seq.*, § 553.12;

k.  Kansas Restraint of Trade Act, Kan. Stat. Ann. §§ 50-101, *et seq.*, § 50-161;

l.  Maine Antitrust Statute, Me. Rev. Stat. Ann. 10 §§ 1101, *et seq.*, § 1104;

m.  Maryland Antitrust Act, Md. Com. Law Code Ann. § 11-201 *et seq.*, § 11-204, § 11-209;

n.  Michigan Antitrust Reform Act, Mich. Comp. Laws Ann. §§ 445.772, *et seq.*, § 445.778;

o.  Minnesota Antitrust Law of 1971, Minn. Stat. §§ 325D.51, *et seq.*, § 325D.57, § 325D.58;

p.  Nebraska Junkin Act, Neb. Code Ann. §§ 59-801, *et seq.*, § 59-821;

q.  Nevada Antitrust Statute, Nev. Rev. Stat. Ann. §§ 598A.060, *et seq.*, § 598A.210;

r.  New Hampshire Antitrust Statute, N.H. Rev. Stat. Ann. §§ 356.2, *et seq.*, § 356.11;

s.  New Jersey Antitrust Act, N.J. Stat. Ann. § 56:9-1, *et seq.*, § 56:9-10, § 56:9-12;

t.  New Mexico Antitrust Act, N.M. Stat. Ann. §§ 57-1-1, *et seq.*, § 57-1-3;

u.  New York Donnelly Act, N.Y. Gen. Bus. L. §§ 340, *et seq.*;

v.  North Carolina Antitrust Statute, N.C. Gen. Stat. §§ 75-1, *et seq.*, § 75-16, § 75-16.1;

w.  North Dakota Uniform State Antitrust Act, N.D. Cent. Code §§ 51-08.1-01, *et seq.*, § 51-08.1-08;

x.  Oregon Antitrust Law, Or. Rev. Stat. §§ 646.705, *et seq.*, § 646.770, § 646.780;

16

y.  Rhode Island Antitrust Act, R.I. Gen. Laws §§ 6-36-1, *et seq*., § 6-36-10, § 6-36-11;

z.  South Dakota Antitrust Statute, S.D. Codified Laws An. §§ 37-1, *et seq*., § 37-1-14.3;

aa. Tennessee Antitrust Statute, Tenn. Code Ann. §§ 47-25-101, *et seq*., § 47-25-106;

bb. Utah Antitrust Act, Utah Code Ann. §§ 76-10-3101, *et seq*., § 76-10-3109;

cc. Vermont Antitrust Statute, Vt. Stat. Ann. 9 §§ 2453, *et seq*., § 2453, § 2461c, § 2465;

dd. West Virginia Antitrust Act, W. Va. Code §§ 47-18-1 *et seq*., § 47-18-3, § 47-18-9; and

ee. Wisconsin Antitrust Act, Wis. Stat. §§ 133.01, *et seq*., § 133.16, § 133.18.

62.  For each of these claims, Consumer Plaintiffs set forth each state antitrust claim, including state statutes, state-specific allegations, and relief sought, in Appendix B, filed herewith.

63.  Defendants' conspiracy directly, proximately, and materially caused Consumer Plaintiffs and Subclass Members to suffer injury-in-fact, injury to their business or property, and actual damages.

**COUNT IV: STATE CONSUMER PROTECTION STATUTES**

**On Behalf of Consumer Plaintiffs and the Multistate Consumer Protection Class**

64.  Consumer Plaintiffs repeat and reassert each of the preceding allegations as if fully set forth herein.

65.  The state consumer protection laws pled herein allow for indirect purchaser plaintiffs to recover money damages for violations of the conduct described herein,

unlawful price fixing and information sharing, which violates Section 1 of the Sherman Act and/or Section 5(a) of the FTC Act.

66.    As alleged in Counts I & II, Defendants violated Section 1 of the Sherman Act, which is a violation of Section 5(a) of the FTC Act. 15 U.S.C. § 45(a). Defendants' price fixing and information sharing conspiracy thus constitutes unfair methods of competition or unfair acts and practices, within the meaning of Section 5(a) of the FTC Act.

67.    The scope of Section 5(a) of the FTC Act is broader than the scope of Section 1 of the Sherman Act; conduct does not need rise to the level of a violation of the Sherman Act in order to violate Section 5(a) of the FTC Act. Even if the conduct alleged did not violate the Sherman Act (it does), it would still be unlawful under the FTC Act (and the consumer protection laws alleged herein).

68.    Defendants' violations of Section 5(a) of the FTC Act are violations of the state consumer protection laws alleged herein. State consumer protection statutes are often referred to as "Little FTC Acts," since, as a general matter, they track the relevant provisions of the federal FTC Act and have express provisions or judicial interpretations directing that their application be guided by the scope of the federal FTC Act.

69.    The information sharing conspiracy alleged above itself constitutes an independent unfair method of competition or unfair or deceptive act or practice, in violation of the FTC Act and the consumer protection laws alleged herein (in addition to being an independent violation of Section 1 of the Sherman Act separate and apart from price fixing). The scope of the FTC Act extends to exchanges of price information between

18

competitors through intermediaries, even in the absence of a direct agreement between competitors, where, as here, the result is an anticompetitive effect. The consumer protection laws alleged herein follow the FTC Act and thus outlaw such exchanges as well.

70.    Defendants' unfair competition or unfair acts and practices have proximately caused Consumer Plaintiffs and members of the Multistate Consumer Protection Subclass to pay supra-competitive and artificially inflated prices for Granulated Sugar, suffering injury-in-fact, ascertainable loss, and damages.

71.    Further, one or more Producer Defendants engaged in deceptive conduct during the Class Period, by pretextually blaming Granulated Sugar price increases solely on post-COVID cost increases, such as transportation and wages, despite price increases for Granulated Sugar far exceeding any such cost increases.

72.    During the Class Period, Defendants violated the consumer protection laws of the following states and territories: Alaska, Arkansas, California, Connecticut, District of Columbia, Florida, Hawaii, Illinois, Massachusetts, Minnesota, Missouri, Montana, Nebraska, Nevada, New Hampshire, New Jersey, New Mexico, New York, North Carolina, Oregon, Pennsylvania, Rhode Island, South Carolina, Utah, Vermont, and Wisconsin.

73.    Specifically, by engaging in the conduct set forth in this CSFC and the MCC, Defendants violated the following consumer protection statutes:

    a.    Alaska Unfair Trade Practices & Consumer Protection Act, Alaska Stat. §§ 45.50.471, *et seq*., § 45.50.531, § 45.50.535, § 45.50.537;

    b.    Arkansas Deceptive Trade Practices Act, Ark. Code Ann. §§ 4-88-101, *et seq*., § 4-88-107(a)(10), § 4-88-113;

    c.    California Unfair Competition Law, Cal. Bus. & Prof. Code §

19

17200, *et seq.*, § 17203-04;

d. Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. § 42-110a *et seq.*, 42-110g;

e. D.C. Consumer Protection Procedures Act, D.C. Code § 28-3901, *et seq.*, § 28-3904, § 28-3905;

f. Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.201(1), *et seq.*, § 501.204, § 501.211;

g. Hawaii Uniform Deceptive Trade Practices Act, Hawaii Rev. Stat. § 481A-1, *et seq.*, § 481A-3; § 481A-4;

h. Illinois Consumer Fraud and Deceptive Business Practices Act, 815 Ill. Comp. Stat. Ann. 505/2, *et seq.*, 505/10a;

i. Massachusetts Consumer Protection Act, 81 Mass. G.L. c. 93A *et seq.*, § 2, § 9, § 11;

j. Minnesota Prevention of Consumer Fraud Act, Minn. Stat. § 325F.68, *et seq.*, § 325F.70;

k. Missouri Merchandising Practices Act, Mo. Ann. Stat. § 407.020, *et seq.*, § 407.025;

l. Montana Consumer Protection Act, Mont. Code, §§ 30-14-101, *et seq.*, § 30-14-133;

m. Nebraska Consumer Protection Act, Neb. Rev. Stat. § 59-1602, *et seq.*, § 59-1609;

n. Nevada Deceptive Trade Practices Act, Nev. Rev. Stat. § 598.0903, *et seq.*, § 598.0993;

o. New Hampshire Consumer Protection Act, N.H. Rev. Ann. Tit. XXXI, § 358-A:1, *et seq.*, § 358-A:10-a;

p. New Jersey Consumer Fraud Act, N.J. Stat. Ann. § 56.8-2, *et seq.*, § 56.8-2.11;

q. New Mexico Unfair Practices Act, N.M. Stat. Ann. § 57-12-3, *et seq.*, § 57-12-10;

r. New York Deceptive Acts and Practices Act, N.Y. Gen. Bus. Law § 349, *et seq.*, § 349(h);

s.  North Carolina Unfair Trade and Business Practices Act, N.C. Gen. Stat. § 75-1.1, *et seq*., § 75-16, § 75-16.1;

t.  Oregon Unlawful Trade Practices Act, Or. Rev. Stat. § 646.605, *et seq*., § 646.638;

u.  Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 Pa. Stat. Ann. §§ 201-1, *et seq*., § 201-2, § 201-3, § 201-9.2;

v.  Rhode Island Unfair Trade Practices and Consumer Protection Act, R.I. Gen. Laws §§ 6-13.1-1, *et seq*., § 6-13.1-2, § 6-13.1-5.2;

w.  South Carolina Unfair Trade Practices Act, S.C. Code Ann. § 39-5-10, *et seq*., § 39-5-20, § 39-5-140;

x.  Utah Consumer Sales Practices Act, Utah Code Ann. §13-11-1, *et seq*., § 13-11-19;

y.  Vermont Consumer Fraud Act, Vt. Stat. Ann. tit. 9 § 2451, *et seq*., § 2453, § 2461(b); and

z.  Wisconsin Fraudulent Representations Law, Wis. Stat. § 100.18, *et seq*.

74.    For each of these claims, Consumer Plaintiffs set forth each state consumer protection claim, including state statutes, state-specific allegations, and relief sought, in Appendix C, filed herewith.

### COUNT V: STATE COMMON LAW UNJUST ENRICHMENT AND RESTITUTION

### On Behalf of Consumer Plaintiffs and the Restitution Class

75.    Consumer Plaintiffs repeat and reassert each of the preceding allegations as if fully set forth herein.

76.    Consumer Plaintiffs and the Multistate Restitution Subclass allege unjust enrichment claims under the laws of all States in the United States and the District of Columbia, but excluding the States of Indiana and Ohio.

21

77.     In addition to the federal and state statutes pled in Counts I-IV, above, state common law provides the remedy of disgorgement and restitution for unjust enrichment against Defendants and in favor of Consumer Plaintiffs and the Multistate Restitution Subclass.

78.     Defendants have unlawfully benefited from their sales of Granulated Sugar because of the unlawful and inequitable acts alleged throughout this CSFC and the MCC. Defendants unlawfully overcharged for Granulated Sugar during the Class Period, which proximately caused Consumer Plaintiffs and the Multistate Restitution Subclass to make purchases of Granulated Sugar during the Class Period at prices that were higher than they would have been but for Defendants' unlawful and inequitable actions.

79.     Consumer Plaintiffs and the Multistate Restitution Subclass have conferred upon Defendants an economic benefit, in the form of profits resulting from unlawful and ill-gotten overcharges during the Class Period to the economic detriment of the Consumer Plaintiffs and the Multistate Restitution Subclass.

80.     The mere fact that there may have been no direct contact between a particular Defendant and the Consumer Plaintiffs and Multistate Restitution Subclass does not preclude a finding that Defendants received a direct benefit from the Consumer Plaintiffs and Multistate Restitution Subclass.

81.     Defendants have been enriched by revenue resulting from unlawful overcharges for Granulated Sugar during the Class Period while Consumer Plaintiffs and the Multistate Restitution Subclass have been detrimentally and adversely impacted by overcharges they paid for Granulated Sugar imposed through Defendants' unlawful

conduct. Defendants' enrichment, and the Consumer Plaintiffs' and the Multistate Restitution Subclass's economic detriment and economic losses, are connected.

82.    Defendants' financial benefits resulting from their unlawful and inequitable acts are traceable to overpayments by Consumer Plaintiffs and the Multistate Restitution Subclass during the Class Period.

83.    Defendants' inequitable and unlawful enrichment was at the expense, and to the economic detriment, of the Consumer Plaintiffs and the Multistate Restitution Subclass.

84.    There is no legitimate justification for Defendants' retention of, and enrichment from, the benefits they received, which caused economic detriment to Consumer Plaintiffs and the Multistate Restitution Subclass, because Consumer Plaintiffs and the Multistate Restitution Subclass paid supra-competitive prices during the Class Period that inured to Defendants' benefit, and it would be inequitable for Defendants to retain any revenue gained from their unlawful overcharges.

85.    Plaintiffs and the Multistate Restitution Subclass did not interfere with Defendants' affairs in any manner that conferred these benefits upon Defendants.

86.    The benefits conferred upon Defendants were not gratuitous, in that they constituted revenue created by unlawful overcharges arising from Defendants' illegal and unfair actions to artificially inflate the prices of Granulated Sugar.

87.    The benefits conferred upon Defendants are measurable, in that the revenue Defendants have earned during the Class Period due to their unlawful overcharges of Granulated Sugar are ascertainable by review of sales records and other discoverable financial data.

88.    Defendants are aware of and appreciate the benefits bestowed upon them by Consumer Plaintiffs and members of the Multistate Restitution Subclass. Defendants consciously accepted those benefits and continue to do so as of the date of this filing.

89.    It would be futile for Plaintiffs and the Multistate Restitution Subclass to seek to exhaust any remedy against any immediate intermediary in the chain of distribution from which they indirectly purchased Granulated Sugar, as the intermediaries are not liable and cannot reasonably be expected to compensate Consumer Plaintiffs and the Multistate Restitution Subclass for Defendants' unlawful conduct.

90.    The economic benefit of overcharges and ill-gotten profits derived by Defendants through charging supra-competitive and artificially inflated prices for Granulated Sugar is a direct and proximate result of Defendants' unlawful and inequitable practices alleged throughout this CSFC and the MCC.

91.    The financial benefits derived by Defendants rightfully belong to the Consumer Plaintiffs and the Multistate Restitution Subclass, because Consumer Plaintiffs and the Multistate Restitution Subclass paid supra-competitive prices during the Class Period, inuring to the benefit of Defendants.

92.    It would be inequitable under unjust enrichment principles under the laws of the Restitution States for Defendants to be permitted to retain any of the overcharges for Granulated Sugar derived from Defendants' unlawful, unfair, inequitable, and unconscionable methods, acts, and trade practices alleged throughout this CSFC and the MCC.

93.    It is against equity and good conscience for Defendants to be permitted to

retain the revenue resulting from their unlawful overcharges.

94.    Defendants earned excess revenue as a result of their collusive overcharges for Granulated Sugar during the Class Period and thus were unjustly enriched as a result of the conduct alleged herein.

95.    Consumer Plaintiffs and members of the Multistate Restitution Subclass are entitled to the establishment of a constructive trust or common fund into which Defendants be compelled to disgorge all ill-gotten gains, from which Consumer Plaintiffs and members of the Multistate Restitution Subclass may obtain restitution on a pro rata basis.

96.    By engaging in the foregoing unlawful or inequitable conduct depriving Consumer Plaintiffs and the Multistate Restitution Subclass of the opportunity to purchase lower-priced Granulated Sugar and forcing them to pay higher prices for Granulated Sugar during the Class Period, Defendants have been unjustly enriched in violation of the common laws of the Restitution States.

97.    Unjust enrichment is pled in parallel with Consumer Plaintiffs' statutory claims set forth herein, and is only pled in the alternative and only to the extent that it is required that Plaintiffs and members of the Multistate Restitution Subclass have no adequate remedy at law.

98.    Consumer Plaintiffs and the Multistate Restitution Subclass further allege in the alternative, under California law, an equitable claim for restitution.

## V.    PRAYER FOR RELIEF

WHEREFORE, Consumer Plaintiffs, on behalf of themselves and members of the Class and Subclasses, respectfully pray that This Honorable Court:

A.    Certify that this action may be maintained as a class action under Rule 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure, appoint Interim Co-Lead Counsel for Consumer Indirect Purchaser Plaintiffs as Co-Lead Class Counsel for a certified Class of Consumer Indirect Purchaser Plaintiffs, and direct that reasonable notice of this action be provided to the Class, as provided by Rule 23(c)(2) of the Federal Rules of Civil Procedure;

B.    Adjudge that Defendants violated federal antitrust laws in Counts I & II of the MCC;

C.    Adjudge that Defendants violated the state antitrust laws pled in Count III of the CSFC;

D.    Adjudge that Defendants violated the state consumer protection laws pled in Count IV of the CSFC;

D.    Adjudge that Defendants were unjustly enriched under the state common law claims pled in Count V of the CSFC;

E.    Award Consumer Plaintiffs and members of the Multistate Antitrust Class the relief set forth in Appendix B, hereto;

F.    Award Consumer Plaintiffs and members of the Multistate Consumer Protection Class the relief set forth in detail in Appendix C, hereto;

F.    Order that Defendants be made to disgorge their ill-gotten gains into a common fund or constructive trust established by the Court, from which Consumer Plaintiffs and the Multistate Restitution Subclass may obtain Restitution.

26

G.     Permanently enjoin and restrain Defendants, their affiliates, successors, transferees, assignees and other officers, directors, partners, agents and employees thereof, and all other persons acting or claiming to act on their behalf or in concert with them from in any manner continuing, maintaining or renewing the conduct, contract, conspiracy, or combination alleged herein, or from entering into any other contract, conspiracy, or combination having a similar purpose or effect, and from adopting or following any practice, plan, program, or device having a similar purpose or effect;

H.     Award attorneys' fees and costs to Consumer Plaintiffs and the Class, as well as pre- and post-judgment interest; and

I.     Grant such other, further, and different relief, including structural relief, as may be just and proper.

## VI.  DEMAND FOR JURY TRIAL

Under Rule 38(b) of the Federal Rules of Civil Procedure, Consumer Plaintiffs demand a trial by jury as to all issues so triable.

Dated: March 14, 2025

By:   _s/ Stacey P. Slaughter_
Stacey P. Slaughter
Caitlin E. Keiper
ROBINS KAPLAN LLP
800 LaSalle Avenue, Suite 2800
Minneapolis, MN 55402
Telephone: (612) 349-8500
Facsimile: (612) 339-4181
sslaughter@robinskaplan.com
ckeiper@robinskaplan.com

Ellen G. Jalkut
ROBINS KAPLAN LLP

1325 Avenue of the Americas, Suite 2601
New York, NY 10019
Telephone: (212) 980-7400
Facsimile: (212) 980-7499
ejalkut@robinskaplan.com

By:   /s *Peter A. Barile III*
Vincent Briganti
Peter St. Philip
Peter A. Barile III
Sitso W. Bediako (#0389073)
Nicole A. Veno
LOWEY DANNENBERG, P.C.
44 South Broadway, Suite 1100
White Plains, NY 10601
Telephone: (914) 997-0500
Facsimile: (914) 997-0035
vbriganti@lowey.com
pstphilip@lowey.com
sbediako@lowey.com
pbarile@lowey.com
nveno@lowey.com

By:   s/ *Elizabeth A. Fegan*
Elizabeth A. Fegan
FEGAN SCOTT LLC
150 S. Wacker Dr., 24th Floor
Chicago, IL 60606
Telephone: (312) 741-1019
Facsimile: (312) 264-0100
beth@feganscott.com

Kyle A. Jacobsen
FEGAN SCOTT LLC
709 N 2nd St
Suite 400 #1280
Philadelphia, PA 19123
Ph: (484) 352-2318
kyle@feganscott.com

Ashali P. Chimata
FEGAN SCOTT LLC
1763 Columbia Road NW, Suite 100

28

Washington, D.C. 20009
Ph: (771) 244-6729
ashali@feganscott.com

***Interim Co-Lead Class Counsel for
Consumer Indirect Purchaser Plaintiffs
and the Consumer Indirect Purchaser
Class***

Robert J. Bonsignore
BONSIGNORE, LLC
3771 Meadowcrest Drive
Las Vegas, NV 89121
Telephone: (781) 354-1800
Facsimile: 702-983-8673
rbonsignore@classactions.us

Daniel L. Warshaw
Bobby Pouya
PEARSON WARSHAW, LLP
15165 Ventura Boulevard, Suite 400
Sherman Oaks, CA 91403
Telephone: (818) 788-8300
Facsimile: (818) 788-8104
dwarshaw@pwfirm.com
bpouya@pwfirm.com

Melissa Weiner (#387900)
Brian S. Pafundi (#0392405)
PEARSON WARSHAW, LLP
328 Barry Ave. South, Suite 200
Wayzata, MN 55391
Telephone: (612) 389-0600
Facsimile: (612) 389-0610
mweiner@pwfirm.com
bpafundi@pwfirm.com

Garrett D. Blanchfield
Brant D. Penney
REINHARDT WENDORF &
BLANCHFIELD
80 So. 8th Street, Suite 900
Minneapolis, MN 55402

29

Telephone: (651) 287-2100
g.blanchfield@rwblawfirm.com
b.penney@rwblawfirm.com

Rachhana T. Srey
NICHOLS KASTER, PLLP
80 South 8th Street
4700 IDS Center,
Minneapolis, MN 55402
Telephone: (612) 256-3239
Facsimile: (612) 338-4878
Srey@nka.com

Robin F. Zwerling, Esq.
Jessica Hermes
ZWERLING, SCHACTER &
ZWERLING, LLP
41 Madison Avenue
New York, NY 10010
Telephone: 212-223-3900
rzwerling@zsz.com
jhermes@zsz.com

Andrew Chan Wolinsky
Yavar Bathaee
BATHAEE DUNNE LLP
445 Park Avenue, 9th Floor
New York, NY 10022
Telephone: (332) 322-8835
awolinsky@bathaeedunne.com
yavar@bathaeedunne.com

Ian W. Sloss
John Seredynski
SILVER GOLUB & TEITELL, LLP
1 Landmark Square, 15th Floor
Stamford, CT 06901
Telephone: (203) 325-4491
Facsimile: (203) 325-3769
isloss@sgtlaw.com
jseredynski@sgtlaw.com

Ronen Sarraf

Joseph Gentile
SARRAF GENTILE LLP
Ronen Sarraf
Joseph Gentile
10 Bond Street, Suite 212
Great Neck, NY 11021
Telephone: 516-699-8890
ronen@sarrafgentile.com
joseph@sarrafgentile.com

Michelle C. Clerkin
SPIRO HARRISON & NELSON
1111 Lincoln Road, Suite 500
Miami Beach, FL 33139
Telephone: (786) 841-1181
Facsimile: (973) 232-0887
mclerkin@shnlegal.com

Rachel Dapeer
DAPEER LAW, P.A.
20900 NE 30th Avenue, #417
Aventura, FL 33180
Telephone: (954) 799-5914
rachel@dapeer.com

Raphael Janove
JANOVE PLLC
1617 John F. Kennedy Blvd, 20th Fl.
Philadelphia, PA 19106
Telephone: (215) 267-0100
raphael@janove.law

Ronald A. Dardeno
LAW OFFICCES OF RONALD A.
DARDENO, PLLP
424 Broadway
Somerville, MA  02145
Telephone: (617) 666-2600
Facsimile: (617) 666-2794
rdardeno@dardeno.com

***Additional Counsel for Consumer Indirect
Purchaser Plaintiffs***