**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

| | |
|---|---|
| In Re: Granulated Sugar Antitrust Litigation | Case No. 24-md-3110 (JWB/DTS) |
| This Document Relates To:<br>All Actions | **ORDER REGARDING THE DISCOVERY OF ELECTRONICALLY STORED INFORMATION AND HARD COPY DOCUMENTS** |

---

The parties filed a proposed order. Dkt. No. 339. After reviewing the proposed order, **IT IS HEREBY ORDERED:**

Pursuant to the Federal Rules of Civil Procedure 26 and 34(f) and the Local Rules of the United States District Court for the District of Minnesota, the Court enters the following Order ("Order"), which shall govern the form of production of Electronically Stored Information ("ESI") and Hard Copy Documents in this MDL No. 3110 generally, and in each and every action consolidated for pretrial proceedings herein (this "Action"). This Order applies to any person or entity, whether a Party to this Action or not, that produces Documents in response to requests under Federal Rule of Civil Procedure 34 or 45.

## GENERAL PROVISIONS

1. Introduction: Unless otherwise agreed to by the Parties or ordered by the Court, this Order shall govern the search, disclosure, and format of Hard Copy Documents and ESI produced for use in this Action. The purpose of this Order is to expedite the flow of discovery and facilitate the prompt resolution of disputes should they arise.

2. <u>Cooperation</u>: The Parties are aware of the importance the Court places on cooperation and commit to cooperating in good faith throughout the matter consistent with this Court's guidelines. The Parties agree to cooperate in good faith regarding discovery in general, including, more specifically, the production of ESI and Hard Copy Documents.

3. <u>Modifications:</u> The Parties may modify this Order by agreement, and if so agreed to, shall jointly submit any modifications to the Court.

4. <u>Limitations and Non-Waiver</u>.

(a) Nothing in this Order shall be construed to affect the admissibility of discoverable information, and all objections to the admissibility of any Documents are preserved and may be asserted at any time.

(b) Compliance with this Order does not constitute a waiver, by any Party, of any objection to the production of particular ESI or Hard Copy Documents for any reason, including as irrelevant, undiscoverable, or otherwise inadmissible, not proportional, or not reasonably accessible, or privileged, nor does it constitute a waiver of any right to discovery by any Party.

(c) Nothing in this Protocol is intended to be an exhaustive list of discovery obligations or rights of the Parties, and nothing in this Protocol shall supersede the Parties' obligations and protections under the Federal Rules of Civil Procedure.

(d) With respect to ESI, the inclusion of a data type as an example of a type of ESI in the Definitions herein should not be construed as an agreement by a Responding Party that these types of ESI may be relevant and/or must be collected, searched, or produced.

(e) Similarly, the exclusion of a data type as an example of a type of ESI in the Definitions herein shall not be construed as agreement by the Requesting Party that these types of ESI are irrelevant and/or need not be collected, searched, or produced.

5. <u>Preservation and Document Retention</u>: Unless otherwise provided in this Order, nothing in this Order limits a Party's obligations to preserve discoverable information in the Party's possession, custody, or control, which includes metadata where applicable, consistent with the Federal Rules.

6. <u>Good Faith Efforts to Meet and Confer Before Bringing any Disputes to the Court</u>: The Parties shall make their best efforts to comply with, and resolve any differences concerning compliance with this Order, including any issues relating to custodians, data sources, search methodologies, and any other issue that arises under this Order. No Party may seek relief from the Court concerning compliance with this Order unless it has conferred in good faith with other affected Parties to this Action. If the Parties reach an impasse, the objecting Party may submit the dispute to the Court in accordance with District of Minnesota Local Civil Rule 37.1, and as otherwise directed by the Court.

## **DEFINITIONS**

1. <u>Custodian(s)</u>: Any individual whose Documents a Responding Party agrees to, or is ordered to, search for potentially responsive Documents.

2. <u>Custodial Data Source(s)</u>: Any data source that is in the possession, custody or control of a Responding Party, in or on which a Custodian may have stored potentially responsive Documents.

3. Document(s): Has its broadest meaning consistent with Federal Rule of Civil Procedure 34 and includes both ESI and Hard Copy Documents.

4. Document Family: A collection of related pages or files as maintained in the ordinary course of business but consisting of more than a single stand-alone Document. A "parent Document" is an electronic file that attaches or embeds at least one other electronic file (a "child Document"). A "Document Family" includes, for example, emails with attachments, or MSOffice files embedded within another MSOffice Document.

5. ESI or "Electronically Stored Information": These terms are defined to be synonymous in meaning and scope to the usage of the term in Federal Rule of Civil Procedure 34(a).

6. Extracted Text: The text extracted from a Document, and includes all header, footer, and Document body information, hidden information, notes, and other such information or properties, when available.

7. Hard Copy Document(s): A Document maintained in physical form (*e.g.*, paper) and not in electronic form.

8. Load File: An electronic file containing information identifying a set of paper-scanned images or processed ESI and indicating where individual pages or files belong together as Documents, including emails and their associated attachments, and where each Document begins and ends. A Load File may also contain data relevant to the individual Documents, including extracted and user-created Metadata.

9. <u>Metadata</u>: The structural information of a file that contains data about the file, as opposed to describing the content of a file. The Metadata fields to be produced with responsive Documents are listed in **Exhibit 1**.

10. <u>Modern Communications:</u> Communications methods other than email, such as Channel-based communications (e.g., Slack, Teams), Text messages / mobile messages (e.g., SMS, MMS, iMessage, Whatsapp, Telegram), Synchronous chat (e.g., Teams, Jabber, Google Chat), Collaboration tools (e.g., SharePoint, wikis), Ticketing / workflow (e.g., JIRA), Social media (e.g., Twitter, Facebook, Instagram), communications in structured data applications (e.g. Salesforce), and Online meetings (e.g., Zoom, Teams, Webex).

11. <u>Native File(s) or Native Format</u>: The file type or format, respectively, in which ESI was originally created and/or is normally created, viewed, or modified.

12. <u>Non-Custodial Data Source(s)</u>: Any data source that is not kept or maintained exclusively by any particular Custodian but which may contain potentially responsive Documents, including data sources used by any department, business unit, or division of a Responding Party, such as databases, servers, group share drives or folders, cloud-based storage systems (*e.g.*, DropBox), communication platforms (*e.g.*, Slack, Teams, Zoom, Google Chat, Discord, Skype, GroupMe, WeChat, Signal, Telegram, etc.), collaboration platforms (*e.g.,* Trello, Switchboard, Mural, Microsoft

365, Gather, Asana, Google Hangouts, etc.), and social media sites (*e.g.*, Facebook, LinkedIn, etc.).

13. <u>OCR Text</u>: Searchable text generated through an optical character recognition process of image/bitmap picture representation of Documents.

14. <u>Responding Party</u>: Any Party that responds to a request for the production of Documents in this Action pursuant to Federal Rule of Civil Procedure 34 or 45.

15. <u>Requesting Party</u>: Any Party that requests the production of Documents in this Action pursuant to Federal Rule of Civil Procedure 34 or 45.

16. <u>Search String</u>: A word or a combination of words or phrases designed to capture potentially relevant documents, inclusive of strings of words and phrases joined by proximity and Boolean connectors or other syntax.

17. <u>Structured Data</u>: Data that resides in a fixed field within a record or file or stored in a structured format, such as in databases (*e.g.*, Oracle, SQL, and Access) or datasets, according to specific form and content rules as defined by each field of the database or dataset, and includes, to the extent maintained in the normal course of business, the file or files defining each field in the Structured Data.

## **PRESERVATION**

1. <u>Duty to Investigate</u>: The Parties must undertake a reasonable investigation to identify sources of potentially relevant information, including by consulting with knowledgeable witnesses and Custodians.

2. <u>Obligation to Preserve</u>: The Parties will undertake reasonable efforts to comply with their obligations to preserve evidence that may be relevant to any Party's claims or defenses, and nothing in this Order authorizes the deletion of Documents after the duty arose to preserve such Documents. A Party's preservation of Documents in connection with this Action does not mean that such material is discoverable, nor does it waive any claim of privilege or attorney work product.

3. <u>Notice of Destruction</u>: If a Responding Party learns that responsive Documents that existed as of the date upon which the duty to preserve Documents arose (1) were lost, destroyed, or are no longer retrievable and (2) cannot be restored or replaced through additional discovery, the Responding Party shall so advise the Requesting Party, at which point they shall meet and confer regarding the issue.

4. <u>ESI Agreed to Be Not Reasonably Accessible</u>: Notwithstanding any other provision of this Order, the following sources of ESI are not reasonably accessible and need not be preserved. Nothing in this paragraph shall require a Party to search the below-listed sources to determine the reasonable likelihood that they contain relevant ESI unless the Party's investigation, Documents, or testimony suggest otherwise.

   (a) Data stored in random access memory ("RAM"), cache memory, or in temporary internet or cache files, including internet history, web browser cache or cookie files, wherever located;

(b) Data stored in a backup system intended for system recovery or information restoration, such as disaster recovery backup tapes, continuity of operations systems, data or system mirrors or shadows, or automated versioning of files, provided that this data is routinely deleted or overwritten as part of an established system maintenance practice;

(c) Operating system files and executable files;

(d) documents deleted in the normal course of business before the time a preservation obligation in this Litigation came into effect;

(e) unallocated space; or

(f) data in metadata fields frequently updated automatically, such as last-opened or last-printed dates, except those identified in Exhibit 1;

(g) server or network logs; and

(h) Data stored on photocopiers, scanners, and fax machines.

5. <u>Other ESI Asserted to Be Not Reasonably Accessible</u>: Nothing in this Order prevents a Party from asserting, in accordance with the Federal Rules of Civil Procedure, that other categories of ESI are not reasonably accessible, although Parties must take reasonable steps to preserve such ESI if potentially responsive. All Parties reserve the right to request to have a particular source of ESI searched if there is good cause to believe that the particular source contains unique relevant information.

## **COLLECTION AND PROCESSING OF ESI**

1. <u>Generally</u>: The Responding Party shall collect and process Documents using reasonable methods that preserve available data, and to the extent reasonably feasible upon collection, the Responding Party shall use the below specifications when processing its Document collection(s).

2. <u>Track Changes</u>: Documents shall maintain all tracked changes as last saved, to the extent available, so that all changes to a Document are evident, unless redactions are necessary.

3. <u>Auto-Date and Auto-Time Fields</u>: Documents shall include and show field codes for auto-date and auto-time fields, to the extent available.

4. <u>Author Comments and Presenter Notes</u>: Documents shall include author comments and presenter notes, to the extent available and unless redactions for privilege or PII are necessary.

5. <u>Date and Time</u>: Documents shall be processed to maintain the date/time shown in the Document as it was last saved or sent by the Custodian or end user, not the date of collection or processing.  The preferred time zone for processing ESI is Coordinated Universal Time ("UTC"). To the extent reasonably practical, the Parties will consistently produce all ESI processed using the same time zone and will identify differences in the time zones used for processing ESI from different data sources if any.

6. <u>Hidden Data</u>: ESI shall be processed in a manner that maintains all hidden data such as hidden columns or rows, hidden text or worksheets, speaker notes, tracked changes and comments.  ESI produced as a TIFF under this Order shall be expanded to display all hidden data in the TIFF. If the

Responding Party is unable to expand the ESI to display all hidden data in any TIFF being produced, the Responding Party must provide the Requesting Party with the Native File(s).  If the Responding Party is unable to provide the Native File(s), the Parties shall meet and confer to determine a suitable manner of production.

7. <u>Native Files</u>: The Responding Party shall exercise reasonable, good faith efforts to maintain all collected Native Files that may be relevant to this Action in a manner that does not materially alter or modify the file or Metadata other than as provided in this Order.

8. <u>De-NIST'ing</u>: The Parties may de-NIST electronic files, removing known, traceable software applications listed in the National Software Reference Library.[1]

7. <u>Hyperlinks</u>: The Parties shall make reasonable efforts to collect and produce point-in-time documents that are links in documents and communications, including, but not limited to, Google G Suite, Microsoft 365, *etc.*, and treat as family documents.  Documents extracted from links shall be populated with the BEGATTACH and ENDATTACH metadata fields described in Exhibit 1 to show the family relationship.  To the extent a Party cannot produce linked documents, *e.g.*, due to technical limitations, or where documents were collected before the entry of this Order, and the Receiving Party has a good

---

[1]    Available at www.nist.gov/itl/ssd/software-quality-group/national-software-reference-library-nsrl/nsrl-download.

faith belief that a linked document is responsive, the Parties will work in good faith to identify and attempt to retrieve the identified linked document(s).

## IDENTIFYING POTENTIALLY RESPONSIVE ESI

### Search Methodology

1. <u>Generally</u>: The parties will work together, in good faith, to reach an agreement on the Custodians, Custodial Data Sources, Non-Custodial Data Sources, Search Strings, and any other limitations (*e.g.*, date range) ("Search Methodology") that will be used by a Responding Party to identify potentially responsive Documents. To the extent a Search Methodology will be used, the Parties will employ the process in Section V(A), Paragraphs 2-4, which may be modified upon written agreement of the Parties.

2. <u>Initial Search Methodology Disclosures</u>: After a Responding Party has had a reasonable opportunity to investigate potential data sources and search methodologies, and consider the Requesting Party's document requests, the Responding Party shall disclose to the Requesting Party its proposed Search Methodology. Specifically, the Responding Party will provide to the Requesting Party a proposed list of Custodians and Search Strings to run against Custodial Data Sources, as well as the Non-Custodial Data Sources the Responding Party intends to search along with sufficient information for the Requesting Party to evaluate the reasonableness of the proposed Search Methodology.

3. <u>Additional Search Methodology Disclosures</u>: To the extent the Requesting Party proposes changes to the Search Methodology and the Responding

Party declines to accept those changes, the Responding Party shall provide to the Requesting Party information sufficient for the Requesting Party to understand the basis or bases on which the Responding Party is declining to agree (*e.g.*, a document in editable format that identifies on a Search String by Search String basis the total number of Document hits with family members returned by each of the Requesting Party's proposed additional Search Strings).

4. <u>Agreed-Upon Search Methodology</u>: Should a dispute regarding Search Methodology be submitted to the Court in accordance with Section I, Paragraph 6 herein, and notwithstanding the filing of any such motion, the Responding Party will begin its review and production of Documents that are returned by the agreed-upon portions of the Search Methodology.

**<u>TAR Methodology</u>**

1. <u>Generally</u>: Instead of relying on a Search Methodology, the Parties may work together, in good faith, to reach an agreement on the Custodians, Custodial Data Sources, and Non-Custodial Data Sources, technology workflow (*e.g.*, predictive coding, technology assisted review, (collectively, "technology assisted review" or "TAR")), and any other limitations (*e.g.*, date range) ("TAR Methodology") that will be used by a Responding Party to identify potentially responsive Documents prior to commencing the use of TAR. To the extent a TAR Methodology will be used, the Parties will employ the process in Paragraphs 2-5, which may be modified upon written agreement of the Parties.

2. <u>Initial TAR Methodology Disclosure</u>: If a Responding Party intends to employ a TAR Methodology, it must disclose to the Requesting Party its proposed TAR Methodology, including the specific TAR tool that it intends to use. In addition, the Responding Party will provide the Requesting Party an editable document that identifies the parameters and threshold values used to validate the TAR methodology.

3. <u>Additional TAR Methodology Disclosures</u>: To the extent the Requesting Party proposes changes to the TAR Methodology and the Responding Party declines to accept those changes, the Responding Party shall provide to the Requesting Party information sufficient for the Requesting Party to understand the basis or bases on which the Responding Party is declining to agree (*e.g.*, an additional document in an editable Excel format that identifies the parameters and threshold values used to validate the TAR methodology.

4. <u>Agreed-Upon TAR Methodology</u>: Should a dispute regarding TAR methodology be submitted to the Court in accordance with Section I, Paragraph 6 herein, and notwithstanding the filing of any such motion, the Responding Party will begin its review and production of Documents that are returned if there are agreed-upon portions of the TAR Methodology that would permit a Party to move forward without subsequently having to re-do the TAR Methodology upon resolution of the dispute.

5. <u>Null Set Testing</u>: After a sufficient number of Documents returned by the TAR Methodology have been reviewed, the Responding Party will develop and employ a random sampling of Documents not returned by the TAR Methodology (*i.e.*, null set testing) to ensure the efficacy of the as-employed TAR Methodology. The

Responding Party will provide to the Requesting Party the methodology and results of its null set testing and will answer reasonable follow up questions the Requesting Party may have about the Responding Party's null set testing. The Requesting Party will also have the right to request changes to the previously agreed TAR Methodology based on the results of the Responding Party's null set testing.

## **Other Terms**

1. Limitations: Regardless of whether a Party utilizes a Search Methodology or TAR Methodology, the Parties agree that files without Extracted Text (*e.g.*, video or image files), and other unsearchable files or Documents that contain too little text will be manually reviewed.

2. Meet and Confer: Regardless of whether a Party utilizes a Search Methodology or TAR Methodology, after the Requesting Party has had a reasonable opportunity to evaluate the Responding Party's proposed Methodology, the Parties shall meet and confer as to any questions the Requesting Party may have. The Requesting Party shall have the right to propose changes to the Methodology, which the Responding Party shall consider in good faith.

3. Supplementation: Each Party may, upon reviewing Documents produced in the litigation and conducting other investigations and discovery, and a showing of good cause, request changes to the Search Methodology or TAR Methodology. The Parties agree to meet and confer in good faith concerning any such requests.

4. <u>Unsearchable Documents</u>: Documents for which text-based search technologies are fundamentally ineffective, such as videos, images, or hard copy documents, must be searched using a non-text-based methodology or reviewed without culling by the text-based Search or TAR Methodology otherwise employs. Should a Responding Party believe that reviewing Unsearchable Documents is overly burdensome, the Parties shall meet and confer to determine the proper methodology to identify and produce Unsearchable Documents.

8. <u>No Obligation to Review</u>: Nothing in this Order requires the Responding Party to review Documents prior to their production; provided, however, no Party may withhold any Document from production that is identified by the Search Methodology or TAR Methodology as potentially responsive without counsel for that Party first reviewing that document and determining that it may be properly withheld from production under the Federal Rules of Civil Procedure.

## **PRODUCTION FORMAT**

### **A. De-Duplication, Email Threading, and Zero-Byte Files.**

1. <u>De-Duplication</u>: To reduce the unnecessary costs of reviewing and producing exact duplicate Documents, each Party may use reasonable, good-faith efforts to avoid the production of duplicate ESI, subject to the following requirements:

(a) Global de-duplication is to be executed at the Document Family level.

(b) De-duplication shall be done on exact duplicate Documents based on MD5 or SHA-1 hash values.

(c) No party shall identify and/or eliminate duplicates of Hard-Copy Documents or ESI by manual review or any method other than by use of the technical comparison using MD5 or SHA-1 hash values outlined above.

(d) For each exact duplicate Document (based on MD5 or SHA-1 hash values as set forth above) ("duplicate" or "duplicate Document"), the Responding Party will produce the Metadata set forth in **Exhibit 1** for the Single Production Copy to the extent available.

(e) If more than one Custodian possesses a duplicate, the Responding Party shall populate the AllCustodian and AllPaths Metadata fields by identifying each Custodian who had a copy of the produced Document and the file path where the custodian stored the document, in addition to a separate field of data identifying the Custodian whose Document is produced.

2. <u>Email Threading</u>: Email threads are email communications that contain prior or lesser-included email communications. A most inclusive email thread is one that contains all the prior or lesser-included emails and attachments, including each branch of the email thread. A Responding Party may not use e-mail threading to suppress prior-in-time emails from production; however, the Responding Party may use email threading as a review efficiency tool.

3. <u>Zero-Byte Files</u>: The Responding Party will take reasonable steps to filter out stand-alone zero-byte files except to the extent these would break Document Families.

## ESI and Hard Copy Documents

1. <u>Metadata</u>: Load Files should include, where applicable, the Metadata fields identified in **Exhibit 1**. However, and except as otherwise provided herein, the Parties are not required to include Metadata for any Document that did not originally contain such Metadata. If the Responding Party becomes aware that Documents were produced without the required Metadata, the Responding Party shall promptly provide an overlay file containing the required Metadata.

2. <u>Hard Copy Document Production Format</u>: The following terms will apply to the production of Documents originating in hard copy format (*e.g.*, paper):

(a) Hard Copy Documents, unless otherwise specified in this Order will be produced as black-and-white, single-page, 300 DPI, Group IV* TIFF images, with OCR Text provided in Document-level text files, objective Metadata fields pursuant to **Exhibit 1**, and Load Files pursuant to **Exhibit 2**.

(b) The Responding Party shall take reasonable steps to physically unitize Hard Copy Documents. This provision does not obligate any Responding Party to reassemble Document Families for Hard Copy Documents that are not stored or maintained as Document Families in the location in which members of that family are found or as they are kept in the ordinary course

of business. Nor shall this provision obligate any Responding Party to make whole any Document that is not stored or maintained in its complete form.

3. <u>ESI Production Format</u>: The following terms will apply to the production of ESI:

(a) All responsive ESI, except that which is produced in Native Format, shall be produced as black and white, single-page, 300 DPI, Group IV* TIFF files with corresponding extracted full text provided in Document-level text files, Metadata fields pursuant to **Exhibit 1**, and Load Files pursuant to **Exhibit 2**.

(b) For files where such conversion is unduly burdensome or the Document produced is not reasonably unusable, the Parties will meet and confer regarding how the Responding Party may produce the Document in a reasonably usable form to be agreed upon by the respective Parties.

**<u>Native Files</u>**

1. <u>Generally</u>: A Responding Party shall produce PowerPoint (and other presentation files), Excel (and other spreadsheet files**,** including comma or tab delimited files) and video or audio files in Native Format, along with a tiff placeholder image indicating bates number and confidentiality designation.

2. <u>Other Document Types</u>: Other Document types which may be difficult or costly to accurately image may be selected to be produced natively at the Responding Party's discretion. In addition, the Responding Party will honor reasonable requests for Native Files for other types of Documents.

3. <u>Load File</u>: The production Load Files shall contain a link to the produced Native Format files as specified in the "NativeLink" Metadata field described in **Exhibit 1**. The Load File will contain a link to any Native File produced. All other available metadata required in Exhibit 1 will also be produced for all Native Files.

4. <u>TIFF Slip Sheet</u>: Each electronic file produced in Native Format shall be assigned a unique Bates Number, and the database record for that file shall include a single TIFF image slipsheet stamped with this unique Bates Number, any confidentiality designation, and a standardized phrase indicating that the Document was produced in Native Format (*i.e.,* PRODUCED IN NATIVE FORMAT).

5. <u>File Name</u>: Any file produced in its Native Format is to be named with its corresponding Bates number and file extension.

**<u>Structured Data:</u>** Where a discovery request seeks production of Structured Data, in lieu of producing structured data systems or applications, the Parties shall meet and confer on the content and format of a data sample from such structured data source. The Parties shall discuss and attempt to agree upon the sets of data or fields to be included in the sample and the format in which sample data extracted shall be produced, and the Responding Party shall take reasonable steps to make all necessary disclosures for the Requesting Party to understand and evaluate whether the content and format of the data produced would satisfy a production request, such as the data fields available, the meaning of data fields, as well as codes and abbreviations used in the data source and whether a data dictionary exists, the time period over which data exists, any database

schema, or other relevant information. After meeting and conferring with the Requesting Party as to the fields to be produced and the format of production, the Producing Party shall generate a data sample for review by the Requesting Party. Upon review of the sample, the Requesting Party may make reasonable requests for additional information to explain the database scheme, codes, abbreviations, and different report formats or to request specific data from identified or additional fields. The Responding Party shall consider in good faith whether such proposed changes are appropriate.

**Unique Document Types**

1. <u>Modern Communications</u>: The Parties recognize that various Modern Communications platforms may contain relevant or responsive information that may be addressed in the production of ESI, however, because of the potential diverse technical environments and tools available to each Party, the Parties agree to meet and confer to determine the proper methodology for collection, processing, searching, redacting, and producing information contained in Modern Communications platforms including the contents of any applicable privilege log.

2. <u>Encrypted or Password Protected Documents</u>: The Responding Party shall make reasonable efforts to ensure that all encrypted or password-protected Documents are successfully processed for review and production under the requirements of this Order, and the decrypted Document is produced. The Parties shall meet and confer regarding any requests that a Responding Party undertake additional efforts to decrypt files after production.

3. <u>Compressed or Container Files</u>: Compression file types (e.g., .CAB, .GZ, RAR. .ZIP), shall be decompressed to the lowest possible compression resulting in individual folders and/or files. Original compression files and container files need not be produced, provided the responsive content files are produced in accordance with the specifications of this Order.

4. <u>Foreign Language Documents</u>: To the extent that Documents contain languages other than English, in whole or in part, the Responding Party shall produce each such Document in the original language or languages in which it was written when collected. The following terms will also apply to the production of foreign language Documents:

   (a) If no English version of a Document is available, the Responding Party has no obligation to produce an English translation of that Document and does not have an obligation to render that Document text searchable via OCR or other means if the foreign language does not use the Latin alphabet.

   (b) The Responding Party shall make reasonable efforts to ensure that any technologies and processes used to collect, process, and produce the text of any Document (including all TIFF conversion, OCR processes, and extraction of text from Native Files) preserves all foreign language text, punctuation, and other characteristics as they exist in the source Native File.

   (c) To the extent reasonably and technically possible, foreign language text files shall be delivered in UTF-8 and be Unicode compliant, with the correct encoding to enable the preservation of the Documents' original language.

21

(d) The Parties will meet and confer concerning procedures for using translations at depositions and at trial.

**Redacted Documents**

1. Limitations on Redactions: Redactions shall only be applied for attorney-client privilege, the work product doctrine, other privileges legally recognized in this jurisdiction, certain but not all Personally Identifiable Information ("PII"), or protected health information ("PHI"). Examples of PII that cannot be redacted include but are not limited to Names, email addresses, and phone numbers.

2. Application of Redactions:

   (a) Redactions applied to Documents on the basis of the attorney-client privilege or work product protection shall be indicated as follows: "REDACTED – PRIVILEGED."

   (b) PII Redactions applied to Documents shall be indicated as follows: "REDACTED – PII."

   (c) PHI Redactions applied to Documents shall be indicated as follows: "REDACTED – PHI."

   (d) Any Document to which a redaction is applied shall have the "REDACTION" Metadata field populated "Y."

   (e) If a Document to be produced in Native Format requires redaction, that Document may be produced in redacted Native Format, at the Responding Party's discretion, and to the extent reasonably and technically possible.

   (f) If redacting TIFF images of Documents that would otherwise be produced in Native format, the Responding Party shall produce the TIFFs ensuring

that: (1) hidden rows, columns or sheets are visible in the TIFF; (2) filters are not concealing any information; (3) column widths are sufficient so that numbers do not appear as "######+##" or otherwise distorted; (4) row heights are sufficient so that all content appears; (5) column and row headings print; (6) the tab name appears in the header or footer of the document; (7) comments are produced at the end of the spreadsheet; (8) spreadsheets print across then down;  (9) presentation Documents (*e.g.*, PowerPoints) so that all speaker notes and comments are visible;  and (10) word processing documents (e.g. Word) so that redlines, track changes and comments are present.  The Parties shall meet and confer if the Requesting Party identifies any legibility issues with this approach.

3. <u>Redaction of Other File Types</u>: If the Responding Party encounters Microsoft Access files or audio or video files or other file types requiring production in Native Format that contains privileged content, the Parties shall meet and confer to determine a suitable manner of producing the non-privileged, responsive content contained in these files.

**<u>Document Families</u>**

1. <u>Generally</u>: For ESI, families (*i.e.*, the "parent" Document and each of its "child" Documents) must be preserved by assigning sequential Bates numbers to all files within a parent-child group in accordance with this Order, and by providing accurate attachment ranges for those files in the Metadata fields required. In addition, Metadata must be produced, as set forth in **Exhibit 1**, that maintains the familial relationship.

2. <u>Embedded Documents</u>: Substantive embedded documents (*e.g.*, a spreadsheet embedded within a word processing document) will be extracted, produced as independent document records (either in full, redacted, or via a non-responsive or privilege slipsheet) and related back to the respective top-level parent document via the Beginning Attachment Bates Number and Ending Attachment Bates Number, as set forth in **Exhibit 1**. Non-Substantive graphic objects embedded within Documents, such as logos, signature blocks, and backgrounds need not be extracted as separate documents.

3. <u>Responsive Families</u>: If any member of a Document Family is responsive, the Responding Party shall produce all family members and/or portions thereof that are not independently protected as privileged or work-product; provided, however, that where part of a Document Family is withheld, and its relationship to the rest of that Document Family is indicated using slipsheets, the Responding Party shall provide one Bates-numbered slipsheet for each withheld Document. The Responding Party is under no obligation to produce a Family of Documents if the only responsive Documents are being withheld entirely for privilege.

**Technical Issues**: Files That Cannot Be Processed: If a member of a responsive Document Family cannot technically be processed (e.g., unsupported file format, file corruption, inaccessible password-protected document), such technical issues shall be denoted by producing a Bates-labeled slipsheet stating "Technical Issue – File Cannot Be Processed." If available, metadata for such technically-impaired documents shall be

produced. The Parties agree to meet and confer in good faith to resolve any disputes over documents deemed to have technical issues. Blank documents or files, including documents that just include a non-substantive standalone image, such as a signature block, can be excluded from the production.

**Other Terms**

1. Originating Source: The Custodian or originating source shall be identified in the Custodian field and All Custodian field of the database Load Files, as provided in Exhibit 1. Documents found in the possession of a natural person (or on a natural person's hardware or storage media) shall be produced in such a fashion as to identify the natural person. A Responding Party shall use a uniform description of a particular Custodian across all of its productions.

2. Appearance, Content and Reasonably Usable: If a Party identifies imaging or formatting problems in a produced Document or Documents or if the form of production results in a document that is not reasonably usable, the Parties shall meet and confer in an attempt to resolve any outstanding problems.

3. Color and Low-Resolution Images: If a Requesting Party finds the black and white version of a Document produced in non-Native Format insufficient, the Requesting Party may request that the Responding Party provide a color and/or higher resolution image, as appropriate. The Responding Party will not unreasonably deny such a request and may choose to respond by providing the Native Format version of the Document or any other format consistent with this Order's specifications.  If the Parties cannot come to an agreement regarding whether a

Document must be produced in color, the good cause standard will govern the dispute.

4. <u>Bates Numbering</u>: Each page of a Document produced in the litigation in TIFF file format shall have a legible numeric identifier ("Bates Number") electronically stamped onto the image that must reasonably identify the Responding Party. Bates Numbers must meet each of the following criteria:

    (a) Be unique across the entire Document production;

    (b) Maintain a constant length of nine numeric digits (including 0-padding) across the entire production;

    (c) Contain only alphanumeric characters, no special characters, or embedded spaces;

    (d) Be sequential within a given Document;

    (e) Not be obscured by other content on the Document, to the extent practicable; and

    (f) Be consistently applied (*i.e.*, same font type, size, and location) on Documents.

5. <u>Confidentiality Stamp</u>: Consistent with the terms of the Protective Order entered in this Action (ECF No. 344), the Responding Party shall electronically stamp the appropriate confidentiality designations on each page of the Document. In applying this stamp, the Responding Party will make reasonable efforts to avoid obscuring any information originally appearing on the Document and will consider whether it is reasonably necessary to reproduce any such Document on request. In addition, the corresponding confidentiality designation shall be provided in the metadata

field Confidential. For ESI produced in Native Format, the file name of the Native File may include the corresponding confidentiality designation following the Bates number.

6. <u>Text File</u>: Each Document produced under this Order, that in its native form contains extractable text, shall be accompanied by a single, multipage text file containing all of the text for that Document (as opposed to one text file per page of such Document). Each text file shall be named using the Bates Number of the first page of the corresponding production item. For ESI (except redacted Documents), the text file will be taken from the ESI itself, and for Hard Copy Documents and redacted ESI, the text file will be created through OCR. Text files shall be provided in a "Text" folder.

**<u>Production Media</u>**

1. <u>Generally</u>: Documents shall be produced on external hard drive (with standard PC compatible interface), via secure FTP (SFTP) site, or such other readily accessible computer or electronic media as the Parties may hereafter agree upon (the "Production Media").[2]

2. <u>Label and Cover Letter</u>: Each piece of Production Media shall include a unique identifying label and cover letter including the following information:

(a) Name of the litigation and its case number;

(b) Name of the Responding Party;

(c) Date of the production (mm/dd/yyyy);

---

[2] Productions made via secure FTP or other electronic transfer are not required to be supplemented with hard media containing the same Documents.

(d) Bates number range;

(e) Confidentiality Designation; and

(f) Notes regarding any irregularities in the production (*e.g.*, whether it is replacement Production Media).

3. <u>Overlay Productions</u>: Any replacement Production Media or Documents shall cross-reference the original Production Media, clearly identify that it is a replacement, and cross-reference the Bates number range that is being replaced.

4. <u>Encryption</u>: All Production Media must be encrypted, with the Responding Party providing a decryption key at the time of production.

**<u>ASSERTIONS OF PRIVILEGE</u>**

1. <u>Generally</u>: The Parties may review Documents for attorney client privilege or work product protected information prior to production, provided that, to the extent a Party withholds information otherwise discoverable on the basis that it is privileged or protected from disclosure, that Party must comply with its obligations under Federal Rule of Civil Procedure 26(b)(5)(A) except as set forth herein.

2. <u>Applicable Law</u>: Assertions of privilege or protection will be evaluated under U.S. federal law.

3. <u>Produced Protected Documents</u>:  The Parties shall comply with the provisions of the Protective Order (ECF No.__) in the event information subject to a claim of attorney-client

privilege, work product immunity, or any other applicable privilege or immunity is inadvertently or otherwise produced.

4. <u>Privilege Logs, Generally</u>: A Responding Party may, though not necessarily, satisfy its obligations under Rule 26(b)(5)(A) by providing to the Requesting Party a privilege log in the format set forth below.

5. <u>Categories of Documents that Do Not Need to Be Logged</u>: The following categories of Documents do not need to be contained on a Responding Party's privilege logs, unless good cause exists to require the Responding Party do so:

(a) Any communications generated on or after March 24, 2021, the date that United States Sugar Corporation entered into an agreement to acquire Imperial Sugar Company, as referenced in Case No. 21-cv-1644 (D. Del.) (ECF. No. 1, ¶ 13), between a Responding Party and its outside counsel, an agent of its outside counsel, or any testifying or non-testifying expert;

(b) Any joint defense or common interest communications generated on or after March 24, 2021;

(c) Any privileged materials or work product created on or after March 24, 2021, by or specifically at the direction of a Party's outside counsel, an agent of outside counsel, any non-testifying or testifying experts.

6. <u>Privilege Log Timing</u>: Unless otherwise agreed by the Parties, privilege logs will be produced on a rolling basis within thirty (30) days of the production from which documents were withheld with the last rolling privilege log produced no later than

thirty (30) days after substantial completion of a Producing Party's document production.  If additional privilege logs are necessary, the Parties will meet and confer to discuss the appropriate timing for the production of any supplemental logs.

7. <u>Privilege Log Fields</u>: The Parties agree that for all Documents that are withheld or redacted on privilege or work product grounds, at least the following information will be provided in an Excel document:

   (a) Unique privilege log reference number, and if produced in redacted form, Bates range;

   (b) An indication of whether the document has been redacted and produced or wholly withheld;

   (c) Document type;

   (d) Family relationship (if applicable) (*i.e.*, identification of parent emails and all attachments using privilege log reference number or Bates number, as appropriate);

   (e) Date (date sent for correspondence such as emails, memos, and letters; date created for other documents);

   (f) Individuals listed in the to, from cc, and bcc fields with each field provided in a separate Excel column;

   (g) For non-email communications, the Author(s);

   (h) Description of the documents (or redacted portion of the document) and its subject matter sufficient to establish the privilege or protection as set forth in Rule 26(b)(5)(A)(ii) of the Federal Rules of Civil Procedure; and

(i)  All privilege(s) or protections(s) claimed.

8. <u>Email Threads</u>:  For email threads, the Responding Party shall log the top level email, indicate that the document is an email thread, and adequately describe the thread.

9. <u>Privilege Actor Roster</u>: Each privilege log shall be accompanied by a separate Excel document or Tab that identifies, by name, each attorney, or other individual on the Responding Party's privilege log whose involvement the Responding Party asserts gives rise to the asserted privilege or protection.

10. <u>Requests for Additional Information</u>: To the extent a Requesting Party believes it needs, in good faith, additional information to assess a Responding Party's assertion of privilege, it may request additional information from the Responding Party.

11. <u>Adjustment of Timing</u>: The Parties may mutually agree without the need for Court approval to narrow or extend the time periods specified in this Order.

## **OTHER**

1. <u>Non-Parties</u>: A Party that issues a subpoena to a non-Party ("Issuing Party") must include a copy of this Order with the subpoena and state that the applicable Parties to the Action have requested that the Non-Party produce Documents in accordance with the specifications set forth herein. The Issuing Party shall, subject to the provisions of the Protective Order (ECF No.__) and resolution of any objections interposed by the Non-Party as to the scope of production in the Action, produce any Documents obtained pursuant to the Non-Party subpoena to the other Parties (for these

purposes, the "Non-Issuing Parties") in the Action within five (5) business days of initial receipt. If the non-Party production is not Bates-stamped, the Issuing Party will brand the production images with unique prefixes and Bates numbers prior to producing them to the Non-Issuing Party(ies) per the technical specifications outlined in this Protocol. To the extent Native Format files were produced by Non-Parties, the Parties shall meet and confer to determine the proper form of production.  For the avoidance of doubt, nothing in this Order is intended to or should be interpreted as narrowing, expanding, or otherwise affecting the rights of the Parties or Non-Parties to object to a subpoena.

2. <u>Later-Added Parties</u>: Any Party added or joined to this litigation after the date of this Order that seeks to deviate from this Order must obtain leave of Court to do so unless every other Party consents to the proposed deviation in writing. Before seeking Court intervention, the Parties shall meet and confer in good faith regarding any modification.

3. <u>Compliance with Order Impossible or Impractical</u>: In light of the disparate data systems and architectures potentially employed by the Parties, variations from this Order may be required. In the event that any Party identifies a circumstance where application of this Order is technologically impossible or would be unduly burdensome or impractical, that Party shall notify the other Parties of the issue exception and thereafter meet and confer in a good-faith effort to reach agreement on potential alternative

approaches. If the Parties agree to the exception and alternative procedure, no amendment of this Order is necessary.

4. <u>Reservation of Rights</u>: Nothing in this Order waives the right of any Party to petition the Court for an Order modifying the terms of this Order upon sufficient demonstration that compliance with such terms is either (1) unexpectedly or unreasonably burdensome, or (2) impossible; provided, however, the Parties must first meet and confer in an effort, if possible, to reach an agreement on an exception from or modification to this Order prior to seeking relief from the Court.

5. <u>Continuing Obligations</u>: The Parties will continue to meet and confer as necessary and appropriate, including regarding dates and time frames set forth in this Order. This Order does not address or resolve any other objection to the scope of the Parties' respective discovery requests.

6. <u>Costs</u>: Each Party is to bear its own discovery costs unless otherwise ordered by the Court or agreed among the Parties.

Dated: March 17, 2025                    ___s/ David T. Schultz_____
                                         DAVID T. SCHULTZ
                                         U.S. Magistrate Judge

## EXHIBIT 1: PRODUCTION SPECIFICATIONS

The following Metadata fields will be produced, to the extent reasonably and technically available[3]:

| Field | Description | Hard Copy Documents | ESI |
|-------|-------------|---------------------|-----|
| **AllCustodian** | This field shall reference the Name(s) of all Custodian(s) who were in possession of a de-duplicated Document. | -- | X |
| **AllPaths** | Identification of all file paths for de-duplicated Documents. | -- | X |
| **Application** | Indicates software application that generated the ESI item (e.g., Outlook, Word). | -- | X |
| **AttachCount** | Populated for parent records and indicates the number of attachments that constitute the whole family (BegAttach to | -- | X |

---

[3] Different ESI platforms assign different names to specific metadata therefore, the field names provided in Exhibit 1 may not reflect the field name for the metadata in Responding Party's ESI Platform. The metadata fields produced shall be governed by the information contained in the Description column of Exhibit 1.

| | | | |
|---|---|---|---|
| | EndAttach). | | |
| **AttachFileName** | For attachments only, the eDoc File Name, as read from the processing system. | -- | X |
| **Author** | Author field extracted from the Metadata of a non-Email. | -- | X |
| **BCC** | BCC or Blind Carbon Copy field extracted from an Email. | -- | X |
| **BegAttach** | Beginning Bates Number of the first Document in a Document Family range. Documents that are part of Document families (*i.e.*, containing parents and attachments), should receive a value. | -- | X |
| **BegBates** | Beginning Bates Number. | X | X |
| **CC** | CC or Carbon Copy field extracted from an Email. | -- | X |
| **Confidential** | Confidentiality designation if a Document has been so designated under the Protective Order (ECF No. ____); otherwise, blank. | X | X |

| Custodian | Name of the Custodian of the Document Produced. | X | X |
|---|---|---|---|
| DateAccessed | The last accessed date of the Document. | -- | X |
| DateCreated | Creation date of a file (mm/dd/yyyy format). | -- | X |
| DateModified | Last modification date (mm/dd/yyyy format). | -- | X |
| DateReceived | Received date of an Email (mm/dd/yyyy format). | -- | X |
| DateSent | Sent date of an Email (mm/dd/yyyy format). | -- | X |
| Doc_Properties[5] | Document exceptions and characteristics extracted during processing (e.g., hidden text, rows, columns, sheets, very hidden sheets, track changes, comments, speaker notes, encrypted/password-protected, etc.). Multiple values should be separated by semicolons. (e.g. | -- | X |

---

[5] May also be populated as separated metadata fields e.g. HASHIDDENSLIDES, HASSPEAKERNOTES, HASHIDDENCOLUMNS etc.)

| | Track Changes, Hidden Text; Hidden Rows or Columns; Hidden Sheet; Very Hidden Sheet; Comments; Speaker Notes; Encrypted) | | |
|---|---|---|---|
| **EndAttach** | Beginning or Ending Bates number of the last Document in attachment range in a Document Family range. Documents that are part of Document Families (*i.e.*, containing parents or attachments) should receive a value. | -- | X |
| **EndBates** | Ending Bates Number. | X | X |
| **CalendarEndDate** | End date and time of calendar appointments, voice messages, chats, text message conversations.  Format: MM/DD/YYYY HH:MM:SS. | -- | X |
| **FileExtension** | File extension of Document (.msg, .doc, .xls, etc.). | -- | X |
| **FileName** | Filename of the original source ESI. | -- | X |

| | | | |
|---|---|---|---|
| **FilePath** | The full path to the file in its original location or the email folder containing the item. | -- | X |
| **FileSize (in bytes)** | Size of the file in bytes. | X | X |
| **ForeignLanguage** | Specifies all languages found in the document to the best of the processing software's ability. | -- | X |
| **From** | From or Sender field extracted from an Email | -- | X |
| **FullText** | File path to full text/OCR File. | X | X |
| **HASHValue** | MD5 or SHA Hash value of the file. | -- | X |
| **Importance** | Email importance flag. | -- | X |
| **MessageStatus** | Status of messages/calls (*i.e.*, Read, Unread, Completed Call, Missed Call, etc.) | -- | X |
| **MessageID or ThreadID or ConversationIndex** | Unique identification number that indicates the email thread in which an email appears. For instance, the Outlook Message ID assigned by the Outlook mail server, if applicable. | -- | X |
| **NativeLink** | Path and filename to produced | -- | X |

| | | | |
|---|---|---|---|
| | Native Format file. | X | X |
| **PageCount** | The number of pages in the file. | X | X |
| **PaperDocument** | User-generated field that will indicate redactions by indicating "Y" where the Document is redacted. Otherwise, blank. | X | -- |
| **ProductionVolume** | Production volume name or number. | X | X |
| **ReceivedDate** | The received date of the message in the format MM/DD/YYYY. | -- | X |
| **ReceivedTime** | The received time of the message in the format HH:mm:ss | -- | X |
| **RecordType** | To indicate "Email," "Email Attachment," "Loose File," or "Hard Copy." | -- | X |
| **Redacted** | User-generated field that is populated "Y" where the Document is redacted. Otherwise, blank. | X | X |
| **RedactionBasis** | User-generated field that is populated "Privilege" where a | X | X |

| | Document has been redacted for privilege, and "PII" where a Document has been redacted on another, permissible basis. | | |
|---|---|---|---|
| **SentDate** | The sent date of the message in the format MM/DD/YYYY. | -- | X |
| **SourceParty** | The Responding Party. | X | X |
| **CalendarStartDate** | Start date and time of calendar appointments, voice messages, chats, text message conversations. Format: MM/DD/YYYY HH:MM:SS. | -- | X |
| **Subject** | Subject of message or subject of calendar entry. | -- | X |
| **TimeZone** | The time zone the Document was processed in. | -- | X |
| **TimeCreated** | Creation time of a file (hh:mm:ss format). | -- | X |
| **TimeModified** | Last modification time (hh:mm:ss format). | -- | X |
| **TimeReceived** | Received time of an Email (hh:mm:ss format). | -- | X |
| **TimeSent** | Time of an Email (hh:mm:ss | -- | X |

| | | | |
|---|---|---|---|
| | format). | | |
| **Title** | Title field extracted from the Metadata of a non-Email. | -- | X |
| **To** | To or Recipient field extracted from an Email or message level Document | -- | X |
| **TrackChanges** | (Y/N) Field for documents with track changes | -- | X |

## EXHIBIT 2: LOAD FILE FORMAT FOR ESI

1.      <u>Delimited Text File: A delimited text file (.DAT File) containing the fields listed in **Exhibit 1** should be provided. The delimiters for the file should be Concordance defaults:</u> Comma - ASCII character 20 (¶)

(a) Quote - ASCII character 254 (þ)

(b) Newline - ASCII character 174 (®)

2.      <u>Image Cross-Reference File (.opt)</u>: The Opticon cross-reference file is a comma delimited file consisting of six fields per line. There must be a line in the cross-reference file for every image in the database. The format for the file is as follows: ImageID,VolumeLabel,ImageFilePath,DocumentBreak,FolderBreak,BoxBreak,PageCount.

(a) ImageID: The unique designation that Concordance and Opticon use to identify an image. This should be the BegBates Number of the Document.

(b) VolumeLabel: The name of the volume.

(c) ImageFilePath: The full path to the image file.

(d) DocumentBreak: If this field contains the letter "Y," then this is the first page of a Document. If this field is blank, then this page is not the first page of a Document.

(e) FolderBreak: Leave empty.

(f) BoxBreak: Leave empty.

(g) PageCount: Number of pages in the Document.

3.      <u>Sample Data</u>:

(a) PROD00000001, VOL001,E:\100\ PROD00000001.TIF,Y,,2

(b) PROD00000002, VOL001,E:\100\ MT00000002.TIF,,,,

(c) PROD00000003, VOL001,E:\100\ MT00000003.TIF,Y,,4

(d) PROD00000004, VOL001,E:\100\ MT00000004.TIF,,,,

(e) PROD00000005, VOL001,E:\100\MT00000005.TIF,,,,

(f)  PROD00000006, VOL001,E:\100\MT00000006.TIF,,,