## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| IN RE: GRANULATED SUGAR ANTITRUST LITIGATION | Civil No. 24-md-03110 (JWB/DTS) |
| This Document Relates To:<br><br>All Class Actions | **PLAINTIFFS' OPPOSITION TO DEFENDANT LOUIS DREYFUS COMPANY LLC'S MOTION TO DISMISS PLAINTIFFS' MASTER CONSOLIDATED AND SHORT FORM COMPLAINTS** |

## <u>TABLE OF CONTENTS</u>

I.  INTRODUCTION ................................................................................................ 1

II.  PLAINTIFFS ADEQUATELY ALLEGE FACTS AS TO LDC. .......................... 2

    A.  PLAINTIFFS SUFFICIENTLY PLEAD LDC'S PARTICIPATION IN THE CONSPIRACY. ..................................................................................... 2

    B.  LEGAL STANDARD ................................................................................ 4

    C.  PLAINTIFFS PLAUSIBLY ALLEGE THAT LDC PARTICIPATED IN THE CONSPIRACY ................................................................................. 6

        1.  LDC CANNOT MISCONSTRUE AND DISMEMBER THE FACTUAL ALLEGATIONS ............................................................ 6

        2.  LDC CANNOT INTRODUCE EVIDENCE OUTSIDE OF THE COMPLAINTS TO DISPUTE PLAINTIFFS' ALLEGATIONS. ................................................................... 9

III.  PERSONAL JURISDICTION ................................................................................. 9

    A.  LEGAL STANDARD .............................................................................. 11

    B.  THE TRANSFEROR COURTS HAVE SPECIFIC JURISDICTION OVER LDC'S SUBSIDIARY, IMPERIAL ................................................. 11

    C.  IMPERIAL'S JURISDICTIONAL CONTACTS SHOULD BE IMPUTED TO LDC THROUGH THE AGENCY OR ALTER EGO JURISDICTION DOCTRINE ...................................................................... 17

IV.  SHOULD THE COURT DISMISS, PLAINTIFFS REQUEST LEAVE TO AMEND. ........................................................................................................ 20

V.  CONCLUSION ............................................................................................... 20

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Allied Dynamics Corp. v. Kennametal, Inc.*,
  965 F. Supp. 2d 276 (E.D.N.Y. 2013) .......................................................................... 13

*Barone v. Rich Bros. Interstate Display Fireworks Co.*,
  25 F.3d 610 (8th Cir. 1994) ........................................................................... 10, 15, 16

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007) ........................................................................................................ 1

*Braden v. Wal-Mart Stores, Inc.*,
  588 F.3d 585 (8th Cir. 2009) .......................................................................................... 7

*In re Broiler Chicken Antitrust Litig.*,
  290 F. Supp. 3d 772 (N.D. Ill. 2017) ............................................................................. 8

*In re Cattle Antitrust Litig.*,
  No. CV 19-1129 (JRT/HB), 2021 WL 7757881
  (D. Minn. Sept. 14, 2021) ............................................................................................... 6

*Coen v. Coen*,
  509 F.3d 900 (8th Cir. 2007) ........................................................................................ 11

*In re Dairy Farmers of Am., Inc. Cheese Antitrust Litig.*,
  767 F. Supp. 2d 880 (N.D. Ill. 2011) ............................................................................. 7

*Dakota Indus., Inc. v. Dakota Sportswear, Inc.*,
  946 F.2d 1384 (8th Cir. 1991) ...................................................................................... 11

*Daniel J. Hartwig Assocs., Inc. v. Kanner*,
  913 F.2d 1213 (7th Cir. 1990) ...................................................................................... 12

*EcoWater Sys., LLC v. Hague Quality Water Int'l*,
  No. CIV.06 3134 JNE/SRN, 2007 WL 1725761
  (D. Minn. June 13, 2007) .............................................................................................. 15

*Five Smiths, Inc. v. Nat'l Football League Players Ass'n*,
  788 F. Supp. 1042 (D. Minn. 1992) ................................................................................ 5

*In re Fragrance Direct Purchaser Antitrust Litig.*,
  No. 2:23-02174, 2025 WL 572827 (D.N.J. Feb. 21, 2025) .......................................... 20

*In re Fragrance Direct Purchaser Antitrust Litig.*,
No. 2:23-02174, 2025 WL 579639 (D.N.J. Feb. 21, 2025) ........................................ 6

*Fusco v. Xerox Corp.*,
676 F.2d 332 (8th Cir. 1982) ...................................... 5

*Gelboim v. Bank of Am. Corp.*,
823 F.3d 759 (2d Cir. 2016) ...................................... 5

*In re Genetically Modified Rice Litig.*,
576 F. Supp. 2d 1063 (E.D. Mo. 2008) ........................................ 17, 18, 19

*In re Group Health Plan Litig.*,
709 F. Supp. 3d 707 (D. Minn. 2023) ............................... 4

*Hosp. Bldg. Co. v. Trustees of Rex Hosp.*,
425 U.S. 738 (1976) ...................................... 7

*Internet Sols. Corp. v. Marshall*,
39 So.3d 1201 (Fla. 2010) ...................................... 13

*Jensen v. Minn. Bd. of Med. Prac.*,
No. CV 23-1689, 2025 WL 965091 (D. Minn. Mar. 31, 2025) .................................... 5

*Melgarejo v. Pycsa Panama, S.A.*,
537 F. App'x 852 (11th Cir. 2013) ...................................... 12

*Michigan Elec. Emps. Pension Fund v. Encompass Elec. & Data, Inc.*,
556 F. Supp. 2d 746 (W.D. Mich. 2008) ................................... 18

*Northrup King Co. v. Compania Productora Semillas
Algodoneras Selectas, S.A.*,
51 F.3d 1383 (8th Cir. 1995) ...................................... 12, 13

*Northwest Corp. v. Gabriel Mfg. Co.*,
No. 95 C 2004, 1996 WL 73622 (N.D. Ill. Feb. 16, 1996).......................... 15

*Poller v. Columbia Broadcasting Sys., Inc.*,
368 U.S. 464 (1962) ...................................... 7

*In re Pork Antitrust Litig.*,
495 F. Supp. 3d 753 (D. Minn. 2020) ...................................... 6

*In re Pork Antitrust Litig.*,
No. 18-cv-1776, 2025 WL 964545 (D. Minn. Mar. 31, 2025) .................................... 20

*Porous Media Corp. v. Pall Corp.*,
    186 F.3d 1077 (8th Cir. 1999) ................................................................. 5, 9

*Quick Point, Inc. v. Excel Eng'g, Inc.*,
    No. 4:08-CV-00797-ERW, 2009 WL 330837
    (E.D. Mo. Feb. 9, 2009) ........................................................................... 15

*Raymedica, Inc. v. Stoy*,
    No. CIV.01-1841 JRT/FLN, 2002 WL 31185916
    (D. Minn. Sept. 30, 2002) ................................................................... 12, 14

*Republican Party of N. Carolina v. Martin*,
    980 F.2d 943 (4th Cir. 1992) ...................................................................... 6

*ResCap Liquidating Tr. v. LendingTree, LLC*,
    No. 19-CV-2360 (SRN/HB), 2020 WL 1317719
    (D. Minn. Mar. 20, 2020) ......................................................................... 18

*Ryan v. Ryan*,
    889 F.3d 499 (8th Cir. 2018) ...................................................................... 5

*Stanton v. St. Jude Med., Inc.*,
    340 F.3d 690 (8th Cir. 2003) .................................................................... 15

*Stanton v. St. Jude Med., Inc.*,
    No. CIV. 02-446(JRT), 2002 WL 1457452
    (D. Minn. July 2, 2002) ............................................................................ 10

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
    586 F. Supp. 2d 1109 (N.D. Cal. 2008) ...................................................... 5

*Watkins v. Algoa Corr. Facility Mo. Dep't of Corr.*,
    No. 2:21-cv-04166-NKL, 2022 WL 452476
    (W.D. Mo. Feb. 14, 2022) ........................................................................... 8

*Willis Elec. Co. v. Polygroup Macau Ltd. (BVI)*,
    437 F. Supp. 3d 693 (D. Minn. 2020) ....................................................... 11

**Statutes**

15 U.S.C. § 18 ................................................................................................ 4

Clayton Act § 7 ............................................................................................. 4

Fla. Stat. § 48.193(1)(a)(6) ........................................................................ 13

iv

Sherman Act ................................................................................................................... 6, 10

Wis. Stat. § 801.05(4) ...................................................................................................... 12

**Other Authorities**

Fed. R. Civ. P. 8(a) ........................................................................................................... 2

Fed. R. Civ. P. 12(b)(2) ............................................................................................... 2, 10

Fed. R. Civ. P. 12(b)(6) ........................................................................................... *passim*

Fed. R. Civ. P. 15(a)(2) ................................................................................................... 20

Pursuant to Pretrial Order No. 7 (ECF No. 315), Direct Purchaser Plaintiffs, Commercial Indirect Purchaser Plaintiffs, and Consumer Indirect Purchaser Plaintiffs (collectively, "Plaintiffs"), respectfully submit this Memorandum of Law in Opposition to Defendant Louis Dreyfus Company LLC's ("LDC") Motion to Dismiss Plaintiffs' Master Consolidated and Short Form Complaints (ECF No. 382) ("LDC Mem.").

## I.    INTRODUCTION

Plaintiffs in this consolidated litigation allege that Defendants engaged in a conspiracy to artificially inflate Granulated Sugar prices in the United States by using standardized pricing formulas and covertly exchanging competitively sensitive, non-public information. As detailed in Plaintiffs' Joint Opposition ("Joint Opposition") to Defendants' Joint Motion to Dismiss ("Joint Motion"), Defendants' unlawful agreement is demonstrated by both substantial direct evidence—in the form of Defendants' own words, emails, and internal communications—as well as parallel conduct and plus factors from which the Court may infer a conspiracy.

In its individual motion to dismiss, LDC claims that "there is not a single factual allegation, in any of the Complaints, connecting LDC or its subsidiary Imperial Sugar Company ("Imperial") to the conspiracy alleged here." LDC Mem. at 1. Like Defendants' Joint Motion, LDC's motion contains two overarching defects: (1) it ignores the well-pleaded factual allegations in the Complaints that "raise a reasonable expectation that discovery will reveal evidence of illegal agreement" between LDC and Imperial and the other Defendants, *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007); and (2) it urges the Court to draw inferences in LDC's favor and relies on information outside of the

Complaints to dispute those well-pleaded factual allegations, which the Court may not do at the dismissal stage. As explained in more detail below, LDC is a major player in the Granulated Sugar market, and Plaintiffs plausibly allege that LDC actively participated in the conspiracy by sharing competitively sensitive information with its competitors and by agreeing to standardized pricing to artificially inflate Granulated Sugar prices.

LDC also argues that if the federal claims against it are dismissed, the state law claims must also be dismissed under Rule 12(b)(6) and for lack of personal jurisdiction under Rule 12(b)(2). But Plaintiffs' allegations are sufficient to plausibly allege that LDC and Imperial participated in the conspiracy, and Plaintiffs make a prima facie showing of personal jurisdiction in the transferor forums, which is all that is required at this stage of the litigation.

Accordingly, Plaintiffs have satisfied their pleading burden under Rule 8(a), and LDC's dismissal motion should be denied in its entirety.

## II. PLAINTIFFS ADEQUATELY ALLEGE FACTS AS TO LDC.

### A. Plaintiffs Sufficiently Plead LDC's Participation in the Conspiracy.

Plaintiffs allege sufficient facts to tie LDC and its subsidiary Imperial to Defendants' conspiracy. The Master Complaint alleges that beginning in January 2019, Defendants, including LDC and Imperial, conspired to artificially inflate Granulated Sugar prices in the United States through: (1) the use of agreed-upon standardized pricing formulas; and (2) the exchange of detailed, competitively sensitive, non-public information about Granulated Sugar prices, capacity, sales volume, supply, and demand. MC ¶¶ 63, 130, 239.

2

LDC is a leading trader and merchant of sugar; importing and exporting sugar throughout the world, including the United States. *Id.* ¶ 30. In 2012, it purchased Imperial, which provided LDC with a cane sugar refinery in the United States. *Id.* Allegations in the Master Complaint indicate that while Louis Dreyfus owned Imperial, employees of both entities were involved in the exchange of competitively sensitive pricing information with other Defendants. *Id.* ¶¶ 89, 91, 114. Plaintiffs allege that the conspiracy to exchange competitively sensitive information included price signaling among Defendants and communications made through third parties, including Commodity. *Id.* ¶ 81. Plaintiffs further allege that employees of other Defendants were familiar with Imperial's pricing formula that relied upon No. 16 prices. *Id.* ¶ 133. Imperial had significant control over the price it charged; it was not a "price-taker" and ensured that it did not undercut competitors to incentivize them to lower prices. *Id.* ¶¶ 131-33, 164. Imperial also had multiple opportunities to collude with competitors, including through membership in the Sugar Association and its attendance at the International Sweetener Colloquium, after which many of the price increases during the class period occurred. *Id.* ¶¶ 91, 130-35, 140-42, 178-82.

The Master Complaint details the close relationship between United, LDC, Imperial, and ASR/Domino. ASR/Domino's Mark Olson considered Imperial's CEO a "trusted friend," and the two would share price information. *Id.* ¶ 165. Beginning in 2019, United and LDC began to consider how United could acquire Imperial from LDC. *Id.* ¶ 61. Eventually, the companies determined that the acquisition should occur through U.S. Sugar and the companies entered an asset purchase agreement whereby a wholly-owned

subsidiary of U.S. Sugar called U.S. Sugar Savannah would acquire Imperial. *Id.* News of the acquisition emerged in March 2021. *Id.* ¶ 105. At that time, the top three marketers of sugar controlled 65% of the market, and Imperial had an additional 7.6% of the sugar production capacity in the United States. *Id.* ¶¶ 59 (Fig. 1), 170. Employees at Domino recognized the benefits of the merger, after which only three companies would "account for 75% of the market," with two players controlling close to 65%. *Id.* ¶¶ 58, 105, 128.

Not surprisingly, the DOJ sued to block the proposed merger under Clayton Act § 7, alleging that it could substantially lessen competition in the Southeast United States. *Id.* ¶ 62; 15 U.S.C. § 18 (prohibiting acquisitions where the effect "may be substantially to lessen competition"). To show that U.S. Sugar's acquisition would lessen competition, the DOJ necessarily alleged that U.S. Sugar and Imperial were competitors.

As with most conspiracies, the exchanges of company-specific, confidential information were not publicly accessible. *Id.* ¶ 63. The district court in the merger case was not convinced by the DOJ's limitation of the relevant geographic market to the Southeast and denied the government's efforts to permanently enjoin the deal. *Id.* ¶ 62. The DOJ appealed, and some of the appellate exhibits were made public on or about November 1, 2022. *Id.* ¶ 224. With access to direct evidence of the conspiracy, combined with information arising from Plaintiffs' counsel's investigation, Plaintiffs filed the underlying complaints that were consolidated and transferred to this Court.

### B.    Legal Standard

On a Rule 12(b)(6) motion the allegations are taken as true and viewed in the light most favorable to Plaintiffs. *In re Group Health Plan Litig.*, 709 F. Supp. 3d 707, 712 (D.

Minn. 2023) (Blackwell, J.). "To survive a motion to dismiss, a complaint must contain enough factual content to state a claim that is plausible on its face." *Jensen v. Minn. Bd. of Med. Prac.*, No. CV 23-1689, 2025 WL 965091, at *1 (D. Minn. Mar. 31, 2025) (Blackwell, J.). "'A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Id.* at *7 (quoting *Ashcraft v. Iqbal*, 556 U.S. 662, 678 (2009)). "The choice between two plausible inferences that may be drawn from factual allegations is not a choice to be made by the court on a Rule 12(b)(6) motion." *Gelboim v. Bank of Am. Corp.*, 823 F.3d 759, 781 (2d Cir. 2016).

"[I]n antitrust cases, where the proof is largely in the control of the defendant, 'dismissals prior to giving the plaintiff ample opportunity for discovery should be granted very sparingly.'" *Fusco v. Xerox Corp.*, 676 F.2d 332, 337 n.7 (8th Cir. 1982) (internal citations omitted). In the context of an antitrust conspiracy, the complaint must include a statement of "the facts constituting the conspiracy, its object and accomplishment." *Five Smiths, Inc. v. Nat'l Football League Players Ass'n*, 788 F. Supp. 1042, 1048 (D. Minn. 1992) (quoting *Fusco*, 676 F.2d at 337 n.7). Moreover, a complaint need not contain detailed defendant-by-defendant allegations. *See In re TFT-LCD (Flat Panel) Antitrust Litig.*, 586 F. Supp. 2d 1109, 1117 (N.D. Cal. 2008).

Further, the Court is generally limited to an examination of the plaintiffs' complaint and its exhibits. *Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999). In general, on a Rule 12(b)(6) motion, a court may only consider documents incorporated by reference if the contents form the basis of a claim. *See, e.g., Ryan v. Ryan*, 889 F.3d

499, 505 (8th Cir. 2018) (affirming decision to consider stock valuation document where "it was through [that] document that [plaintiff] determined her stock's purchase price"). "A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N. Carolina v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992).

### C.    Plaintiffs Plausibly Allege That LDC Participated in the Conspiracy.

The Complaints specifically allege that LDC and Imperial participated in the conspiracy and shared competitively sensitive information for the purpose of artificially raising, fixing, maintaining, or stabilizing Granulated Sugar prices. MC ¶ 63. These allegations against LDC are sufficient for Plaintiffs' federal and state law claims.[1] LDC improperly misconstrues and dissects the allegations and introduces evidence from outside the Master Complaint in an improper attempt to dispute facts.

#### 1.    LDC Cannot Misconstrue and Dismember the Factual Allegations.

Faced with overwhelming direct evidence of a conspiracy, LDC improperly attempts to limit the scope of the conspiracy to only those exchanges of information through Wistisen and Commodity and claims there are no allegations that implicate Imperial or LDC in those exchanges. LDC Mem. at 5. The Master Complaint is not so

---

[1] Plaintiffs' state law claims against LDC largely track their claims under federal law. *See, e.g.*, *In re Pork Antitrust Litig.*, 495 F. Supp. 3d 753, 802 (D. Minn. 2020) (declining to dismiss state law claims not subject to state-specific arguments where Sherman Act claims were adequately alleged); *In re Cattle Antitrust Litig.*, No. CV 19-1129 (JRT/HB), 2021 WL 7757881, at *18 (D. Minn. Sept. 14, 2021) (same); *In re Fragrance Direct Purchaser Antitrust Litig.*, No. 2:23-02174, 2025 WL 579639, at *17 (D.N.J. Feb. 21, 2025) (same).

limited. Plaintiffs allege that the exchange of competitively sensitive information occurred through price signaling and third parties beyond Wistisen and Commodity. *See* MC ¶¶ 81, 89, 114, 133. Plaintiffs cannot be expected to possess all evidence implicating Imperial and LDC in the conspiracy at this stage. *See, e.g.*, *Hosp. Bldg. Co. v. Trustees of Rex Hosp.*, 425 U.S. 738, 746 (1976) (observing the truism that "in antitrust cases . . . 'the proof is largely in the hands of the alleged conspirators'") (quoting *Poller v. Columbia Broadcasting Sys., Inc.*, 368 U.S. 464, 473 (1962)). Plaintiffs do, in fact, allege that Wistisen shared Imperial's confidential pricing information, thus implicating LDC in the conspiracy. *Id.* ¶ 114. LDC isolates two allegations regarding exchanges of information involving LDC and Imperial and argues that these allegations should be disregarded because they are disconnected from the alleged conspiracy. LDC Mem. at 6-7. Plaintiffs' allegations may not be so dismembered. *See Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009) ("complaint[s] should be read as a whole, not parsed piece by piece to determine whether each allegation, in isolation, is plausible"); *see also In re Dairy Farmers of Am., Inc. Cheese Antitrust Litig.*, 767 F. Supp. 2d 880, 898 (N.D. Ill. 2011) (denying motion to dismiss where "individual defendants minimize[d] the allegations against them in the complaint").

Likewise, in the context of the entire Master Complaint, allegations regarding Imperial's use of a benchmark and consideration of other firms' pricing support the plausibility of the conspiracy. As LDC admits, the Master Complaint specifically includes allegations of exchanges of information regarding the use of No. 16 prices as a benchmark and knowledge among the Defendants that Imperial's pricing formula relied upon such

prices. *See* LDC Mem. at 6 (citing MC ¶¶ 130-33). The well-pleaded allegations also demonstrate that Imperial incorporated information about its competitors into its pricing decisions to keep Granulated Sugar prices high. *Id.* ¶¶ 133, 164.

LDC argues that using a common price formula and looking at competitors' prices do *not necessarily* indicate an antitrust conspiracy, but "the Supreme Court did not intend for courts to weigh the plausibility of a plaintiff's conspiracy claims against the plausibility of the defendants' alternative explanation for their conduct." *In re Broiler Chicken Antitrust Litig.*, 290 F. Supp. 3d 772, 801 (N.D. Ill. 2017). Plaintiffs plausibly allege that Imperial and other Producer Defendants agreed to use standardized formulas to artificially inflate Granulated Sugar prices.

Finally, LDC incorrectly disregards Plaintiffs' allegations against all Defendants that implicate LDC and Imperial. That "Defendants" or "Producer Defendants" are alleged in the Complaint to have committed the misconduct "can provide every defendant with fair notice of the claims against them and the grounds upon which they rest because the allegations indicate that each defendant could be liable for any of the allegations in the complaint." *Watkins v. Algoa Corr. Facility Mo. Dep't of Corr.*, No. 2:21-cv-04166-NKL, 2022 WL 452476, at *2 (W.D. Mo. Feb. 14, 2022) (citing *Ash v. Anderson Merchandisers, LLC*, 799 F.3d 957, 961-62 (8th Cir. 2015)). Thus, for instance, in addition to evidence of information sharing, the various plus factors that Plaintiffs have alleged apply equally to LDC and Imperial including: (1) high industry concentration, (2) high barriers to entry, (3) inelastic demand, (4) vertical integration, (5) opportunities to collude, (6) the fungible, commodity nature of Granulated Sugar, and (7) a history of antitrust violations by sugar

manufacturers. MC ¶¶ 168-94. The only plus factor that does not apply to Imperial is the high degree of vertical integration. *Id.* ¶ 177.

### 2. LDC Cannot Introduce Evidence Outside of the Complaints to Dispute Plaintiffs' Allegations.

In an apparent attempt to neutralize Plaintiffs' well-pleaded allegations, LDC manufactures a premature factual dispute and improperly introduces evidence from outside the Complaints. First, LDC disputes that Jim Evans was a National Sales Manager at LDC as alleged in Master Complaint (MC ¶ 89), citing a case status letter filed by the DOJ in *United States v. U.S. Sugar,* Case No. 1:21-cv-01644-MN (D. Del.) ("Merger Trial"). LDC Mem. at 5 n.3. Contesting that issue is not appropriate at the Rule 12(b)(6) stage. LDC also argues that because Plaintiffs cited the Proposed Findings of Fact ("PFF") from the Merger Trial in three out of 245 numbered allegations, Plaintiffs necessarily embraced the document as part of the pleadings. LDC Mem. at 8 & n.5.[2] Contrary to LDC's assertion, Plaintiffs' claims are not based upon the PFF. *Id.* at 3. Instead, Plaintiffs relied substantially on the ***evidence*** used in the Merger Trial. The use of select quotes in the PFF does not open the door to use of the entire document for a Rule 12(b)(6) motion. *See Porous*, 186 F.3d at 1079.

### III. PERSONAL JURISDICTION

LDC concedes that if Plaintiffs' Sherman Act claims are not dismissed, it is subject to personal jurisdiction. Indeed, LDC asserts only that Plaintiffs' "*state law claims*" should

---

[2] While LDC cites MC ¶¶ 86, 89, 163-65, 224 (LDC Mem. at 8 n.5), the Master Complaint references the PFF only in paragraphs 163, 164, and 224.

be dismissed for lack of personal jurisdiction in the transferor federal district courts of Arizona, California, Florida, Illinois, New York, North Carolina, and Wisconsin (the "Forum States")[3] "*[i]n the event that Plaintiffs' Sherman Act claims are dismissed.*" LDC Mem. at 14.[4] LDC's argument that those courts lack personal jurisdiction does not withstand scrutiny.[5]

---

[3] Although LDC mentions Minnesota in the body of its personal jurisdiction argument, it clarifies in a footnote that its Rule 12(b)(2) motion to dismiss applies to Forum States "other than Minnesota." LDC Mem. at 14 n.10. Further, LDC, in its penultimate paragraph, omits Minnesota from the states for which it seeks 12(b)(2) dismissal. LDC Mem. at 16. Thus, LDC has waived any personal jurisdiction challenge concerning the underlying Minnesota cases. In any event, the underlying Minnesota courts retain personal jurisdiction over LDC because LDC and Imperial enjoy the economic benefit of a close-knit distribution network, as discussed above, thus satisfying the purposeful availment test. *See Barone v. Rich Bros. Interstate Display Fireworks Co.*, 25 F.3d 610, 613 (8th Cir. 1994).

[4] *See Stanton v. St. Jude Med., Inc.*, No. CIV. 02-446(JRT), 2002 WL 1457452, at *1 (D. Minn. July 2, 2002). LDC contends in a footnote that "only certain plaintiffs have a Short Form Complaint [in the underlying case dockets]." LDC Mem. at 14 n.10. LDC is mistaken. All Plaintiffs filed their respective Short-Form Complaints in each of their underlying member cases on March 14, 2025, as reflected in each case's respective docket on PACER.

[5] Notwithstanding the arguments concerning imputed personal jurisdiction below, Plaintiffs' allegations against LDC alone are sufficient to establish personal jurisdiction in the underlying cases. *See* MC ¶ 231 ("Defendants are direct competitors in the Granulated Sugar market throughout the United States."); Comm. Complaint ¶¶ 4, 5, 6, 9, 10, 15, 17, 19; Comm. Complaint Add. at 2-3, 41-42, 95 (Arizona), 3-4, 42-43, 79, 95 (California), 80-81, 98 (Florida), 10-11, 49-50, 83, 99 (Illinois), 26-27, 65, 107 (New York), 27-28, 66-67, 88-89, 108 (North Carolina), 38, 77, 113 (Wisconsin); Cons. Complaint App'x A; *id.* App'x B at 1-2 (Arizona), 2-3 (California), 6-7 (Illinois), 14-15 (New York), 15-16 (North Carolina), 21 (Wisconsin); *id.* App'x C at 4 (California), 7 (Florida), 18 (New York), 20 (North Carolina).

## A.    Legal Standard

To defeat a motion to dismiss for lack of personal jurisdiction, the nonmoving party need only make a prima facie showing of jurisdiction. *Dakota Indus., Inc. v. Dakota Sportswear, Inc.*, 946 F.2d 1384, 1387 (8th Cir. 1991). "While it is true that the plaintiff bears the ultimate burden of proof on this issue, jurisdiction need not be proved by a preponderance of the evidence until trial or until the court holds an evidentiary hearing." *Id.* Rather, "[t]he evidentiary showing required at the prima facie stage is minimal." *Willis Elec. Co. v. Polygroup Macau Ltd. (BVI)*, 437 F. Supp. 3d 693, 702 (D. Minn. 2020). In making its prima facie showing, a plaintiff is not confined to "the pleadings alone" and may also rely on "affidavits and exhibits." *Coen v. Coen*, 509 F.3d 900, 904-05 (8th Cir. 2007). "If the district court does not hold a[n evidentiary] hearing and instead relies on pleadings and affidavits . . . the court must look at the facts in the light most favorable to the nonmoving party and resolve all factual conflicts in favor of that party." *Dakota Indus.*, 946 F.2d at 1387 (internal citation omitted).

## B.    The Transferor Courts Have Specific Jurisdiction Over LDC's Subsidiary, Imperial.

The Court must first determine whether the transferor courts have personal jurisdiction over LDC's subsidiary, Imperial. Plaintiffs satisfy the low bar of a prima facie showing of personal jurisdiction based on LDC's control of Imperial from 2012 to 2022. MC ¶ 30. Whether a court has personal jurisdiction over a non-resident involves "a two-step analysis." *Northrup King Co. v. Compania Productora Semillas Algodoneras Selectas, S.A.*, 51 F.3d 1383, 1387 (8th Cir. 1995). First, the facts must satisfy the forum state's long-

arm statute, and second, the exercise of personal jurisdiction over the defendant must not violate due process. *Id.* As LDC recognizes, the long-arm statutes of Arizona, California, Illinois, and North Carolina are coextensive with federal due process.[6] The same is true of Wisconsin.[7] Thus, with respect to these five states, the only question "is whether due process permits the exercise of personal jurisdiction over defendants." *Raymedica, Inc. v. Stoy*, No. CIV.01-1841 JRT/FLN, 2002 WL 31185916, at *2 (D. Minn. Sept. 30, 2002).

Although "[t]he Florida Supreme Court has explained that determining whether jurisdiction is appropriate under Florida's Long-Arm Statute is a separate inquiry from determining whether exercising personal jurisdiction comports with the Due Process Clause," *Melgarejo v. Pycsa Panama, S.A.*, 537 F. App'x 852, 859 (11th Cir. 2013) (citing *Internet Sols. Corp. v. Marshall*, 39 So.3d 1201, 1207 (Fla. 2010)), it also stated that the Due Process Clause "imposes a more restrictive requirement" than does Florida's Long-Arm Statute, *Internet Sols.*, 39 So.3d at 1207.[8]

_____

[6] *See* LDC Mem. at 15 (collecting cases).

[7] *Daniel J. Hartwig Assocs., Inc. v. Kanner*, 913 F.2d 1213, 1217 (7th Cir. 1990) ("[T]he Wisconsin statute is intended to reach to the fullest extent allowed under the due process clause. Thus, if personal jurisdiction over [defendant] is consistent with due process, it was intended under the long-arm statute.") (citations omitted). LDC appears to disagree. But as LDC recognizes, Wisconsin's long-arm statute provides for jurisdiction "[s]olicitation or service activities were carried on within this state by or on behalf of the defendant" or "[p]roducts, materials or things processed, serviced, or manufactured by the defendant anywhere were used or consumed within this state in the ordinary course of trade." Wis. Stat. § 801.05(4). For the reasons discussed below, Imperial's sales to six corporate customers in Wisconsin, likely generating $2.1 million in yearly revenue, satisfy this requirement.

[8] Florida's long-arm statute provides for jurisdiction where "[t]he defendant was engaged in solicitation or service activities within th[e] state" or "[p]roducts, materials, or things processed, serviced, or manufactured by the defendant anywhere were used or

The same is true for New York because "'proof of one transaction, or a single act, in New York' has been deemed 'sufficient to invoke long-arm jurisdiction even though the defendant never enters New York,'" which is also a less exacting standard than the due process requirement. *Allied Dynamics Corp. v. Kennametal, Inc.*, 965 F. Supp. 2d 276, 293 (E.D.N.Y. 2013) (quoting *Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 248 (2d Cir. 2007)). Accordingly, Plaintiffs need only demonstrate that the evidence establishing personal jurisdiction over LDC comports with due process.

Due process allows a court to exercise personal jurisdiction over a nonresident defendant if the defendant has sufficient "minimum contacts" with the forum state, such that the exercise would be "consistent with traditional notions of fair play and substantial justice." *Northrup King*, 51 F.3d at 1387. This inquiry's focus is whether the nonresident defendant "has 'purposefully directed' his activities at residents of the forum . . . and the litigation results from alleged injuries that 'arise out of or relate to' those activities." *Id.* (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985)).[9]

---

consumed within th[e] state in the ordinary course of commerce, trade, or use."). *See* Fla. Stat. § 48.193(1)(a)(6). Accordingly, for the reasons discussed below, Imperial's sales to twenty-eight corporate customers in Florida, likely generating $35 million in yearly revenue, satisfy Florida's long-arm statute.

[9] In the Eighth Circuit, the inquiry is further guided by five factors: (1) the nature and quality of the contacts with the forum state; (2) the quantity of the contacts with the forum state; (3) the relation of the cause of action to the contacts; (4) the interest of the forum state in providing a forum for its residents; and (5) the convenience of the parties. *Land–O–Nod Co. v. Bassett Furniture Indus., Inc.*, 708 F.2d 1338, 1340 (8th Cir. 1983). The first three factors are most important, and the last two factors are secondary. *Digi-Tel Holdings, Inc. v. Proteq Telecomms. (PTE), Ltd.*, 89 F.3d 519, 523 (8th Cir. 1996).

Here, evidence establishes that Imperial purposefully directed its activities at the Forum States. Imperial's CEO, Mike Gorrell, testified that Imperial sold sugar "all over the country."[10] According to an LDC management presentation, Imperial achieved these sales through "[c]onstant customer dialogue and personal visits."[11] Likewise, Imperial's 2021 sales data demonstrates that it made sales to multiple corporate customers in the Forum States, generating substantial revenues:[12]

| State | Number of Corporate Customers | Total Sales Share | Estimated Revenue[13] | Rank Among States and D.C. |
|-------|------------------------------|-------------------|----------------------|----------------------------|
| AZ | 3 | 0.1% | $700,000 | 32nd |
| CA | 8 | 0.1% | $700,000 | 30th |
| FL | 28 | 5% | $35,000,000 | 8th |
| IL | 16 | 1% | $7,000,000 | 17th |
| NY | 4 | 1% | $7,000,000 | 18th |
| NC | 46 | 15% | $105,000,000 | 2nd |
| WI | 6 | 0.3% | $2,100,000 | 25th |

---

[10] Declaration of Heidi M. Silton in Support of Plaintiffs' Opposition to Individual Defendant Louis Dreyfus Company's Motion to Dismiss Plaintiffs' Master Consolidated and Short Form Complaints ("Silton Decl."), Ex. A (excerpts from DOJ Appellate Record, Vol. II, at JA755).

[11] Silton Decl., Ex. E (excerpts from DOJ Appellate Record Vol. IV, at JA 1422).

[12] Silton Decl., Ex. B (excerpts from DOJ Appellate Record Vol. VI, at JA1748-49).

[13] According to a DOJ press release, Imperial's 2020 revenues were over $700 million. Silton Decl., Ex. C (Press Release, DOJ Office of Public Affairs, at 3). The figures in this column were derived by applying each forum state's Total Sales Share to that $700 million total revenue figure. In the DOJ merger action, LDC produced documents establishing its 2021 revenue; however, the relevant figures are redacted from the publicly available documents. *See* Silton Decl., Ex. D (excerpts from DOJ Appellate Record Vol. III, at JA1183, '185, '199). Should LDC dispute Plaintiffs' calculation of the revenue attributable to Imperial's sales in the forum states, Plaintiffs request that the Court permit the parties to conduct limited jurisdictional discovery to establish those and other relevant facts.

Courts in this Circuit and elsewhere have concluded that sales of this volume sufficiently support a conclusion of purposeful direction and, thus, the minimum contacts necessary for specific personal jurisdiction. *See EcoWater Sys., LLC v. Hague Quality Water Int'l*, No. CIV.06 3134 JNE/SRN, 2007 WL 1725761, at *3 (D. Minn. June 13, 2007) (holding the defendant had sufficient minimum contacts in the forum state where its sales of the products at issue totaled $50,000 annually); *Northwest Corp. v. Gabriel Mfg. Co.*, No. 95 C 2004, 1996 WL 73622, at *3 (N.D. Ill. Feb. 16, 1996) (holding sales "rang[ing] from $90,000 to $125,000 per year" are adequate for general personal jurisdiction); *Quick Point, Inc. v. Excel Eng'g, Inc.*, No. 4:08-CV-00797-ERW, 2009 WL 330837, at *5 (E.D. Mo. Feb. 9, 2009) (holding that "sales need not be substantial" and that three sales representing less than six percent of the defendant's sales of the product in question sufficed to confer specific personal jurisdiction). Under these circumstances, Imperial's contacts with the Forum States are not "random, fortuitous or attenuated" such that Imperial could not reasonably anticipate being haled into court in those states. *See EcoWater*, 2007 WL 1725761, at *4.

In addition, personal jurisdiction is satisfied under the stream of commerce doctrine. "Personal jurisdiction may be found where a seller uses a distribution network to deliver its products into the stream of commerce with the expectation that the products will be purchased by consumers in the forum state." *Stanton v. St. Jude Med., Inc.*, 340 F.3d 690, 694 (8th Cir. 2003). In *Barone v. Rich Bros. Interstate Display Fireworks*, 25 F.3d 610, 611-13 (8th Cir. 1994), the Eighth Circuit held that although the manufacturer had no office, agent, or distributor in Nebraska, did not advertise in Nebraska, and did not send

products into Nebraska, it was subject to personal jurisdiction because the manufacturer strategically selected a network of distributors that could reach much of the United States. Similarly, Imperial's customers included Costco, Walmart, and US Food Service,[14] all of which have national reach, and a significant presence in the Forum States.[15] "[W]hen a seller . . . heads a distribution network, thus realizing the much greater economic benefit of multiple sales in distant forums . . . its activities . . . may satisfy the purposeful availment test." *Id.* at 613. Thus, where LDC has strategically selected a distribution channel capable of reaching the Forum States, it cannot plead ignorance that Imperial's Granulated Sugar was sold in those states.

As discussed above, there is sufficient evidence to conclude that Imperial purposefully directed its business activities towards the Forum States such that the exercise of specific personal jurisdiction over Imperial by courts in those states would not violate due process.[16]

---

[14] Silton Decl., Ex. E (excerpts from DOJ Appellate Record, Vol. IV at JA1421).

[15] *See* https://www.costco.com/WarehouseListByStateDisplayView; https://www.walmart.com/store-directory; https://www.usfoods.com/locations.html.

[16] LDC cannot seriously contest the additional requirement for specific personal jurisdiction—that Plaintiffs' claims arose from Imperial's sales of Granulated Sugar into the forum states. *See, e.g.*, MC ¶ 13 ("Among the victims of the conspiracy are Consumer Indirect Purchasers . . ., Commercial Indirect Purchasers[,] . . . and Direct Purchasers, all of whom paid more for Granulated Sugar during the Class Period than they would have paid in a competitive market but for the unlawful conspiracy and acts in furtherance alleged herein.").

### C.    Imperial's Jurisdictional Contacts Should Be Imputed to LDC Through the Agency or Alter Ego Jurisdiction Doctrine.

There is also sufficient evidence to conclude that, Plaintiffs establish a prima facie case for personal jurisdiction over LDC based on the doctrine of corporate agency or alter ego jurisdiction.

"[W]here a subsidiary's 'affairs are so conducted that it is in fact a mere instrumentality or adjunct of another corporation,' jurisdiction over the parent may be proper." *In re Genetically Modified Rice Litig.*, 576 F. Supp. 2d 1063, 1072 (E.D. Mo. 2008) (quoting *Epps v. Stewart Info. Servs. Corp.*, 327 F.3d 642, 649 (8th Cir. 2003)). "No all embracing rule has been laid down under which the relationship between two corporations may be determined. The circumstances in each case must be examined to determine whether a corporation through the activities of another corporation has subjected itself to jurisdiction." *Id.* However, "[i]f one general principle can be gleaned from these cases . . . it is that an alter ego or agency relationship is typified by parental control of the subsidiary's internal affairs or daily operations." *Id.* at 1074 (citation omitted).

In *In re Genetically Modified Rice*, the court held that the corporate parent possessed the requisite control over its subsidiary in part because the parent was not "a typical holding company"—"it [was] not an investor" with its subsidiaries acting as "operators." 576 F. Supp. 2d at 1075. Rather, it had "the power to directly manage its subsidiaries." *Id.* The same is true of LDC. In its public statements, LDC does not describe itself as a holding company or a mere passive investor in its subsidiaries. Instead, it describes itself as "a

17

global agricultural merchant and processor"[17] that "operates more than 40 processing and logistic facilities across the country."[18]

In a management presentation, LDC explained that Imperial's "management team was handpicked to oversee the business at the time LDC acquired Imperial Sugar."[19] The same presentation explained that Imperial's President & CEO, Mike Gorrell, and its Senior VP – Sales & Marketing, Patrick Henneberry, both previously worked for LDC, further entrenching LDC's control over Imperial.[20] Courts regularly find that movement of employees between corporate family members is a factor that can demonstrate control by the parent. *See, e.g.*, *In re Genetically Modified Rice Litig.*, 576 F. Supp. 2d at 1076 (explaining its analysis of this issue turned on whether the corporate parent "manage[d] the managers" of its subsidiary); *Michigan Elec. Emps. Pension Fund v. Encompass Elec. & Data, Inc.*, 556 F. Supp. 2d 746, 777 (W.D. Mich. 2008) ("The substantial overlap between the employee rosters of [parent and subsidiary] supports the premise that they were alter egos.") (citing *N.L.R.B. v. Allcoast Transfer, Inc.*, 780 F.2d 576, 582-83 (6th Cir. 1986)); *ResCap Liquidating Tr. v. LendingTree, LLC*, No. 19-CV-2360 (SRN/HB), 2020 WL 1317719, at *20-21 (D. Minn. Mar. 20, 2020).

---

[17] https://www.ldc.com/ (Guided By Our Purpose).

[18] https://www.ldc.com/us/en/who-we-are/ldc-in-the-us/# (Our Assets).

[19] Silton Decl., Ex. E (excerpts from DOJ Appellate Record, Vol. IV at JA1425).

[20] Silton Decl., Ex. E (excerpts from DOJ Appellate Record, Vol. IV at JA1425).

More than mere movement between corporate entities, the employees of Imperial describe themselves as employees of LDC. Mike Gorrell, the CEO of Imperial, testified under oath that he was employed by LDC:

> Q. Good morning, Mr. Gorrell.
> A. Good morning.
> Q. Where are you currently employed?
> A. I'm employed at Louis Dreyfus Company.
> Q. What is your current job title?
> A. I am president and CEO of Imperial Sugar Company.[21]

This was no slip of the tongue—**_Gorrell went on to confirm that he received discretionary bonuses from LDC._**[22] Later, Gorrell described receiving an email from one of Imperial's salespeople regarding a customer complaint about pricing and "forwarding it to various LDC employees."[23] Gorrell also explained that his job duties included giving monthly reports to the "senior managers at LDC."[24]

Consequently, the Court should conclude that Imperial's jurisdictional contacts with Arizona, California, Florida, Illinois, New York, North Carolina, and Wisconsin should be imputed to LDC, such that LDC has sufficient minimum contacts with those states to support jurisdiction. _See In re Genetically Modified Rice Litig._, 576 F. Supp. 2d at 1076.

---

[21] Silton Decl., Ex. A (excerpts from DOJ Appellate Record, Vol. II, at JA737).

[22] Silton Decl., Ex. A (excerpts from DOJ Appellate Record, Vol. II, at JA766).

[23] Silton Decl., Ex. A (excerpts from DOJ Appellate Record, Vol. II, at JA753, '55).

[24] Silton Decl., Ex. A (excerpts from DOJ Appellate Record, Vol. II, at JA763-64).

## IV.  SHOULD THE COURT DISMISS, PLAINTIFFS REQUEST LEAVE TO AMEND.

LDC's request for dismissal with prejudice is inappropriate at this stage. Granting Plaintiffs leave to amend is the appropriate disposition if the Court decides to dismiss Plaintiffs' claims. *See* Fed. R. Civ. P. 15(a)(2) (the court "should freely give leave when justice so requires"); *In re Pork Antitrust Litig.*, No. 18-cv-1776, 2025 WL 964545, at *7 (D. Minn. Mar. 31, 2025) (dismissing claims *without* prejudice and granting Plaintiffs leave to amend complaint). Moreover, Plaintiffs request that the Court allow discovery to proceed on jurisdiction issues. *See, e.g, In re Fragrance Direct Purchaser Antitrust Litig.*, No. 2:23-02174, 2025 WL 572827, at *9 (D.N.J. Feb. 21, 2025) (recognizing the need for discovery on jurisdictional issues where corporate relationship is opaque).

## V.  CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court deny Louis Dreyfus Company LLC's Motion to Dismiss (ECF Nos. 379, 382), or in the alternative, grant Plaintiffs leave to amend their complaint.

20

Dated:  June 12, 2025                Respectfully Submitted,

*/s/ Daniel E. Gustafson*
**GUSTAFSON GLUEK PLLC**
DANIEL E. GUSTAFSON (#0202241)
DANIEL C. HEDLUND (#0258337)
JOSHUA J. RISSMAN (#0391500)
ABOU B. AMARA, JR. (#0401146)
GABRIELLE M. KOLB (#0504386)
Canadian Pacific Plaza
120 So. Sixth Street, Suite 2600
Minneapolis, MN 55402
Telephone: (612) 333-8844
Fax: (612) 339-6622
dgustafson@gustafsongluek.com
dhedlund@gustafsongluek.com
jrissman@gustafsongluek.com
aamara@gustafsongluek.com
gkolb@gustafsongluek.com

*/s/ Michael L. Roberts*
**ROBERTS LAW FIRM US, PC**
MICHAEL L. ROBERTS
ERICH P. SCHORK
SARAH E. DELOACH
1920 McKinney Ave, Suite 700
Dallas, TX 75201
Telephone: (501) 821-5575
Fax: (501) 821-4474
mikeroberts@robertslawfirm.us
erichschork@robertslawfirm.us
sarahdeloach@robertslawfirm.us

***Appointed Interim Plaintiffs Steering
Committee Members and Co-Leads for the
Direct Purchaser Plaintiff Subgroup***

/s/ Heidi M. Silton
**LOCKRIDGE GRINDAL NAUEN PLLP**
HEIDI M. SILTON (#025759X)
JESSICA N. SERVAIS (#0326744)
JOSEPH C. BOURNE (#0389922)
ANTONIA M. KONKOLY (#0504377)
MICHAEL J.K.M. KINANE (#0504621)
100 Washington Avenue South, Suite 2200
Minneapolis, MN 55401
Telephone: 612/339-6900
hmsilton@locklaw.com
jnservais@locklaw.com
jcbourne@locklaw.com
amkonkoly@locklaw.com
mjkmkinane@locklaw.com

/s/ Kimberly A. Justice
**FREED KANNER LONDON
& MILLEN LLC**
KIMBERLY A. JUSTICE
JONATHAN M. JAGHER
923 Fayette Street
Conshohocken, PA 19428
Telephone: 610/234-6486
kjustice@fklmlaw.com
jjagher@fklmlaw.com

**FREED KANNER LONDON
& MILLEN LLC**
MATTHEW W. RUAN (#033909X)
DOUGLAS A. MILLEN
ROBERT J. WOZNIAK
100 Tri-State International, Suite 128
Lincolnshire, IL 60069
Telephone: (224) 632-4500
mruan@fklmlaw.com
dmillen@fklmlaw.com
rwozniak@fklmlaw.com

***Appointed Interim Plaintiffs' Steering
Committee Member and Co-Lead Counsel for
the Commercial Indirect Purchaser Plaintiffs
Subgroup***

22

*/s/ Stacey P. Slaughter*

**ROBINS KAPLAN LLP**
STACEY P. SLAUGHTER (#0296971)
CAITLIN E. KEIPER (#0504799)
800 LaSalle Avenue, Suite 2800
Minneapolis, MN 55402
Telephone: 612-349-8500
Facsimile: 612-339-4181
sslaughter@robinskaplan.com
ckeiper@robinskaplan.com

**ROBINS KAPLAN LLP**
ELLEN G. JALKUT
1325 Avenue of the Americas, Suite 2601
New York, NY 10019
Telephone: 212-980-7400
Facsimile: 212-980-7499
ejalkut@robinskaplan.com

*/s/ Peter A. Barile III*

**LOWEY DANNENBERG, P.C.**
VINCENT BRIGANTI
PETER ST. PHILLIP, JR.
PETER A. BARILE III
SITSO BEDIAKO (#0389073)
NICOLE A. VENO
44 South Broadway, Suite 1100
White Plains, NY 10601
Telephone: (914) 997-0500
Fax: (914) 997-0035
vbriganti@lowey.com
pstphillip@lowey.com
pbarile@lowey.com
sbediako@lowey.com
nveno@lowey.com

*/s/ Elizabeth A. Fegan*

**FEGAN SCOTT LLC**
ELIZABETH A. FEGAN
150 S. Wacker Dr., 24th Floor
Chicago, IL 60606
Telephone: (312) 741-1019
Fax: (312) 264-0100
beth@feganscott.com

**FEGAN SCOTT LLC**
Kyle A. Jacobsen
709 N 2nd St.
Suite 400 #1280
Philadelphia, PA 19123
Telephone: (484) 352-2318
Facsimile: (312) 264-0100
kyle@feganscott.com

*Appointed Interim Plaintiffs' Steering Committee Members and Co-Lead Counsel for the Consumer Indirect Purchaser Plaintiffs Subgroup*