## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| IN RE: GRANULATED SUGAR ANTITRUST LITIGATION | Civil No. 24-md-03110 (JWB/DTS) |
| This Document Relates To:<br><br>All Class Actions | **PLAINTIFFS' OPPOSITION TO DEFENDANT UNITED STATES SUGAR SAVANNAH REFINERY, LLC'S MOTION TO DISMISS PLAINTIFFS' MASTER CONSOLIDATED AND SHORT FORM COMPLAINTS** |

## **TABLE OF CONTENTS**

I.     INTRODUCTION ............................................................................................. 1

II.    PLAINTIFFS PLAUSIBLY PLEAD SAVANNAH'S PARTICIPATION IN
THE CONSPIRACY. .................................................................................... 2

      A.    SAVANNAH IS TIED TO THE CONSPIRACY THROUGH
IMPERIAL AND UNITED. ............................................................. 2

      B.    LEGAL STANDARD ........................................................................ 4

      C.    PLAINTIFFS PLAUSIBLY ALLEGE SPECIFIC FACTS
SUPPORTING SAVANNAH'S INVOLVEMENT IN THE
CONSPIRACY .................................................................................. 6

III.   PERSONAL JURISDICTION ...................................................................... 8

      A.    LEGAL STANDARD ........................................................................ 8

      B.    THE TRANSFEROR COURTS HAVE PERSONAL JURISDICTION
OVER SAVANNAH .......................................................................... 9

      C.    THE FORUM STATES HAVE SPECIFIC JURISDICTION OVER
SAVANNAH ................................................................................... 10

IV.   SHOULD THE COURT DISMISS, PLAINTIFFS REQUEST LEAVE TO
AMEND. ...................................................................................................... 15

V.    CONCLUSION ............................................................................................ 16

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Allied Dynamics Corp. v. Kennametal, Inc.*,
  965 F. Supp. 2d 276 (E.D.N.Y. 2013) ......................................................... 11

*Am. Tobacco Co. v. United States*,
  147 F.2d 93 (6th Cir. 1944), *aff'd*, 328 U.S. 781 (1946) ............................... 6

*Arandell Corp. v. Centerpoint Energy Servs., Inc.*,
  900 F.3d 623 (9th Cir. 2018) .................................................................. 6, 10

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)..................................................................................... 4

*Bank of America, N.A. v. Knight*,
  725 F.3d 815 (7th Cir. 2013) ....................................................................... 7

*Barone v. Rich Brothers Interstate Display Fireworks*,
  25 F.3d 610 (8th Cir. 1994) ................................................................. 14, 15

*Baxley–DeLamar Monuments v. American Cemetery Ass'n*,
  843 F.2d 1154 (8th Cir. 1988) ..................................................................... 5

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007)............................................................................. 2, 4, 5

*Beltz Travel Serv., Inc. v. Int'l Air Transp. Ass'n*,
  620 F.2d 1360 (9th Cir. 1980) ................................................................. 5, 7

*Best Van Lines, Inc. v. Walker*,
  490 F.3d 239 (2d Cir. 2007)....................................................................... 11

*Black v. Acme Markets, Inc.*,
  564 F.2d 681 (5th Cir. 1977) ....................................................................... 9

*In re Blue Cross Blue Shield Antitrust Litig.*,
  225 F. Supp. 3d 1269 (N.D. Ala. 2016)........................................................ 9

*Burger King Corp. v. Rudzewicz*,
  471 U.S. 462 (1985).................................................................................... 12

*In re Cathode Ray Tube (CRT) Antitrust Litig.*,
    No. 07-5944, 2010 WL 9543295 (N.D. Cal. Feb. 5, 2010) .................................... 8, 10

*Coen v. Coen*,
    509 F.3d 900 (8th Cir. 2007) ..................................................................... 9

*Copperweld Corp. v. Indep. Tube Corp.*,
    467 U.S. 752 (1984) ................................................................................. 6

*Dakota Indus., Inc. v. Dakota Sportswear, Inc.*,
    946 F.2d 1384 (8th Cir. 1991) ............................................................. 8, 9

*Daniel J. Hartwig Assocs., Inc. v. Kanner*,
    913 F.2d 1213 (7th Cir. 1990) .............................................................. 11

*Digi-Tel Holdings, Inc. v. Proteq Telecomms. (PTE), Ltd.*,
    89 F.3d 519 (8th Cir. 1996) ................................................................... 12

*EcoWater Sys., LLC v. Hague Quality Water Int'l*,
    No. CIV.06 3134 JNE/SRN, 2007 WL 1725761
    (D. Minn. June 13, 2007) ................................................................. 13, 14

*Five Smiths, Inc. v. Nat'l Football League Players Ass'n*,
    788 F. Supp. 1042 (D. Minn. 1992) ......................................................... 5

*In re Fragrance Direct Purchaser Antitrust Litig.*,
    No. 2:23-02174, 2025 WL 572827 (D.N.J. Feb. 21, 2025) ......................... 16

*Fusco v. Xerox Corp.*,
    676 F.2d 332 (8th Cir. 1982) ................................................................... 5

*J.D. Fields & Co., Inc. v. Nucor-Yamato Steel*,
    976 F. Supp. 2d 1051 (E.D. Ark. 2013) ................................................... 5

*Johnson v. Arden*,
    614 F.3d 785 (8th Cir. 2010) ................................................................... 8

*Land–O–Nod Co. v. Bassett Furniture Indus., Inc.*,
    708 F.2d 1338 (8th Cir. 1983) ............................................................... 12

*Marx v. United States*,
    86 F.2d 245 (8th Cir. 1936) ..................................................................... 6

*Northrup King Co. v. Compania Productora Semillas
    Algodoneras Selectas, S.A.*,
    51 F.3d 1383 (8th Cir. 1995) ....................................................... 10, 11, 12

*Northwest Corp. v. Gabriel Manufacturing Co.*,
    No. 95 C 2004, 1996 WL 73622 (N.D. Ill. Feb. 16, 1996)..........................................13

*In re Pork Antitrust Litig.*,
    No. 18-cv-1776, 2025 WL 964545 (D. Minn. Mar. 31, 2025) ....................................15

*In re Pre-Filled Propane Tank Antitrust Litig.*,
    860 F.3d 1059 (8th Cir. 2017) (en banc) .....................................................................5

*Quick Point, Inc. v. Excel Eng'g, Inc.*,
    No. 4:08-CV-00797, 2009 WL 330837 (E.D. Mo. Feb. 9, 2009) ..............................14

*Raymedica, Inc. v. Stoy*,
    No. CIV.01-1841 JRT/FLN, 2002 WL 31185916
    (D. Minn. Sept. 30, 2002) ...........................................................................................11

*Sitzer v. Nat'l Ass'n of Realtors*,
    No. 4:19-CV-00332-SRB, 2019 WL 3892873
    (W.D. Mo. Aug. 19, 2019) ...........................................................................................9

*Stanton v. St. Jude Med., Inc.*,
    340 F.3d 690 (8th Cir. 2003) .....................................................................................14

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
    586 F. Supp. 2d 1109 (N.D. Cal. 2008) .......................................................................6

*Topchian v. JPMorgan Chase Bank, N.A.*,
    760 F.3d 843 (8th Cir. 2014) .......................................................................................5

*United States v. Scophony Corp. of Am.*,
    333 U.S. 795 (1948) .....................................................................................................9

*Weinstein v Saturn*,
    303 F. App'x 424 (9th Cir. 2008) ................................................................................8

*Willis Elec. Co. v. Polygroup Macau Ltd. (BVI)*,
    437 F. Supp. 3d 693 (D. Minn. 2020) .........................................................................8

**Statutes**

15 U.S.C. § 18 ......................................................................................................................4

15 U.S.C. § 22 ......................................................................................................................9

Clayton Act ...........................................................................................................................8

Wis. Stat. § 801.05(4) ............................................................................................... 11

**Other Authorities**

Fed. R. Civ. P. 15(a)(2) ............................................................................................ 15

Fed. R. Civ. P. 8(a) ................................................................................................... 2

Fed. R. Civ. P. 12(b)(2) ............................................................................................ 2

Fed. R. Civ. P. 12(b)(6) ............................................................................................ 4

Pursuant to Pretrial Order No. 7, (ECF No. 315), Direct Purchaser Plaintiffs, Commercial Indirect Purchaser Plaintiffs, and Consumer Indirect Purchaser Plaintiffs (collectively, "Plaintiffs"), respectfully submit this Memorandum of Law in Opposition to United States Sugar Savannah Refinery, LLC's ("Savannah") Motion to Dismiss Plaintiffs' Master Consolidated and Short Form Complaints (ECF Nos. 385-87) ("Savannah Mem.").

## I.    INTRODUCTION

In 2022, Savannah acquired Imperial Sugar Company ("Imperial"), in a transaction that brought Imperial's Granulated Sugar business into the United States Sugar Producers & Refiners ("United") family. Created for the purpose of the acquisition, Savannah continued Imperial's Granulated Sugar business operations and assumed Imperial's existing sugar contracts, employees, and operations.

Plaintiffs in this consolidated litigation allege that beginning in 2019, Defendants, including Imperial and United, engaged in a conspiracy to artificially inflate Granulated Sugar prices in the United States by using standardized pricing formulas and covertly exchanging competitively sensitive, non-public information. As detailed in Plaintiffs' Joint Opposition to Defendants' Joint Motion to Dismiss ("Joint Opposition"), Defendants' unlawful agreement is supported by substantial direct and circumstantial evidence that more than sufficiently states Plaintiffs' claims. Here, Savannah separately seeks dismissal on the basis that the Complaints[1] are purportedly "devoid of any specific allegations of any

---

[1] "Master Complaint" refers to the Master Consolidated Complaint (ECF 332), and "MC ¶_" refers to paragraphs therein. "Complaints" collectively refers to the Master Complaint, Direct Purchaser Plaintiffs' Short Form Complaint (ECF 341), Commercial Indirect Purchaser Plaintiffs' Short Form Consolidated Class Action Complaint (ECF 342)

specific communications or conduct involving U.S. Sugar Savannah." Savannah Mem. at 3. But Savannah ignores the well-pleaded factual allegations that "raise a reasonable expectation that discovery will reveal evidence of illegal agreement" that Savannah joined the conspiracy through its acquisition of Imperial and continued to participate through United—which is all that is required at this stage. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007).

Savannah also argues that if Plaintiffs' federal claims against it are dismissed, their state law claims must also be dismissed for lack of personal jurisdiction under Rule 12(b)(2). But Plaintiffs' allegations plausibly allege that Savannah and Imperial participated in the conspiracy, and Plaintiffs make a prima facie showing of personal jurisdiction, which is again all that is required at the dismissal stage.

Accordingly, Plaintiffs have satisfied their pleading burden under Rule 8(a), and Savannah's dismissal motion should be denied in its entirety.

## II. PLAINTIFFS PLAUSIBLY PLEAD SAVANNAH'S PARTICIPATION IN THE CONSPIRACY.

### A. Savannah Is Tied to the Conspiracy Through Imperial and United.

Plaintiffs allege sufficient facts to tie Savannah to the conspiracy through its predecessor in interest, Imperial. Plaintiffs allege that beginning in January 2019, Defendants, including Imperial, conspired to artificially inflate Granulated Sugar prices in the United States through: (1) the use of agreed upon standardized pricing formulas; and

---

and Consumer Indirect Purchaser Plaintiffs' Short Form Complaint (ECF 343). Capitalized terms not otherwise defined herein shall have the meanings ascribed in the Complaints.

(2) the exchange of detailed, competitively sensitive, non-public information about Granulated Sugar prices, capacity, sales volume, supply, and demand. MC ¶ 63.

Prior to Imperial's acquisition by Savannah, Imperial was involved in the exchange of competitively sensitive pricing information. *See id.* ¶¶ 89, 91, 114. Plaintiffs allege that the conspiracy to exchange competitively sensitive information included price signaling among Defendants and communications made through third parties, including Wistisen and Commodity. *Id.* ¶ 81. Plaintiffs also allege that employees of other Defendants were familiar with Imperial's pricing formula that relied upon No. 16 prices. *Id.* ¶ 131-33. Imperial had significant control over the price it charged; it was not a "price-taker," and it ensured that it did not undercut competitors to incentivize them to lower prices. *Id.* ¶¶ 133, 164. Plaintiffs further allege that Imperial had multiple opportunities to collude with competitors, including through membership in the Sugar Association and attendance at the International Sweetener Colloquium, after which many of the price increases during the class period occurred. *Id.* ¶¶ 91, 130-35, 140-42, 178-82.

The Master Complaint details the close relationship between United and Imperial. ASR/Domino's Mark Olson considered Imperial's CEO a "trusted friend," and the two would share price information. *Id*. ¶ 165. Beginning in 2019, United and LDC began to consider how United could acquire Imperial. *Id*. ¶ 61. Eventually, the companies determined that the acquisition should occur through U.S. Sugar, and the companies entered an asset purchase agreement whereby a wholly owned subsidiary of U.S. Sugar called U.S. Sugar Savannah, an entity created for the purchase, would acquire Imperial. *Id*. News of the acquisition came out in March 2021. *Id*. ¶ 105. At that time, the top three

marketers of sugar controlled 65% of the market, and Imperial controlled an additional 7.6% of the sugar production capacity in the United States. *Id.* ¶¶ 59 (Fig. 1), 170. Employees at Domino recognized the benefits of the merger after which only three companies would "account for 75% of the market," with two controlling close to 65%. *Id.* ¶¶ 58, 105, 128.

Not surprisingly, the DOJ sued to block the proposed merger and alleged that U.S. Sugar's acquisition of Imperial could substantially lessen competition in the Southeast United States. *Id.* ¶ 62; 15 U.S.C. § 18 (prohibiting acquisitions where the effect "may be substantially to lessen competition"). To show that U.S. Sugar's acquisition would lessen competition, the DOJ necessarily alleged that U.S. Sugar and Imperial were competitors.

Savannah completed its acquisition of Imperial on November 30, 2022, and upon doing so, Savannah became "a mere continuation of Imperial." MC ¶¶ 26-27. Most importantly, Savannah assumed all contract obligations, and benefits, of Imperial. *Id.* ¶ 27. Savannah retained all the employees, customer service representatives, sales contacts, and even bank accounts from Imperial. *Id.* Savannah further holds the trademarks to "Imperial Sugar," and customers seeking assistance on the "Imperial Sugar" website are directed to contact Savannah. *Id.* ¶ 26.

**B.     Legal Standard**

To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable

inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). On a motion to dismiss, courts must accept the plaintiffs' factual allegations as true and draw all reasonable inferences in their favor. *Topchian v. JPMorgan Chase Bank, N.A.*, 760 F.3d 843, 848 (8th Cir. 2014). In antitrust cases, where defendants control most evidence, courts should rarely grant dismissal before allowing the plaintiff meaningful discovery. *J.D. Fields & Co., Inc. v. Nucor-Yamato Steel*, 976 F. Supp. 2d 1051, 1059 (E.D. Ark. 2013) (citing *Fusco v. Xerox Corp.*, 676 F.2d 332, 337 n.7 (8th Cir. 1982)).

The plausibility standard set forth by the Supreme Court does "not require heightened fact pleading of specifics." *Twombly*, 550 U.S. at 570; *see also In re Pre-Filled Propane Tank Antitrust Litig.*, 860 F.3d 1059, 1070 (8th Cir. 2017) (en banc) ("Plaintiffs need not provide specific facts in support of their allegations."). In antitrust cases, the facts alleged must simply "raise a reasonable expectation that discovery will reveal evidence of illegal agreement." *Twombly*, 550 U.S. at 556. This is true "even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'" *Id.* (internal citation omitted).

In the context of an antitrust conspiracy, the complaint must include a statement of "'the facts constituting the conspiracy, its object and accomplishment.'" *Five Smiths, Inc. v. Nat'l Football League Players Ass'n*, 788 F. Supp. 1042, 1048 (D. Minn. 1992) (quoting *Baxley–DeLamar Monuments v. American Cemetery Ass'n*, 843 F.2d 1154, 1156 (8th Cir. 1988). "Participation by each conspirator in every detail in the execution of the conspiracy is unnecessary to establish liability, for each conspirator may be performing different tasks

to bring about the desired result." *Beltz Travel Serv., Inc. v. Int'l Air Transp. Ass'n*, 620 F.2d 1360, 1367 (9th Cir. 1980); *see also Am. Tobacco Co. v. United States*, 147 F.2d 93, 119 (6th Cir. 1944), *aff'd*, 328 U.S. 781 (1946) (citing *Marx v. United States*, 86 F.2d 245, 250 (8th Cir. 1936)). Moreover, a complaint need not contain detailed defendant-by-defendant allegations. *See In re TFT-LCD (Flat Panel) Antitrust Litig.*, 586 F. Supp. 2d 1109, 1117 (N.D. Cal. 2008).

## C.    Plaintiffs Plausibly Allege Specific Facts Supporting Savannah's Involvement in the Conspiracy

Contrary to Savannah's assertion (Savannah Mem. at 5), Plaintiffs allege specific facts regarding Savannah's involvement in Defendants' conspiracy. First, Plaintiffs allege that, through its acquisition of Imperial and all of its obligations and benefits, Savannah joined and committed acts in furtherance of the conspiracy. As a result, each allegation implicating Imperial is also attributed to Savannah. *See Copperweld Corp. v. Indep. Tube Corp.*, 467 U.S. 752, 771 (1984) (corporate affiliates are treated as a "single enterprise" under antitrust laws when they engage in "coordinated activity"); *Arandell Corp. v. Centerpoint Energy Servs., Inc.*, 900 F.3d 623, 631, 634 (9th Cir. 2018) ("the conduct of the *enterprise* they jointly compose . . .[can] satisfy the elements of a [claim]" and each entity can be found liable if they "in fact participated in coordinated activity in furtherance of the alleged . . . conspiracy") (internal citation and quotations omitted) (emphasis in original).

Second, Plaintiffs allege that Savannah's acquisition itself furthered the conspiracy insofar as it contributed to significant consolidation in the domestic market for Granulated

Sugar, "helping to facilitate cartel conduct," and enhancing Defendants' market power. MC ¶¶ 61, 58. Indeed, Plaintiffs allege that ASR/Domino regarded the acquisition of Imperial by United as "a 'good thing' for ASR/Domino" "because it would help to align United's pricing strategy with ASR/Domino's." *Id.* ¶ 128. Notably, after the acquisition, prices continued to increase. *Id.* ¶ 140.

Moreover, as discussed above, Imperial actively participated in the unlawful conspiracy. Contrary to Savannah's argument, Plaintiffs allege that Imperial *did* engage in information sharing and received non-public, competitively sensitive information regarding its competitors, and Plaintiffs further allege that Imperial's competitors possessed its pricing information and shared that information with Wistisen and others. *Id.* ¶¶ 89, 91, 114. These allegations, taken as a whole, more than plausibly show that Savannah "joined the conspiracy and knew of its scope." *See Bank of America, N.A. v. Knight*, 725 F.3d 815, 818 (7th Cir. 2013).

Savannah counters that it does not market and sell refined sugar cane, as Imperial did before it was acquired (*see* Savannah Mem. at 3, 5), and therefore, Savannah should not be considered part of the conspiracy. But "[p]articipation by each conspirator in every detail in the execution of the conspiracy is unnecessary to establish liability, for each conspirator may be performing different tasks to bring about the desired result." *Beltz*, 620 F.2d at 1367. Furthermore, Plaintiffs allege that Savannah is "wholly owned and controlled" by United (MC ¶ 27); to the extent that Savannah delegates its marketing authority to United, that delegation does not shield it from liability for participating in the alleged conspiracy. As a wholly-owned subsidiary of United, Savannah's interests align

7

with those of its parent company, and Plaintiffs have specifically alleged United's participation in the information exchange and parallel pricing behavior. *See, e.g.*, *id.* ¶¶ 150-153; *In re Cathode Ray Tube (CRT) Antitrust Litig.*, No. 07-5944, 2010 WL 9543295, at *6 (N.D. Cal. Feb. 5, 2010) (holding it "plausible for pleading purposes that where an allegation is made that the parent corporation of a corporate family was a participant in a conspiracy, that the subsidiaries followed the directions of the parent.") (citing *Weinstein v Saturn*, 303 F. App'x 424 (9th Cir. 2008)). Plaintiffs' allegations that United acquired Imperial through Savannah and integrated it into United's pricing system, and that Savannah knowingly continued to operate within that structure, strongly supports the inference that Savannah remained an active participant in the conspiracy. Savannah's motion should be denied.

## III.    PERSONAL JURISDICTION

### A.    Legal Standard

To defeat a motion to dismiss for lack of personal jurisdiction, the nonmoving party need only make a prima facie showing of jurisdiction. *Dakota Indus., Inc. v. Dakota Sportswear, Inc.*, 946 F.2d 1384, 1387 (8th Cir. 1991). "While it is true that the plaintiff bears the ultimate burden of proof on this issue, jurisdiction need not be proved by a preponderance of the evidence until trial or until the court holds an evidentiary hearing." *Id.* Rather, "[t]he evidentiary showing required at the prima facie stage is minimal." *Johnson v. Arden*, 614 F.3d 785, 794 (8th Cir. 2010) (internal citation and quotation marks omitted).

8

The Clayton Act provides for personal jurisdiction over a corporate defendant "in any district wherein it . . . transacts business." *Willis Elec. Co. v. Polygroup Macau Ltd. (BVI)*, 437 F. Supp. 3d 693, 703 (D. Minn. 2020) (citing 15 U.S.C. § 22). "[A] corporation is engaged in transacting business in a district if in fact, in the ordinary and usual sense, it transacts business therein of any substantial character." *United States v. Scophony Corp. of Am.*, 333 U.S. 795, 807 (1948) (internal quotation marks omitted). "'[T]he substantiality of the business transacted is to be judged from the point of view of the average businessman and not in proportion to the sales or revenues of the defendant.'" *Sitzer v. Nat'l Ass'n of Realtors*, No. 4:19-CV-00332-SRB, 2019 WL 3892873, at *3 (W.D. Mo. Aug. 19, 2019) (quoting *Black v. Acme Markets, Inc.*, 564 F.2d 681, 687 (5th Cir. 1977)). "Although there is no singular definitive test for transacting business, the most important factor to consider is the dollar amount of business transacted in the district." *In re Blue Cross Blue Shield Antitrust Litig.*, 225 F. Supp. 3d 1269, 1293 (N.D. Ala. 2016) (internal citations and quotation marks omitted).

In making its prima facie showing, a plaintiff is not confined to "the pleadings alone" and may also rely on "affidavits and exhibits." *Coen v. Coen*, 509 F.3d 900, 904-05 (8th Cir. 2007) (internal citation and quotation marks omitted). "[T]he court must look at the facts in the light most favorable to the nonmoving party and resolve all factual conflicts in favor of that party." *Dakota Indus.*, 946 F.2d at 1387.

## B.    The Transferor Courts Have Personal Jurisdiction Over Savannah

Savannah argues that Plaintiffs' claims should be dismissed from the underlying cases in the MDL transferor courts for lack of personal jurisdiction. Savannah Mem. at 6-

7. Specifically, Savannah contends transferor courts in Arizona, California, Illinois, Minnesota, New York, North Carolina, and Wisconsin (the "Forum States") lack personal jurisdiction.[2] Savannah Mem. at 7. Savannah's argument does not withstand scrutiny.[3]

### C.    The Forum States Have Specific Jurisdiction Over Savannah.

Applying the legal standards to assess personal jurisdiction, Plaintiffs make a prima facie showing that the Forum States have specific personal jurisdiction over Savannah because Savannah's predecessor, Imperial, "transacted business" in each of the Forum States, and Savannah assumed all of Imperial's customer relationships following the acquisition.[4]

---

[2] Unlike LDC, Savannah does not challenge the jurisdiction of the transferor courts in Florida. Savannah Mem. at 7 n.3.

[3] Notwithstanding the arguments concerning imputed personal jurisdiction below, Plaintiffs' allegations against Savannah alone are sufficient to establish personal jurisdiction in the underlying cases. *See* MC ¶ 231 ("Defendants are direct competitors in the Granulated Sugar market throughout the United States."); Comm. Complaint ¶¶ 4, 5, 6, 9, 10, 15, 17, 19; Comm. Complaint Add. at 2-3, 41-42, 95 (Arizona), 3-4, 42-43, 79, 95 (California), 10-11, 49-50, 83, 99 (Illinois), 17-19, 56-58, 83-85, 102-03 (Minnesota); 26-27, 65, 107 (New York), 27-28, 66-67, 88-89, 108 (North Carolina), 38, 77, 113 (Wisconsin); Cons. Complaint App'x A; *id.* App'x B at 1-2 (Arizona), 2-3 (California), 6-7 (Illinois), 10-11 (Minnesota), 14-15 (New York), 15-16 (North Carolina), 21 (Wisconsin); *id.* App'x C at 4 (California), 9-11 (Minnesota), 18 (New York), 20 (North Carolina).

[4] Savannah also argues it "does not market or sell granulated sugar," instead having its sugar "marketed by the United cooperative," so the underlying courts lack personal jurisdiction over it. Savannah Mem. at 3, 7. But because Savannah and United act as a single enterprise, Savannah's delegation of these responsibilities cannot shield it from the underlying courts' personal jurisdiction. *See Arandell*, 900 F.3d at 631-32; *CRT* 2010 WL 9543295, at *6.

10

Whether a court has personal jurisdiction over a non-resident involves a two-step analysis. *Northrup King Co. v. Compania Productora Semillas Algodoneras Selectas, S.A.*, 51 F.3d 1383, 1387 (8th Cir. 1995). First, the facts must satisfy the forum state's long-arm statute, and second, the exercise of personal jurisdiction over the defendant must not violate due process. *Id.* The long-arm statutes of Arizona, California, Illinois, Minnesota, and North Carolina are coextensive with federal due process,[5] as is that of Wisconsin.[6] Thus, the only question "is whether due process permits the exercise of personal jurisdiction over defendants." *Raymedica, Inc. v. Stoy*, No. CIV.01-1841 JRT/FLN, 2002 WL 31185916, at *2 (D. Minn. Sept. 30, 2002).

The same is true for New York because "'proof of one transaction, or a single act, in New York' has been deemed 'sufficient to invoke long-arm jurisdiction even though the defendant never enters New York,'" which is also a less exacting standard than the due process requirement. *See Allied Dynamics Corp. v. Kennametal, Inc.*, 965 F. Supp. 2d 276, 293 (E.D.N.Y. 2013) (quoting *Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 248 (2d Cir.

---

[5] *See* Savannah Mem. at 6 (collecting cases).

[6] *Daniel J. Hartwig Assocs., Inc. v. Kanner*, 913 F.2d 1213, 1217 (7th Cir. 1990) ("[[T]he Wisconsin statute is intended to reach to the fullest extent allowed under the due process clause. Thus, if personal jurisdiction over [defendant] is consistent with due process, it was intended under the long-arm statute."). Savannah appears to disagree. But as Savannah recognizes, Wisconsin's long-arm statute provides for jurisdiction where "[s]olicitation or service activities were carried on within this state by or on behalf of the defendant" or "[p]roducts, materials, or things processed, serviced, or manufactured by the defendant anywhere were used or consumed within this state in the ordinary course of commerce." *See* Wis. Stat. § 801.05(4). For the reasons discussed below, Imperial Sugar's sales to six corporate customers in Wisconsin, likely generating $2.1 million in yearly revenue, satisfy this requirement.

2007)). Accordingly, Plaintiffs need only demonstrate that the evidence establishing personal jurisdiction over Savannah comports with due process.

Due process allows a court to exercise personal jurisdiction over a nonresident defendant if the defendant has sufficient "minimum contacts" with the forum state, such that the exercise would be "consistent with traditional notions of fair play and substantial justice." *Northrup King*, 51 F.3d at 1387. This inquiry's focus is whether the nonresident defendant "has 'purposefully directed' his activities at residents of the forum ... and the litigation results from alleged injuries that 'arise out of or relate to' those activities." *Id.* (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985)).[7]

Here, evidence establishes that Imperial purposefully directed its activities at the Forum States. Imperial's CEO, Mike Gorrell, testified that Imperial sold sugar "all over the country."[8] According to an LDC management presentation, Imperial achieved these sales through "[c]onstant customer dialogue and personal visits."[9] Likewise, Imperial's 2021

---

[7] In the Eighth Circuit, the inquiry is further guided by five factors: (1) the nature and quality of the contacts with the forum state; (2) the quantity of the contacts with the forum state; (3) the relation of the cause of action to the contacts; (4) the interest of the forum state in providing a forum for its residents; and (5) the convenience of the parties. *Land–O–Nod Co. v. Bassett Furniture Indus., Inc.*, 708 F.2d 1338, 1340 (8th Cir. 1983). The first three factors are most important, and the last two factors are secondary. *Digi-Tel Holdings, Inc. v. Proteq Telecomms. (PTE), Ltd.*, 89 F.3d 519, 523 (8th Cir. 1996).

[8] Declaration of Heidi M. Silton in Support of Plaintiffs' Opposition to Defendant United States Sugar Savannah Refinery, LLC's Motion to Dismiss Plaintiffs' Master Consolidated and Short Form Complaints. ("Silton Decl."), Ex. A (excerpts from DOJ Appellate Record, Vol. II, at JA755).

[9] Silton Decl., Ex. E (excerpts from DOJ Appellate Record Vol. IV, at JA 1422).

sales data demonstrates that it made sales to multiple corporate customers in the Forum

States, generating substantial revenues:[10]

| State | Number of Corporate Customers | Total Sales Share | Estimated Revenue[11] | Rank Among States and D.C. |
|-------|-------------------------------|-------------------|----------------------|----------------------------|
| AZ | 3 | 0.1% | $700,000 | 32nd |
| CA | 8 | 0.1% | $700,000 | 30th |
| FL | 28 | 5% | $35,000,000 | 8th |
| IL | 16 | 1% | $7,000,000 | 17th |
| MN | 4 | ~0.04% | ~$280,000 | 38th |
| NY | 4 | 1% | $7,000,000 | 18th |
| NC | 46 | 15% | $105,000,000 | 2nd |
| WI | 6 | 0.3% | $2,100,000 | 25th |

Courts in this Circuit and elsewhere have concluded that sales of this volume

sufficiently support a conclusion of purposeful direction and, thus, the minimum contacts

necessary for specific personal jurisdiction. *See EcoWater Sys., LLC v. Hague Quality

Water Int'l*, No. CIV.06 3134 JNE/SRN, 2007 WL 1725761, at *3 (D. Minn. June 13, 2007)

(holding the defendant had sufficient minimum contacts in the forum state where its sales

of the products at issue totaled $50,000 annually); *Northwest Corp. v. Gabriel

Manufacturing Co.*, No. 95 C 2004, 1996 WL 73622, at *3 (N.D. Ill. Feb. 16, 1996)

(holding sales "rang[ing] from $90,000 to $125,000 per year" are adequate for general

---

[10] Silton Decl., Ex. B (excerpts from DOJ Appellate Record Vol. VI, at JA1748-49).

[11] According to a DOJ press release, Imperial's 2020 revenues were over $700 million. Silton Decl., Ex. C (Press Release, DOJ Office of Public Affairs). The figures in this column were derived by applying each forum state's Total Sales Share to that $700 million total revenue figure. Based on Plaintiffs' understanding of Minnesota's national rank in Imperial's sales volume and the number of Imperial's corporate customers in Minnesota, Plaintiffs estimate that Minnesota accounted for 0.04% of the share of Imperial's total sales, assuming the DOJ rounded down for this measure.

personal jurisdiction); *Quick Point, Inc. v. Excel Eng'g, Inc.*, No. 4:08-CV-00797, 2009 WL 330837, at *5 (E.D. Mo. Feb. 9, 2009) (holding that "sales need not be substantial" and four sales representing less than one percent of defendant's annual revenue were sufficient to confer specific personal jurisdiction). Under these circumstances, Imperial's contacts with the Forum States are not so "random, fortuitous or attenuated" that Imperial could not reasonably anticipate being haled into court in those states. *See Ecowater*, 2007 WL 1725761, at *4.

In addition, personal jurisdiction is satisfied under the stream of commerce doctrine. "Personal jurisdiction may be found where a seller uses a distribution network to deliver its products into the stream of commerce with the expectation that the products will be purchased by consumers in the forum state." *Stanton v. St. Jude Med., Inc.*, 340 F.3d 690, 694 (8th Cir. 2003). In *Barone v. Rich Brothers Interstate Display Fireworks*, the Eighth Circuit held that although the manufacturer had no office, agent, or distributor in Nebraska, did not advertise in Nebraska, and did not send products into Nebraska, it was subject to personal jurisdiction because the manufacturer strategically selected a network of distributors that could reach much of the United States. *See* 25 F.3d 610, 612-15 (8th Cir. 1994).

Similarly, Imperial's customers included Costco, Walmart, and US Food Service,[12] all of which have national reach, and a significant presence in the Forum States.[13] Likewise,

---

[12] Silton Decl., Ex. E (excerpts from DOJ Appellate Record, Vol. IV at JA1421).

[13] *See* https://www.costco.com/WarehouseListByStateDisplayView; https://www.walmart.com/store-directory; https://www.usfoods.com/locations.html.

United, as marketer and distributor for Savannah, sells Sugar directly into at least forty-four states. *See* MC ¶¶ 25, 27; Cons. Comp. ¶ 47. "[W]hen a seller . . . heads a distribution network, thus realizing the much greater economic benefit of multiple sales in distant forums . . . its activities may satisfy the purposeful availment test." *Barone,* 25 F.3d at 613 (internal citation and quotation marks omitted). By strategically selecting a distribution channel capable of reaching the Forum States, Savannah cannot plead ignorance that Imperial's Granulated Sugar was sold in those states.

As discussed above, there is sufficient evidence to conclude that Savannah purposefully directed its business activities towards the states of Forum States such that the exercise of specific personal jurisdiction over Savanna by courts in those states would not violate due process.[14]

## IV. SHOULD THE COURT DISMISS, PLAINTIFFS REQUEST LEAVE TO AMEND.

Savannah's request for dismissal with prejudice is inappropriate at this stage. Granting Plaintiffs leave to amend their complaint is the appropriate disposition if the Court chooses to dismiss Plaintiffs' claims. *See* Fed. R. Civ. P. 15(a)(2) (courts "should freely give leave when justice so requires"); *In re Pork Antitrust Litig.*, No. 18-cv-1776, 2025 WL

---

[14] Savannah cannot seriously contest the additional requirement for specific personal jurisdiction—that Plaintiffs' claims arose from Imperial's sales of Granulated Sugar into the forum states. *See, e.g.*, MC ¶ 13 ("Among the victims of the conspiracy are Consumer Indirect Purchasers . . ., Commercial Indirect Purchasers[,] . . . and Direct Purchasers, all of whom paid more for Granulated Sugar during the Class Period than they would have paid in a competitive market but for the unlawful conspiracy and acts in furtherance alleged herein.").

964545, at *7 (D. Minn. Mar. 31, 2025) (dismissing claims *without* prejudice to allow Plaintiffs to amend their complaint). Moreover, Plaintiffs request that the Court allow discovery to proceed on jurisdictional issues. *See, e.g., In re Fragrance Direct Purchaser Antitrust Litig.*, No. 2:23-02174, 2025 WL 572827, at *9 (D.N.J. Feb. 21, 2025) (recognizing the need for discovery on jurisdictional issues where corporate relationship is opaque).

## V.    CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court deny United States Sugar Savannah Refinery, LLC's Motion to Dismiss (ECF Nos. 385-87), or in the alternative, allow Plaintiffs to amend their complaint.

Dated:  June 12, 2025                      Respectfully Submitted,

*/s/ Daniel E. Gustafson*
**GUSTAFSON GLUEK PLLC**
DANIEL E. GUSTAFSON (#0202241)
DANIEL C. HEDLUND (#0258337)
JOSHUA J. RISSMAN (#0391500)
ABOU B. AMARA, JR. (#0401146)
GABRIELLE M. KOLB (#0504386)
Canadian Pacific Plaza
120 So. Sixth Street, Suite 2600
Minneapolis, MN 55402
Telephone: (612) 333-8844
Fax: (612) 339-6622
dgustafson@gustafsongluek.com
dhedlund@gustafsongluek.com
jrissman@gustafsongluek.com
aamara@gustafsongluek.com
gkolb@gustafsongluek.com

*/s/ Michael L. Roberts*
**ROBERTS LAW FIRM US, PC**
MICHAEL L. ROBERTS
ERICH P. SCHORK
SARAH E. DELOACH
1920 McKinney Ave, Suite 700
Dallas, TX 75201
Telephone: (501) 821-5575
Fax: (501) 821-4474
mikeroberts@robertslawfirm.us
erichschork@robertslawfirm.us
sarahdeloach@robertslawfirm.us

***Appointed Interim Plaintiffs Steering
Committee Members and Co-Leads for the
Direct Purchaser Plaintiff Subgroup***

17

/s/ Heidi M. Silton
**LOCKRIDGE GRINDAL NAUEN PLLP**
HEIDI M. SILTON (#025759X)
JESSICA N. SERVAIS (#0326744)
JOSEPH C. BOURNE (#0389922)
ANTONIA M. KONKOLY (#0504377)
MICHAEL J.K.M. KINANE (#0504621)
100 Washington Avenue South, Suite 2200
Minneapolis, MN 55401
Telephone: 612/339-6900
hmsilton@locklaw.com
jnservais@locklaw.com
jcbourne@locklaw.com
amkonkoly@locklaw.com
mjkmkinane@locklaw.com

/s/ Kimberly A. Justice
**FREED KANNER LONDON
& MILLEN LLC**
KIMBERLY A. JUSTICE
JONATHAN M. JAGHER
923 Fayette Street
Conshohocken, PA 19428
Telephone: 610/234-6486
kjustice@fklmlaw.com
jjagher@fklmlaw.com

**FREED KANNER LONDON
& MILLEN LLC**
MATTHEW W. RUAN (#033909X)
DOUGLAS A. MILLEN
ROBERT J. WOZNIAK
100 Tri-State International, Suite 128
Lincolnshire, IL 60069
Telephone: (224) 632-4500
mruan@fklmlaw.com
dmillen@fklmlaw.com
rwozniak@fklmlaw.com

***Appointed Interim Plaintiffs' Steering
Committee Member and Co-Lead Counsel for
the Commercial Indirect Purchaser Plaintiffs
Subgroup***

18

*/s/ Stacey P. Slaughter*

**ROBINS KAPLAN LLP**
STACEY P. SLAUGHTER (#0296971)
CAITLIN E. KEIPER (#0504799)
800 LaSalle Avenue, Suite 2800
Minneapolis, MN 55402
Telephone: 612-349-8500
Facsimile: 612-339-4181
sslaughter@robinskaplan.com
ckeiper@robinskaplan.com

**ROBINS KAPLAN LLP**
ELLEN G. JALKUT
1325 Avenue of the Americas, Suite 2601
New York, NY 10019
Telephone: 212-980-7400
Facsimile: 212-980-7499
ejalkut@robinskaplan.com

*/s/ Peter A. Barile III*

**LOWEY DANNENBERG, P.C.**
VINCENT BRIGANTI
PETER ST. PHILLIP, JR.
PETER A. BARILE III
SITSO BEDIAKO (#0389073)
NICOLE A. VENO
44 South Broadway, Suite 1100
White Plains, NY 10601
Telephone: (914) 997-0500
Fax: (914) 997-0035
vbriganti@lowey.com
pstphillip@lowey.com
pbarile@lowey.com
sbediako@lowey.com
nveno@lowey.com

19

*/s/ Elizabeth A. Fegan*

**FEGAN SCOTT LLC**
ELIZABETH A. FEGAN
150 S. Wacker Dr., 24th Floor
Chicago, IL 60606
Telephone: (312) 741-1019
Fax: (312) 264-0100
beth@feganscott.com

**FEGAN SCOTT LLC**
Kyle A. Jacobsen
709 N 2nd St.
Suite 400 #1280
Philadelphia, PA 19123
Telephone: (484) 352-2318
Facsimile: (312) 264-0100
kyle@feganscott.com

***Appointed Interim Plaintiffs' Steering Committee Members and Co-Lead Counsel for the Consumer Indirect Purchaser Plaintiffs Subgroup***

20