**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

| | |
|---|---|
| IN RE: GRANULATED SUGAR ANTITRUST LITIGATION | MDL No. 24-3110 (JWB/DTS) |
| This Document Relates To:<br><br>All Class Actions | **PLAINTIFFS' OPPOSITION TO DEFENDANT MICHIGAN SUGAR COMPANY'S MOTION TO DISMISS PLAINTIFFS' MASTER CONSOLIDATED AND SHORT FORM COMPLAINTS** |

## <u>TABLE OF CONTENTS</u>

I.      INTRODUCTION ............................................................................................ 1

II.     BRIEF SUMMARY OF FACTUAL ALLEGATIONS .......................................... 2

        A.     Defendants Exchanged Competitively Sensitive, Non-Public
               Information............................................................................................ 3

        B.     Defendants' Conspiracy Artificially Inflated Granulated Sugar Prices....... 3

        C.     The Granulated Sugar Market Was Susceptible to Collusion. .................... 4

III.    LEGAL STANDARD ....................................................................................... 5

IV.     PLAINTIFFS ADEQUATELY PLEAD MICHIGAN'S PARTICIPATION IN
        THE CONSPIRACY ........................................................................................ 7

        A.     Plaintiffs Allege Specific Facts Supporting Michigan Sugar Company's
               Involvement in Parallel Pricing. ........................................................... 8

        B.     Plaintiffs Allege Specific Facts Supporting Michigan Sugar Company's
               Involvement in Information Sharing. ..................................................... 11

V.      SHOULD THE COURT DISMISS, PLAINTIFFS REQUEST LEAVE TO
        AMEND. ...................................................................................................... 15

VI.     CONCLUSION .............................................................................................. 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ash v. Anderson Merchandisers, LLC*
    799 F.3d 957 (8th Cir. 2015) ................................................................................ 7

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ................................................................................... 5, 6

*Baxley–DeLamar Monuments v. Am. Cemetery Ass'n*,
    843 F.2d 1154 (8th Cir.1988) ........................................................................ 6

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007) ............................................................................... 2, 5, 6

*Beltz Travel Serv., Inc. v. Int'l Air Transp. Ass'n*,
    620 F.2d 1360 (9th Cir. 1980) ...................................................................... 7

*BJC Health System v. Columbia Cas. Co.*,
    348 F.3d 685 (8th Cir. 2003) ...................................................................... 13

*Braden v. Wal-Mart Stores, Inc.*,
    588 F.3d 585 (8th Cir. 2009) ........................................................................ 8

*Five Smiths, Inc. v. Nat'l Football League Players Ass'n*,
    788 F. Supp. 1042 (D. Minn. 1992) .............................................................. 6

*Flextronics Intl. USA, Inc. v. Panasonic Holdings Corp.*,
    No. 22-15231, 2023 WL 4677017 (9th Cir. July 21, 2023) ......................... 9

*Fusco v. Xerox Corp.*,
    676 F.2d 332 (8th Cir. 1982) ........................................................................ 6

*Gelboim v. Bank of Am. Corp.*,
    823 F.3d 759 (2d Cir. 2016) .......................................................................... 6

*Grasso Enterprises, LLC v. Express Scripts, Inc.*,
    No. 4:14CV1932 HEA, 2017 WL 365434 (E.D. Mo. Jan. 25, 2017) ......................... 15

*Hosp. Bldg. Co. v. Trustees of Rex Hosp.*,
    425 U.S. 738 (1976) .................................................................................... 12

*In re Chocolate Confectionery Antitrust Litig.*,
    801 F.3d 383 (3d Cir. 2015) ................................................................. 10

*In re Credit Default Swaps*, *Antitrust Litig.*,
    MDL No. 13-2476, 2014 WL 4379112 (S.D.N.Y. Sept. 4, 2014) ............................... 7

*In re Dairy Farmers of Am., Inc. Cheese Antitrust Litig.*,
    767 F. Supp. 2d 880 (N.D. Ill. 2011) ....................................................... 7

*In re Dom. Airline Travel Antitrust Litig.*,
    221 F. Supp. 3d 46 (D.D.C. 2016) ........................................................... 14

*In re Fragrance Direct Purchaser Antitrust Litig.*,
    No. 2:23-02174, 2025 WL 579639 (D.N.J. Feb. 21, 2025) ........................................ 8

*In re Generic Pharms. Pricing Antitrust Litig.*,
    338 F. Supp. 3d 404 (E.D. Pa. 2018) ....................................................... 9

*In re Group Health Plan Litig.*,
    709 F. Supp. 3d 707 (D. Minn. 2023) (Blackwell, J.) .................................... 6

*In re Pork Antitrust Litig.*,
    No. CV 18-1776, 2019 WL 3752497 (D. Minn. Aug. 8, 2019) .................................. 15

*In re Pre-Filled Propane Tank Antitrust Litig.*,
    860 F.3d 1059 (8th Cir. 2017) (en banc) .................................................. 6

*In re Resideo Techs., Inc., Securities Litig.*,
    No. 19-CV-2863, 2021 WL 1195740 (D. Minn. Mar. 30, 2021) ............................... 14

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
    586 F. Supp. 2d 1109 (N.D. Cal. 2008) .................................................... 7

*Iowa Pub. Employees' Retirement Sys. v. Merrill Lynch,*
*Pierce, Fenner & Smith*, *Inc.*,
    340 F. Supp. 3d 285 ....................................................................... 10

*Jensen v. Minn. Bd. of Med. Prac.*,
    No. CV 23-1689, 2025 WL 965091 (D. Minn. Mar. 31, 2025)
    (Blackwell, J.) ........................................................................... 6

*Park Irmat Drug Corp. v. Express Scripts Holding Co.*,
    911 F.3d 505 (8th Cir. 2018) .............................................................. 11

*Peck v. Hoff,*
    660 F.2d 371 (8th Cir. 1981) .............................................................. 2

*Penne v. Greater Minneapolis Area Bd. of Realtors*,
   604 F.2d 1143 (8th Cir. 1979) ...................................................... 12

*Republican Party of N. Carolina v. Martin*,
   980 F.2d 943 (4th Cir. 1992) ........................................................ 2

*SD3, LLC v. Black & Decker (U.S.) Inc.*,
   801 F.3d 412 (4th Cir. 2015) ........................................................ 8

*Starr v. Sony BMG Music Entm't*,
   592 F.3d 314 (2d Cir. 2010)......................................................... 12

*United States v. Socony-Vacuum Oil Co.*,
   310 U.S. 150 (1940)...................................................................... 11

*United States v. United States Gypsum Co.*,
   438 U.S. 422 (1978)...................................................................... 12

*United States v. United States Sugar Corp.*,
   No. 22-2806 (3d Cir. Nov. 1, 2022)......................................... 11, 13

*Watkins v. Algoa Corr. Facility Missouri Dep't of Corr.*,
   No. 2:21-CV-04166-NKL, 2022 WL 452476 (W.D. Mo. Feb. 14, 2022) ................... 7

*Zean v. Fairview Health Services*,
   858 F.3d 520 (8th Cir. 2017) ................................................ 13, 14

**Rules**

Federal Rule of Civil Procedure 8(a).................................................. 2

Federal Rule of Civil Procedure 12(b)(6)....................................... 2, 5, 6, 13

Federal Rule of Civil Procedure 12(d) ............................................ 13

Federal Rule of Civil Procedure 15(a)(2)........................................ 15

Pursuant to Pretrial Order No. 7 (ECF No. 315), Direct Purchaser Plaintiffs, Commercial Indirect Purchaser Plaintiffs, and Consumer Indirect Purchaser Plaintiffs (collectively, "Plaintiffs"), respectfully submit this Memorandum of Law in Opposition to Michigan Sugar Company's ("Michigan") Motion to Dismiss Plaintiffs' Master Consolidated and Short Form Complaints (ECF No. 390).

## I.    INTRODUCTION

Plaintiffs in this consolidated litigation allege that Defendants engaged in a conspiracy to artificially inflate Granulated Sugar prices in the United States by using standardized pricing formulas and covertly exchanging competitively sensitive, non-public information. Allegations of Defendants' unlawful agreement are supported by substantial direct evidence—in the form of their own words, emails, and internal communications— as well as parallel conduct and plus factors from which the Court may infer a conspiracy.[1]

The Master Complaint[2] alleges that since its inception in 2019, the conspiracy has caused the retail price of Granulated Sugar to soar by 69%, untethered to inflation,

---

[1] Plaintiffs' Joint Opposition to Defendants' Joint Motion to Dismiss ("Joint Opp.") describes the alleged conspiracy in detail. *See* Joint Opp. 3-9.

[2] "Master Complaint" refers to the Master Consolidated Complaint (ECF No. 332), and "MC ¶ " refers to paragraphs therein. "Complaints" collectively refers to the Master Complaint, Direct Purchaser Plaintiffs' Short Form Complaint (ECF No. 341), Commercial Indirect Purchaser Plaintiffs' Short Form Consolidated Class Action Complaint (ECF No. 342) and Consumer Indirect Purchaser Plaintiffs' Short Form Complaint (ECF No. 343). "MSC Mem." refers to Michigan Sugar Company's Memorandum of Law in Support of its Motion to Dismiss Plaintiffs' Complaints (ECF No. 392). Capitalized terms not otherwise defined herein shall have the meanings ascribed in the Complaints.

production costs, or market supply. Despite the clear allegations, Michigan contends that Plaintiffs' pleadings of Defendants' use of standardized pricing formulas and information sharing are insufficient as to it. Michigan argues that Plaintiffs do not allege that Michigan matched other Producer Defendants' pricing, and that the Complaints do not allege that Michigan exchanged information with Commodity and Richard Wistisen ("Wistisen"). MSC Mem. 3.

Michigan ignores the well-pleaded allegations in the Complaints, urges the Court to draw inferences in its favor, and relies on information outside of the Complaints, which is impermissible at the dismissal stage. *Peck v. Hoff*, 660 F.2d 371, 374 (8th Cir. 1981) ("A motion to dismiss under Rule 12(b)(6) is the usual and proper method of testing the legal sufficiency of the complaint. . . . A motion to dismiss does not test the facts to support the claim."); *Republican Party of N. Carolina v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992) (holding a motion to dismiss "does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses."). Contrary to Michigan's flawed arguments, Plaintiffs' allegations are more than plausible, and "raise a reasonable expectation that discovery will reveal evidence of illegal agreement," *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007), which is all that is required at this stage.

Accordingly, Plaintiffs have satisfied their pleading burden under Federal Rule of Civil Procedure 8(a) and Michigan's Rule 12(b)(6) motion to dismiss should be denied in its entirety.

## II.    BRIEF SUMMARY OF FACTUAL ALLEGATIONS

Defendants conspired to artificially inflate Granulated Sugar prices in the United States beginning in January 2019. MC ¶ 1.

### A.    Defendants Exchanged Competitively Sensitive, Non-Public Information.

As detailed in the Joint Opposition, Plaintiffs allege that through coordinated exchanges facilitated by Wistisen and other conduits, the Producer Defendants engaged in a systematic and deliberate anticompetitive scheme through which they exchanged real-time, competitively sensitive, non-public information regarding current sugar pricing, sold positions, crop size and yields, and forward-looking pricing strategies to artificially inflate Granulated Sugar prices. *Id.* ¶¶ 63-71. The information exchanged through Wistisen (among other conduits) allowed the Producer Defendants to avoid price competition and coordinate their pricing strategies in real-time. *Id.* ¶¶ 66, 68, 79.

Plaintiffs further allege that there was no plausible, non-conspiratorial justification for Producer Defendants' use of Wistisen and others as conduits to secretly share highly confidential and detailed proprietary information about their current and future prices and sold positions. *Id.* ¶ 122. In a competitive market, such information would be a closely guarded secret and sharing such information would not be in Defendants' economic self-interest—absent an agreement. *Id.* Defendants knew and intended that their exchanges of competitively sensitive information about prices and sold positions would allow them to artificially raise, fix, maintain, or stabilize Granulated Sugar prices above competitive levels. *Id.* ¶ 123.

**B.      Defendants' Conspiracy Artificially Inflated Granulated Sugar Prices.**

The price of Granulated Sugar skyrocketed as a result of Defendants' conspiracy. *See* MC ¶¶ 136, 140. These price increases were contrary to historical Granulated Sugar pricing patterns and not explainable by normal market forces, such as inflation. *Id*. ¶¶ 137, 139. The price spikes also are not attributable to a decline in the supply of Granulated Sugar, as U.S. beet and cane sugar production increased marginally from 8,999,000 short tons in 2018/2019 to an estimated 9,368,000 short tons in 2023/2024. *Id*. ¶ 138. Plaintiffs also allege that Defendants increased prices in similar amounts at similar time periods throughout the Class Period. *Id*. ¶¶ 136-37.

**C.      The Granulated Sugar Market Was Susceptible to Collusion.**

The Master Complaint alleges several industry characteristics that render the Granulated Sugar market susceptible to collusion.

*First*, the Granulated Sugar market is highly concentrated. Before Savannah acquired Imperial in 2022, the top three marketers of sugar in the United States accounted for 65% of the market. *Id*. ¶ 170. The market became even more concentrated following Savannah's acquisition of Imperial in 2023. *Id*. ¶ 172; *see also id*. ¶ 58.

*Second*, the barriers to becoming a manufacturer of Granulated Sugar are significant, with startup costs running in the millions of dollars. *Id*. ¶¶ 173, 176-77. As a result of these high barriers to entry, it was unlikely that an entity would enter the market and undercut Producer Defendants' supracompetitive prices.

*Third*, Granulated Sugar is a fungible commodity, and demand for Granulated Sugar is inelastic. *Id*. ¶¶ 174, 184. Standardized commodity products do not have price

differences due to product grade or quality, which make them susceptible to price fixing. Additionally, inelastic demand means sellers can charge supracompetitive prices knowing that customers cannot easily reduce consumption (demand) of the product. *Id*. ¶ 175.

*Fourth*, Defendants had opportunities to collude through annual meetings of the International Sweetener Colloquium ("ISC") and trade association meetings. *Id*. ¶¶ 178-82. For example, following an ISC meeting in 2020, ASR/Domino's Henderson emailed a recap to an ASR/Domino executive containing competitive, forward-looking pricing figures for Michigan Sugar, United, and Imperial. *Id*. ¶ 91.

*Finally*, the sugar industry in the United States is no stranger to unlawful anticompetitive misconduct. *Id*. ¶¶ 188-94. Most notably, the Department of Justice filed an action in 1974 accusing certain sugar refineries, including California & Hawaiian Sugar Company (later acquired by ASR/Domino) and American Crystal Sugar Corporation (part of United), of using "brokers to act as go-betweens in carrying price information and exchanging assurances on price actions between and among refiners" to facilitate price-fixing. *Id*. ¶ 191. The action concluded in the entry of a 1978 consent decree prohibiting direct communications about future prices and the use of intermediaries to facilitate price discussions. *Id*. ¶ 192.

## III.    LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable

inference that the defendant is liable for the misconduct alleged." *Id*. (citing *Twombly*, 550 U.S. at 556). On a motion to dismiss, courts must accept the plaintiffs' factual allegations as true and draw all reasonable inferences in their favor. *In re Group Health Plan Litig.*, 709 F. Supp. 3d 707, 712 (D. Minn. 2023) (Blackwell, J.). "Moreover, in antitrust cases, where the proof is largely in the control of the defendant, dismissals prior to giving the plaintiff ample opportunity for discovery should be granted very sparingly." *Fusco v. Xerox Corp.*, 676 F.2d 332, 337 n.7 (8th Cir. 1982) (cleaned up).

The plausibility standard set forth by the Supreme Court does "not require heightened fact pleading of specifics." *Twombly*, 550 U.S. at 570; *see also In re Pre-Filled Propane Tank Antitrust Litig.*, 860 F.3d 1059, 1070 (8th Cir. 2017) (en banc) ("Plaintiffs need not provide specific facts in support of their allegations.") (cleaned up). In antitrust cases, the facts alleged must simply "raise a reasonable expectation that discovery will reveal evidence of illegal agreement." *Twombly*, 550 U.S. at 556. This is true "even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Jensen v. Minn. Bd. of Med. Prac.*, No. CV 23-1689, 2025 WL 965091, at *7 (D. Minn. Mar. 31, 2025) (Blackwell, J.) (quoting *Iqbal*, 556 U.S. at 678). "The choice between two plausible inferences that may be drawn from factual allegations is not a choice to be made by the court on a Rule 12(b)(6) motion." *Gelboim v. Bank of Am. Corp.*, 823 F.3d 759, 781 (2d Cir. 2016).

In the context of an antitrust conspiracy, the complaint must include a statement of "the facts constituting the conspiracy, its object and accomplishment." *Five Smiths, Inc. v. Nat'l Football League Players Ass'n*, 788 F. Supp. 1042, 1048 (D. Minn. 1992) (quoting *Baxley–DeLamar Monuments v. Am. Cemetery Ass'n*, 843 F.2d 1154, 1156 (8th Cir.1988)). "Participation by each conspirator in every detail in the execution of the conspiracy is unnecessary to establish liability, for each conspirator may be performing different tasks to bring about the desired result." *Beltz Travel Serv., Inc. v. Int'l Air Transp. Ass'n*, 620 F.2d 1360, 1367 (9th Cir. 1980). Moreover, a complaint need not contain detailed defendant-by-defendant allegations. *See In re TFT-LCD (Flat Panel) Antitrust Litig.*, 586 F. Supp. 2d 1109, 1117 (N.D. Cal. 2008).

## IV.  PLAINTIFFS PLAUSIBLY PLEAD MICHIGAN'S PARTICIPATION IN THE CONSPIRACY

The Complaints specifically allege that Michigan participated in the conspiracy and shared competitively sensitive information for the purpose of raising, fixing, maintaining, or stabilizing Granulated Sugar prices. MC ¶¶ 1-2, 39. In arguing that the allegations against it are not sufficient, Michigan incorrectly disregards Plaintiffs' allegations against all Defendants that implicate Michigan. *See In re Dairy Farmers of Am., Inc. Cheese Antitrust Litig.*, 767 F. Supp. 2d 880, 898 (N.D. Ill. 2011) (denying motion to dismiss where "individual defendants minimize[d] the allegations against them in the complaint"). That "Defendants" or "Producer Defendants" and "beet sugar producers" are alleged to have committed the misconduct "can provide every defendant with fair notice of the claims against them and the grounds upon which they rest because the allegations indicate that

7

each defendant could be liable for any of the allegations in the complaint." *Watkins v. Algoa Corr. Facility Missouri Dep't of Corr.*, No. 2:21-CV-04166-NKL, 2022 WL 452476, at *2 (W.D. Mo. Feb. 14, 2022) (citing *Ash v. Anderson Merchandisers*, LLC, 799 F.3d 957, 961-62 (8th Cir. 2015)); *see also In re Credit Default Swaps*, *Antitrust Litig.*, MDL No. 13-2476, 2014 WL 4379112, at *10 (S.D.N.Y. Sept. 4, 2014) (finding complaint alleged facts to support the allegation that a conspiracy existed and rejecting defendants' argument that references to "Dealer-Defendants" as a group are insufficient).

These allegations are properly considered alongside the specific allegations against Michigan. *See Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009) ("[T]he complaint should be read as a whole, not parsed piece by piece to determine whether each allegation, in isolation, is plausible."). The constellation of allegations specifically against Michigan, and against all Defendants collectively, plausibly establishes Michigan's participation in the conspiracy.

### A. Plaintiffs Allege Specific Facts Supporting Michigan's Involvement in Parallel Pricing.

Plaintiffs sufficiently plead that Michigan engaged in parallel conduct throughout the Class Period. "A plaintiff establishes parallel conduct when it pleads facts indicating that the defendants acted 'similarly.'" *SD3, LLC v. Black & Decker (U.S.) Inc.*, 801 F.3d 412, 427 (4th Cir. 2015) (citing *Petruzzi's IGA Supermarkets, Inc. v. Darling–Delaware Co.*, 998 F.2d 1224, 1243 (3d Cir. 1993)).

Michigan argues the claims against it should be dismissed because Plaintiffs' allegations show that Michigan's prices diverged from those of the other Defendants. MSC

Mem. 3-4. Michigan misunderstands the law on parallel pricing. "A showing of parallel pricing requires only evidence that defendants 'acted similarly,' not evidence that they charged the same prices or engaged in identical conduct." *In re Fragrance Direct Purchaser Antitrust Litig.*, No. 2:23-02174, 2025 WL 579639, at *8 (D.N.J. Feb. 21, 2025) (cleaned up); *see also Flextronics Intl. USA, Inc. v. Panasonic Holdings Corp.*, No. 22-15231, 2023 WL 4677017, at *1 (9th Cir. July 21, 2023) ("Parallel pricing need not be identical so long as it is similar and reasonably contemporaneous."); *In re Generic Pharms. Pricing Antitrust Litig.*, 338 F. Supp. 3d 404, 441 (E.D. Pa. 2018) ("Plaintiffs are not required to plead simultaneous price increases—or that the price increases were identical—in order to demonstrate parallel conduct.").

Plaintiffs allege that Defendants, including Michigan, increased prices in similar amounts at similar times throughout the proposed class period. *See* Joint Opp. at 19-25. The Master Complaint contains numerous allegations regarding price increases that implicate Michigan. For instance, Plaintiffs allege that "in April 2019, soon after the ISC meeting held that year, buyers who had paid beet sugar prices in the low 30 cents back in 2017 were shocked at a \$0.02 and \$0.03 per pound increase." MC ¶ 146. Similarly, they allege that "[s]oon after the ISC ended, prices rose by 25% in many instances from the prices for which sugar was contracted in 2022-23." *Id.* ¶ 157. Again, Plaintiffs allege that beet sugar prices for the 2023-24 contract year "were firm in the \$0.55 to \$0.58 per pound range." *Id.* ¶ 159. Then, they contend that with sugar production setting a new record in the United States in 2024 and "despite ample supplies, beet processors had no desire to lower

prices to contract that sugar." *Id.* ¶ 162. All these allegations, while not specific to Michigan, implicate Michigan in parallel price increases throughout the Class Period.[3]

More specifically, Michigan's own chart in its brief, based on allegations in the Complaints, demonstrates that Michigan raised prices in parallel with other Defendants. MSC Mem. 4. In Spring 2021, both Michigan and ASR/Domino raised prices by one cent a pound. *Id.* According to the chart, a few months later, in August 2021, Michigan raised prices by two cents a pound following ASR/Domino's previous two cents a pound increase, and then ASR/Domino raised prices by an additional one cent a pound. *Id.* These price increases are the definition of parallel pricing. *See In re Chocolate Confectionery Antitrust Litig.*, 801 F.3d 383, 392 (3d Cir. 2015) (defining parallel price increases as those "in which one company raises prices and its rivals follow").

Despite clear allegations of Defendants' Granulated Sugar price increases occurring within the same month or a month apart, Michigan declares that it is impossible to infer

---

[3] Courts have held that minute defendant-by-defendant factual allegations are not required to adequately plead an overall conspiracy. *See, e.g.*, *In re Interest Rate Swaps Antitrust Litig.*, 261 F. Supp. 3d 430, 478 (S.D.N.Y. 2017) (holding group pleading can be proper where plaintiffs' thesis is all members of the group participated in the alleged activity); *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 599 F. Supp. 2d 1179, 1184 (N.D. Cal. 2009) (finding references to corporate families appropriate). Further, "[g]roup pleading is not fatal to a complaint if the complaint still gives defendants fair notice of the claims against them." *Tivoli LLC v. Sankey S.P.A.*, No. SA CV 14-1285-DOC (JCGx), 2015 WL 12683801, at *3 (C.D. Cal. Feb. 3, 2015); *see also Iowa Pub. Employees' Retirement Sys. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 340 F. Supp. 3d 285, 317 (S.D.N.Y. 2018) ("Because the Amended Complaint alleges each Defendant's participation separately, it is not impermissible group pleading to refer to their collective actions in furtherance of the conspiracy using a more general phrase such as 'the Prime Broker Defendants.'").

that it was involved in parallel conduct "because those allegations affirmatively show [Michigan] priced its sugar differently than its competitors." MSC Mem. 5. But the case Michigan looks to for support, *In re Baby Food Antitrust Litigation*, specifically recognized "that parallel pricing does not require 'uniform prices.'" 166 F.3d 112, 132 (3d Cir. 1999) (quoting *United States v. Socony-Vacuum Oil Co.*, 310 U.S. 150, 222 (1940)).[4] Defendants' prices fall within a few cents per pound of one another, and any discrepancy regarding the initial offered price may be explained by shipping costs that are added during negotiations. *See* MC ¶ 143. Plaintiffs plausibly allege that Michigan participated in parallel price increases during the proposed class period.

### B. Plaintiffs Allege Specific Facts Supporting Michigan Sugar Company's Involvement in Information Sharing.

In addition to alleging that Michigan participated in Defendants' parallel pricing, Plaintiffs allege that Michigan was involved in sharing competitively sensitive pricing information for the purpose of suppressing competition and maintaining artificially high Granulated Sugar prices. MC ¶ 63. Plaintiffs allege that Michigan, along with other Producer Defendants, exchanged non-public and competitively sensitive information on current pricing, sold positions, crop size and yields, and forward-looking pricing strategies.[5] *Id.* The allegations include specific instances where Wistisen passed along

---

[4] The other case Michigan cites offers no support where the alleged parallel conduct was limited to only one instance involving the termination of plaintiff from PBM networks operated by Express Scripts and CVS, six months apart. *See Park Irmat Drug Corp. v. Express Scripts Holding Co*., 911 F.3d 505, 516-17 (8th Cir. 2018).

[5] As Michigan acknowledges, Plaintiffs gained access to these private communications sharing competitively sensitive pricing information through the Joint Appendix filed in *United States v. United States Sugar Corp.* ("*Sugar*"), No. 22-2806 (3d

competitively sensitive information from Michigan to United and ASR/Domino. For instance, in August 2020, Wistisen informed ASR/Domino that Michigan was 85+% booked. *Id*. ¶ 94. A month later, Wistisen informed ASR/Domino that Michigan was pricing at $38.5+. *Id.* Several times, Wistisen noted that it was waiting to hear back from Michigan (*see, e.g., id.* ¶¶ 93, 97), from which one can reasonably infer that it expected to hear back from Michigan. Despite these well-pleaded factual allegations that Michigan shared its competitively sensitive information, Michigan asks the Court to improperly draw inferences in *its* favor and conclude that it did not share information because the allegations in the Complaint are "without attribution." MSC Mem. 6. But at this stage of the litigation, Plaintiffs are not expected to have every specific detail related to the information exchanges. *See Starr v. Sony BMG Music Entm't,* 592 F.3d 314, 325 (2d Cir. 2010) (rejecting contention that plaintiff was required to identify specifically the time, place, or person related to each allegation of conspiracy); *Hosp. Bldg. Co. v. Trustees of Rex Hosp.*, 425 U.S. 738, 746 (1976) ("the proof is largely in the hands of the alleged conspirators"); *In re Static Random Access (SRAM) Antitrust Litig.*, 580 F. Supp. 2d 896, 903-04 (N.D. Cal. 2008) (requiring only allegations that plausibly suggest each defendants' participation).

---

Cir. Nov. 1, 2022). MSC Mem. 7 n.5. That case involved U.S. Sugar's acquisition of Imperial. The U.S. government challenged the merger on the grounds that it would have anticompetitive effects in the Southeast United States. MC ¶ 62. Because of that case's limited focus on the U.S. Sugar and Imperial merger, there was no reason to include Michigan's communications with Wistisen or other third parties in the trial exhibits.

Likewise, Michigan's contention that these well-pleaded allegations are insufficient because they do not show Michigan *receiving* competitively sensitive information is preposterous. MSC Mem. 6. "[T]he exchange of price information among competitors carries with it the potential 'for the development of concerted price-fixing arrangements which lie at the core of the Sherman Act's prohibitions.'" *Penne v. Greater Minneapolis Area Bd. of Realtors*, 604 F.2d 1143, 1148 (8th Cir. 1979) (citing *United States v. United States Gypsum Co.*, 438 U.S. 422, 457 (1978)). Where, as here, the price exchanges among horizontal competitors involve disaggregated pricing information, it is reasonable to infer anticompetitive intent and conduct. Plaintiffs allege that it was not in Michigan's economic self-interest to share its competitively sensitive pricing and sales information unless Michigan received similar competitor information in exchange. MC ¶¶ 63, 71. From the context of the emails, it is apparent that Michigan shared its competitively sensitive pricing information. *See, e.g.*, *id.* ¶ 94 ("My goodness, what a difference a month makes. Michigan 85+% booked" … "Michigan holding forecasts unchanged, sugars nearing 16%, factories running well" … pricing at "$38.5+, selective selling"). As such, it is reasonable to infer that Michigan also received competitively sensitive information from its competitors to fix Granulated Sugar prices.

In an attempt to divert attention from Plaintiffs' well-pleaded allegations implicating Michigan in the conspiracy, Michigan attaches various exhibits to its brief that purportedly contradict those allegations. Michigan argues in a footnote that because Plaintiffs quoted certain emails within longer email chains, the entire email chain was incorporated into the Complaints. MSC Mem. at 7 n.5. Although Plaintiffs quoted some

13

exhibits from the Joint Appendix filed in *Sugar* in the Complaints, that does not open the door for the Court to consider all evidence from *Sugar* on a motion to dismiss. *See* Fed. R. Civ. P. 12(d); *BJC Health System v. Columbia Cas. Co.,* 348 F.3d 685 (8th Cir. 2003) (holding that a 12(b)(6) motion may not consider "matters outside the pleadings" including any evidence in opposition to the pleadings). Michigan's argument that all exhibits in *Sugar* are embraced by the Complaints exceeds the holding in *Zean v. Fairview Health Services*, 858 F.3d 520, 526 (8th Cir. 2017). For a complaint to embrace a document, it must be integral to the claim, such as a contract or, as in *Zean*, a written consent. *Id.* at 526-7; *see In re Resideo Techs., Inc., Securities Litig.*, No. 19-CV-2863, 2021 WL 1195740, at *3 (D. Minn. Mar. 30, 2021) (to consider documents incorporated by reference, "the complaint must *necessarily* embrace the document such that it forms the basis of the plaintiff's claim"); *In re Dom. Airline Travel Antitrust Litig.*, 221 F. Supp. 3d 46, 71 (D.D.C. 2016) (holding incorporation-by-reference inapplicable where the documents are not "integral" to Plaintiffs' claims). Unlike a contract, where the entire document forms the agreement at issue in a contract dispute, the entire email chains submitted by Michigan are not necessary to or probative of Plaintiffs' claims in this case.

Even if the Court considers the full email chains at this stage, it must draw all reasonable inferences in Plaintiffs' favor. Yet, Michigan suggests inferences contrary to Plaintiffs' allegations. For instance, Michigan quotes an email in which Wistisen reports that he is "[h]earing mixed messages on Michigan: out of market assessed possible price increase and that they've started to chase market (increased discounting). Hopefully I'll hear from them today." MSC Mem. 8 (quoting Ex. A at 3). It then asks the Court to

14

improperly infer that Michigan was neither sharing information with Wistisen nor part of the conspiracy because he heard rumors that it was discounting. *Id.* Contrary to Michigan's suggested improper inference, the quote supports Plaintiffs' allegations. It demonstrates that Wistisen expected to hear from Michigan later in the day to confirm whether it was increasing price or starting to discount.

Regardless, the Court does not weigh evidence at this stage of the litigation and Plaintiffs need only allege sufficient factual matter to plausibly suggest Michigan's participation in the conspiracy, which they have. *See, e.g., Grasso Enterprises, LLC v. Express Scripts, Inc.,* No. 4:14CV1932 HEA, 2017 WL 365434, at *5 (E.D. Mo. Jan. 25, 2017) (denying motion to dismiss antitrust claims with allegations against the "Defendants and their co-conspirators," reiterating that plaintiffs are only required to put forth "sufficient factual matter to plausibly suggest an inference of conspiracy, *even if* the facts are susceptible to an equally likely interpretation") (internal citations and quotation marks omitted).

## V.    SHOULD THE COURT DISMISS, PLAINTIFFS REQUEST LEAVE TO AMEND.

Michigan's request for dismissal with prejudice is inappropriate at this stage. Granting leave to amend is the appropriate disposition if the Court chooses to dismiss Plaintiffs' claims. *See* Fed. R. Civ. P. 15(a)(2) (the court "should freely give leave when justice so requires"); *In re Pork Antitrust Litig.,* No. CV 18-1776 (JRT/LIB), 2019 WL 3752497, at *10 (D. Minn. Aug. 8, 2019) (dismissing claims without prejudice to grant Plaintiffs leave to amend the complaint).

## VI.    CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court deny Michigan Sugar Company's Motion to Dismiss (ECF No. 390), or in the alternative, grant Plaintiffs leave to amend the Complaints.

Dated:  June 12, 2025                    Respectfully Submitted,

                                         */s/ Stacey P. Slaughter*
                                         **ROBINS KAPLAN LLP**
                                         STACEY P. SLAUGHTER (#0296971)
                                         CAITLIN E. KEIPER (#0504799)
                                         800 LaSalle Avenue, Suite 2800
                                         Minneapolis, MN 55402
                                         Telephone: 612-349-8500
                                         Facsimile: 612-339-4181
                                         sslaughter@robinskaplan.com
                                         ckeiper@robinskaplan.com

                                         **ROBINS KAPLAN LLP**
                                         ELLEN G. JALKUT
                                         1325 Avenue of the Americas, Suite 2601
                                         New York, NY 10019
                                         Telephone: 212-980-7400
                                         Facsimile: 212-980-7499
                                         ejalkut@robinskaplan.com

                                         */s/ Peter A. Barile III*
                                         **LOWEY DANNENBERG, P.C.**
                                         VINCENT BRIGANTI
                                         PETER ST. PHILLIP, JR.
                                         PETER A. BARILE III
                                         SITSO BEDIAKO (#0389073)
                                         NICOLE A. VENO
                                         44 South Broadway, Suite 1100
                                         White Plains, NY 10601
                                         Telephone: (914) 997-0500
                                         Fax: (914) 997-0035
                                         vbriganti@lowey.com
                                         pstphillip@lowey.com
                                         pbarile@lowey.com
                                         sbediako@lowey.com
                                         nveno@lowey.com

17

*/s/ Elizabeth A. Fegan*

**FEGAN SCOTT LLC**
ELIZABETH A. FEGAN
150 S. Wacker Dr., 24th Floor
Chicago, IL 60606
Telephone: (312) 741-1019
Fax: (312) 264-0100
beth@feganscott.com

**FEGAN SCOTT LLC**
KYLE A. JACOBSEN
709 N 2nd St.
Suite 400 #1280
Philadelphia, PA 19123
Telephone: (484) 352-2318
Facsimile: (312) 264-0100
kyle@feganscott.com

***Appointed Interim Plaintiffs' Steering
Committee Members and Co-Lead Counsel for
the Consumer Indirect Purchaser Plaintiffs
Subgroup***

*/s/ Daniel E. Gustafson*

**GUSTAFSON GLUEK PLLC**
DANIEL E. GUSTAFSON (#0202241)
DANIEL C. HEDLUND (#0258337)
JOSHUA J. RISSMAN (#0391500)
ABOU B. AMARA, JR. (#0401146)
GABRIELLE M. KOLB (#0504386)
Canadian Pacific Plaza
120 So. Sixth Street, Suite 2600
Minneapolis, MN 55402
Telephone: (612) 333-8844
Fax: (612) 339-6622
dgustafson@gustafsongluek.com
dhedlund@gustafsongluek.com
jrissman@gustafsongluek.com
aamara@gustafsongluek.com
gkolb@gustafsongluek.com

18

/s/ Michael L. Roberts
**ROBERTS LAW FIRM US, PC**
MICHAEL L. ROBERTS
ERICH P. SCHORK
SARAH E. DELOACH
1920 McKinney Ave, Suite 700
Dallas, TX 75201
Telephone: (501) 821-5575
Fax: (501) 821-4474
mikeroberts@robertslawfirm.us
erichschork@robertslawfirm.us
sarahdeloach@robertslawfirm.us

***Appointed Interim Plaintiffs Steering
Committee Members and Co-Leads for the
Direct Purchaser Plaintiff Subgroup***

/s/ Heidi M. Silton
**LOCKRIDGE GRINDAL NAUEN PLLP**
HEIDI M. SILTON (#025759X)
JESSICA N. SERVAIS (#0326744)
JOSEPH C. BOURNE (#0389922)
ANTONIA M. KONKOLY (#0504377)
MICHAEL J.K.M. KINANE (#0504621)
100 Washington Avenue South, Suite 2200
Minneapolis, MN 55401
Telephone: 612/339-6900
hmsilton@locklaw.com
jnservais@locklaw.com
jcbourne@locklaw.com
amkonkoly@locklaw.com
mjkmkinane@locklaw.com

/s/ Kimberly A. Justice
**FREED KANNER LONDON
& MILLEN LLC**
KIMBERLY A. JUSTICE
JONATHAN M. JAGHER
923 Fayette Street
Conshohocken, PA 19428
Telephone: 610/234-6486
kjustice@fklmlaw.com
jjagher@fklmlaw.com

19

**FREED KANNER LONDON
& MILLEN LLC**
MATTHEW W. RUAN (#033909X)
DOUGLAS A. MILLEN
ROBERT J. WOZNIAK
100 Tri-State International, Suite 128
Lincolnshire, IL 60069
Telephone: (224) 632-4500
mruan@fklmlaw.com
dmillen@fklmlaw.com
rwozniak@fklmlaw.com

*Appointed Interim Plaintiffs' Steering
Committee Member and Co-Lead Counsel for
the Commercial Indirect Purchaser Plaintiffs
Subgroup*