# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| IN RE: GRANULATED SUGAR ANTITRUST LITIGATION | Case No. 24-md-03110 (JWB/DTS)<br><br>**DEFENDANTS' REPLY IN SUPPORT OF JOINT MOTION TO DISMISS PLAINTIFFS' MASTER CONSOLIDATED AND SHORT FORM COMPLAINTS** |
| This Document Relates To:<br><br>ALL ACTIONS | |

## TABLE OF CONTENTS

**Page(s)**

INTRODUCTION ...................................................................................................1

ARGUMENT ........................................................................................................4

I.    PLAINTIFFS' CONSPIRACY CLAIMS SHOULD BE DISMISSED ..................4

    A.    Plaintiffs Cannot Shirk Their Burden Of Plausibly Alleging That All
         Defendants Joined And Participated In The Alleged Conspiracy ................4

    B.    Plaintiffs Do Not Plausibly Allege A Price-Fixing Agreement....................7

         1.    Plaintiffs Identify No Direct Evidence Of An Agreement To
              Fix Prices ...................................................................................7

         2.    Plaintiffs' "Circumstantial Evidence" Of A Price-Fixing
              Conspiracy Is Also Insufficient .......................................................11

    C.    Plaintiffs Do Not Plausibly Allege An Information Exchange Claim.........21

         1.    Plaintiffs Do Not Allege An Agreement To Reciprocally
              Share Information ..........................................................................21

         2.    DOJ's Statement Does Not Save Plaintiffs' Information
              Exchange Claim............................................................................22

         3.    Plaintiffs Identify No Anticompetitive Effects From Any
              Agreement To Exchange Information ................................................31

II.    PLAINTIFFS' OPPOSITION CONFIRMS THAT THEY HAVE NOT
     PLED ANTITRUST INJURY .........................................................................33

III.    PLAINTIFFS' CONCLUSORY ALLEGATIONS OF AN "ONGOING"
      CONSPIRACY DO NOT SUPPORT INJUNCTIVE RELIEF.............................33

IV.    INDIRECT PLAINTIFFS' STATE LAW CLAIMS REMAIN DEFICIENT .......34

    A.    Indirect Plaintiffs Lack Standing To Sue Under State Laws Where
         No Named Plaintiff Resides Or Was Injured ...............................................35

    B.    There Are No Non-Conclusory Allegations Of An Effect On
         Intrastate Commerce....................................................................................36

    C.    The Deficiencies In Indirect Plaintiffs' Consumer Protection Claims
         Remain........................................................................................................36

    D.    Plaintiffs' Conclusory Unjust Enrichment Claims Should Be
         Dismissed....................................................................................................38

V.    CONCLUSION..............................................................................................39

<u>**TABLE OF AUTHORITIES**</u>

**Page(s)**

**CASES**

*16630 Southfield Ltd. P'ship v. Flagstar Bank, F.S.B.*,
  727 F.3d 502 (6th Cir. 2013) ..................................................................................19

*Acad. of Allergy & Asthma in Primary Care v. Quest Diagnostics, Inc.*,
  2022 WL 980791 (W.D. Tex. Mar. 31, 2022) ........................................................32

*BCBSM, Inc. v. GS Labs, LLC*,
  2023 WL 2044329 (D. Minn. Jan. 30, 2023) ............................................................5

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ................................................................................4, 19, 38

*Blomkest Fertilizer, Inc. v. Potash Corp. of Sask., Inc.*,
  203 F.3d 1028 (8th Cir. 2000) ..........................................................................14, 31

*Burtch v. Milberg Factors, Inc.*,
  662 F.3d 212 (3d Cir. 2011) ....................................................................................7

*Duffy v. Yardi Sys., Inc.*,
  758 F. Supp. 3d 1283 (W.D. Wash. 2024) ........................................................28, 29

*Five Smiths, Inc. v. Nat'l Football League Players Ass'n*,
  788 F. Supp. 1042 (D. Minn. 1992) ..................................................................21, 27

*Gibson v. Cendyn Grp. LLC*,
  2024 WL 2060260 (D. Nev. May 8, 2024) ........................................................26, 30

*Gibson v. MGM Resorts Int'l*,
  2023 WL 7025996 (D. Nev. Oct. 24, 2023) .............................................................30

*Gisairo v. Lenovo*,
  516 F. Supp. 3d. 880 (D. Minn. 2021) ....................................................................35

*Grisham v. Covidien, Inc.*,
  2022 WL 402215 (W.D. Mo. Feb. 9, 2022) ...............................................................6

*Hannah's Boutique, Inc. v. Surdej*,
  2015 WL 3856551 (N.D. Ill. June 19, 2015) ...........................................................32

*Hobart-Mayfield, Inc. v. Nat'l Operating Comm. On Standards For Athletic Equip.*,
   48 F.4th 656 (6th Cir. 2022) ................................................................................16

*Hyland v. HomeServices of Am., Inc.*,
   771 F.3d 310 (6th Cir. 2014) ................................................................................7

*In re Bookends & Beginnings LLC*,
   2022 WL 18144916 (S.D.N.Y. Aug. 15, 2022) ...................................................26

*In re Broiler Chicken Antitrust Litig.*,
   2021 WL 2207142 (N.D. Ill. June 1, 2021) .........................................................22

*In re Broiler Chicken Antitrust Litig.*,
   290 F. Supp. 3d 772 (D. Minn. 2017) ...................................................................6

*In re Cattle Antitrust Litig.*,
   2020 WL 5884676 (D. Minn. Sept. 29, 2020) .....................................................13

*In re Cattle Antitrust Litig.*,
   2021 WL 7757881 (D. Minn. Sept. 14, 2021) .......................................................9

*In re Citric Acid Litig.*,
   191 F.3d 1090 (9th Cir. 1999) .............................................................................21

*In re Concrete and Cement Additives Antitrust Litig.*,
   2025 WL 1755193 (S.D.N.Y. June 25, 2025) ..............................................*passim*

*In re Crop Inputs Antitrust Litig.*,
   749 F. Supp. 3d 992 (E.D. Mo. 2024) ..........................................................4, 6, 30

*In re Crop Prot. Prods. Loyalty Program Antitrust Litig.*,
   2025 WL 315835 (M.D.N.C. Jan. 28, 2025) .......................................................37

*In re Domestic Airline Travel Antitrust Litig.*,
   691 F. Supp. 3d 175 (D.D.C. 2023) ......................................................................7

*In re Flash Memory Antitrust Litig.*,
   643 F. Supp. 2d 1133 (N.D. Cal. 2009) ...............................................................37

*In re Foreign Exch. Benchmark Rates Antitrust Litig.*,
   74 F. Supp. 3d 581 (S.D.N.Y. 2015) ...................................................................10

*In re Generics Pharms. Pricing Antitrust Litig.*,
   368 F. Supp. 3d 814 (E.D. Pa. 2019) ..................................................................38

*In re German Auto. Mfrs. Antitrust Litig.*,
  612 F. Supp. 3d 967 (N.D. Cal. 2020), *aff'd*, 2021 WL 4958987 (9th
  Cir. Oct. 26, 2021) ................................................................................................16

*In re GSE Bonds Antitrust Litig.*,
  396 F. Supp. 3d 354 (S.D.N.Y. 2019) ...................................................................8

*In re Hard Disk Drive Suspension Assemblies Antitrust Litig.*,
  2021 WL 4306018 (N.D. Cal. Sept. 22, 2021) .....................................................38

*In re High Fructose Corn Syrup Antitrust Litig.*,
  295 F.3d 651 (7th Cir. 2002) ..................................................................................8

*In re Jan. 2021 Short Squeeze Trading Litig.*,
  2021 WL 5359731 (S.D. Fla. Nov. 17, 2021) ........................................................9

*In re Local TV Advertising Antitrust Litig.*,
  2020 WL 6557665 (N.D. Ill. Nov. 6, 2020) ....................................................12, 13

*In re London Silver Fixing, Ltd., Antitrust Litig.*,
  332 F. Supp. 3d 885 (S.D.N.Y. 2018) ....................................................................9

*In re Mercedes-Benz Antitrust Litig.*,
  2006 WL 2129100 (D.N.J. July 26, 2006) ............................................................34

*In re Multiplan Health Ins. Provider Litig.*,
  2025 WL 1567835 (N.D. Ill. June 3, 2025) ....................................................28, 38

*In re Musical Instruments & Equip. Antitrust Litig.*,
  798 F.3d 1186 (9th Cir. 2015) ...............................................................................13

*In re Packaged Ice Antitrust Litig.*,
  723 F. Supp. 2d 987 (E.D. Mich. 2010) ...............................................................18

*In re Passenger Vehicle Replacement Tires Antitrust Litig.*,
  767 F. Supp. 3d 681 (N.D. Ohio 2025) ............................................16, 17, 19, 35

*In re Pool Prods. Distrib. Mkt. Antitrust Litig.*,
  158 F. Supp. 3d 544 (E.D. La. 2016) ...............................................................7, 9

*In re Pork Antitrust Litig.*,
  2019 WL 3752497 (D. Minn. Aug. 8, 2019) .........................................................13

*In re Pork Antitrust Litig.*,
  2025 WL 1224694 (D. Minn. Apr. 28, 2025) ...........................................11, 15, 21, 29

*In re Pork Antitrust Litig.*,
 495 F. Supp. 3d 753 (D. Minn. 2020) ........................................................36

*In re Publication Paper Antitrust Litig.*,
 690 F.3d 51 (2d Cir. 2012) ..........................................................................8

*In re SRAM Antitrust Litig.*,
 580 F. Supp. 2d 896 (N.D. Cal. 2018) ......................................................18

*In re Target Corp. Data Sec. Breach Litig.*,
 66 F. Supp. 3d 1154 (D. Minn. 2014) ......................................................35

*In re Travel Agent Comm'n Antitrust Litig.*,
 583 F.3d 896 (6th Cir. 2009) .....................................................................18

*Insulate SB, Inc. v. Advanced Finishing Sys.*,
 797 F.3d 538 (8th Cir. 2015) .......................................................................4

*Interstate Circuit v. United States*,
 306 U.S. 208 (1939) .......................................................................10, 25, 26

*Jung v. Ass'n of Am. Med. Colls.*,
 300 F. Supp. 2d 119 (D.D.C. 2004) .............................................................6

*Mayor & Council of Balt. v. Citigroup, Inc.*,
 709 F.3d 129 (2d Cir. 2013) ...................................................................7, 14

*Okla. Firefights Pension & Ret. Sys. v. Deutsche Bank Aktiengesellschaft*,
 2024 WL 4202680 (S.D.N.Y Sept. 13, 2024) ...........................................14

*Olean Wholesale Grocery Cooperative, Inc. v. Agri Stats, Inc.*,
 2020 WL 6134982 (N.D. Ill. Oct. 19, 2020) .............................................22

*Park v. Forest Serv. of U.S.*,
 205 F.3d 1034 (8th Cir. 2000) ...................................................................34

*PLS.com LLC v. Nat'l Ass'n of Realtors*,
 32 F.4th 824 (9th Cir. 2022) ......................................................................28

*Premera Blue Cross v. Takeda Pharm. Co.*,
 2023 WL 9474011 (D. Mass. Nov. 20, 2023) ...........................................38

*Robertson v. Univ. Akron Sch. of Law*,
 2021 WL 3709915 (N.D. Ohio Aug. 20, 2021), *aff'd*, 2022 WL
 1836922 (6th Cir. June 3, 2022) ..................................................................6

*Segal v. Amadeus IT Grp., S.A.*,
  2025 WL 963751 (N.D. Ill. Mar. 31, 2025) ................................................33

*Sheet Metal Workers Loc. 441 Health & Welfare Plan v. GlaxoSmithKline, PLC*,
  737 F. Supp. 2d 380 (E.D. Pa. 2010) ........................................................38

*Sullivan v. Barclays PLC*,
  2017 WL 685570 (S.D.N.Y. Feb, 21, 2017) ............................................9, 10

*Tivoli LLC v. Targetti Sankey S.P.A.*,
  2015 WL 12683801 (C.D. Cal. Feb. 3, 2015) ..............................................6

*Todd v. Exxon Corp.*,
  275 F.3d 191 (2d Cir. 2001) ................................................................15, 22

*Toys "R" Us, Inc. v. FTC*,
  221 F.3d 928 (7th Cir. 2000) ...................................................................28

*Tyus v. Bertera Subaru*,
  2021 WL 4993058 (D. Conn. Oct. 27, 2021) .............................................37

*United States v. Agri Stats, Inc.*,
  2024 WL 2728450 (D. Minn. May 28, 2024) .............................................34

*United States v. Container Corp.*,
  393 U.S. 333 (1969) .................................................................................27

*United States v. Foley*,
  598 F.2d 1323 (4th Cir. 1979) ..................................................................28

*United States v. Masonite Corp.*,
  316 U.S. 265 (1942) .......................................................................24, 25, 27

*United States v. U.S. Gypsum Co.*,
  438 U.S. 422 (1978) .................................................................................27

*United States v. U.S. Sugar Corp.*,
  2022 WL 4544025 (D. Del. Sept. 23, 2022) ..............................................23

*United States v. U.S. Sugar Corp.*,
  73 F.4th 197 (3d Cir. 2023) ......................................................................24

## STATUTES

Federal Trade Commission Act § 5 .................................................................28

Minn. Stat. § 325F.69 (2023)..............................................................................................37

## INTRODUCTION

Plaintiffs' Opposition confirms the dispositive deficiencies in their Complaints.[1]

Nowhere in their Opposition do Plaintiffs contest:

- Their failure to allege how, when, or where any agreement among any two Defendants, let alone each of them, was reached;

- They do not allege the majority of the Sugar Defendants ever communicated with Mr. Wistisen;

- The absence of any alleged communications with Mr. Wistisen after July 2021, more than four years ago;

- That they have not alleged any granulated sugar prices that were modified as a result of any communication with Mr. Wistisen;

- That they have not alleged *how* they purchased sugar or any link between the Wistisen communications and the prices *they* paid; and

- That the rise in prices for raw sugar cane (the main input into granulated cane sugar) shows that the alleged conspiracy is not plausible and breaks any link between the alleged communications with Mr. Wistisen and the increase in granulated sugar prices.

These omissions are fatal to Plaintiffs' case. Plaintiffs have alleged an industry-wide conspiracy involving all Sugar Defendants to fix the prices of all granulated sugar sold in the US. Plaintiffs cannot satisfy their pleading obligations by lumping all Defendants together through "group pleading." *Twombly* requires that Plaintiffs plead factual content

---

[1] "Opp." or "Opposition" refers to Plaintiffs' Mem. of Law in Opp. to Defs.' Joint Mot. to Dismiss Pls.' Master Consolidated and Short Form Compls., ECF No. 403. "Mot." or "Motion" refers to Defs.' Mem. of Law in Supp. of Defs.' Mot. to Dismiss Pls.' Master Consolidated and Short Form Compls., ECF No. 398. All other abbreviations are defined in the Table of Abbreviation in Defendants' Motion. *See* ECF No. 398 at ix. All quoted material is cleaned up and emphasis is added unless otherwise noted.

that allows the Court to draw the reasonable inference that each Defendant is liable for the industry-wide conspiracy they have alleged. As part of the Court's examination of whether that standard has been met, the Court should consider obvious, non-conspiratorial alternative explanations for the alleged conduct and harm. Plaintiffs' failure to comply with standard pleading requirements and allege a plausible theory of conspiracy means their claims should be dismissed.

With respect to Plaintiffs' price-fixing claim, Plaintiffs have not properly alleged any parallel conduct. Plaintiffs' chart of supposed price increases does not show how any Sugar Defendant's prices changed over time, let alone how all Sugar Defendants' prices moved relative to one another, and is wholly uninformative on the question of whether there was parallel pricing. Similarly, Plaintiffs' industry-wide aggregated data regarding "nominal retail" prices for granulated sugar does not suffice to plead parallel pricing. While the lack of parallel conduct is indicative of the reality that there was no conspiracy, the absence of well-pleaded allegations of parallel conduct (which Plaintiffs, as entities that bought sugar from Defendants, certainly could have presented if it had occurred), means there is no basis for allowing this case to continue.

Plaintiffs' Opposition also does not save their information exchange claim. Plaintiffs identify no direct allegations of any "give to get" agreement to share information through Mr. Wistisen or otherwise, and Plaintiffs do not provide any basis for inferring such an agreement. Nor do Plaintiffs identify any industry-wide anticompetitive effects, either directly or indirectly, from the sporadic communications alleged between Mr. Wistisen and one individual at United and one individual at Domino, which is

independently fatal to their information sharing claim. While Plaintiffs label the alleged communications with Mr. Wistisen "real-time," "systematic," and "detailed," the reality is that Plaintiffs only allege that Mr. Wistisen communicated infrequently—less than once a month for a less than two year period—*with only two Sugar Defendants* regarding general pricing information that was neither customer-specific nor product-specific. It is implausible that these sporadic emails could provide the basis for a more than six-year, ongoing, industry-wide conspiracy that has supposedly impacted every sale of granulated sugar in the U.S.

The U.S. Department of Justice's Statement of Interest ("DOJ Statement," ECF No. 415) does nothing to resuscitate Plaintiffs' claims. The DOJ Statement does not address, let alone take any position, on the myriad deficiencies that require dismissal of Plaintiffs' price-fixing claim. And with respect to Plaintiffs' information exchange claim, the DOJ Statement admittedly advocates for a position that conflicts with how the Eighth Circuit has previously analyzed such claims, and is inconsistent with how Plaintiffs have sought to plead their claim. But, even if this Court were to accept the DOJ's proposed framework for analyzing information exchange claims based on the Supreme Court's decision in *Interstate Circuit v. United States*, it would not change the outcome. Nowhere in the Complaints do Plaintiffs plausibly allege that Mr. Wistisen "invited" the Sugar Defendants to reciprocally share information as part of any plan, the necessary consequence of which would be to restrain trade, as is required under *Interstate*. Nor do the Complaints allege that the Sugar Defendants were aware that any other Sugar Defendant had agreed to reciprocally share information with Mr. Wistisen as part of such a plan or manifested

-3-

"acceptance" by reciprocally sharing information with Mr. Wistisen. All of those facts are required under *Interstate* and its progeny to state a claim, and are missing here. Moreover, the DOJ takes no position on whether Plaintiffs have alleged anticompetitive effects from any purported information exchange, which Plaintiffs have also failed to plead.

Respectfully, the Court should not allow Plaintiffs' implausible and speculative allegations of a vast conspiracy to proceed to discovery, and should dismiss Plaintiffs' Complaints.

## ARGUMENT

## I.    PLAINTIFFS' CONSPIRACY CLAIMS SHOULD BE DISMISSED

### A.    Plaintiffs Cannot Shirk Their Burden Of Plausibly Alleging That All Defendants Joined And Participated In The Alleged Conspiracy

Plaintiffs concede that they have not alleged "how, when, and where each Defendant joined" or participated in any alleged conspiracy, or how any alleged conspiracy was formed. *See* Opp. at 35-39. Instead, Plaintiffs argue that they are not obligated to provide those details because there is "no heightened pleadings requirement" for antitrust claims. *Id*. at 35 (citation omitted). But requiring that Plaintiffs plead how each Defendant entered into and participated in the alleged conspiracy is not imposing a "heightened" pleading standard; it is the bare minimum to state an antitrust claim. *In re Crop Inputs Antitrust Litig.*, 749 F. Supp. 3d 992, 1007 (E.D. Mo. 2024) ("[A]t the pleading stage in an antitrust case, *each defendant* is entitled to know how *it* is alleged to have conspired, with whom, and for what purpose." (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557-58 (2007))). The "critical element" for a Section 1 claim is "concerted action," and for that a "plaintiff

must demonstrate that the defendants shared a 'unity of purpose or a common design and understanding, or a meeting of the minds.'" *Insulate SB, Inc. v. Advanced Finishing Sys.*, 797 F.3d 538, 543-44 (8th Cir. 2015) (citation omitted); *see also BCBSM, Inc. v. GS Labs, LLC*, 2023 WL 2044329, at *17 (D. Minn. Jan. 30, 2023) ("Without allegations plausibly showing concerted action, a § 1 claim fails whether based on a *per se* or rule-of-reason analysis.").

In an attempt to sidestep this issue, Plaintiffs claim that the "first lever" of the supposed "price-fixing conspiracy" was an agreement to use a "standardized pricing formula[]." Opp. at 3. But all Plaintiffs allege is that some Sugar Defendants "referenced" publicly available and traded prices for futures contracts for raw granulated sugar (the Number 16), which is, of course, a lawful business practice and does not plausibly allege an illicit agreement to use a "common pricing formula." *Id*. at 3-4 (citing MCC ¶¶ 131-33); *see also* Mot. at 14. And Plaintiffs' Opposition, like their Complaints, is silent on what "standardized formula" was supposedly used, when any agreement to use a "standardized formula" was reached, or how or which Sugar Defendants agreed to use such a formula.

As for the "second lever," Plaintiffs point to no allegations reflecting how or when the supposed agreement to reciprocally share information through Mr. Wistisen for the purposes of fixing granulated sugar prices was reached; how each Defendant, or any Defendant, entered into or participated in the alleged conspiracy; or how all Sugar Defendants could have joined or participated in the alleged conspiracy when they do not allege that most of them ever communicated with Mr. Wistisen. *See* Opp. at 4-8. Plaintiffs

claim that there were "other conduits" for exchanging information, *see id.* at 4, but that assertion rests on a *single* communication in November 2019 between a sugar broker and individuals at Imperial that does not allege the exchange of any non-public information or otherwise suggest that the broker was a "conduit" for any exchange of information among any Sugar Defendants, systematic or otherwise.  MCC ¶ 89.

In contravention of established law, Plaintiffs argue that they may rely on "group pleading" and conclusory allegations that "Defendants" conspired.  *See* Opp. at 38-39.  But none of the cases Plaintiffs cite involve allegations of a conspiracy under Section 1.  *See id.* (citing *Tivoli LLC v. Targetti Sankey S.P.A.*, 2015 WL 12683801, at *4 (C.D. Cal. Feb. 3, 2015) and *Grisham v. Covidien, Inc.*, 2022 WL 402215, at *6 (W.D. Mo. Feb. 9, 2022)).  Group pleading simply "does [not] satisfy the degree of specificity required for pleading a federal conspiracy."  *Robertson v. Univ. Akron Sch. of Law*, 2021 WL 3709915, at *8 n.9 (N.D. Ohio Aug. 20, 2021), *aff'd*, 2022 WL 1836922 (6th Cir. June 3, 2022); *see also Jung v. Ass'n of Am. Med. Colls.*, 300 F. Supp. 2d 119, 163 (D.D.C. 2004) (plaintiffs "cannot escape their burden of alleging that each defendant participated in or agreed to join the conspiracy by using the term 'defendants' to apply to numerous parties").

Plaintiffs' assertion that the supposed conspiracy took place through a "conduit" does not lower their pleading burden.  *See* Opp. at 36.  Indeed, the cases that Plaintiffs cite only confirm the deficiencies of their allegations.  In *In re Broiler Chicken Antitrust Litigation*, plaintiffs alleged that *each* of the defendants subscribed to Agri Stats' benchmarking services—the "conduit" for the alleged information exchange—and engaged in the parallel conduct at issue.  290 F. Supp. 3d 772, 803-04 (D. Minn. 2017); *see*

*also Crop Inputs*, 749 F. Supp. 3d at 1011 (explaining that *Broiler Chicken* did not "endorse[] group pleading in conspiracy cases"). Plaintiffs supply no comparable allegations.[2]

### B.    Plaintiffs Do Not Plausibly Allege A Price-Fixing Agreement

Plaintiffs' *per se* price-fixing claim should be dismissed because Plaintiffs have not alleged direct evidence of an agreement or circumstantial evidence from which an agreement can be inferred.[3]

### 1.    Plaintiffs Identify No Direct Evidence Of An Agreement To Fix Prices

Plaintiffs claim that they allege "direct evidence" of a price-fixing agreement, Opp. at 13-18, but they do not come close to meeting the strict standard for pleading direct evidence. As Plaintiffs acknowledge, "direct evidence" is "explicit" evidence that "requires no inferences." *Burch v. Milberg Factors, Inc.*, 662 F.3d 212, 225 (3d Cir. 2011); *see also Hyland v. HomeServices of Am., Inc.*, 771 F.3d 310, 318 (6th Cir. 2014) ("direct evidence is 'tantamount to an acknowledgement of guilt'" (citation omitted)); Opp. at 13. In other words, "[d]irect evidence *explicitly* refers to an understanding between the alleged conspirators." *In re Pool Prods. Distrib. Mkt. Antitrust Litig.*, 158 F. Supp. 3d 544,

---

[2] *In re Domestic Airline Travel Antitrust Litigation*, 691 F. Supp. 3d 175, 208-09 (D.D.C. 2023), is also inapposite. *See* Opp. at 36. There, the court denied defendants' motion for summary judgment because there was a question of fact as to whether the airline defendants had used the investment community as a conduit.

[3] The DOJ Statement does not address Plaintiffs' price-fixing claim, except to acknowledge that the sporadic and infrequent nature of the alleged communications could bear on whether those communications could be used to infer a price-fixing agreement. *See* DOJ Statement at 2, 16 n.7.

550 (E.D. La. 2016). For example, "a recorded phone call in which two competitors agreed to fix prices at a certain level" constitutes "direct evidence." *Mayor & Council of Balt. v. Citigroup, Inc.*, 709 F.3d 129, 136 (2d Cir. 2013).

None of Plaintiffs' cases supports a different definition of direct evidence. *See* Opp. at 16-17. In *In re Publication Paper Antitrust Litigation*, the Second Circuit reversed a grant of summary judgment because the "totality of the evidence," regardless of whether considered direct or circumstantial, "could support a reasonable inference of illegal collusive behavior." 690 F.3d 51, 64 (2d Cir. 2012). In *In re High Fructose Corn Syrup Antitrust Litigation*, the Seventh Circuit held that the district court improperly disregarded direct evidence of an agreement, *i.e.*, a statement by an employee of one of the defendants saying, "We have an understanding within the industry not to undercut each other's prices." 295 F.3d 651, 662 (7th Cir. 2002). And, in *In re GSE Bonds Antitrust Litigation*, the court held chatroom transcripts that "unmistakably show traders … agreeing to fix prices at a specific level" were direct evidence of an agreement. 396 F. Supp. 3d 354, 361 (S.D.N.Y. 2019). Plaintiffs supply no case holding that direct evidence is anything less than unambiguous, explicit evidence of an agreement.

Moreover, Plaintiffs' allegations are not direct evidence merely because, as Plaintiffs claim, they are "direct quotes." *See* Opp. at 14-15. None of the allegations that Plaintiffs point to as direct evidence explicitly reference an agreement among any Defendants to fix prices for granulated sugar, use a standard pricing formula, or a "give to

get" exchange of information.[4]  *See id.*  Indeed, were the Court to find, as Plaintiffs urge, that direct quotes, regardless of their substance, constitute direct evidence, it would negate the concept of direct evidence.  Not surprisingly, courts routinely reject efforts to automatically characterize communications between competitors (which Plaintiffs do not even allege here) as direct evidence of an illicit agreement.  *See, e.g.*, *Pool Prods.*, 158 F. Supp. 3d at 553 (e-mails among competitors were not direct evidence of price-fixing conspiracy); *In re Jan. 2021 Short Squeeze Trading Litig.*, 2021 WL 5359731, at *15-17 (S.D. Fla. Nov. 17, 2021) (communications among competitors fell "far short" of constituting direct evidence of an agreement).

Indeed, all of the cases Plaintiffs cite in which courts found direct evidence of a price-fixing agreement rested on allegations of a wholly different character than what Plaintiffs allege here.  *See* Opp. at 15-16.  In *In re Cattle Antitrust Litigation*, the court held that allegations from a confidential witness that "each Defendant expressly agreed to periodically reduce its purchase and slaughter volumes to reduce the prices they would pay for fed cattle" was "sufficiently detailed direct evidence" of an agreement.  2021 WL 7757881, at *3-4 (D. Minn. Sept. 14, 2021).  In *In re London Silver Fixing, Ltd., Antitrust Litigation*, the court found that chat messages where a trader "shared proprietary information, discussed manipulative trading, and agreed to fix prices with traders" at each

---

[4] After reviewing the internal Domino email that Plaintiffs cite, Opp. at 14 (citing MCC ¶ 90) at trial in the merger litigation, the Delaware district court stated: "I was a litigator for twenty years and this just doesn't seem like that much of a difference from what everybody … does which is not price fixing …."  Ex. 1 at 1212:17-20.

of the defendants, was sufficient direct evidence of an agreement. 332 F. Supp. 3d 885, 902 (S.D.N.Y. 2018). In *Sullivan v. Barclays PLC*, plaintiffs "identified communications in which 'an agreement was made' between defendants to submit false Euribor quotes." 2017 WL 685570, at *24 (S.D.N.Y. Feb, 21, 2017). And, in *In re Foreign Exchange Benchmark Rates Antitrust Litigation*, the court held that plaintiffs' complaint "offer[ed] direct evidence akin to the 'recorded phone call in which two competitors agreed to fix prices at a certain level,'" because the chat messages reflected defendants' "agree[ment]." 74 F. Supp. 3d 581, 591-92 (S.D.N.Y. 2015) (citation omitted).

Plaintiffs also have not pled concerted action for their price-fixing claim under *Interstate Circuit v. United States*, 306 U.S. 208 (1939). *See* Opp. at 18. In *Interstate*, a movie theater operator that had a monopoly of first-run theaters in Texas sent eight competing movie distributors an identical letter addressed to all eight competitors demanding that the distributors provide films to discount theaters on terms that would eliminate the competitive threat posed by the discounters. *Interstate*, 306 U.S. at 216-19. The Supreme Court held that the district court, after a trial, properly inferred a hub-and-spoke price-fixing agreement among the theater operator and the movie distributors because each of the distributors was aware that the other distributors had received the same letter, with the same pricing demands, and each distributor had complied with the letter's pricing demands. *Id.* at 222. The Court explained that the movie theater operator's "invitation to participate" in an agreement, and the distributors "acceptance" of the "invitation," knowing that it had also been extended to competitors, was sufficient to infer a price-fixing agreement. *Id.* at 227.

-10-

*Interstate*, however, is of no help to Plaintiffs. There are no allegations that Mr. Wistisen "invited" any Sugar Defendant to charge a specific amount for granulated sugar, or that any Sugar Defendant agreed to charge any price for granulated sugar in response to any invitation by Mr. Wistisen, or that the Sugar Defendants were even aware of agreements between any other Sugar Defendants and Mr. Wistisen to charge any specific price for granulated sugar. Plaintiffs thus have not alleged any "invitation" or "acceptance" under *Interstate*. *Cf. In re Pork Antitrust Litig.*, 2025 WL 1224694, at *15-16 (D. Minn. Apr. 28, 2025) (*"Pork III"*) (allegations of information sharing through Agri Stats "insufficient" to allege a *per se* price-fixing agreement under *Interstate*). Indeed, even the DOJ does not suggest that *Interstate* is relevant to Plaintiffs' price-fixing claim—which its Statement does not address.

### 2.    Plaintiffs' "Circumstantial Evidence" Of A Price-Fixing Conspiracy Is Also Insufficient

Plaintiffs' request that the Court infer an industry-wide, ongoing price-fixing conspiracy from circumstantial evidence also fails. Plaintiffs do not identify any actual allegations of parallel pricing, which should end the analysis, but even if the Court were to reach Plaintiffs' purported "plus factors," they, too, are insufficient.

#### a.    Plaintiffs' Allegations Do Not Amount To Parallel Pricing

Plaintiffs claim to have pled "similar lock-step" and "coinciding" price increases. Opp. at 20-21. But Plaintiffs plead no such thing. Plaintiffs' chart of supposedly parallel price increases instead confirms that Plaintiffs do not allege enough information to determine how any specific Sugar Defendant's prices changed over time, let alone that all

Sugar Defendants' prices increased in parallel fashion. *See id.* Plaintiffs' chart includes prices for "beet processors" or "beet sugar producers," which includes unidentified, non-defendant sugar sellers, and prices for certain geographic areas (but not others); does not include specific prices charged by any Sugar Defendant in 2022; and for other years, including 2023 and 2024, includes prices from only two Sugar Defendants for certain geographic areas, without providing any information about how those Sugar Defendants' prices changed over time or compared to any other Sugar Defendant's prices. *See id.* The problem is not that Plaintiffs failed to allege "identical" or "simultaneous" prices increases; the problem is that Plaintiffs have not adequately alleged how ***any*** Sugar Defendant's prices moved over time, or relative to any other Sugar Defendant's prices. As a district court recently held in rejecting allegations of parallel pricing, "[i]t is definitional that wher[e] a company increases prices for a product and its competitor does not increase prices for that product, those companies have not engaged in parallel conduct …." *In re Concrete and Cement Additives Antitrust Litig.*, 2025 WL 1755193, at *13-14 (S.D.N.Y. June 25, 2025) ("*Concrete*").[5]

Recognizing the deficiencies of their allegations, Plaintiffs attempt to fall back on allegations of industry-wide increases in the "nominal retail" price of granulated sugar,

---

[5] Plaintiffs' suggestion that their pleading failure should be excused because the Sugar Defendants' prices are "confidential" makes no sense. Opp. at 24. Plaintiffs allegedly purchased granulated sugar from the Sugar Defendants, *see* MCC ¶¶ 14-16, and certainly possess information regarding the Sugar Defendants' prices. And Plaintiffs, in some places, do allege Defendant-specific pricing information, which they presumably pulled from publicly available sources. *See id.* ¶¶ 154-161.

claiming that they may do so because they have "connect[ed] the aggregate data to the presence of a potential conspiracy." *See* Opp. 23-24 (citation omitted). Plaintiffs' argument is without merit. In *In re Local TV Advertising Antitrust Litigation*—the only case Plaintiffs cite for support—the court allowed plaintiffs to rely on "aggregated" pricing data to plead parallel pricing because plaintiffs had "directly connect[ed] Defendants to an antitrust conspiracy through evidence of … settlements and consent decrees stemming from … DOJ investigations." 2020 WL 6557665, at *8-9 (N.D. Ill. Nov. 6, 2020). There are no comparable settlements or consent decrees (or anything else) connecting any Sugar Defendant to Plaintiffs' alleged price-fixing conspiracy.[6]

Moreover, *Local TV Advertising* is at odds with other courts that have considered this issue, including this Court, which have held that aggregated, industry-wide data is insufficient to plead parallel pricing. *See In re Cattle Antitrust Litig.*, 2020 WL 5884676, at *6 (D. Minn. Sept. 29, 2020) (refusing to rely on "industry-wide data" to "infer" that defendants acted similarly) ("*Cattle I*"); *In re Pork Antitrust Litig.*, 2019 WL 3752497, at *8 (D. Minn. Aug. 8, 2019) (*"Pork I"*) ("industry-wide data" "does nothing to indicate how any of the individual Defendants acted" which is "vital to pleading parallel conduct"). Plaintiffs attempt to distinguish these cases on the basis that they have alleged an "information exchange[]," Opp. at 23 n.6, but Plaintiffs do not explain why that matters, and the *Pork* plaintiffs also alleged that defendants exchanged information. *See Pork I*,

---

[6] Plaintiffs also never explain why aggregated nominal **retail** prices, which are not prices that any Sugar Defendant charges, are relevant at all. *See* Mot. at 20.

2019 WL 3752497, at *2.

*Cattle I* and *Pork I* are in accord with the holdings of other courts. *See, e.g.*, *In re Musical Instruments & Equip. Antitrust Litig.*, 798 F.3d 1186, 1197 (9th Cir. 2015) (an increase in "average retail price of guitars and amplifiers" was insufficient to plead parallel pricing); *Concrete*, 2025 WL 1755193, at *16 ("market-wide price increases do not show that any particular Defendant or group of Defendants, was engaged in an anticompetitive conspiracy"); *Okla. Firefights Pension & Ret. Sys. v. Deutsche Bank Aktiengesellschaft*, 2024 WL 4202680, at *7 (S.D.N.Y Sept. 13, 2024) (rejecting allegations of parallel pricing because "aggregate statistics" do not "suffice").

### b.    Plaintiffs' "Plus Factors" Are Insufficient

Because Plaintiffs do not plead any parallel conduct, the Court need not reach Plaintiffs' purported "plus factors." *See* Mot. 20-21. But even if the Court were to consider Plaintiffs' "plus factors," they are insufficient, even collectively, to allow the inference of a price-fixing conspiracy.

***The Alleged Communications with Mr. Wistisen***.  Plaintiffs have no response to Defendants' argument that, under controlling Eighth Circuit law, only a "high level of [interfirm] communications" warrants the inference of a conspiracy. *See* Mot. at 23-24 (citing *Blomkest Fertilizer, Inc. v. Potash Corp. of Sask., Inc.*, 203 F.3d 1028, 1033-34 (8th Cir. 2000) and *Mayor & Council of Balt.*, 709 F.3d at 139-40); Opp. at 26. Despite labeling them "daily" and "weekly" reports, Opp. at 26, in reality, Plaintiffs only allege roughly a dozen, sporadic communications between Mr. Wistisen and one individual at United, and one individual at Domino, during an almost two-year period, which does not amount to a

-14-

"high level" of "interfirm communications." *See* Mot. at 23-24.  The handful of alleged communications with Mr. Wistisen are not enough to make plausible Plaintiffs' vast, supposedly ongoing conspiracy, involving at least five Sugar Defendants and impacting every sale of granulated sugar in the U.S.[7]  Even the DOJ acknowledges that the "purported infrequency [of the alleged communications] may … bear on whether the alleged information exchanges can be used to infer a price-fixing agreement."  DOJ Statement at 16 n.7.

    ***Supposed Actions Against Self-Interest***.  Plaintiffs argue that it is against all Sugar Defendants' interest to reciprocally share their supposedly competitively sensitive information with each other through Mr. Wistisen on a "real-time" basis, Opp. at 26-27, but, again, that is not what Plaintiffs have actually alleged.  Plaintiffs allege only that two Sugar Defendants—United and Domino—ever communicated or shared information with Mr. Wistisen, and did so sporadically.  And, Plaintiffs improperly ask the Court to ignore trial testimony—the same trial testimony that Plaintiffs misleadingly excerpt—explaining that United provided information to Mr. Wistisen because he prepared an industry report that was shared with customers and the USDA and United wanted its information to be accurate.  *See id.* at 70.  The incorporation by reference doctrine is intended to prevent

---

[7] Plaintiffs' cases are inapposite.  *See* Opp. at 26.  In *Pork III*, the court held at summary judgment that evidence of defendants' "routine" sharing of competitively sensitive information through Agri Stats and the "high level" of communications among defendants made the "inference of an agreement" "compelling."  2025 WL 1224694, at *34-35.  And in *Todd v. Exxon Corp.*, the Second Circuit addressed whether plaintiffs had adequately alleged anticompetitive effects from an alleged information exchange.  275 F.3d 191, 195, 199 (2d Cir. 2001).

plaintiffs "from selectively excerpting documents in a manner that supports their claim while omitting those portions that weaken … their claims," which is exactly what Plaintiffs do here. *See* Mot. at 25-26 n.11 (citation omitted).

***Characteristics of the Sugar Industry and the USDA.*** Plaintiffs' Opposition doubles down on Plaintiffs' generic allegations about the sugar industry's supposed concentration, inelastic demand, and barriers to entry. *See* Opp. at 29-30. But "[b]eing ripe for collusion, or having a market where collusion is simply possible, is not evidence of collusion." *Hobart-Mayfield, Inc. v. Nat'l Operating Comm. On Standards For Athletic Equip.*, 48 F.4th 656, 668 (6th Cir. 2022). Indeed, "[c]ourts generally discount the probative value of similar ripe-for-collusion allegations because they are simply descriptions of the market." *In re Passenger Vehicle Replacement Tires Antitrust Litig.*, 767 F. Supp. 3d 681, 718 (N.D. Ohio 2025) ("*Replacement Tires*"); *see also In re German Auto. Mfrs. Antitrust Litig.,* 612 F. Supp. 3d 967, 983 (N.D. Cal. 2020) ("[A]llegations that the market was susceptible to collusion" are "of little help in pleading an antitrust conspiracy."), *aff'd*, 2021 WL 4958987 (9th Cir. Oct. 26, 2021).

Plaintiffs' allegations regarding the USDA sugar program also do not make their allegations regarding the structure of the sugar industry probative. Opp. at 31-32. Plaintiffs do not dispute that the USDA has a number of tools at its disposal to control the amount of sugar available for sale in the U.S., which, as a matter of economics, will impact the price of sugar. *See* Mot. at 6-8. And the USDA's mandate, which Plaintiffs wrongly ask the

Court to ignore, is to ensure that sugar prices in the U.S. remain "reasonable."  Ex. 2.[8]
Regardless, the barrier to entry allegedly posed by the USDA sugar program does "little to
render the alleged conspiracy plausible," even when considered in conjunction with
Plaintiffs' supposed other "plus factors."  *Replacement Tires*, 767 F. Supp. 3d at 719.

   ***Supposed Opportunities To Collude***.  Plaintiffs have not connected any Sugar
Defendant's membership in any trade association or attendance at any trade association
meeting to the alleged conspiracy, as they recognize is required.  *See* Opp. at 32.  The best
Plaintiffs do is point to an allegation demonstrating that Domino learned about its
competitors' pricing at an ISC meeting "***from specific customers***," and that at some
unidentified time after the 2022 ISC meeting, some unidentified prices, from unidentified
sugar sellers, supposedly increased 25% over the prior year.  *See* Opp. at 33 (citing MCC
¶¶ 91, 157).  Neither allegation plausibly suggests that "defendants actually conspired or
exchanged confidential information" at any trade association event.  *Replacement Tires*,
767 F. Supp. 3d at 712 (following "the well-trodden path of other courts in concluding that
defendants' mere attendance at … trade association meetings contributes little, if anything,
to the plausibility of the alleged conspiracy"); *see also Cement*, 2025 WL 1755193, at *18
("industry members may belong to an industry group without being coconspirators").
Plaintiffs' need to rely on communications with customers (containing the same kind of

---

[8] Plaintiffs ask the Court to disregard the existence of the Harmonized Tariff Schedule (Ex. 2) but do not dispute that it is a matter of public record.  *See* Opp. at 70-71; *see* Mot. at 7 n.6.  The Court may take judicial notice of the Harmonized Tariff Schedule without making any determination regarding the impact of the USDA's program on the price of sugar.

information allegedly provided to Mr. Wistisen) only underscores the implausibility of their alleged conspiracy.

*Historical Antitrust Violations.*  Plaintiffs attempt to connect only one of the supposed historical antitrust violations—a consent decree from 1978—to their alleged conspiracy.  *See* Opp. 34-35.  But the DOJ's lawsuit, and corresponding consent decree, *from more than fifty years ago, against different sugar companies and involving different third-party intermediaries*, does not have any meaningful connection to Plaintiffs' alleged conspiracy involving the exchange of information through Mr. Wistisen. *See* Mot. at 28-29; *see also In re Travel Agent Comm'n Antitrust Litig.*, 583 F.3d 896, 911 (6th Cir. 2009) (refusing to recognize as a plus factor prior actions that happened "more than twenty-five years ago").

Plaintiffs' two cases only confirm the irrelevance of the fifty-year-old antitrust violation.  *See* Opp. at 35.  In both, the exact same individuals and corporate actors pled guilty to price-fixing in close temporal proximity in a related market.  *See In re SRAM Antitrust Litig.*, 580 F. Supp. 2d 896, 903 (N.D. Cal. 2018); *In re Packaged Ice Antitrust Litig.*, 723 F. Supp. 2d 987, 1011 (E.D. Mich. 2010).  Nothing in *SRAM* or *Packaged Ice* suggests that it would be proper to infer a price-fixing conspiracy in the sugar industry today based on a fifty-year-old consent decree involving different companies, different actors, and different means of conspiring.

        **c.**     **Plaintiffs Improperly Ask The Court To Ignore Obvious, Alternative Explanations For Any Alleged Parallel Conduct**

To avoid grappling with the obvious alternative explanation for rising granulated

sugar prices—*i.e.*, the rising cost of raw sugar cane due to macroeconomic forces—Plaintiffs argue that Defendants are attempting to convert their motion to dismiss into a motion for summary judgment, and are improperly relying on "external materials." Opp. at 39-41. Neither argument has merit.

Plaintiffs ignore that, under *Twombly*, in evaluating whether Plaintiffs have pled sufficient facts "plausibly suggesting (not merely consistent with) agreement," the court must consider "common economic experience" and "obvious alternative explanation[s]." *Twombly*, 550 U.S. at 557, 565, 567; *see also* Mot. at 29-31. This does not require, as Plaintiffs argue, that the Court "rule out the possibility of independent action." Opp. at 40. Instead, *Twombly* instructs that "plausibility" cannot be assessed in a "vacuum"; the "reasonableness of one explanation for an incident depends, in part, on the strength of competing explanations"; and where a "complaint alleges facts that are merely consistent with liability," "the existence of obvious alternative explanations simply illustrates the unreasonableness of the inference sought and the implausibility of the claims made." *16630 Southfield Ltd. P'ship v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 505 (6th Cir. 2013); *see also Replacement Tires*, 767 F. Supp. 3d at 737 ("Assurances from plaintiffs' counsel that an obvious alternative explanation should not be considered dispositive is not an adequate substitution for well-pleaded facts.").[9]

---

[9] Plaintiffs attempt to distinguish Defendants' cases on the basis that, in those cases, plaintiffs' allegations identified the obvious alternative explanation. *See* Opp. at 42 n.10. But that is true here, too. Plaintiffs repeatedly reference the price of futures contracts for raw sugar cane in the U.S. (Number 16). *See* MCC ¶¶ 131, 133, 185.

Plaintiffs ask the Court not to consider two charts detailing publicly traded futures contracts for raw sugar cane, which show that prices for granulated sugar have moved in tandem with rising prices for raw sugar cane (the key input into granulated cane sugar) both in the U.S. (Number 16) and globally (Number 11). *See* Opp. at 41. With respect to Number 16 prices, *see* Mot. at 32 (Figure 3), Plaintiffs argue that the Court should refuse to take judicial notice of the chart, which Plaintiffs do not dispute reflects Federal Reserve Economic Data. Opp. at 41. But Plaintiffs themselves rely on and incorporate by reference the publicly traded price of the Number 16, and do not address the authority Defendants cite, which confirms that the Court may properly take judicial notice of prices of publicly traded commodities, like the Number 16. *See id.* at 32 n.15. And, with respect to Number 11 prices, Mot. at 30 (Figure 1), Plaintiffs argue they should be disregarded as "irrelevant," Opp. at 41, but the chart is from Plaintiffs' own complaint. CIPP AC ¶¶ 184, 186 & fig. 5.

Plaintiffs' other arguments are equally unavailing. Plaintiffs' allegations that granulated sugar prices have outpaced inflation as measured by the consumer price index, or that the producer price index for cane sugar has increased, *see* Opp. at 42, are equally consistent with granulated sugar prices increasing due to increased raw sugar costs and other macroeconomic factors as they are with Plaintiffs' alleged conspiracy. Plaintiffs also have not alleged, nor could they consistent with Rule 11, that the Sugar Defendants are "each vertically integrated" such that they do not need to buy raw sugar cane from third parties. Opp. at 41 (citing MCC ¶ 176, which discusses the granulated sugar "industry"). And the remainder of Plaintiffs' arguments recycle their otherwise deficient allegations of a supposed conspiracy. *See* Opp. at 41-42.

-20-

Finally, Plaintiffs ignore that their own charts show that for the time period when they allege United and Domino spoke with Mr. Wistisen, granulated sugar prices barely moved. *See* Opp. at 8 (citing MCC ¶ 136). It was only in 2022 and later, when there are no allegations of any communications, that granulated sugar prices actually increased significantly—an inconvenient truth that the Court need not ignore in assessing the plausibility of Plaintiffs' claims.

### C.    Plaintiffs Do Not Plausibly Allege An Information Exchange Claim

Plaintiffs' information exchange claim fails for the same reason as their *per se* price-fixing claim, *i.e.*, because Plaintiffs have not alleged an agreement to reciprocally exchange information. But, even if they had, Plaintiffs do not identify any resulting anticompetitive effects, which is required.

### 1.    Plaintiffs Do Not Allege An Agreement To Reciprocally Share Information

Plaintiffs claim that the exchange of information is sufficient to plead an agreement, Opp. 44-45, but that misstates the law. As Plaintiffs' own authority makes clear, "absent some agreement between competitors to restrain price, the exchange of price and other market information is generally benign conduct that facilitates efficient economic activity." *Pork III*, 2025 WL 1224694, at *16 (quoting *Five Smiths, Inc. v. Nat'l Football League Players Ass'n*, 788 F. Supp. 1042, 1053 (D. Minn. 1992)); *see also In re Citric Acid Litig.*, 191 F.3d 1090, 1103 (9th Cir. 1999) (mere "possession" of a competitor's pricing information is not evidence of "an agreement to exchange pricing information").

Although Plaintiffs claim that they have pled "direct" evidence of an agreement to

exchange information by pointing to the alleged Wistisen communications, *see* Opp. at 44-45, none of the alleged communications reflects an unambiguous or explicit agreement to reciprocally share information through Mr. Wistisen, as is required to plead an agreement through direct allegations. *See supra* at Section I.B.1. Indeed, in none of the alleged communications do any Sugar Defendants inquire about another Sugar Defendant's prices, let alone condition providing information on the receipt of reciprocal information.

Moreover, the cases Plaintiffs cite only confirm that their allegations are insufficient to plead an agreement. *See* Opp. 44-45. In *Olean Wholesale Grocery Cooperative, Inc. v. Agri Stats, Inc.*, each of the turkey defendants agreed to regularly contribute detailed and sensitive information regarding their operations to Agri Stats, explicitly in return for receiving Agri Stats' benchmarking reports, and they knew which other turkey producers were contributing the same data and were able to deanonymize the data they received. 2020 WL 6134982, at *6 (N.D. Ill. Oct. 19, 2020). And, in *Todd*, there was no dispute that the defendants agreed to regularly share salary information. 275 F.3d at 195-96. Neither case suggests that a conspiracy to reciprocally exchange information can be inferred from the sporadic alleged communications that took place between a single employee at each of United and Domino and Mr. Wistisen for less than a two-year period, more than four years ago. *See In re Broiler Chicken Antitrust Litig.*, 2021 WL 2207142, at *1-2 (N.D. Ill. June 1, 2021) (declining to infer conspiracy based on "ambiguous" emails showing that lender "relayed communications" between two defendants).

## 2. The DOJ Statement Does Not Save Plaintiffs' Information Exchange Claim

The DOJ Statement does not resuscitate Plaintiffs' information exchange claim. First and foremost, the DOJ Statement addresses only the issue of whether Plaintiffs have plausibly alleged concerted action for their information sharing claim. DOJ Statement at 2. The DOJ expressly takes "no position" on any of Defendants' other arguments, including Plaintiffs' failure to plausibly allege anticompetitive effects from any alleged agreement to exchange information and Plaintiffs' failure to plead a *per se* Section 1 price-fixing claim. *Id.* at 2, 16.n.7. The DOJ even takes no position on "whether the complaint alleges that each of the named defendants is liable for [the alleged] concerted action". *Id.* at 14.n6. Plaintiffs' claims should be dismissed based on those independent failures alone.

The DOJ states that it filed its Statement "because Defendants' motion to dismiss could be read to heighten the pleading bar for Section 1 information-exchange claims when the exchanges occur through or are orchestrated by go-betweens instead of directly between competitors," and argues that Plaintiffs have pled "concerted action" for an information exchange claim under *Interstate*. DOJ Statement at 2, 12-13. The DOJ, however, is wrong on both counts. The DOJ misreads both Defendants' arguments and Plaintiffs' allegations in such a way that would lower the bar for pleading an information exchange claim under Section 1.

To start, the DOJ was the non-neutral plaintiff in the underlying merger litigation, in which the district court and the Third Circuit ruled against the DOJ. The DOJ Statement rehashes arguments regarding the Wistisen communications—the same communications

-23-

that form the entire basis for Plaintiffs' claims—that the DOJ previously raised, and that were already implicitly rejected by the Delaware district court in the merger litigation when the court allowed U.S. Sugar's acquisition of Imperial to proceed.  *See generally United States v. U.S. Sugar Corp.*, 2022 WL 4544025 (D. Del. Sept. 23, 2022); Ex. 1 at 1212:17-25.[10]  Moreover, contrary to the DOJ's representation, the Third Circuit *affirmed* the district court's decision, and no part of the district court's decision upon which Defendants rely was "overturned."  DOJ Statement at 8 n.1; *see also United States v. U.S. Sugar Corp.*, 73 F.4th 197, 208 (3d Cir. 2023).

### a.    Plaintiffs Do Not Allege An Agreement To Exchange Information Under *Interstate* or *Masonite*

Advancing an argument that Plaintiffs themselves do not make, the DOJ argues that the Court may infer "concerted action" for Plaintiffs' information exchange claim under the "invitation" and "acceptance" theory endorsed by the Supreme Court in *Interstate* and *United States v. Masonite Corp.*, 316 U.S. 265 (1942).  *See* DOJ Statement at 10-13.  As the DOJ acknowledges, the Eighth Circuit has not previously analyzed information exchange cases the way DOJ proposes.  *See id.* at 10.  But even if *Interstate* and *Masonite* can, in certain circumstances, provide an alternative pathway for pleading an agreement through circumstantial evidence, Plaintiffs' allegations do not satisfy the requirements of either case and are insufficient to infer an agreement here.

---

[10] Of note, the DOJ itself expressly represented in closing arguments in the merger litigation that it was not trying to prove that the Wistisen communications constituted a violation of Section 1.  *See* Ex. 1 at 1167:14-20.

As discussed above, in *Interstate*, the Supreme Court inferred a hub-and-spoke price-fixing conspiracy where a movie theater operator "hub" sent identical letters to movie distributor "spokes," demanding that each distributor require the theaters that sold its movies to charge a certain amount for admission; each movie distributor was aware that the other "spokes" had received the same letter with the same pricing demands; and each movie distributor charged prices consistent with the movie theater operator's pricing demands. *See supra* at Section I.B.1 (discussing *Interstate*). The Supreme Court held that "[a]cceptance by competitors …of an invitation to participate in a plan, the necessary consequence of which, if carried out, is restraint of interstate commerce," is sufficient to infer an agreement under Section 1. *Interstate*, 306 U.S. at 227.

Similarly, in *Masonite*, Masonite, a hardboard manufacturer, executed identical agreements with various hardboard distributors pursuant to which Masonite set minimum prices for hardboard sales. 316 U.S. at 270-71. Although each agreement was negotiated between Masonite and the distributor, each distributor was aware of the other distributors who had signed agreements with Masonite. *Id.* at 270. Relying on *Interstate*, the *Masonite* Court held that, even though the distributors had not had discussions with each other, the court could infer a price-fixing agreement among the distributors because each distributor "became familiar with [the] purpose and scope" of the alleged arrangement, and the distributors had agreed to fix prices through their agreements with Masonite and "express delegation" of pricing to Masonite. *Id.* at 275-76 (the "necessary consequence" of delegating pricing to Masonite was a "restraint of interstate commerce").

For the same reasons that Plaintiffs cannot infer a price-fixing agreement under

*Interstate*, they also cannot infer an agreement to exchange information. *See supra* at Section I.B.1.  Plaintiffs do not allege that Mr. Wistisen ever "invited" each of the Sugar Defendants to share information.  Indeed, Plaintiffs do not allege that the majority of the Sugar Defendants ever even communicated with Mr. Wistisen.  Thus, unlike *Interstate* and *Masonite*, there are no allegations that any Sugar Defendant entered into an agreement with the purported "hub," Mr. Wistisen.  Nor are there any well-pleaded, non-conclusory allegations that the Sugar Defendants were aware that each of the other Sugar Defendants, or any other Sugar Defendant, had entered into a similar agreement to share information with Mr. Wistisen.  The DOJ points to Plaintiffs' allegations that United and Domino supposedly "knew" that Mr. Wistisen would share their information with other competitors, DOJ Statement at 4, 12 (citing MCC ¶¶ 78-80), but those allegations are conclusory or rely on a mischaracterized and incomplete excerpt from the trial testimony of a United employee, *see* Mot at 24-26; *supra* at Section I.B.2.b, and are insufficient to plead that the Sugar Defendants had knowledge that the other Sugar Defendants had entered into the same or a similar agreement to share information with Mr. Wistisen.  There are also no allegations suggesting that the Sugar Defendants manifested "acceptance" to any agreement through their conduct, as the majority of the Sugar Defendants never even allegedly communicated with Mr. Wistisen or shared any information with him.  *See Gibson v. Cendyn Grp. LLC*, 2024 WL 2060260, at *3 (D. Nev. May 8, 2024) (declining to infer a conspiracy under *Interstate* and *Masonite* where there were no allegations that "each spoke decided to enter into an agreement with the hub requiring each of the spokes to charge a certain price"); *In re Bookends & Beginnings LLC*, 2022 WL 18144916, at *12

(S.D.N.Y. Aug. 15, 2022) (refusing to infer conspiracy among book publishers under *Interstate* where there were no allegations that the publishers were presented with "identical, or even similar, agreements" from the alleged hub or "that each was aware that all had received the same agreements").

Moreover, unlike in *Interstate* and *Masonite*, which involved agreements to fix prices which are *per se* unlawful, even if there were an "invitation" from Mr. Wistisen, and "acceptance" by the Sugar Defendants to exchange pricing information, it is not a "necessary consequence" that any such agreement would restrain trade. *See Interstate*, 306 U.S. at 227; *Masonite*, 316 U.S. at 275; *see also Five Smiths*, 788 F. Supp. at 1047 ("the exchange of price data and other information among competitors does not invariably have anticompetitive effects") (quoting *United States v. U.S. Gypsum Co.*, 438 U.S. 422, 41 n.16 (1978)). Indeed, in its Statement, the DOJ does not cite a case where a court inferred a standalone agreement to exchange information under the "invitation" and "acceptance" framework set forth in *Interstate* and *Masonite*, and there is no reason for the Court to make new law here.

Plaintiffs' allegations are also distinguishable from *United States v. Container Corp.*, 393 U.S. 333 (1969), which the DOJ cites. *See* DOJ Statement at 13, 16. In *Container Corp.*, the Supreme Court held that allegations that defendants requested recent, customer-specific pricing from one another, and when a defendant received a request for such information, each defendant "furnished the [requested] data *with the expectation that it would be furnished reciprocal information* when it wanted it" was sufficient to plead concerted action for an information exchange claim under Section 1. 393 U.S. at 335 ("the

essence of the [defendants'] agreement was to furnish price information whenever requested"). Plaintiffs here do not allege the exchange of any customer-specific pricing information, but moreover, there are no non-conclusory allegations that the Sugar Defendants "furnished" information to Mr. Wistisen with "the expectation" that they "would be furnished reciprocal information" in return, or that the Sugar Defendants received the same information in return. *Id.* Nor are there any allegations suggesting that any Sugar Defendant ever requested any information from Mr. Wistisen regarding any other Sugar Defendant.

The DOJ's other cases are also inapposite and do not support inferring an agreement to exchange information under *Interstate* or *Masonite* on the facts alleged. *See* DOJ Statement at 11 n.4. In *PLS.com LLC v. National Association of Realtors*, 32 F.4th 824, 837 (9th Cir. 2022), the Ninth Circuit held that the plaintiff, a real estate listing service, had plausibly alleged that the National Association of Relators' and local multiple listing services' adoption of the Clear Cooperation Policy constituted a *per se* unlawful group boycott. In *Toys "R" Us, Inc. v. FTC*, 221 F.3d 928, 930 (7th Cir. 2000), the Seventh Circuit affirmed the Federal Trade Commission's determination after an administrative proceeding that Toys "R" Us's agreements with toy manufacturers, pursuant to which the manufacturers promised to restrict the distribution of their products to low-priced warehouse club stores, facilitated a horizontal agreement among the toy manufacturers that violated Section 5 of the Federal Trade Commission Act. In *United States v. Foley*, the Fourth Circuit affirmed criminal convictions for price-fixing where several real estate companies had discussed raising commission rates from six to seven percent at an in-person

meeting, and within months, each defendant adopted a seven percent commission rate. 598 F.2d 1323, 1327 (4th Cir. 1979). In *In re Multiplan Health Insurance Provider Litigation*, 2025 WL 1567835, at *13-18 (N.D. Ill. June 3, 2025), the court held that plaintiffs had plausibly alleged that MultiPlan facilitated a hub-and-spoke conspiracy to fix prices for out-of-network service payments among third-party payors, based on allegations of parallel conduct and plus factors. And, in *Duffy v. Yardi Systems, Inc.*, 758 F. Supp. 3d 1283, 1288-89 (W.D. Wash. 2024), the court held that plaintiffs had plausibly alleged that real estate leasing companies had used Yardi's revenue management software to fix rental rates in the multi-family housing market because each lessor defendant agreed to use Yardi's software and to implement the pricing recommendations generated by the software. While the *Duffy* court held that the plaintiffs had plausibly alleged a price-fixing agreement under "the invitation and acceptance analysis set forth in *Interstate*," the court also found that plaintiffs had adequately alleged an agreement through parallel conduct and plus factors. *Id.* at 1292. None of the DOJ's cases thus supports inferring an agreement, let alone an agreement involving all Defendants, to reciprocally share information under *Interstate* or *Masonite* based on the sporadic and infrequent exchanges of information alleged between one individual at each of United and Dominio and Mr. Wistisen.

### b.    The DOJ's Other Arguments Are Equally Unavailing And Misstate Plaintiffs' Pleading Burden

The DOJ faults Defendants for arguing that an agreement to exchange information cannot be inferred because Plaintiffs have not pled parallel conduct or plus factors. *See* DOJ Statement at 13-14. But that is how Plaintiffs alleged their claims. *See* MCC ¶¶ 63-

210.   Moreover, as the DOJ recognizes, courts within this District have held that parallel conduct and plus factors are necessary to infer an agreement under Section 1 even under *Interstate*.  *Pork III*, 2025 WL 1224694, at *16; *see* DOJ Statement at 11 n.4.

The DOJ also attempts to excuse Plaintiffs' failure to allege how or when each Defendant joined or participated in the alleged information exchange, or when the Sugar Defendants each began using Mr. Wistisen's services, arguing that neither is necessary to plead an agreement to exchange information under *Interstate*.  DOJ Statement at 13-15. Those arguments fail too.  As the DOJ recognizes, Plaintiffs must allege that "each of the named defendants is liable for th[e] concerted action" alleged to state a claim against each Defendant.  *See* DOJ Statement at 14 n.6.  Plaintiffs' obligation under *Twombly* to allege how each Defendant is "alleged to have conspired, with whom, and for what purpose" is not dispensed with by *Interstate*, and the DOJ cites no authority holding to the contrary. *Crop Inputs*, 749 F. Supp. 3d at 1007; *see supra* at Section I.A.  Indeed, the DOJ's position on this point is not reconcilable with the most recent decision addressing plaintiffs' pleading obligations for a Section 1 claim.  *See Cement*, 2025 WL 1755193, at *12-24.

The DOJ claims that it is not necessary under *Interstate* for all of the Sugar Defendants to have started using Mr. Wistisen's services "simultaneous[ly]."  DOJ Statement at 15.  But Defendants do not argue that Plaintiffs must allege that each Sugar Defendant signed up to use Mr. Wistisen's services at the same time to plead a conspiracy under *Interstate* or otherwise.  Instead, Defendants argue that the Court may not infer a conspiracy when Plaintiffs have not alleged that all of the Sugar Defendants ever signed up for Mr. Wistisen's services at any time, let alone that any of them signed up in at all

-30-

close temporal proximity to one another.  *See* Mot. at 21.  Plaintiffs do not ever allege or explain when or how the alleged conspiracy was formed.  And nothing in *Interstate* or *Masonite* dispenses with these basic pleading requirements.  *See Gibson, LLC*, 2024 WL 2060260, at *4 (conspiracy "implausible" where plaintiffs alleged that defendants had started using the same software program at different times over a ten year period); *Gibson v. MGM Resorts Int'l*, 2023 WL 7025996, at *4 (D. Nev. Oct. 24, 2023) (dismissing claim because plaintiffs "d[id] not know when the purported conspiracy began").

Finally, the DOJ argues that direct interfirm communications are not necessary to plead an agreement under *Interstate*.  DOJ Statement at 14-15.  But that too is irrelevant. Defendants do not argue that direct interfirm communications are required to infer a conspiracy.  Instead, Defendants argue that under controlling Eighth Circuit law, only a high level of interfirm communications can constitute a "plus factor" that supports the inference of a conspiracy under a parallel conduct and plus factors analysis.  *See* Mot. at 23-24 (citing *Blomkest*, 203 F.3d at 1033); *see also supra* at Section I.B.2.b.  The DOJ, like Plaintiffs, does not address this controlling authority at all, yet recognizes that the infrequency of the alleged Wistisen communications may "bear on whether the alleged information exchanges can be used to infer a price-fixing agreement."  DOJ Statement at 16 n.7.  The DOJ's concern about creating a "loophole" for information exchange claims "when the exchanges occur through or are orchestrated by go-betweens instead of directly between competitors," DOJ Statement at 2, is thus misplaced, as none of Defendants' arguments rests on that distinction.

### 3.    Plaintiffs Identify No Anticompetitive Effects From Any Agreement To Exchange Information

Plaintiffs' information exchange claim fails for the independent reason that Plaintiffs have not pled any direct or indirect evidence of anticompetitive effects.

### a.    Plaintiffs Identify No Direct Evidence of Anticompetitive Effects

Plaintiffs point to no analysis of "the effect on price" of the purported information exchange, as is required, and instead rely on the fact that nominal retail prices for granulated sugar have supposedly increased since 2019.  *See* Opp. at 45-46.  But Plaintiffs' unsupported conclusions regarding the cause of rising retail granulated sugar prices is not "direct evidence" of anticompetitive effects.  *See* Mot. at 35-36; *see also Cement*, 2025 WL 1755193, at *16 ("The mere fact that each Defendant increased prices … does not suggest they did so in combination.").

### b.    Plaintiffs Do Not Plausibly Allege Anticompetitive Effects Through Indirect Evidence

Plaintiffs do not dispute that to plead anticompetitive effects indirectly they must plausibly allege that the Sugar Defendants have market power.  *See* Opp. at 44, 46.  Nor do Plaintiffs dispute that their allegations regarding the Sugar Defendants' purported "dominant share" rest on two allegations—a single internal Domino email and the estimated "capacity" of each Sugar Defendant.  *See id.* at 47-48.  Neither is sufficient to plead market power and allege anticompetitive effects indirectly.

The internal Domino email, stating that three unnamed companies account for 75% of some unidentified market, does not plausibly allege that the ***Sugar Defendants*** have a

-32-

dominant share in any relevant market. *See Acad. of Allergy & Asthma in Primary Care v. Quest Diagnostics, Inc.*, 2022 WL 980791, at *8 (W.D. Tex. Mar. 31, 2022) ("A court cannot infer market power from a bare assertion of market share"). Plaintiffs also claim that the Sugar Defendants alleged projected "capacity"—*i.e.*, the amount of sugar that a Sugar Defendant could theoretically produce—suffices to plead the Sugar Defendants' market share, but the only case they cite for support addresses the use of square footage for measuring market share in the retail industry, and is thus inapposite. Opp. at 48 (citing *Hannah's Boutique, Inc. v. Surdej*, 2015 WL 3856551, at *8 (N.D. Ill. June 19, 2015)).

Even the DOJ itself pointed out that "[t]he purported infrequency [of the exchanges] may be relevant to whether Plaintiffs pleaded anticompetitive effects …. *See Todd*, 275 F.3d at 213 (considering 'frequency' of meetings among information exchangers in assessing exchanges' competitive effects)." DOJ Statement at 16.n.7. At bottom, Plaintiffs do not even attempt to explain how the alleged sporadic communications between Mr. Wistisen and one individual at United and one individual at Domino could plausibly cause *ongoing* market-wide anticompetitive effects and impact every sale of granulated sugar in the U.S., particularly when no Sugar Defendant is alleged to have communicated with Mr. Wistisen in more than four years.

## II.    PLAINTIFFS' OPPOSITION CONFIRMS THAT THEY HAVE NOT PLED ANTITRUST INJURY

Plaintiffs do not dispute that, to plead antitrust injury, they must demonstrate that they have suffered an injury "because of" the anticompetitive conduct alleged. Opp. at 50. Yet Plaintiffs' Opposition does not identify any allegations about how they purchased

sugar or that link the allegedly anticompetitive conduct—*i.e.*, the exchange of allegedly competitively sensitive information through Mr. Wistisen—to any increased price that any Plaintiff allegedly paid. *See id.* at 49-50. Instead, Plaintiffs point to the same conclusory allegations that the supposed sharing of competitively sensitive information allowed the Sugar Defendants to coordinate their pricing strategies and increase prices. *See id.* But Plaintiffs nowhere explain how any exchange of information with Mr. Wistisen allowed any Sugar Defendant to increase its prices or that any Plaintiff paid an overcharge as a result of any communication with Mr. Wistisen. *Cf. Segal v. Amadeus IT Grp., S.A.*, 2025 WL 963751, at *6 (N.D. Ill. Mar. 31, 2025) (dismissing Section 1 claim where plaintiffs failed to explain how any alleged information sharing resulted in higher prices).

## III. PLAINTIFFS' CONCLUSORY ALLEGATIONS OF AN "ONGOING" CONSPIRACY DO NOT SUPPORT INJUNCTIVE RELIEF

Plaintiffs recognize that injunctive relief is improper absent a "threat of ongoing or future harm," Opp. at 53 (citing *Park v. Forest Serv. of U.S.*, 205 F.3d 1034, 1037 (8th Cir. 2000)), yet Plaintiffs allege none. Plaintiffs do not identify a single communication between any Sugar Defendant and Mr. Wistisen, or any other alleged "conduit," after July 2021, four years ago. *See* Opp. at 53-55. Instead, Plaintiffs ask the Court to "presume" that the conspiracy is ongoing and say that injunctive relief is warranted even if the alleged conspiracy ended before the litigation commenced. Neither argument has merit.

In *In re Mercedes-Benz Antitrust Litigation*, which Plaintiffs cite, *see* Opp. at 53, the court recognized that "the focus of the analysis" for "injunctive relief" "must be on the threat of future violations," and held on summary judgment that if a "jury …find[s] that a

-34-

conspiracy existed," "the jury may infer that the conspiracy continued" throughout the alleged relevant time period.  2006 WL 2129100, at *21-22 (D.N.J. July 26, 2006).  And, in *United States v. Agri Stats, Inc.*, the court held that plaintiffs had standing to seek injunctive relief because they had alleged "sufficient expressions of intent by Agri Stats to restart the pork and turkey reports" at issue.  2024 WL 2728450, at *6 (D. Minn. May 28, 2024).[11]  Plaintiffs do not allege any ongoing exchange of information among Defendants or any "intent" to resume such communications in the future.  Their request for injunctive relief should be dismissed.

## IV.    INDIRECT PLAINTIFFS' STATE LAW CLAIMS REMAIN DEFICIENT

Indirect Plaintiffs' state law claims fail for the same reason as Plaintiffs' federal claims, *i.e.*, because Plaintiffs have not plausibly alleged an agreement.  *See* Mot. at 11-12, 38.  Whether some state antitrust, consumer protection, or unjust enrichment statutes are "broader in scope" than the Sherman Act is of no import, *see* Opp. at 55, as all of Plaintiffs' state law claims are predicated on the existence of an agreement to fix prices or exchange information, and in the absence of a plausible agreement, Plaintiffs' state law claims all fail.  *See Cement,* 2025 WL 1755193, at *24-25 (dismissing state antitrust, consumer protection, and unjust enrichment claims where plaintiffs failed to plausibly allege an agreement); *Replacement Tires*, 767 F. Supp. at 744 (same).  Plaintiffs cite no case holding that, in the absence of a plausibly alleged agreement to fix prices or exchange information,

---

[11]  Plaintiffs' other authority is equally unhelpful, as in each case, the Court found that Plaintiffs had adequately alleged an ongoing conspiracy.  *See* Opp. 54-55.

any of their state law claims survive.

Plaintiffs' state law claims also fail for additional, independent reasons.

### A.    Indirect Plaintiffs Lack Standing To Sue Under State Laws Where No Named Plaintiff Resides Or Was Injured

Plaintiffs do not dispute that they attempt to bring claims under the laws of states where no named plaintiff resides or was injured. *See* Opp. 68-69. Nor do they identify any benefit of dragging the parties and the Court into nationwide discovery for more than twenty speculative state law claims. As Defendants acknowledge, and Plaintiffs' authority confirms, "Courts across the United States, including courts within the District of Minnesota, [are] split on whether and in what circumstances Article III standing issues may be postponed until after class certification." *Gisairo v. Lenovo*, 516 F. Supp. 3d. 880, 886-87 (D. Minn. 2021). But, as other courts have recognized, standing in antitrust cases has "particular significance" that weighs in favor of addressing at the pleading stage. *In re Target Corp. Data Sec. Breach Litig.*, 66 F. Supp. 3d 1154, 1160 (D. Minn. 2014). Defendants posit that the most efficient path is to address these standing concerns now.

### B.    There Are No Non-Conclusory Allegations Of An Effect On Intrastate Commerce

Plaintiffs claim that they have sufficiently pled *intra*state commerce by pleading *inter*state commerce. Opp. at 67. But Plaintiffs do not dispute that Alabama, Mississippi, North Carolina, Tennessee, and West Virginia require state-specific impact, and the CIPPs withdraw their Alabama state law claim on this basis. *Id.* 66-67, n.25. The cases Plaintiffs cite recognize that they must plausibly allege *intra*state commerce to state a claim under certain state laws even where a nationwide conspiracy is alleged. *See, e.g.*, *In re Pork*

-36-

*Antitrust Litig.*, 495 F. Supp. 3d 753, 779 (D. Minn. 2020) (dismissing claims under Mississippi law for failure to allege sufficient intrastate conduct).  While Defendants acknowledge some courts have reached a different conclusion, Plaintiffs' conclusory allegations that a "substantial part of Defendants' unlawful conduct occurred in the states" or "substantially affected" commerce in each state does not suffice to plead *intra*state conduct where it is required.  Opp. at 67 (citation omitted).

### C.    The Deficiencies In Indirect Plaintiffs' Consumer Protection Claims Remain

***New Hampshire***.  Plaintiffs claim that they have alleged more than just selling a good in New Hampshire, Opp. at 58-59, but they point to no allegations in their Complaints for support, and identify no proscribed conduct that took place in New Hampshire, which is fatal to their claim.  *See* Mot. at 41-42.

***Connecticut***.  Connecticut's 2018 *Illinois Brick* repealer statute does not save Plaintiffs' claims under the CUTPA because "standing to bring a CUTPA claim will lie only when the purportedly unfair trade practice is alleged to have directly and proximately caused the plaintiff's injuries," and the Indirect Plaintiffs' claims are too remote.  *Tyus v. Bertera Subaru*, 2021 WL 4993058, at *8 (D. Conn. Oct. 27, 2021) (dismissing claims as too indirect under the CUTPA).

***New York***.  Plaintiffs acknowledge that the NYPDA requires "deception over and above anticompetitive conduct," Opp. at 59-60 (citation omitted), and argue that they have satisfied this requirement by alleging that Defendants pretextually blamed price increases on the COVID-19 pandemic.  *See id*. at 60 (citing CIPP SFC ¶ 71).  But that single

allegation, which is only included in the CIPP's Short Form Complaint, is insufficient because it does not plead that any Defendant made a deceptive statement to any Plaintiff in New York. *See In re Flash Memory Antitrust Litig.*, 643 F. Supp. 2d 1133, 1160-61 (N.D. Cal. 2009) (dismissing NYPDA claim where there were "no specific allegations" that pretextual price increase justifications were "directed at any particular group, let alone Indirect Purchasers in New York").

*Minnesota*.  Even after amendment, the MFCA requires that any "unfair" practice be committed "with the intent that others rely thereon."  Minn. Stat. § 325F.69 (2023); *see In re Crop Prot. Prods. Loyalty Program Antitrust Litig.*, 2025 WL 315835, at *28 (M.D.N.C. Jan. 28, 2025).  Plaintiffs' MFCA claim fails because Plaintiffs have not alleged "Defendants' intent to induce reliance" on any allegedly unfair conduct.  *See id.*

*Oregon*.  Plaintiffs concede that they must allege "deception," and not just an antitrust violation, to state a claim under the OUTPA, Opp. at 61, but do not identify any actionable false or misleading misrepresentation that any Defendant made to any Plaintiff. *See In re Hard Disk Drive Suspension Assemblies Antitrust Litig.*, 2021 WL 4306018, at *18 (N.D. Cal. Sept. 22, 2021) ("there is nothing to suggest the OUTPA is intended to cover price-fixing conspiracies, statements denying price fixing, or omissions about fixed prices.").

### D.    Plaintiffs' Conclusory Unjust Enrichment Claims Should Be Dismissed

Plaintiffs claim that Defendants bear the burden to identify "the elements of unjust enrichment under any particular state's laws," Opp. at 63, but that is wrong.  Plaintiffs are required to prove sufficient notice of "what [each] … claim is and the grounds upon which

it rests," *Twombly*, 550 U.S. at 545, and have not done so.  *See MultiPlan*, 2025 WL 1567835, at *22 (dismissing unjust enrichment claims where plaintiffs failed to "differentiate between the unjust enrichment laws of [various states]").

Plaintiffs rely on *In re Generics Pharmaceuticals Pricing Antitrust Litigation*, 368 F. Supp. 3d 814 (E.D. Pa. 2019), to argue that *Illinois Brick* does not bar unjust enrichment claims brought under non-repealer state laws.  Opp. at 65.  *Generics*, however, is at odds not only with *Sheet Metal Workers Local 441 Health & Welfare Plan v. GlaxoSmithKline, PLC*, 737 F. Supp. 2d 380, 424-48 (E.D. Pa. 2010), but with other courts that have reached the same conclusion.  *See, e.g.*, *Premera Blue Cross v. Takeda Pharm. Co.*, 2023 WL 9474011, at *6 (D. Mass. Nov. 20, 2023) (the "majority of courts" have concluded that "indirect purchasers cannot bring unjust enrichment claims for antitrust violations" under the laws of states that follow *Illinois Brick*).

## V.    CONCLUSION

For the foregoing reasons, Defendants respectfully request dismissal of Plaintiffs' Complaints with prejudice, as Plaintiffs have had multiple opportunities to plead their claims, and identify no basis for allowing further amendment.

Dated:  July 11, 2025                    Respectfully submitted,

By: */s/ Lawrence E. Buterman*
Lawrence E. Buterman (*pro hac vice*)
LATHAM & WATKINS LLP
1271 Avenue of the Americas
New York, New York, 10020
Telephone: (212) 906-1200
Facsimile: (212) 751-4864
lawrence.buterman@lw.com

Elyse M. Greenwald (*pro hac vice*)
LATHAM & WATKINS LLP
10250 Constellation Boulevard, Suite 1100
Los Angeles, CA 90067
Telephone: (424) 653-5500
Facsimile: (424) 653-5501
elyse.greenwald@lw.com

Matthew J. Piehl (#0395942)
David L. Johnson (*pro hac vice*)
Christopher J. Brown (*pro hac vice*)
LATHAM & WATKINS LLP
555 Eleventh Street, NW, Suite 1000
Washington, DC 20004
Telephone: (202) 637-2154
Facsimile: (202) 637-2201
matthew.piehl@lw.com
david.johnson@lw.com
chris.brown@lw.com

***Counsel for Defendant United Sugar
Producers & Refiners Cooperative, and
Defendants' Lead Counsel and Liaison
Counsel***

*/s/ Vanessa G. Jacobsen*
Vanessa G. Jacobsen
Benjamin E. Waldin
EIMER STAHL LLP
224 S Michigan Avenue, Suite 1100
Chicago, IL 60604
Telephone: (312) 660-7604

-40-

Facsimile: (312) 692-1718
vjacobsen@eimerstahl.com
bwaldin@eimerstahl.com

Isaac J. Weitzhandler
Eimer Stahl LLP
1999 S. Bascom Ave., Suite 1025
Campbell, CA 95008
408-889-1670
iweitzhandler@eimerstahl.com

Ariel K. Lierz (#397355)
Luke J. Wolf (#399986)
SPENCER FANE LLP
100 South Fifth Street, Suite 2500
Minneapolis, MN 55402
Telephone: (612) 268-7000
Facsimile: (612) 268-7001
alierz@spencerfane.com
lwolf@spencerfane.com

***Counsel for Defendant Michigan Sugar
Company, and Defendants' Steering
Committee Member***

*/s/ Djordje Petkoski*
Djordje Petkoski (*pro hac vice*)
Todd Stenerson (*pro hac vice*)
Amelia Rasmussen (*pro hac vice*)
ALLEN OVERY SHEARMAN STERLING US
LLP
101 New York Ave NW
Washington, DC 20005
Telephone: (202) 683-3800
djordje.petkoski@aoshearman.com
todd.stenerson@aoshearman.com
memmi.rasmussen@aoshearman.com

Andre Hanson (#0258234)
ALLEN OVERY SHEARMAN STERLING US
LLP
300 W 6th Street
Austin, TX 78701

-41-

Telephone: +1.512.647.1900
andre.hanson@aoshearman.com

***Counsel for Defendants ASR Group
International, Inc., American Sugar Refining,
Inc., and Domino Foods, Inc., and Defendants'
Steering Committee Member***

*/s/ Christopher D. Plumlee*
Christopher D. Plumlee
Wendy Johnson
RMP LLP
5519 Hackett Street, Suite 300
Springdale, AR 72762
(479) 443-2705
cplumlee@rmp.law
wjohnson@rmp.law

***Counsel for Defendants Commodity
Information, Inc. and Richard Wistisen, and
Defendants' Steering Committee Member***

*/s/ Timothy G. Cameron*
Timothy G. Cameron
Michael P. Addis
Jesse M. Weiss
CRAVATH, SWAINE & MOORE LLP
375 Ninth Avenue
New York, NY 10001
Telephone: (212) 474-1000
Facsimile: (212) 474-3700
tcameron@cravath.com
maddis@cravath.com
jweiss@cravath.com

Tara C. Norgard (#0307683)
CARLSON CASPERS VANDENBURGH &
LINDQUIST, PA
225 So. Sixth Street, Suite 4200
Minneapolis, MN 55402
Telephone:  (612) 436-9600
Facsimile:  (612) 436-9605
tnorgard@carlsoncaspers.com

*Counsel for Defendant Louis Dreyfus Company LLC, and Defendants' Steering Committee Member*

*/s/ David C. Kully*
David C. Kully
HOLLAND & KNIGHT LLP
800 17th St., NW; Suite 1100
Washington, DC 20006
Phone: 202-469-5415
Fax: 202-955-5564
david.kully@hklaw.com

Caitlin F. Saladrigas, Esq
HOLLAND & KNIGHT LLP
777 S. Flagler Drive
Suite 1900, West Tower
West Palm Beach, FL 33401
Tel: 561-833-2000
Fax: 561-650-8399
Email: caitlin.saladrigas@hklaw.com

*Counsel for United States Sugar Savannah Refinery, LLC, and Defendants' Steering Committee Member*

-43-