**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

| | |
|---|---|
| IN RE: GRANULATED SUGAR ANTITRUST LITIGATION | MDL No. 24-03110 (JWB/ECW) |
| **THIS DOCUMENT RELATES TO:** *Mondelēz Global LLC et al. v. ASR Group International, Inc. et al.*, No. 0:26-cv-03528 | **PAUL, WEISS'S OPPOSITION TO MOTION TO DISQUALIFY** |

## INTRODUCTION

ASR/Domino's[1] lead counsel, Djordje Petkoski, and his team have represented ASR/Domino in this MDL for over two years and in predecessor government and court proceedings since 2021. Plaintiffs in the above-captioned action,[2] latecomers to this MDL litigation, filed their complaint just two months ago. Plaintiffs' seek to disqualify Mr. Petkoski and Paul, Weiss, Rifkind, Wharton & Garrison LLP ("Paul, Weiss" or the "Firm")—the Firm that Mr. Petkoski joined a year ago—from representing ASR/Domino not only in their individual case, but also in the entire MDL. This is strategic gamesmanship at its worst and entirely without merit. ASR/Domino are entitled to its choice of counsel unless Plaintiffs can demonstrate a violation of the ethical rules that can be remedied by no

[1] Defendants ASR Group International, Inc., American Sugar Refining, Inc., and Domino Foods, Inc. are referred to collectively as "ASR/Domino" in this brief.

[2] This brief will use "Plaintiffs" to refer to the five of six plaintiffs in this action who brought this motion: Mondelēz Global LLC; The Hershey Company; The J. M. Smucker Company; The Kraft Heinz Company; and WK Kellogg Co. The remaining plaintiff, Nestlé USA, Inc., appears not to have joined in this motion.

less drastic sanction than disqualification. Their motion comes nowhere close to meeting that standard and should be denied for multiple reasons.

To begin with, Plaintiffs' motion is procedurally improper and should be denied on that ground alone. Disqualification is a drastic remedy. The burden is on the movant to prove an ethical violation and to demonstrate that no lesser sanction will suffice. *Awnings v. Fullerton*, 912 F.3d 1089, 1096 (8th Cir. 2019); *Mgmt. Registry, Inc. v. A.W. Cos., Inc.*, No. 17-cv-5009 (JRT/KMM), 2021 WL 2434119, at *6 (D. Minn. June 15, 2021). Plaintiffs do not carry their burden. Instead, they try to flip it—styling their motion as a request that Paul, Weiss "show cause" why the Court should not disqualify it and asking the Firm to take on the burden of proof. The Court should reject that procedural gambit out of hand.

Procedural defects aside, Plaintiffs' motion also should be rejected on the merits. Plaintiffs make two arguments: First, they argue that Paul, Weiss's involvement in the entire MDL violates Rule 1.18 (governing prospective clients) because former Paul, Weiss partners pitched to represent them and other prospective clients (together, the "Former Prospective Clients") in 2024. Second, they argue that Paul, Weiss's involvement, again in the entire MDL, violates Rule 1.7 (concerning current clients) because Paul, Weiss is representing The Kraft Heinz Company ("Kraft Heinz")—one of six plaintiffs in this action—in an unrelated litigation. Both arguments fail.

There was no violation of Rule 1.18. The lawyers who attended the pitch meeting left the firm before Mr. Petkoski, ASR/Domino's lead counsel, joined as a lateral partner. No one on the ASR/Domino team viewed or accessed any alleged confidential information

provided by the Former Prospective Clients; and Paul, Weiss implemented a screen to ensure that no one would. Moreover, Plaintiffs must show as a threshold matter that former Paul, Weiss lawyers received information "from" them that "could be significantly harmful" in this litigation. Minn. R. Prof. Conduct 1.18(c). They cannot. The "pitch information" they cite consisted primarily of analysis by the former Paul, Weiss lawyers supplied *to* the Former Prospective Clients, along with vague references to discussions about merits and strategy with the lawyers who have since departed. The only information the Former Prospective Clients actually sent Paul, Weiss was historical purchasing data from just one of the Plaintiffs. This is high-level data that does not appear in the pitch proposal, that no one on the ASR/Domino team has accessed or viewed, that the parties would produce in discovery in any event, and that the defendants in this case likely already possess, as the counterparties to that plaintiff's purchasing transactions. Information that the parties have already or will inevitably disclose cannot be "significantly harmful."

Further, even if the Former Prospective Clients did reveal "significantly harmful" information in connection with the pitch, the requirements of Rule 1.18(d)(2) have been satisfied. The former partners who conducted the pitch reasonably limited the information they obtained, the Firm screened the lawyers who remained, and the Firm notified the Former Prospective Clients of the precautions it has taken. But even assuming, counterfactually, that there were a Rule 1.18 violation, disqualification would still be unwarranted. Plaintiffs have failed to articulate, much less establish, any discernible prejudice they would suffer as a result of Paul, Weiss's participation in the pitch.

Plaintiffs' argument under Rule 1.7 fares no better. Paul, Weiss has not appeared, and will not appear, on behalf of ASR/Domino in this action, in which Kraft Heinz is a plaintiff, while Kraft Heinz remains a current client. Consistent with the routine, well-established approach in these kinds of complex MDLs, ASR/Domino have retained separate counsel for any matters directly adverse to Kraft Heinz. Plaintiffs' complaint that Paul, Weiss may take "positions" in the MDL that could *indirectly* disadvantage Kraft Heinz does not establish that Paul, Weiss will be *directly* adverse to Kraft Heinz as required to violate Rule 1.7.

Plaintiffs' Rule 1.7 argument thus rests on an extraordinary proposition: whenever a putative class member opts out, regardless of how long the litigation has been pending, it may then seek to disqualify long-standing defense counsel simply because defense counsel represents that plaintiff in an unrelated matter. That is not the law. Defense counsel may not, without consent, represent a defendant in the individual action its client has brought against that defendant. But that narrow prohibition does not extend to disqualifying the firm from its longstanding role in the broader MDL or from representing its client against other plaintiffs with which it has no conflicts. Plaintiffs' rule would hand opt-out plaintiffs the unfettered power to strip defendants of their chosen counsel or to extract a coerced settlement under threat of disqualification. That result is unworkable and ripe for abuse, as is recognized by the strict scrutiny under which disqualification motions are reviewed. The Court should not sanction such a result.

## BACKGROUND

### I. The Former Prospective Clients Controlled and Specifically Limited the Information They Exchanged with Several Firms During Their 2024 RFP.

In 2024, the Former Prospective Clients[3] considered retaining counsel to pursue antitrust claims against granulated-sugar producers, including ASR/Domino. (Declaration of Emily Dillingham ("Dillingham Decl.") ¶ 3.) On May 8, 2024, Kellanova's Corporate Counsel, Litigation & Regulatory, Emily Dillingham, sent Jessica Phillips, then a Partner at Paul, Weiss, two publicly filed complaints and identified likely defendants for a conflicts check. (Dillingham Decl. ¶¶ 4–5, Ex. J.) Ms. Dillingham's email also noted that, "for RFP purposes," she was pulling high-level purchasing data related to sugar purchases. (Dillingham Decl. ¶¶ 4–5, Ex. J.) On May 9, 2024, Ms. Phillips followed up on Ms. Dillingham's offer to provide purchasing data, and Ms. Dillingham sent her a spreadsheet containing summary purchasing data for Kellanova and WK Kellogg covering a period (2019-23) when they were a single company, and included supplier, quantity, and the amount paid. (Dillingham Decl. ¶¶ 6-7, Ex. K.)

In June 2024, the Former Prospective Clients asked several firms for a written proposal. (Dillingham Decl. ¶ 9.) The RFP requested information about the proposed team and relevant plaintiffs-side antitrust experience, an evaluation of potential claims and

[3] The Former Prospective Clients included the six plaintiffs in this action, The Hershey Company, The J.M. Smucker Company, Kraft Heinz, Mondelēz Global LLC, Nestlé USA, Inc.; and WK Kellogg Co., as well as Kellanova and one other prospective client. (Dillingham Decl. ¶ 9 & Ex. M.) General Mills, McKee Foods, and Mars did not participate in the solicitation. (Fox Decl. ¶ 4 n.1.) Three Kellanova companies affiliated in December 2025. (Dillingham Decl. ¶ 3 n.2.)

defenses, proposed litigation and settlement strategy, views on damages, venue and whether to proceed jointly or separately. (Dillingham Decl. ¶ 10, Ex. M.) At the same time, the Former Prospective Clients expressly limited what company-specific information they would provide at this early stage of the RFP process. (Dillingham Decl. ¶ 10, Ex. M.) The Former Prospective Clients stated, "given concerns about confidentiality," they did not intend "at this stage of the RFP to provide specific purchase data" and had not even shared such data among themselves. (Dillingham Decl. ¶ 10, Ex. M.)

Paul, Weiss submitted a ten-page proposal on July 12, 2024. (Dillingham Decl. ¶ 11, Ex. N.) Much of the proposal was focused on the capabilities and experience of Ms. Phillips, Bill Isaacson and Kyle Smith, then partners at Paul, Weiss, background on the court, and the fee proposal. The proposal also contained Paul, Weiss's assessment of the public allegations and anticipated defenses and recommendations concerning legal theories, settlement strategy, venue, and whether the companies should proceed jointly or individually. (Dillingham Decl. ¶ 11, Ex. N.) The proposal did not incorporate any alleged confidential information from the Former Prospective Clients, including any analysis of the purchasing data Ms. Dillingham sent to Ms. Phillips. (Dillingham Decl. ¶ 11, Ex. N.)

After Paul, Weiss became one of three finalists, it participated in a one hour meeting with certain Former Prospective Clients' in-house counsel on October 8, 2024. (Dillingham Decl. ¶¶ 12–13.) Dillingham states the participants "exchanged views" and the Former Prospective Clients' counsel "explained their strategic thinking" on "the merits of the case, potential defenses, and litigation and settlement strategy." (Dillingham Decl. ¶ 13.) However, Ms. Dillingham does not describe with any specificity the confidential

information provided by any of the Former Prospective Clients. (*See* Dillingham Decl. ¶ 13.)

Similarly, in a subsequent October 2024 email exchange between Ms. Dillingham and Ms. Phillips, the Former Prospective Clients requested further information *from* Paul, Weiss and did not provide any confidential information *to* Paul, Weiss. (Dillingham Decl. ¶ 14, Ex. O.) In response, Paul Weiss provided a broad assessment of procedural strategy and its experience with various federal agencies. (Dillingham Decl. ¶ 14, Ex. O.) The Former Prospective Clients ultimately selected Jenner & Block to represent them, not Paul, Weiss. (Dillingham Decl. ¶ 16; Declaration of Brandon Fox ("Fox Decl.") ¶ 8.)

## II. The Paul, Weiss Pitch Lawyers Left Paul, Weiss Before Mr. Petkoski Joined Paul, Weiss and Before Paul, Weiss Started Representing ASR/Domino.

The three Paul, Weiss partners responsible for the 2024 pitch, William Isaacson, Jessica Phillips, and Kyle Smith, all left Paul, Weiss in May 2025—more than three months before Djordje Petkoski and his team joined Paul, Weiss on September 15, 2025. (Fox Decl. ¶ 9 & n.2; Declaration of Elizabeth G. McCabe ("McCabe Decl.") ¶¶ 2, 6.).

Only two other Paul, Weiss lawyers assisted with pitch preparation: a mid-level Associate and a Practice Management Attorney.[4] (McCabe Decl. ¶ 7.) Neither attended the October meeting, neither has worked on the ASR/Domino representation, and both confirmed that they never discussed any alleged confidential information from the Former Prospective Clients with any lawyer representing ASR/Domino. (McCabe Decl. ¶¶ 6-7,

[4] Paul, Weiss has not identified these lawyers by name in order to protect their privacy, but Paul, Weiss is willing to provide the names *in camera* if needed.

10.) Both have been screened from ASR/Domino matters; and the Practice Management Attorney left the firm in May 2026. (McCabe Decl. ¶ 7.)

While at his prior firm, before joining Paul, Weiss, Mr. Petkoski and his team represented ASR/Domino in various antitrust matters since 2021, including the DOJ merger investigation from which all of the plaintiffs in this MDL draw their claims. (Fox Decl. ¶ 10; Declaration of Djordje Petkoski ("Petkoski Decl.") ¶¶ 2–3, 6.) Mr. Petkoski and his team have represented ASR/Domino in this MDL since the first class action complaint was filed in 2024. (Petkoski Decl. ¶ 8.) Paul, Weiss started representing ASR/Domino upon Mr. Petkoski's arrival on September 15, 2025. (Petkoski Decl. ¶ 9.) Since then, Paul, Weiss's lawyers have spent several thousand hours defending ASR/Domino in this case. (Petkoski Decl. ¶ 10.)

Mr. Petkoski's arrival at Paul, Weiss was well-publicized. (*See* McCabe Decl. ¶ 4.) In addition to the press announcement and significant media coverage, Mr. Petkoski updated his notice of appearance in this MDL to reflect his new affiliation with Paul, Weiss on September 19, 2025. ECF No. 449. Mr. Petkoski sought renewal of his Defendants' Steering Committee appointment on September 22, 2025 and was reappointed by the Court on October 16, 2025. (Fox Decl. ¶ 10 & n.5; Declaration of Professor Emerita Nancy J. Moore ("Moore Decl.") ¶ 49.)

## III. Plaintiffs First Raised Their Purported Conflicts Concerns More than Four Months After Paul, Weiss Began Representing ASR/Domino.

Brandon Fox of Jenner & Block LLP first contacted Mr. Petkoski on behalf of Plaintiffs and Kellanova in late November 2025 to explore pre-litigation settlement

discussions. (Fox Decl. ¶ 12 & Ex. A.) Mr. Fox's letter said nothing about any purported conflicts concerns. (Fox Decl. ¶ 12, Ex. A.) Mr. Fox emailed Mr. Petkoski on January 9, January 21, February 2, and February 3, 2026 to try to arrange a time to speak. (Fox Decl. ¶ 13 & Ex. B.) Again, Mr. Fox said nothing about any purported conflicts concerns. (Fox Decl. ¶ 13, Ex. B.)

Mr. Fox and Mr. Petkoski first spoke about Plaintiffs' claims on February 6, 2026. (Fox Decl. ¶ 14.) At the outset of the call, Mr. Petkoski stated that he could not discuss any potential claims by Kraft Heinz with Mr. Fox, because Paul, Weiss represented Kraft Heinz in other matters. (Fox Decl. ¶ 14; Petkoski Decl. ¶ 14.) On that call, Mr. Fox raised for the first time that three former lawyers at Paul, Weiss had previously pitched to represent Mr. Fox's clients. (Fox Decl. ¶ 14; Petkoski Decl. ¶ 14) Mr. Petkoski was not aware of the pitch before Mr. Fox mentioned it, and he agreed to get more information. (Fox Decl. ¶ 14; Petkoski Decl. ¶ 14.)

Mr. Fox and Mr. Petkoski next spoke, by video conference on February 20, 2026, again in connection with Mr. Fox's request for pre-litigation settlement discussions. (Petkoski Decl. ¶ 15.) On that call, Mr. Petkoski reminded Mr. Fox that he had joined Paul, Weiss from another firm several months earlier and informed Mr. Fox that none of the Paul, Weiss attorneys who worked on the pitch have worked for ASR/Domino. (Fox Decl. ¶ 15; Petkoski Decl. ¶ 15.)

Mr. Fox and Mr. Petkoski spoke for the third time regarding Mr. Fox's request for pre-litigation settlement on February 27, 2026. (Petkoski Decl. ¶ 16.) It became clear on that call that a pre-litigation resolution between the parties was unlikely. (Petkoski Decl.

¶ 16.) It was only then that Mr. Fox first wrote to Paul, Weiss, on March 2, 2026, to "object to [Paul, Weiss's] representation of ASR/Domino in the matter." (Fox Decl. ¶ 14, Ex. C.)

## IV. Paul, Weiss Has Ensured that the ASR/Domino Lawyers Have Not Accessed, and Cannot Access, Any Alleged Confidential Information from the Former Prospective Clients.

Paul, Weiss responded promptly to Plaintiffs, in a letter dated March 6, 2026, to assure them "that there has been, and will be, no leakage of confidential information about the pitch to any lawyers currently representing ASR or Domino." (Fox Decl. ¶ 14, Ex. D.) Subsequent correspondence between the parties has confirmed the same, although Plaintiffs remain unsatisfied. (Fox Decl. ¶¶ 18-22, 34-35, Exs. F, G, S.)

Specifically, in response to Plaintiff's concerns, Paul, Weiss confirmed that Mr. Petkoski and the other lawyers representing ASR/Domino have never accessed or viewed any alleged confidential information that the Former Prospective Clients provided in connection with the pitch. (Fox Decl. ¶ 22, Ex. G) They were screened from doing so. (McCabe Decl. ¶ 1.) The documents related to the pitch which were stored on Paul, Weiss's document management system—the RFP, Paul, Weiss's proposal in response to the RFP, and drafts thereof—were electronically secured from access by the lawyers representing ASR/Domino. (McCabe Decl. ¶ 8.) The purchasing data provided by one of the Former Prospective Clients in connection with the pitch has not been stored on Paul, Weiss's document management system. (McCabe Decl. ¶ 9.) The only remaining lawyer at Paul, Weiss who worked on the pitch (but did not attend the meeting) has been screened and has not shared any alleged confidential information from the Former Prospective Clients with any lawyer representing ASR/Domino. (McCabe Decl. ¶ 7.)

**V. Paul, Weiss Has Not Been, and Will Not Be, Directly Adverse to Kraft Heinz While It Is a Current Client.**

Paul, Weiss has repeatedly acknowledged from the outset that, absent a waiver or agreement, it cannot be directly adverse to Kraft Heinz. (Fox Decl. ¶ 14 & Exs. D, G; Petkoski Decl. ¶¶ 14, 21.) Kraft Heinz has declined to provide a waiver. Paul, Weiss has not entered an appearance in this direct action brought by Kraft Heinz, and will not do so, as long as Kraft Heinz is a current client. ASR/Domino have retained separate counsel at Maslon, LLP to represent it adverse to Kraft Heinz. (ECF No. 758.)

Paul, Weiss represents Kraft Heinz in one matter: an unrelated stockholder-derivative action in the Delaware Court of Chancery, where Kraft Heinz is a nominal defendant. *In re The Kraft Heinz Company Derivative Litigation Consolidated*, C.A. No. 2019-0587-LWW. (McCabe Decl. ¶ 15.) A motion to dismiss is pending in the Delaware case. *See* Nominal Defendant's and the Individual Defendants' Motion to Strike and to Dismiss the Verified Consolidated Second Amended Stockholder Complaint, *In re The Kraft Heinz Company Derivative Litigation Consolidated*, C.A. No. 2019-0587-LWW (Del. Ch. filed July 29, 2026). Depending on its disposition, Paul, Weiss's representation of Kraft Heinz may conclude and the purported current-client issue would cease to exist.

## STANDARD OF REVIEW

This Court applies the Minnesota Rules of Professional Conduct, and because disqualification motions present a substantial potential for tactical abuse, they receive "particularly strict scrutiny." *Gifford v. Target Corp.*, 723 F. Supp. 2d 1110, 1117 (D. Minn. 2010); *Awning*, 912 F.3d at 1095 (quoting *Macheca Transp. Co. v. Phila. Indem.*

*Ins. Co.*, 463 F.3d 827, 833 (8th Cir. 2006)). Disqualification is an "extreme measure" that should be imposed "only when absolutely necessary," *Macheca Transp. Co.*, 463 F.3d at 833.

The Eighth Circuit has long held that "a violation [of the ethics rules] does not automatically result in disqualification of counsel." *Cent. Milk Producers Coop. v. Sentry Food Stores, Inc.*, 573 F.2d 988, 991 (8th Cir. 1978). Therefore, even if a violation has occurred, the Court must still examine whether counsel's continued participation threatens "a continuing taint on the litigation and trial" and whether the movant can demonstrate substantial, irreparable litigation harm to show disqualification is absolutely necessary. *Gifford*, 723 F. Supp. 2d at 1116; *Stepnes v. Ritschel*, No. 08-5296 (ADM/JJK), 2010 WL 11646709, at *3, *5–6 (D. Minn. Mar. 1, 2010); *see also Shields v. Gen. Mills Inc.*, No. 16-cv-954 (MJD/KMM), 2017 WL 6520685, at *2, 7 (D. Minn. Dec. 1, 2017), *R & R adopted*, 2017 WL 6542035 (D. Minn. Dec. 20, 2017) (balancing interest in risk of improper disclosure with significant interest in pursuing litigation with counsel of choice). The Court balances various factors, including its duties to maintain confidence in the profession and the integrity of the proceeding; the client's interest in chosen counsel; and the adversary's interest in litigating free from unfair use of confidential information. *Mgmt. Registry, Inc.*, 2021 WL 2434119, at *3; *Gifford*, 723 F. Supp. 2d at 1116–17.

## ARGUMENT

### I. Plaintiffs Cannot Shift Their Burden of Proof to Paul, Weiss and Must Themselves Establish that Disqualification Is "Absolutely Necessary."

The moving party bears the burden to prove that disqualification is required. *Awnings*, 912 F.3d at 1096; *Mgmt. Registry, Inc.*,, 2021 WL 2434119, at *6. Plaintiffs' attempt to style their disqualification motion as a request for a "rule to show cause as to why Paul, Weiss . . . should not be disqualified" does not shift the burden of proof to Paul, Weiss. *See Mgmt. Registry, Inc.*, 2021 WL 2434119, at *5–6 (rejecting proposed inference—that counsel's participation in mediation for prospective client meant counsel must have received potentially disqualifying information under Rule 1.18—because such a presumption would "impermissibly shift the burden" to the challenged firm).

Plaintiffs repeatedly assert that Paul, Weiss "must explain" why it did not receive significantly harmful information, must "step forward and explain" compliance with Rule 1.18, and must furnish additional information so that Plaintiffs can assess the firm's precautions. (Pls.' Mem. 18, 23–24, 28–29.) But Rule 1.18(c) applies only if the firm "received information from the prospective client that could be significantly harmful." Minn. R. Prof. Conduct 1.18(c). Plaintiffs must first prove that predicate, namely, that they supplied significantly harmful information to Paul, Weiss. They cannot assume significantly harmful information was exchanged and then require Paul, Weiss to *disprove* it. *See Mgmt. Registry, Inc.*, 2021 WL 2434119, at *6. They cite no authority to the contrary.

Accordingly, the Court should decide this motion under the ordinary framework: Plaintiffs must establish the facts necessary for the disqualification they seek. For the reasons discussed below, they have come nowhere close to doing so.

## II. Paul, Weiss's 2024 Pitch to Represent the Former Prospective Clients Does Not Support Disqualification.

Plaintiffs have not established a violation of Rule 1.18 and, even if they did, they have not shown that Paul, Weiss's continued representation of ASR/Domino would prejudice them so as to justify depriving ASR/Domino of its choice of counsel.

### A. Rule 1.18 Does Not Apply Because the Allegedly Confidential Information Disclosed by the Former Prospective Clients During the Pitch Is Not "Significantly Harmful."

A lawyer does not possess disqualifying information from a prospective client under Rule 1.18 unless it "received information *from the prospective client* that could be *significantly harmful*" to that prospective client in the matter. Minn. R. Prof. Conduct. 1.18(c) (emphasis added); (*see also* Declaration of Professor Bruce A. Green ("Green Decl.") ¶¶ 26-33 (describing origin and purpose of Rule 1.18).[5]

---

[5] Rule 1.18 does not impose the same broad substantially-related-matter prohibition for former clients under Rule 1.9 and instead provides greater flexibility in dealing with a former prospective client. Rule 1.18 does not ask merely whether confidential information was exchanged; it focuses on the kind of information and whether that information could cause significant harm in the later matter. Treating every pitch concerning the same subject matter as disqualifying would erase that textual distinction and convert the significant-harm requirement into a same-matter presumption. *See State ex rel. Thompson v. Dueker*, 346 S.W.3d 390, 396 (Mo. Ct. App. 2011) (explaining that under Missouri's similar rules, "in contrast to Rule 4–1.9 proceedings, specific evidence of the nature and substance of the information is required in Rule 4–1.18 proceedings to establish that it is 'significantly harmful;' speculative or hypothetical claims of harm are not enough").

Determining whether information satisfies the "significantly harmful" standard involves a "fact-based inquiry" into the information's potential use or harm in the later matter. ABA Formal Op. 492, at 1, 5–8. As explained in *In re OneJet, Inc.*, 614 B.R. 522, 532-33 (Bankr. W.D. Pa. 2020), "lawyers are deemed to possess 'significantly harmful' information when they acquire intimate knowledge of the prospective client's views and impressions of the litigation that could not have been obtained elsewhere," including "a party's assessment of its own claims and risk tolerance, its settlement authority, and its strategic vision to manage any litigation." *See also O Builders & Assocs., Inc. v. Yuna Corp. of NJ*, 19 A.3d 966, 976 (N.J. 2011) (holding the "significantly harmful" determination involves an inquiry that is "exquisitely fact-sensitive and -specific" into whether the purported harm is "prejudicial in fact to the former prospective client within the confines of the specific matter in which disqualification is sought").

Information is not significantly harmful simply because it was confidential or exchanged during a consultation. *Mayers v. Stone Castle Partners, LLC*, 126 A.D.3d 1, 7-8 (N.Y. App. Div. 2015); *see also Management Registry*, 2021 WL 2434119, at *5–6 (movant is not entitled to presumption that significantly harmful information was shared in pitch context). The harm must be concrete to the subject matter of the lawsuit, not merely "detrimental in general." *O Builders*, 19 A.3d at 978.

Information is not significantly harmful if it "can be procured from an alternate source" or is "likely to be revealed during discovery." *In re OneJet, Inc.*, 614 B.R. at 533; *Bell v. Cumberland County*, No. 09-6485 (JHR/JS), 2012 WL 1900570, at *8-9 (D.N.J. May 23, 2012) (finding allegedly confidential information not "significantly harmful"

where it was general public information, likely to be revealed at deposition or in discovery). Receipt of stale, factual information that is available elsewhere, or that has been overtaken by later developments, likewise does not require disqualification. *See Stone Castle Partners, LLC*, 126 A.D.3d at 7–8; *Villarreal v. Dewitt*, No. 1:16-CV-00163 KGB, 2020 WL 13337787, at *5 (E.D. Ark. Mar. 10, 2020).

Here, Plaintiffs have not proven that the limited information the Prospective Clients provided to Paul, Weiss in connection with the pitch is "significantly harmful" under Rule 1.18. In fact, it is not. First, the historical purchasing data the Former Prospective Clients sent to Ms. Phillips is not significantly harmful to their case because it was already known to the Defendants, from whom the Former Prospective Clients purchased, and it is precisely the type of factual information that is "likely to be revealed during discovery" in a price-fixing case. *In re OneJet, Inc.*, 614 B.R. at 533; *see also Benevida Foods, LLC v. Advance Magazine Publishers Inc.*, No. 15-cv-2729, 2016 WL 3453342 (S.D.N.Y. June 15, 2016) (similar); *Cumberland County*, 2012 WL 1900570, at *8 (finding that information "is not and could not be significantly harmful to plaintiff's case within the meaning of Rule 1.18" where it was "germane" to the facts and so would be revealed in discovery). Indeed, historical price and purchasing data was the first thing produced in the class actions, consistent with the Court's pretrial orders (*see* ECF No. 497 at 3), and is likely to be among the first things the Plaintiffs will be required to produce in discovery.

Second, Plaintiffs do not establish that they relayed significantly harmful information to Paul, Weiss at the October 2024 pitch meeting. While Dillingham's Declaration says the meeting participants "exchanged" views on merits, defenses, and

litigation and settlement strategy and that the Former Prospective Clients communicated "strategic thinking," she does not identify, even by general description, any specifics. (Dillingham Decl. ¶ 13.) Plaintiffs did not submit any such evidence and cannot invoke vague references to "strategy" to prove significant harm. *See Mgmt. Registry, Inc.*, 2021 WL 2434119, at *6; *In re Onejet, Inc.*, 614 B.R. at 533 ("Mere conclusory statements of harmfulness are not enough to substantiate a party's burden."); (*see also* Green Decl. ¶¶ 35-38.). Moreover, any alleged confidential information the Former Prospective Clients shared at that meeting left the Firm with the departed lawyers in attendance. (McCabe Decl. ¶ 11.) Under these circumstances, there can be no significant harm to the Former Prospective Clients from any alleged confidential information exchanged during the meeting.

Third, the other communications in connection with the pitch, including the RFP, Paul, Weiss's proposal, and the email exchange after the meeting (Dillingham Decl. Exs. J, M, N, O) prove the absence of harmful information having been exchanged. Rule 1.18 (c) concerns what information the lawyer received *from* the prospective client, not what the firm provided *to* the prospective client, and these communications overwhelmingly reflect information and analysis provided by then-Paul, Weiss partners to the Former Prospective Clients. These documents do not reflect "views and impressions of the litigation," *In re OneJet, Inc.*, 614 B.R. at 533, provided by the Former Prospective Clients to Paul, Weiss. Attaching "litigation strategy" or "settlement strategy" labels to these documents does not establish that the Former Prospective Clients disclosed the type of information that would cause significant harm to them if an entirely different set of Paul,

Weiss lawyers is allowed to represent ASR/Domino today. *See* ABA Formal Opinion 492, at 5 n.20 (prospective client's description of information as "confidential," standing alone, does not establish disqualifying harm).[6]

Plaintiffs' reliance on *SkyBell Technologies, Inc. v. Ring, Inc.*, No. SACV 18-00014 JVS (KESx), 2018 WL 6016156 (C.D. Cal. Sept. 18, 2018), is misplaced, and that case does not require disqualification here. *SkyBell* was decided under California's rules, and California's Rule 1.18, unlike Minnesota's, does not require that the disqualifying information be "significantly harmful." Instead, the California rule (and thus the *SkyBell* court's analysis) focuses on whether the firm received "confidential information" during the prospective-client consultation that is material to the matter. *See* Cal. R. Prof. Conduct 1.18(c) (invoking "information protected by Business and Professions Code section 6068, subdivision (e) . . . ."). That is not the standard in Minnesota. *SkyBell* never mentions or analyzes whether the information at issue was "significantly harmful"—the key issue under Minnesota rules—and thus has no persuasive value here.

---

[6] Professor Moore separately invokes Rule 1.10(c) in an attempt to overcome the departure of the partners who pitched the Former Prospective Clients. (Moore Decl. ¶ 41.) However, Rule 1.10(c) concerns "a client represented by the formerly associated lawyer" (not a former prospective client) and information protected by Rules 1.6 and 1.9(c). Minn. R. Prof. Conduct 1.10(c). Incredibly, Professor Moore's quote substitutes "[prospective client of]" for Rule 1.10(c)'s reference to a former client and "[Rule 1.18(b)]" for Rule 1.10(c)'s references to Rules 1.6 and 1.9(c). (Moore Decl. ¶ 41 & n.5.) Minnesota courts are "bound by the language of the rule." *Lennartson*, 662 N.W.2d at 131. The Court must apply the language adopted by the Minnesota Supreme Court, not Professor Moore's revision that completely changes its meaning in an effort to convert a former prospective client issue under Rule 1.18 into a former client issue under Rule 1.9. (*See* Green Decl. ¶ 43, n. 10.)

### B. Even if the Former Prospective Clients Did Disclose "Significantly Harmful" Information, There Would be no Violation of Rule 1.18.

Notwithstanding receipt of "significantly harmful" information, Rule 1.18(d)(2) expressly permits the firm's representation, and grants a "safe harbor," where the firm took "reasonable measures to avoid exposure to more disqualifying information than was reasonably necessary" to evaluate the prospective representation, the disqualified lawyers were screened from the later matter and receive no portion of its fee, and written notice was promptly provided to the prospective clients. Minn. R. Prof. Conduct 1.18(d)(2). These requirements have been satisfied.

First, the record is clear that Paul, Weiss took reasonable measures to avoid exposure to more information than was reasonably necessary in connection with the 2024 pitch process. The 2024 pitch was a competitive RFP process administered by sophisticated in-house counsel who expressly controlled what information would be disclosed. (Dillingham Decl. ¶ 10, Ex. M (noting that the prospective clients "do not intend at this stage of the RFP to provide specific purchase data").) Plaintiffs' only basis for claiming that Paul, Weiss did not appropriately limit its exposure is the high-level purchasing data that Kellanova's counsel sent to Ms. Phillips. (*See* Br. at 7; Moore Decl. at 43.) However, Plaintiffs ignore the fact that Ms. Phillips's request was a follow-up to Ms. Dillingham's statement, in her May 8, 2024 email, that she was "currently pulling" purchasing data "for RFP purposes." (Dillingham Decl. Ex. J.) Plaintiffs thus cannot credibly argue that Paul, Weiss's receipt of the information Kellanova's counsel offered establishes its failure to take reasonable measures or that such information was not reasonably necessary to the

pitch process. Nor can Plaintiffs deny that they deliberately limited the information shared during the initial RFP process. (Dillingham Decl. Ex. M.)

Second, the two lawyers who remained at Paul, Weiss after Paul, Weiss started representing ASR/Domino (one of whom has since left the Firm) never worked on any matter for ASR/Domino and never discussed any alleged confidential information from the Former Prospective Clients with any member of the ASR/Domino team. (McCabe Decl. ¶ 7.) Both have been screened from ASR/Domino matters. (McCabe Decl. ¶ 7.) Both lawyers are salaried employees who will not receive any portion of the fees from the ASR/Domino representation. (McCabe Decl. ¶ 7.) The safeguards extend further: the pitch materials stored on Paul, Weiss's document-management system are secured from access by the ASR/Domino lawyers; and the ASR/Domino lawyers have each confirmed that they received no alleged confidential information from the Former Prospective Clients. (McCabe Decl. ¶¶ 8–10.) Thus, the Firm's protections have accomplished precisely what Rule 1.18(d)(2) intends: the lawyers potentially possessing prospective-client information have had no participation in the adverse representation and the alleged confidential information from the Former Prospective Clients was not shared with them. Paul, Weiss acted promptly when the potential conflict issue was raised, which is all Rule 1.18 requires.

Third, there is no question that Plaintiffs had actual notice when Paul, Weiss started representing ASR/Domino, given that Mr. Petkoski updated his notice of appearance to reflect his new affiliation with Paul, Weiss just days after joining (Petkoski Decl. ¶ 2; ECF No. 449), Mr. Petkoski's move to Paul, Weiss was covered extensively in the press (McCabe Decl. ¶ 4), and Plaintiffs' counsel contacted Mr. Petkoski at his Paul, Weiss email

address to discuss potential pre-litigation settlement—several weeks before ever raising his clients' purported conflicts concerns. (Fox Decl. ¶ 14). After Plaintiffs' counsel raised the purported conflicts issue, Paul, Weiss promptly investigated to ensure that no alleged confidential information from the Former Prospective Clients had been shared, set up a screen to ensure that no such information would in the future be shared, and informed Plaintiffs that it had done so. (Fox Decl. Ex. D; McCabe Decl. ¶¶ 7-10; *see* Green Decl. ¶ 45, n. 12 (explaining that Rule 1.18(d) does not specify any particular information regarding screening measures that must be provided to former prospective clients).)

Accordingly, even if the Court concludes that the Firm received significantly harmful information sufficient to trigger Rule 1.18(c), the Firm acted appropriately within the Rule 1.18(d) safe harbor. (Green Decl. ¶ 45, n. 12); *see Vaccine Center, LLC v. Glaxosmithkline LLC*, No. 2:12-cv-01849-JCM-NJK, 2013 WL 1787176, at *2 (D. Nev. Apr. 25, 2013) (holding that screen was "timely under the circumstances" where it was implemented "promptly upon Plaintiff's notification to [law firm] of the possible violation of Rule 1.18"); *Beckenstein Enterprises-Prestige Park, LLC v. Lichtenstein*, No. X06CV030183486S, 2004 WL 1966863, at *6 (Conn. Sup. Ct. Aug. 11, 2024) (screening timely where disqualified attorney was screened "[a]s soon as [he] was notified by plaintiffs' counsel of [the disqualified attorney's] discussion with [the plaintiff]").

### C. Plaintiffs Are Not Prejudiced by Paul, Weiss's Continued Representation of ASR/Domino Because There Has Been, and Will Be, No Leakage of Alleged Confidential Information from the Former Prospective Clients.

Even if there were a violation of Rule 1.18, Plaintiffs cannot establish, as they must, that they would be prejudiced by Paul, Weiss's continued representation or that there is any risk of trial taint that would make the extraordinary remedy of disqualification "absolutely necessary." *Macheca Transp. Co.*, 463 F.3d at 833; *Cent. Milk Producers Coop.*, 573 F.2d at 991; *Gifford*, 723 F. Supp. 2d at 1116; *see also Stepnes*, 2010 WL 11646709, at *3, *5–6 (focusing on "potential harm to this litigation" and whether the lawyers gained an unfair advantage, finding claimed harm too speculative to justify disqualification).

*Tiversa Holding Corp. v. LabMD Inc.*, No. 13-1296, 2013 WL 6796538, at *4 (W.D. Pa. Dec. 20, 2013) is instructive. There, the court denied disqualification where the lawyers who met with the prospective client never communicated relevant information to the lawyers handling the adverse matter, and the court was not persuaded that current counsel possessed or could access significantly harmful material. *See also J. Swanson & Co., LLC v. Rejuvenating Nutrition Coaching LLC*, No. 23-cv-1323 (PJS/LIB), 2024 WL 4544137, at *5–6 (D. Minn. Apr. 25, 2024) (citing *Shields*, 2017 WL 6520685, at *2–3) (considering degree of exposure, efforts to prevent or mitigate disclosure, whether confidential information was actually disclosed, and counsel's response in denying disqualification motion).

Similarly, the facts here show there is no risk of the Former Prospective Clients' alleged confidential information being accessed or misused for an unfair advantage. The three partners who conducted the pitch left Paul, Weiss months before Mr. Petkoski and his team joined. (McCabe Decl. ¶¶ 4–5.)[7] The sole remaining lawyer who worked on the pitch did not attend the pitch and has not worked for ASR/Domino. (McCabe Decl. ¶ 6.) No current ASR/Domino lawyer has accessed or can access any of the alleged confidential information from the Former Prospective Clients. (McCabe Decl. ¶¶ 8–10.) Plaintiffs therefore face no prejudice to justify disqualification. *See Tiversa*, 2013 WL 6796538, at *4 (denying disqualification where the lawyers who met with the prospective client never communicated the alleged confidential information to the lawyers handling the adverse matter, and the court was not persuaded that current counsel possessed or could access significantly harmful material); (*see also* Green Dec. ¶¶ 42. (explaining purpose of Rule 1.18(c) and (d), based on risk of using information against prospective client)).

## III. Paul, Weiss's Current Representation of Kraft Heinz in an Unrelated Matter Does Not Support Disqualification

Plaintiffs' alternative theory is that because Kraft Heinz has opted out of the putative class action and elected to file direct claims against ASR/Domino, every position Paul, Weiss takes for ASR/Domino against other plaintiffs in this long-pending MDL is "directly adverse" to Kraft Heinz in violation of Rule 1.7. There is no basis for this sweepingly overbroad interpretation of Rule 1.7.

[7] This provides additional reason to distinguish Plaintiffs' principal authority, *SkyBell*, since the lawyer who received the prospective client's detailed information remained at the firm when the adverse lawyer joined. 2018 WL 6016156, at *1–3, *6–7.

### A. Rule 1.7 Does Not Prohibit Paul, Weiss's Representation of ASR/Domino Because Paul, Weiss Is Not "Directly Adverse" to Kraft Heinz.

Rule 1.7(a)(1) prohibits "the representation of one client . . . directly adverse to another client." Minn. R. Prof. Conduct 1.7(a)(1); *see also* Minn. R. Prof. Conduct 1.10(c) (prohibiting any lawyer at a firm from representing a client when any one alone would be prohibited from doing so under 1.7). Paul, Weiss accepts that rule and has taken appropriate steps to comply with its requirements.[8] The question is whether Paul, Weiss's representation of ASR/Domino in *other actions* against *other plaintiffs—including the class plaintiffs who filed their claims more than two years ago*—makes the firm "directly adverse" to Kraft Heinz. Courts have rejected that interpretation of Rule 1.7. *See also* Minn. R. Prof. Conduct 1.7, Comment [6] ("a lawyer may not act as an advocate *in one matter* against a person the lawyer represents in *some other matter*" (emphasis added)).[9]

For example, in *Sumitomo Corp.* v. *J. P. Morgan & Co.*, Paul, Weiss represented Sumitomo against J.P. Morgan while simultaneously representing Chase in unrelated matters. No. 99 CIV. 4004 (JSM), 2000 WL 145747 at *1–4 (S.D.N.Y. Feb. 8, 2000). Sumitomo then sued Chase over the same alleged scheme at issue in its case against J.P.

[8] Paul, Weiss has not, and will not, enter an appearance in this direct action brought by Kraft Heinz, as long as Kraft Heinz is a current client. ASR/Domino have retained separate counsel to represent it adverse to Kraft Heinz in this direct action as well as in the MDL. As such, Paul, Weiss will not be adverse to Kraft Heinz in violation of Rule 1.7.

[9] Relatedly, positional conflicts are not disqualifying. *See* Minn. R. Prof. Conduct 1.7, Comment [24] ("The mere fact that advocating a legal position on behalf of one client might create precedent adverse to the interests of a client represented by the lawyer in an unrelated matter does not create a conflict of interest.").

Morgan. Sumitomo hired separate counsel to represent it in the case against Chase, but the two matters were consolidated for pretrial purposes. *Id.* at *2, *4. The court denied Chase's disqualification motion because Paul, Weiss was "not involved in attempting to establish wrongdoing by Chase or seeking a judgment that will directly impact Chase." *Id.* at *5.

The court explicitly considered and rejected the theory offered by Kraft Heinz here, that an argument for one client becomes an ethical conflict merely because it may prejudice a position another client is advancing elsewhere. *Id.* at *4–5. Specifically, the court explained that "[w]hile one can understand that [the current client's] in-house counsel might be unhappy that a law firm which represents it in some matters was taking a position in litigation involving another client that, if adopted, would prejudice an argument that [the current client] was advancing in a separate case, that does not mean that the law firm is violating a confidence of its client or engaging in unethical conduct".

So too here: even if, as Plaintiffs say, "Paul Weiss will inevitably take positions that prejudice Kraft Heinz," Br. at 26, that does not establish direct adversity under the ethics rules. (*See* Green Decl. ¶¶ 49-52.) Further, the fact that actions here are consolidated for pretrial purposes does not create a conflict "because consolidation does not merge separate lawsuits into a single action and does not make parties in one suit parties in another." *Sumitomo*,. 2000 WL 145747, at *5.

The court in *In re Rail Freight Fuel Surcharge Antitrust Litig.*, 965 F. Supp. 2d 104 (D.D.C. 2013), applied the same reasoning in the context of an antitrust MDL. Latham & Watkins represented Union Pacific in the MDL while representing Oxbow in unrelated transactional matters. Oxbow, through separate counsel, sued Union Pacific alleging

substantially the same conspiracy, and Oxbow subsequently intervened in the MDL on discovery issues. 965 F. Supp. 2d at 107–08. Oxbow sought Latham's disqualification. The court denied disqualification, noting that "[t]he mere fact that advocating a legal position on behalf of one client might create precedent adverse to the interests of a client represented by the lawyer in an unrelated matter does not, without more, create a conflict of interest," and permitted Latham to represent Union Pacific where other counsel addressed Oxbow's intervention in the MDL. *Id.* at 113-17 (quotation omitted); *see also Milwaukee Electric Tool Corp. v. Hilti, Inc.*, No. 14-CV-1288-JPS, 2015 WL 1898393, at *4–6 (E.D. Wis. Apr. 27, 2015) (denying disqualification motion because there was no direct adversity where firm appeared in cases against non-clients and did not appear in related cases against a current client, even though firm might make "arguments on behalf of the plaintiffs . . . that are contrary to the views of" its current client).

The court found persuasive Latham & Watkins's argument that "virtually any law firm could be conflicted out of a class action by finding a firm client in the class to file suit and assert a conflict[,]" noting that a rule to the contrary, i.e., requiring a firm to clear potential conflicts for all unnamed class member clients, would be "virtually impossible to satisfy" and "patently unworkable." *In re Rail Freight Fuel Surcharge Antitrust Litig.*, 965 F. Supp. 2d at 112, 115.[10] Oxbow's unsuccessful motion for disqualification was also

[10] Notably, at the time Petkoski began representing ASR/Domino in the class action, Kraft Heinz was an unnamed class member. It became a named party when it filed a separate direct action. (*See* Green Dec. ¶ 48; *Mondelez Global LLC et al v. ASR Group International, et al*, No. 1:26-cv-08849, ECF No. 1 (N.D. Ill. July 24, 2026)). Unnamed class members in a class action are ordinarily not considered clients of the lawyer for purposes of applying Rule 1.7. *See* Minn. R. Prof. Conduct 1.7, cmt. 25. Thus, the alleged

supported by a declaration from Plaintiffs' expert here, Professor Moore, which advanced a "totality of the circumstances test." The court rejected Professor Moore's view, holding that the standard she advanced had "no foundation in either law or practicality." *Id.* at 118.[11]

Cases finding Rule 1.7 violations are distinguishable. In *In re Cendant Corp. Securities Litigation*, 124 F. Supp. 2d 235 (D.N.J. 2000), the New Jersey case on which Plaintiffs rely, the court granted disqualification, finding that Paul, Weiss could not represent both a party and a key adverse witness in the very same action, and that screening mechanisms were insufficient to cure such direct adversity. Moreover, the court emphasized that the adverse witness had revealed privileged and relevant confidential information to Paul, Weiss, *id.* at 243, a concern that is inapplicable here where the securities matter for Kraft Heinz in Delaware is entirely unrelated to this antitrust matter. And in *Arrowpac Inc. v. Sea Star Line, LLC,* the challenged firm was disqualified after having signed a motion to dismiss claims brought by current clients. Nos. 3:12-cv-1180-J-

Rule 1.7 conflict only came into existence when Kraft Heinz chose to commence a new case.

[11] Professor Moore applies similar impermissible legal standards and conclusions in her current declaration. For example, Professor Moore supplies a definition of "direct adverseness" under Rule 1.7 and "significantly harmful" under Rule 1.18 to reach conclusions which she couches as "clear" and that there can be "no question" regarding. (Moore Decl. ¶¶ 38, 56-61.) Rule 702 does not permit a legal scholar like Professor Moore to review the facts and "merely tell[] the court what conclusion to reach" on the ultimate issue. *Am. Med. Sys., Inc. v. Laser Peripherals, LLC*, 712 F. Supp. 2d 885, 903 (D. Minn. 2010). Declarations of a similar nature to Professor Moore's have been "read[] as a legal brief[,]" which runs afoul of the rule that expert can only opine on and embrace factual issues, not legal ones. *Killion v. KeHE Distributors, LLC*, 761 F.3d 574, 592 (6th Cir. 2014). Here, Professor Moore's declaration is functionally a brief.

32JBT, 2013 WL 5460027, at *8–10 (M.D. Fla. Apr. 30, 2013). Here, there is no such direct adversity.

Rule 1.7 prohibits direct adversity against current clients, not indirect harm arising from a law firm's advocacy. *See Sumitomo Corp.*, 2000 WL 145747, at *4 (consolidation for pre-trial purposes does not create the required direct adversity); *Enzo Biochem v. Applera Corp.*, 468 F. Supp. 2d 359, 367-68 (D. Conn. 2007) (indirect conflict insufficient for direct adversity). Rule 1.7 *does not* protect against mere "conflicting economic interests." *Maling v. Finnegan, Henderson, Farabow, Garrett & Dunner, LLP*, 42 N.E. 3d 199, 204 (Mass. 2015) (holding "[d]irect adverseness requires a conflict as to the legal rights and duties of the clients, not merely conflicting economic interests"). Plaintiffs have not shown direct adversity here.

### B. Paul, Weiss and ASR/Domino Have Taken Appropriate Steps to Avoid Paul, Weiss's Direct Adversity to Kraft Heinz.

From the first phone call that Paul, Weiss had with Plaintiffs' counsel on February 6, 2026, and repeatedly thereafter, Paul, Weiss has stated that it would not be directly adverse to Kraft Heinz. (Fox Decl. ¶ 14.) In letters to Plaintiffs' counsel dated March 6 and April 6, 2026, Paul, Weiss made clear that ASR/Domino would rely on other counsel to represent them in "any dealings with Kraft Heintz." (Fox Decl. Exs. D, G.) ASR/Domino have engaged separate counsel at Maslon, LLP who have entered their appearances. (ECF No. 758.)

In addition to representing ASR/Domino in this direct action brought by Kraft Heinz, Maslon, LLP will handle any fact or expert discovery directly adverse to Kraft

Heinz in the MDL. Paul, Weiss will not direct discovery to Kraft Heinz, examine Kraft Heinz witnesses, or represent ASR/Domino at trial against Kraft Heinz. This clear division of responsibility, which is consistent with common practice in complex class and MDL cases, ensures that there are no cognizable concerns under Rule 1.7.[12]

### C. Kraft Heinz Will Suffer No Prejudice by Paul, Weiss's Continued Representation of ASR/Domino.

Paul, Weiss currently represents Kraft Heinz in one matter: a stockholder-derivative action in the Delaware Court of Chancery, *In re The Kraft Heinz Company Derivative Litigation Consolidated*, C.A. No. 2019-0587-LWW, in which Kraft Heinz is the nominal defendant. (McCabe Decl. ¶ 15.) That action is unrelated to this MDL. (McCabe Decl. ¶ 15.) A motion to dismiss is pending in the Delaware case. *See* Nominal Defendant's and the Individual Defendants' Motion to Strike and to Dismiss the Verified Consolidated Second Amended Stockholder Complaint, *In re The Kraft Heinz Company Derivative Litigation Consolidated*, C.A. No. 2019-0587-LWW (Del. Ch. Filed July 29, 2026). Depending on its disposition, Paul, Weiss's representation of Kraft Heinz may conclude before this MDL does.

[12] Kraft Heinz claims that Paul, Weiss acted directly adverse to Kraft Heinz on an August 28, 2026, meet and confer call between counsel for all plaintiffs and all defendants in the MDL. Paul, Weiss had told Plaintiffs' counsel in advance of the call that its participation would be "limited to the plaintiffs represented by other firms in the MDL." (Fox Decl. Ex. I.) Mr. Fox claimed after the call that Paul, Weiss had "directed comments directly to [him]." (*Id.*) Paul, Weiss disputes this characterization, as reflected in the email Paul, Weiss sent to Mr. Fox in response. (Petkoski Decl. ¶ 21, Ex. A; Fox Decl. Ex. I.)

Granting disqualification under these circumstances underscores the overbreadth of removing Paul, Weiss prospectively from this entire MDL based on one new direct plaintiff's assertion of a concurrent-client issue that may cease to exist.

Further, there has been no suggestion that Paul, Weiss's representation of Kraft Heinz in the Delaware litigation has been, or would be, materially limited in any way by Paul, Weiss's representation of ASR/Domino in this case, demonstrating that a key consideration motivating Rule 1.7 is inapplicable here. *See* Minn. R. Prof. Conduct 1.7, Comment [6] (describing risk motivating Rule 1.7 that lawyer may pursue client's case less effectively due to another client relationship).

Plaintiffs therefore have not established a Rule 1.7(a)(1) violation. Paul, Weiss's unrelated Kraft Heinz representation does not prohibit representation of ASR/Domino against other parties in this MDL; Paul, Weiss has not undertaken to act and will not act as ASR/Domino's advocate directly against Kraft Heinz; and separate counsel at Maslon, LLP are more than capable to handle such matters for ASR/Domino. What remains is indirect adversity of the kind *Sumitomo*, *Rail Freight*, and *Milwaukee Electric Tool* all declined to equate with direct adversity.

The nature of Paul, Weiss's Kraft Heinz current representation reinforces the separability of the issue. The Firm represents Kraft Heinz in one Delaware stockholder-derivative action that has nothing to do with sugar, ASR/Domino, the alleged conspiracy, or Plaintiffs. Kraft Heinz's confidences in that action could not be used to its disadvantage in the MDL.

## IV. Plaintiffs Have Not Shown that the Extreme Remedy of Disqualification Is "Absolutely Necessary" or Appropriate Here.

Even if the court were to find a violation of Rule 1.18 or 1.7, disqualification of Paul, Weiss is not automatic. The Court must balance various factors, including its duties to maintain confidence in the profession and the integrity of the proceeding; the client's interest in chosen counsel; and the adversary's interest in litigating free from unfair use of confidential information. *Mgmt. Registry, Inc.*, 2021 WL 2434119, at *3; *Gifford*, 723 F. Supp. 2d at 1116–17. "A party's right to select its own counsel is an important public right and a vital freedom that should be preserved; the extreme measure of disqualifying a party's counsel of choice should be imposed only when absolutely necessary." *Macheca Transp. Co.*, 463 F.3d at 833 (internal quotations omitted). Those factors weigh decisively against disqualification.

### A. Disqualification Would Severely Prejudice ASR/Domino.

The prejudice to ASR/Domino if Paul, Weiss is disqualified from all involvement in the MDL would be severe and concrete.

Mr. Petkoski and his team represented ASR/Domino in this MDL and related matters for years, before joining Paul, Weiss in September 2025. (Petkoski Decl. ¶¶ 2–3.) Mr. Petkoski initially appeared in in this MDL in July 2024 and has been reappointed to the Defendants' Steering Committee. (Notice of Appearance (July 26, 2024); ECF No. 256. Paul, Weiss's lawyers have spent several thousand hours defending ASR/Domino in this case since Mr. Petkoski joined Paul, Weiss. (Petkoski Decl. ¶ 10.) Mr. Petkoski and his team spent thousands more before they joined representing ASR/Domino in the related

DOJ merger investigations and litigation, as well as this MDL. (Petkoski Decl. ¶ 10.) Removing Paul, Weiss would therefore displace ASR/Domino's lead counsel and an entire defense team already steeped in this complex MDL and disrupt a court-approved general defense structure.

New counsel would be required to learn ASR/Domino's defense strategy and absorb the procedural history, discovery architecture, coordination obligations, a large and growing record, complex issues relating to the markets and regulatory structure at issue, and relationships built over the course of the two-plus years this MDL has been pending and the five-plus years Mr. Petkoski has been representing ASR/Domino in related matters.[13] *See Turner v. AIG Domestic Claims, Inc.*, 823 F. Supp. 2d 899, 908 (D. Neb. 2011) (reversing magistrate judge's disqualification of counsel because judge "gave short shrift" to hardship in a "very complex" case where counsel had "invested much time and money understanding and investigating" issues and where "it would be hard and very expensive (not to mention wasteful)" for others "to replicate those efforts"); *Alzheimer's Inst. of Am., Inc. v. Avid Radiopharmaceuticals*, 2011 WL 6088625, at *10 (E.D. Pa. Dec. 7, 2011) (declining to disqualify counsel because it would "disrupt the flow of the litigation" and "new counsel would require several weeks, if not months … to prepare for trial" given "complexity" of issues and "extensive discovery"); *Installation Software Technologies, Inc. v. Wise Solutions, Inc.*, No. 03 C 4502, 2004 WL 524829, at *5-8 (N.D.

[13] Mr. Petkoski has represented ASR/Domino since May 2021, in proceedings from which allegations in the current litigation are drawn. (Petkoski Decl. ¶¶ 2-8.) In total, Petkoski has more than five years of experience related specifically to the facts at issue, the developing record, and ASR/Domino's defense strategy.

Ill. Mar. 5, 2004) (recognizing costs related to obtaining new counsel due to complexity of matter as relevant to determining whether disqualification is warranted).

Plaintiffs' proposed remedy therefore would impose certain and substantial prejudice on ASR/Domino. (*See* Decl. Green ¶ 41.) Plaintiffs, in contrast, raise only speculative or non-existent harms that have been and can be prevented through established safeguards. Plaintiffs thus have not shown that disqualification of ASR/Domino's chosen and long-standing counsel is "absolutely necessary." *Macheca Transp. Co.*, 463 F.3d at 833.

**B. If Any Remedy Short of Disqualification Is Warranted, It Must Be Tailored to the Actual Risk.**

Paul, Weiss and ASR/Domino have already remedied any potential risk to Plaintiffs by taking routine and well established steps. Regarding purported concerns under Rule 1.18, the alleged confidential information provided by the Former Prospective Clients has been secured from access by the lawyers representing ASR/Domino. Regarding the conflict under Rule 1.7, ASR/Domino have retained separate counsel to defend against Kraft Heinz's claims, and no Paul, Weiss lawyer will appear in this direct action against Kraft Heinz, seek or take discovery from Kraft Heinz, question any Kraft Heinz witness, or otherwise litigate Kraft Heinz's claiMs. Those are the only remedies necessary here, and they are already in place. The Court should, indeed *must*, deny wholesale disqualification in these circumstances because measures that guard against every legitimate interest of the Plaintiffs can and have been implemented without the need to remove ASR/Domino's longstanding MDL counsel. Where, as here, more tailored and proportional remedies

address the risks, the more extreme remedy of disqualification is not "absolutely necessary." *Macheca Transp. Co.*, 463 F.3d at 833.

The caselaw mandates proportionality: For example, the Court in *Gifford* disqualified the firm that had received attorney-client privileged information, but declined to disqualify separate co-counsel where there was no evidence that co-counsel had "knowledge of the protected communications." 723 F. Supp. 2d at 1121–22. The Court in *Stepnes* likewise denied disqualification despite actual access to privileged materials and ordered relief directed to those materials. 2010 WL 11646709, at *1, *5–8 (ordering party to return hard drives containing information at issue and provide a copy to the court); *see also Cent. Milk*, 573 F.2d at 992 (affirming continued representation in complex antitrust litigation where screening isolated lawyers with potentially disqualifying knowledge and no violation of the screen was alleged).

Moreover, the use of conflicts counsel is a standard, court-sanctioned solution to address conflicts. In *Wal-Mart Stores, Inc. v. Vidalakis*, No. 5:07-mc-00039, 2007 WL 4468688, at *3–5 (W.D. Ark. Dec. 17, 2007), a district court within the Eighth Circuit permitted conflicts counsel "to handle the depositions, discovery exchange, and all trial issues involving" the affected client, paired with an information barrier. In *TQ Delta, LLC v. 2Wire, Inc.*, the court likewise declined to disqualify lead counsel and mandated conflicts counsel to handle discovery involving the affected client. No. 13-1835-RGA, 2016 WL 5402180, at *7 (D. Del. Sept. 26, 2016) ("[A]ny discovery from Broadcom must be undertaken by conflicts counsel."). The Court in *High Point SARL v. Sprint Nextel Corp.*, 280 F.R.D. 586, 589–90 (D. Kan. 2012), also allowed lead counsel to remain while

separate counsel handled discovery directed at an affected entity. The court prohibited conflicted counsel from serving subpoenas on, taking discovery from, or cross-examining the witnesses of the affected party, while allowing counsel to review testimony and documents produced through the separate process. *See High Point SARL v. Sprint Nextel Corp.*, No. 09-2269-CM-DJW, 2011 WL 147527, at *3 (D. Kan. Jan. 18, 2011). These authorities show that courts routinely draw an administrable line around discrete direct adversity without removing otherwise experienced lead counsel from a complex case.

Here, Paul, Weiss has fully satisfied all reasonable concerns. It investigated, set up screens, and confirmed with each ASR/Domino lawyer that no alleged confidential information from the Former Prospective Clients had been shared. (McCabe Decl. ¶¶ 7–10.) Wholesale disqualification is therefore not "absolutely necessary" to satisfy the limited protections afforded to the Former Prospective Clients under the rules.

The same principle applies to any concern about the mechanics of this MDL. ASR/Domino have engaged separate counsel to handle this direct action brought by Kraft Heinz as well as any discovery against Kraft Heinz. If a concrete issue later arises, the Court can address it then, rather than assume that every potential future complication requires firmwide disqualification now. *See Milwaukee Electric Tool Corp.*, 2015 WL 1898393, at *5 (declining to speculate about potential discovery issues in denying disqualification motion). This practical approach, routinely applied in many complex cases before, protects Kraft Heinz's loyalty interest while simultaneously protecting ASR/Domino's "important public right" and "vital freedom" to its choice of counsel and avoiding the severe prejudice to ASR/Domino of disqualifying Paul, Weiss from

representing ASR/Domino against every other plaintiff in this high-stakes, long-running MDL. *Macheca Transp. Co.*, 463 F.3d at 833 (internal quotations omitted). This practical approach also prevents a significant harm from a motion recognized as ripe for abuse in the context of class actions and MDL's, namely, the ability of an unnamed class plaintiff to strategically strip defendants of their chosen counsel or to extract a coerced settlement merely by entering an appearance as a named party.

## CONCLUSION

For these reasons, this Court should deny Plaintiffs' motion for a rule to show cause, and it should not disqualify Paul, Weiss from representing ASR/Domino in this matter.

Respectfully submitted,

Dated: September 23, 2026

*s/Thomas H. Boyd*

Thomas H. Boyd, #0200517
Kyle R. Kroll, #0398433
WINTHROP & WEINSTINE, P.A.
225 South Sixth Street
Suite 3500
Minneapolis, Minnesota 55402
(612) 604-6400

*Attorneys for Interested Party Paul, Weiss, Rifkind, Wharton & Garrison LLP*