**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

| | |
|---|---|
| IN RE: GRANULATED SUGAR ANTITRUST LITIGATION | MDL No. 24-03110 (JWB/ECW) |
| **THIS DOCUMENT RELATES TO:**<br><br>*Mondelēz Global LLC et al. v. ASR Group International, Inc. et al.*, No. 0:26-cv-03528 | **DECLARATION OF BRUCE A. GREEN** |

I, Bruce A. Green, state and declare as follows:

1. I am the Louis Stein Chair of Law at Fordham Law School, where I direct the Stein Center for Law and Ethics. I have been retained on behalf of Paul, Weiss, Rifkind, Wharton & Garrison LLP ("Paul, Weiss" or the "Firm") to provide expert opinions on questions of lawyers' professional responsibility raised by the Plaintiffs' motion in the above-captioned action, which is, in effect, a motion to disqualify Paul, Weiss.

2. Plaintiffs assert two grounds for the motion – (1) that Paul, Weiss partners who have since left the Firm allegedly received "significantly harmful" information from Plaintiffs when they consulted Paul, Weiss about a possible retention, and (2) that Paul, Weiss's representation of ASR Group International, Inc., American Sugar Refining, Inc., and Domino Foods Inc. (collectively "ASR/Domino") is "directly adverse" to The Kraft Heinz Company ("Kraft Heinz"), which Paul, Weiss represents in an unrelated Delaware proceeding.

3. As discussed below, it is my professional opinion that there is no professional conduct rule violation on either ground, and Paul, Weiss should not be disqualified.

## Qualifications

4. My qualifications to provide expert opinions on questions of legal ethics and professional responsibility in this case are set forth more fully in my curriculum vitae, which is attached hereto as **Exhibit A**. My CV includes all publications that I have authored in the previous 10 years. It also includes a list of all other cases in which, during the previous 4 years, I have testified as an expert at trial or by deposition.

5. I have been a law professor at Fordham University since 1987. I served as a law clerk to both Justice Thurgood Marshall of the Supreme Court of the United States and Judge James L. Oakes of the United States Court of Appeals for the Second Circuit. I was also an Assistant United States Attorney for the Southern District of New York, eventually serving as Deputy Chief and Chief of the Criminal Division's appeals unit.

6. At Fordham, I have regularly taught courses on lawyers' professional responsibility. Additionally, since its first edition, I have co-authored a casebook on professional responsibility for contemporary legal practice that is now in its sixth edition. *See* Jefferson, Pearce, Green, et al., *Professional Responsibility: A Contemporary Approach* (6th ed. 2026).

7. I have organized or co-organized numerous conferences and other programs on issues of lawyers' professional responsibility, and I speak frequently at Continuing Legal Education programs and academic programs on this subject.

8. I have written extensively on lawyers' professional conduct. I have written many articles, as well as chapters of a treatise, on lawyers' conflicts of interest. A list of my writings is included in my attached CV.

9. I have extensive professional work relating to lawyers' professional conduct, much of it involving drafting, interpreting, or enforcing professional conduct rules.

10. On the national level, I currently chair the drafting committee of the Multistate Professional Responsibility Examination, a national bar examination required in most states, including Minnesota, which tests bar applicants' knowledge of the ABA Model Rules of Professional Conduct ("Model Rules") and other law governing lawyers. Additionally, I am immediate past chair of the American Bar Association Standing Committee on Ethics and Professional Responsibility, which publishes opinions interpreting the Model Rules and proposes amendments to the Model Rules. I previously chaired the ethics committees of both the American Bar Association Litigation Section and the American Bar Association Criminal Justice Section, and I chaired the Section on Professional Responsibility of the Association of American Law Schools.

11. On the state level, I have served on the New York State Bar Association's Committee on Professional Ethics for more than three decades and previously chaired that committee, which issues opinions interpreting New York's rules of professional conduct. I have served on the New York City Bar's Committee on Professional Ethics and am a past chair of that committee, which also issues opinions interpreting New York's professional conduct rules. I am also a current member of the New York State Bar Association's Committee on Standards of Attorney Conduct, which proposes revisions to New York's professional conduct rules, and of the New York County Lawyers Association's Committee on Professional Ethics, which issues opinions and staffs a hotline advising New York lawyers about their obligations under New York's rules. I served for six years on the

Departmental Disciplinary Committee of the New York State Supreme Court, Appellate Division, First Department, which, on a volunteer basis, participated in the attorney disciplinary process.

12. I occasionally testify as an expert witness, give advice, draft amicus briefs, and render other professional services on issues of lawyers' professional conduct. When serving as an expert witness, in this case and others, I render opinions in my individual capacity and do not speak on behalf of any of the entities with which I am, or have been, associated. I am being compensated at a rate of $1,500 per hour for my expert work in this case, which is my standard rate. My compensation is not contingent on the content of my opinions or any outcome in this matter or on the motion before the Court.

**Relevant Facts**

13. For purposes of providing my opinions, I have reviewed the documents listed in **Exhibit B**. I rely on the following factual assumptions provided to me by counsel which are consistent with the documents I have reviewed.

14. In 2024, Plaintiffs considered retaining counsel to pursue potential antitrust claims against multiple defendants, including ASR/Domino. As part of a competitive process, Plaintiffs invited Paul, Weiss and several other major law firms to be considered for the representation. Three then-Paul, Weiss partners – William Isaacson, Jessica Phillips, and Kyle Smith – participated in Paul, Weiss's effort to obtain the representation.

15. During the consultation process, Kellanova (one of the Plaintiffs) provided Paul, Weiss with some historical sales and pricing information. Plaintiffs also communicated with Paul, Weiss through written materials and participated in an

approximately one-hour meeting with the three Paul, Weiss partners. Plaintiffs describe the meeting as involving discussion of various subjects relating to the contemplated litigation. Plaintiffs have not identified with specificity any information that is significantly harmful in that it could now be used to their significant detriment. The process also involved information flowing in the other direction, from Paul, Weiss to Plaintiffs, concerning the Firm's qualifications, experience, analysis, and views regarding the contemplated litigation.

16. Plaintiffs' communications concerning the selection process required participating firms to maintain the confidentiality of information concerning the process and not to use that information for another purpose. Paul, Weiss was not ultimately retained. Plaintiffs instead retained other counsel to pursue their claims.

17. The three Paul, Weiss partners who principally participated in the consultation all left Paul, Weiss in 2025, before Djordje Petkoski joined the Firm. Two other Paul, Weiss lawyers had assisted the three partners in connection with the 2024 consultation. Neither attended the approximately one-hour meeting with Plaintiffs. Neither provided Plaintiffs' pricing information or other alleged confidential information to Mr. Petkoski or to any other lawyer representing ASR/Domino. One of those lawyers remains at Paul, Weiss and has been screened from the ASR/Domino representation.

18. Mr. Petkoski and his colleagues represented ASR/Domino in the antitrust class action, *Fowler et al.* v. *ASR Group*, since April 2024, before they joined Paul, Weiss. They also had represented ASR/Domino since 2021 in related antitrust matters that included the same allegations Plaintiffs make in this case. Mr. Petkoski and members of

his existing ASR/Domino team later joined Paul, Weiss, and they continued their representation of ASR/Domino after doing so.

19. There is no evidence that information allegedly disclosed by Plaintiffs during the one-hour meeting with the three former Paul, Weiss partners has ever been transmitted to the lawyers now representing ASR/Domino. Paul, Weiss has represented that Mr. Petkoski and the other lawyers defending ASR/Domino have not had access to Plaintiffs' alleged confidential information from the 2024 consultation. Paul, Weiss has also implemented screening measures to prevent the lawyers representing ASR/Domino from obtaining access to information from the consultation. Documents relating to the consultation have been segregated, and the Paul, Weiss lawyer who remains at the Firm and assisted with the consultation has been screened.

20. Paul, Weiss currently represents Kraft Heinz in an unrelated proceeding in Delaware. Kraft Heinz was an unnamed member of the putative class when Mr. Petkoski and his colleagues began defending ASR/Domino in the antitrust class litigation. Kraft Heinz later, together with other plaintiffs, filed a direct antitrust action against ASR/Domino.

21. Paul, Weiss has not entered an appearance for ASR/Domino in the individual action brought by Kraft Heinz and its co-plaintiffs. Paul, Weiss has stated that, while Kraft Heinz remains a current client, it will not defend ASR/Domino directly against Kraft Heinz in that action and will not otherwise deal directly with, or act directly against, Kraft Heinz in the antitrust matter without Kraft Heinz's informed consent.

**22.** Paul, Weiss continues to represent ASR/Domino in the MDL and continues to participate in the MDL on ASR/Domino's behalf, including in a leadership role. Kraft Heinz remains a Paul, Weiss client in the unrelated Delaware proceeding.

**Opinions**

23. Plaintiffs assert two possible grounds for disqualifying Paul, Weiss under the Minnesota Rules of Professional Conduct ("Minnesota Rules"). In my opinion, for the reasons summarized here and explained more fully below, Paul, Weiss should not be disqualified on either ground.

24. First, Plaintiffs suggest that Paul, Weiss should be disqualified based on Rule 1.18.[1] Their theory is that disqualification is necessary to prevent the Firm from misusing

[1] Rule 1.18, titled "Duties to Prospective Client," provides:

> (a) A person who consults with a lawyer about the possibility of forming a client-lawyer relationship with respect to a matter is a prospective client.
>
> (b) Even when no client-lawyer relationship ensues, a lawyer who has consulted with a prospective client shall not use or reveal information obtained in the consultation, except as Rule 1.9 would permit with respect to information of a former client.
>
> (c) A lawyer subject to paragraph (b) shall not represent a client with interests materially adverse to those of a prospective client in the same or a substantially related matter if the lawyer received information from the prospective client that could be significantly harmful to that person in the matter, except as provided in paragraph (d). If a lawyer is disqualified from representation under this paragraph, no lawyer in a firm with which that lawyer is associated may knowingly undertake or continue representation in such a matter, except as provided in paragraph (d).
>
> (d) When the lawyer has received disqualifying information as defined in paragraph (c), representation is permissible if:
>
> (1) both the affected client and the prospective client have given informed consent, confirmed in writing; or

information that Plaintiffs, as prospective clients, provided to Paul, Weiss partners who have since left the Firm. Plaintiffs consulted with Paul, Weiss partners in 2024 following an RFP invitation to Paul, Weiss and several other major firms to apply to serve as counsel in potential antitrust litigation against multiple defendants including ASR/Domino. These circumstances do not justify disqualification because Plaintiffs have not shown that they disclosed "disqualifying information" in consulting about the potential representation; and, more importantly, Paul, Weiss's measures ensure that whatever alleged confidential information Plaintiffs disclosed to the Firm's former partners is unavailable to the lawyers now representing ASR/Domino.

25. Second, Plaintiffs suggest that Paul, Weiss should be disqualified based on Rule 1.7(a)(1).[2] Their theory is that by virtue of Paul, Weiss's role in the MDL, Paul, Weiss is "directly adverse" to Kraft Heinz, which Paul, Weiss concurrently represents in an unrelated Delaware proceeding. These circumstances do not justify the Firm's disqualification because Paul, Weiss is not adverse to Kraft Heinz in the individual antitrust

---

> (2) the lawyer who received the information took reasonable measures to avoid exposure to more disqualifying information than was reasonably necessary to determine whether to represent the prospective client, and
> (i) the disqualified lawyer is timely screened from any participation in the matter and is apportioned no part of the fee therefrom; and
> (ii) written notice is promptly given to the prospective client.

[2] Rule 1.7(a) provides: "Except as provided in paragraph (b), a lawyer shall not represent a client if the representation involves a concurrent conflict of interest. A concurrent conflict of interest exists if: (1) the representation of one client will be directly adverse to another client[.]"

action in which Kraft Heinz is a co-plaintiff. Therefore, the Firm is only *indirectly* adverse to Kraft Heinz. In any event, the countervailing public interests that explain the rule's limited reach – and, in particular, the interest in access to chosen counsel – favor preserving ASR/Domino's ongoing client-lawyer relationship with Paul, Weiss. Kraft Heinz has not shown it has any confidential information at risk, since the antitrust matter is unrelated to the Delaware matter, and the company has no basis in the professional conduct rules to doubt Paul, Weiss's loyalty as its counsel in the Delaware matter.

<u>Paul, Weiss should not be disqualified based on its alleged receipt of disqualifying information from Plaintiffs as former prospective clients.</u>

*Rule 1.18 provides for disqualifying a law firm in only narrow circumstances.*

26. Plaintiffs suggest that Paul, Weiss must be disqualified based on Rule 1.18 of the Minnesota Rules, which governs a lawyer's duties to a former *prospective* client. Rule 1.18(b) provides that, subject to exceptions that are not applicable here, "a lawyer who has consulted with a prospective client shall not use or reveal information obtained in the consultation." Rules 1.18(c) and (d) set forth the limited circumstances where, to protect prejudicial information learned from a prospective client, the lawyer and/or the lawyer's firm is forbidden from undertaking a representation against the prospective client.

27. The provisions of Rule 1.18 governing adversity to a *prospective* client are different, and substantially less restrictive, than Rule 1.9(a), which governs adversity to a former *actual* client.[3] Rule 1.9(a) generally forbids a lawyer, or the lawyer's firm, from

[3] Rule 1.9(a) provides: "A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in

representing a new client against the former client in the same matter or a substantially related matter without the former client's consent. Rule 1.9(a) presumes that, if the matters are the same or substantially related, the lawyer will possess confidential information that would be significantly harmful to the former client in the matter. Further, Rule 1.10(a) provides that the personally disqualified lawyer's conflict of interest is imputed to other lawyers of the firm: The rule presumes that the prejudicial information has been, or will be, available for use by other lawyers of the firm who might undertake the new representation against the former client.[4]

28. Rule 1.18 does not treat a former *prospective* client the same as a former *actual* client. Rule 1.18 is far less restrictive than Rule 1.9. For good reasons, it embodies neither presumption when a lawyer previously consulted with a prospective client but was not retained.

29. With respect to the lawyer who initially "consulted with" the prospective client regarding a possible retention, Rule 1.18(c) provides in pertinent part that the lawyer "shall not represent a client with interests materially adverse to those of a prospective client in the same or a substantially related matter *if the lawyer received information from the prospective client that could be significantly harmful to that person in the matter*." (emphasis added). In other words, a lawyer who consulted about possible retention in a

---

which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent, confirmed in writing."

[4] The imputation of the lawyer's conflict of interest to other lawyers of the firm is governed by Rule 1.10(a), which provides in pertinent part: "While lawyers are associated in a firm, none of them shall knowingly represent a client when any one of them practicing alone would be prohibited from doing so by Rule 1.7 or 1.9 . . ."

matter, but who was not retained, may subsequently represent the opposing party even in the very same matter unless the lawyer learned what Rule 1.18(d) refers to as "disqualifying information" – i.e., "information from the prospective client that could be significantly harmful to that person in the matter."[5]

30. Like other professional conduct rules, Rule 1.18(c) is meant principally, and initially, for lawyers' own self-regulation.[6] This rule does not require the lawyer who previously conferred with a prospective client to presume that the lawyer learned confidential information that would be significantly harmful to the prospective client if the lawyer were to represent an opposing party in the same matter or a substantially related one. The lawyer would consider specifically what the lawyer learned in confidence during the consultation process and analyze whether the information might be used to the

---

[5] The meaning of "disqualifying information" is discussed at length in ABA Standing Comm. on Ethics & Prof. Responsibility, Formal Op. 492 (2020) ("Opinion 492"). The opinion reviews prior writings on the subject. *See also, e.g.*, *Kuntz v. Disciplinary Bd. of Supreme Court of North Dakota*, 869 N.W.2d 117 (N.D. 2015):

> Information may be "significantly harmful" if it is sensitive or privileged information that the lawyer would not have received in the ordinary course of due diligence; or if it is information that has long-term significance or continuing relevance to the matter, such as motives, litigation strategies or potential weakness. "Significantly harmful" may also be the premature possession of information that could have a substantial impact on settlement proposals and trial strategy; the personal thoughts and impression about the facts of the case; or information that is extensive, critical, or of significant use.

*Id.* at 125, quoted in Opinion 492.

[6] Minnesota Rules, Scope [6] ("Compliance with the rules, as with all law in an open society, depends primarily upon understanding and voluntary compliance, secondarily upon reinforcement by peer and public opinion and finally, when necessary, upon enforcement through disciplinary proceedings.").

prospective client's detriment. If the lawyer concludes in good faith that the information is not "significantly harmful," the lawyer may undertake the representation against the prospective client.

31. Likewise, in ruling on a disqualification motion brought by a prospective client based on the party's consultations regarding possible retention, a court should not rely on presumptions like those underlying Rule 1.9(a). The prospective client moving for disqualification based on Rule 1.18 must persuade the court that, given what confidential information was specifically (not presumptively) disclosed in the consultation, and given how that information may be misused against the prospective client in the new action, the information is "significantly harmful." *See* Restatement (Third) of the Law Governing Lawyers § 15, cmt. c (2000) ("When a tribunal is asked to disqualify a lawyer based on prior dealings with a former prospective client, that person bears the burden of persuading the tribunal that the lawyer received such [significantly harmful] information.").

32. Even if a lawyer who participated in the consultation is personally disqualified because the lawyer learned disqualifying information and the former prospective client opposes that lawyer's involvement, Rule 1.18(d) allows other lawyers in the firm to undertake the new representation as long as "the lawyer who received the information took reasonable measures to avoid exposure to more disqualifying information than was reasonably necessary to determine whether to represent the prospective client, and (i) the disqualified lawyer is timely screened from any participation in the matter and is apportioned no part of the fee therefrom; and (ii) written notice is promptly given to the prospective client." The screening provision does not presume that the prospective client's

disqualifying information has been shared throughout the firm. That makes sense because information from a prospective client who never retained a lawyer is less likely to be shared than information from a represented client. Nor does the provision presume that other lawyers of the firm who litigate against the prospective client will access the prospective client's disqualifying information and exploit it for the new client's benefit. As in other circumstances where professional conduct rules allow screening,[7] Rule 1.18(d) permits the law firm to avoid firm-wide disqualification by screening the personally disqualified lawyers.

33. The narrow disqualification requirement of Rule 1.18, as compared with Rule 1.9, reflects the unlikelihood that a lawyer will learn significantly harmful information in a consultation with a prospective client as compared with a full-fledged representation.[8] The different approach also reflects a policy judgment based on concern for other clients' interest in access to counsel and lawyers' and law firms' own legitimate business interests.

---

[7] *See* Minnesota Rules, Rules 1.10(b) & 1.11(b).

[8] *See* ABA Standing Comm. On Ethics & Prof. Responsibility, Formal Op. 510 (2024):

> By comparison [with Rule 1.9(a)], under Rule 1.18(c), a lawyer is disqualified from undertaking a representation in the same or a substantially related matter against a prospective client only if the lawyer received "disqualifying information"–i.e., "information from the prospective client that could be significantly harmful to" the prospective client.4 The premise underlying this less restrictive provision is that a consultation with a prospective client may be brief and that it cannot be presumed that the prospective client provided the lawyer with information that could later be significantly harmful to the prospective client, particularly given that lawyers may have taken precautions to avoid learning such disqualifying information.

*Id.* at 2.

And it reflects concern that a broader disqualification requirement would discourage communications needed for lawyers and clients to decide whether to enter a lawyer-client relationship. As the Restatement explains: "A prospective client's assurance of confidentiality through prophylactic prohibition as broad as that required in the case of a former client . . . must yield to a reasonable degree to the need of the legal system and to the interests of the lawyer and of other clients, including the need of a lawyer to obtain information needed to determine whether the lawyer may properly accept the representation without undue risk of prohibitions if no representation ensues." Restatement, *supra*, § 15, cmt. c.

*Plaintiffs have not presented evidence that they disclosed "disqualifying information."*

34. Plaintiffs' description of their consultation with Paul, Weiss does not establish that they provided confidential information that would be significantly harmful to them in its antitrust action against ASR/Domino.

35. To put the consultation in context, both the purpose of the consultation and the nature of the antitrust action make it unlikely that Plaintiffs would have provided "disqualifying information" – i.e., confidential information that is neither already available to ASR/Domino nor readily available in discovery, and that would be not only relevant but "significantly harmful" to Plaintiffs. As to the purpose: Plaintiffs were seeking to determine whether Paul, Weiss was the best available firm to represent them, which suggests that the focus of the consultation would not be on the evidentiary details of the potential antitrust action and Plaintiffs' ideas about litigation strategy but on Paul, Weiss's qualifications and

capacity to successfully litigate a price-fixing action. Most of the relevant information would flow from Paul, Weiss to Plaintiffs, not the other way around. And as to the nature of the action: The evidence relevant to an alleged price-fixing conspiracy among defendant companies was likely to be either in the defendants' possession or available in discovery, not in the Plaintiffs' unique possession.

36. In any event, even if it is possible that Plaintiffs offered significantly harmful information regarding the general topics discussed, that mere possibility alone would not suffice under the rules. Plaintiffs' burden under the rules is to show that they in fact provided disqualifying information to Paul, Weiss in correspondence and/or during its representatives' one-hour meeting with Paul, Weiss's partners. The evidence I have reviewed does not persuasively establish that Paul, Weiss was given significantly harmful information.

37. One cannot fairly conclude based on Plaintiffs' description that the documents that they sent Paul, Weiss contain disqualifying information. Plaintiffs describe some of the contents as high-level sales and pricing information. But this is unlikely to be the kind of "significantly harmful" information with which the rules concern themselves in a case like this. Presumably, sales and pricing data regarding the defendants' own products is already known in substantial part to the defendants as parties to the relevant transactions. If the data is significant, it would presumably be produced in the ordinary course of discovery as well in a price fixing case such as this. It therefore cannot be inferred that the pricing-related data is "significantly harmful."

38. As to the hour-long meeting: Plaintiffs' representation regarding general subjects touched on in the meeting is not alone enough to establish that significantly harmful disclosures were made, because discussion of those subjects does not necessarily entail Plaintiffs' disclosure of confidential information, much less significantly harmful information. On the contrary, one can fairly assume that the meeting was overwhelmingly devoted to Paul, Weiss's efforts to impress Plaintiffs' representatives. The pitch materials Plaintiffs submitted to the Court demonstrate this is the case because they primarily tout the Paul, Weiss' partners' experience and the firm's history, capabilities, and insights in litigating these kinds of matters. Paul, Weiss's discussion of its own lawyers' capabilities, experience and insights is not disqualifying information. Plaintiffs must show that, during that meeting, they disclosed significant information that is not otherwise available to ASR/Domino and that can now be used to Plaintiffs' detriment – e.g., evidentiary detail that is not readily available to the defendants and not discoverable, or strategy that Plaintiffs had formulated (even before deciding whether to commence an action and who to represent them) and that could now be turned against Plaintiffs in some significant way. The evidence I have reviewed does not make that showing.

*Even assuming Paul, Weiss's former partners received Plaintiffs' "disqualifying information," there is no meaningful risk that the information will now be misused against Plaintiffs.*

39. Even assuming for the sake of argument that Paul, Weiss's lawyers received some significantly harmful information from Plaintiffs, disqualifying Paul, Weiss is unnecessary and unjustified because Plaintiffs' information is not realistically at risk. Disqualification should not serve as a sanction for a technical violation of Rule 1.18,

assuming one occurred, but only as a remedy to prevent concrete harm. In fact, the conflict-of-interest rules, such as Rule 1.18, were not drafted and adopted to be enforced through disqualification of counsel.[9] Their intended function is to guide lawyers in regulating their own conduct and, where warranted, to be enforced through the discipline process.

40. Consequently, based on my knowledge and research, federal courts do not mechanically apply the rules in disqualification cases. In *Mgmt. Registry, Inc. v. A.W. Cos.*, 2021 U.S. Dist. LEXIS 111873 (D. Minn. June 15, 2021), drawing on prior decisions, this Court summarized the disqualification standard as follows:

> Disqualification of opposing counsel is an "extreme measure" to be imposed "only when absolutely necessary." . . . Motions to disqualify receive "strict scrutiny" because of the "potential for abuse by opposing counsel." . . . However, "legitimate doubts" are resolved in favor of disqualification. . . . The party seeking disqualification of an opponent's counsel bears the burden of demonstrating that continued representation is not permissible. . . .
>
> The decision whether to disqualify counsel is left to the trial court's discretion. . . . . "Factors to consider when determining whether to disqualify counsel include the balance of interests between the attorneys, clients and the public as well as the court's duty to maintain public confidence in the legal profession and its duty to insure the integrity of the judicial proceedings." . . . Courts also consider a party's important right to choose its own counsel, but that interest "may be overridden when

---

[9] Minnesota Rules, Scope [20] ("Violation of a rule should not itself give rise to a cause of action against a lawyer nor should it create any presumption in such a case that a legal duty has been breached. In addition, violation of a rule does not necessarily warrant any other nondisciplinary remedy, such as disqualification of a lawyer in pending litigation."). Courts may, and often do, deny disqualification motions even where a conflict-of-interest rule applies. A disqualification decision is generally an equitable remedy to prevent or rectify a harm, such as a misuse of confidential information, and the court is in a position to assess whether, in the case before it, it is necessary to apply the rule to disqualify counsel to prevent the harm against which the conflict-of-interest rules is intended to prevent.

> compelling reasons exist." . . . In addition, courts must guard against the risk that a party's own confidential information could be used against it unfairly. . . "Disqualification is appropriate where an attorney's conduct threatens to work a continuing taint on the litigation and trial."

*Id.* at *8-9 (citations omitted). This is consistent with my understandings. Of particular significance is whether disqualification is necessary to serve the purpose underlying the relevant rule – i.e., whether the harms against which the rule protects, such as the misuse of confidential information, are likely to occur. For example, in *Mgmt. Registry, Inc. v. A.W. Cos.*, this Court denied disqualification both because the professional conduct rules were not violated and, independently, because there was no risk that the movant's confidential information would be misused. *Id.* at *10.

41. Here, it is apparent that disqualifying Paul, Weiss would significantly prejudice its client, ASR/Domino. Djordje Petkoski and his colleagues first appeared for ASR/Domino in the antitrust class action, *Fowler et al. v. ASR Group*, in April 2024, before Petkoski joined Paul, Weiss. Petkoski has been representing ASR/Domino in related matters that included the same allegations plaintiffs make in this case since 2021. ASR/Domino would be significantly prejudiced if it were to lose its chosen team of lawyers, who have been representing it in this matter for more than two years and for additional years before that in other antitrust matters.

42. At the same time, disqualification is not necessary to serve the purposes of the relevant prophylactic conflict-of-interest provisions – in this case, Rule 1.18(c) and (d) – which protect against the misuse of a prospective client's disqualifying information. Even assuming that Plaintiffs' disclosed information that could be "significantly harmful," there

is no meaningful risk that the Paul, Weiss lawyers representing ASR/Domino have gained, or will gain, access to that information and use it against Plaintiffs.

43. Assuming for the sake of argument that the former Paul, Weiss partners learned disqualifying information, but only in the one-hour meeting, Plaintiffs' disqualifying information cannot be misused because there is no evidence that any lawyer remaining at the Firm possessed it after those partners left in 2025. Even if lawyers at a law firm learn confidential information from a *full-fledged* client (as distinguished from a prospective client), the imputed disqualification rule (Rule 1.10) includes an exception once those lawyers leave the firm. Under Rule 1.10(c),[10] the firm may represent an opposing party in the same or substantially related matter if no lawyers remaining at the firm possess material confidential information. If, with the departure of the lawyers who consulted with Plaintiffs, Paul Weiss's remaining lawyers had no disqualifying information, that should fully resolve the question.

44. Even assuming Paul, Weiss received and still retains disqualifying information, the information will not be used against Plaintiffs. Paul, Weiss has ascertained

---

[10] Rule 1.10(c) provides:

> When a lawyer has terminated an association with a firm, the firm is not prohibited from thereafter representing a person with interests materially adverse to those of a client represented by the formerly associated lawyer and not currently represented by the firm, unless:
>
> (1) the matter is the same or substantially related to that in which the formerly associated lawyer represented the client; and
>
> (2) any lawyer remaining in the firm has information protected by Rules 1.6 and 1.9(c) that is material to the matter.

This provision is inapplicable when a firm is adverse to a *prospective* client. As discussed above, the permissibility of the representation is not governed by Rules 1.9(a) and 1.10 but by Rule 1.18, which sets a different standard.

and represented that Petkoski and the other lawyers defending ASR/Domino have not had access to disqualifying information from the consultation with Plaintiffs, assuming any was provided in 2024. None of them ever accessed documents arguably containing disqualifying information. Two lawyers at the Firm assisted the three Paul, Weiss partners in 2024. Neither attended the hour-long in-person meeting. Neither lawyer provided the allegedly (though implausibly) disqualifying information to Petkoski or anyone else on the ASR/Domino team of lawyers. Paul, Weiss's representations should be accepted.[11]

45. Further, Paul, Weiss adopted sufficient screening measures to ensure that, going forward, the lawyers representing ADR/Domino will not have access to whatever disqualifying information Paul, Weiss's lawyers allegedly received in 2024. The documents from consultation are segregated and inaccessible to the lawyers defending ASR/Domino. The one lawyer remaining at Paul, Weiss who assisted in the consultation has been screened. There is no reason to doubt the efficacy of the Firm's screening measures. Plaintiffs have not suggested additional prophylactic measures, but if the Court concludes that any are warranted, it could require them. Likewise, if further information is needed to satisfy the Court that no confidential information has been disclosed to the ASR/Domino litigation team to date, it can require that as well.[12]

---

[11] *See, e.g., Am. Int'l Group, Inc. v. Bank of Am. Corp.*, 827 F. Supp. 2d 341, 346-47 (S.D.N.Y. 2011) (although law firm's screen was untimely, the firm submitted lawyers' affidavits establishing that no confidential information was disclosed before the screen was erected).

[12] The notice and screening provisions of Rule 1.18(d) and other conflict-of-interest rules do not require that details be shared with the opposing party regarding screening measures and the circumstances leading up to the adoption of such measures.

46. In the context of a disqualification motion, there is no need to debate whether Paul, Weiss's screen was "timely" within the meaning of Rule 1.18(d)(2)(i). What matters is that, assuming Paul, Weiss possesses Plaintiffs' disqualifying information (which has not been shown), the Court can confidently conclude that the Firm will not use that information against Plaintiffs. The relevant Paul, Weiss lawyers do not and will not have access to disqualifying information. Whether or not Paul, Weiss has complied with timing or other technical requirements of Rule 1.18 is beside the point.[13]

47. Finally, Plaintiffs stress that their communication with Paul, Weiss stipulated that "[b]y participating in this [RFP] process, you are agreeing to keep all information regarding the process confidential and not use it for any other purpose." This was not a further implicit agreement to decline to represent an opposing party if Plaintiffs did not retain the Firm. Such a limitation should not lightly be inferred. Sophisticated corporate clients should not be given means to "conflict out" highly qualified law firms by conducting what are sometimes called "beauty contests" among many law firms and oversharing information – or simply by alleging that they have done so.

<u>Paul, Weiss should not be disqualified based on its unrelated representation of Kraft Heinz, a plaintiff in a different action in the MDL.</u>

48. Plaintiffs also suggest that Paul, Weiss should be disqualified because the firm currently represents Kraft Heinz in an unrelated Delaware proceeding. Kraft Heinz

[13] It is my opinion that Paul, Weiss was not required to establish a screen when Petkoski joined the Firm in 2025, because the Firm's defense of ASR/Domino was not yet adverse to Plaintiffs. Its representation adverse to a class of plaintiffs was not equivalent, for conflict-of-interest purposes, to a representation adverse to each of the unnamed class members or to individual opt-out plaintiffs at that time.

was an unnamed class member in 2024 when Petkoski and his colleagues began defending ASR/Domino in the antitrust class action. Although Kraft Heinz recently opted out of the class action and, along with some co-plaintiffs, filed a separate antitrust action, Paul, Weiss has not entered an appearance in that action and has stated that it will not defend ASR/Domino in that action while Kraft Heinz remains a client. Nor will Paul, Weiss otherwise deal directly with, or act directly against, Kraft Heinz in the antitrust matter without its informed consent. Nevertheless, Plaintiffs assert that Paul, Weiss should be disqualified under Rule 1.7(a)(1). Their theory is that Paul, Weiss is "directly adverse" to Kraft Heinz because Paul, Weiss defends ASR/Domino in other actions that are part of the MDL and takes a leadership role in the MDL. I disagree for the following reasons.

49. Rule 1.7 requires client consent when the "representation of one client will be directly adverse to another client," but not when the adversity is only *indirect*. In litigation, direct adversity contemplated by the rule typically involves head-to-head opposition – i.e., litigating against a party that is a client in another matter. Taking discovery from a third party who is a client in another matter may also constitute direct adversity. But the fact that a representation, if successful, may indirectly harm the interests of a client is not ordinarily regarded as direct adversity. *See, e.g.*, New York City Bar, Comm. on Prof'l Ethics, Formal Op. 2005-1 (2005) ("A conflict does not necessarily exist, however, if the representation of one client is adverse to the interests of another client but the respective clients are not themselves direct adversaries in litigation or in an equivalent context."); Minn. R. Prof. Conduct 1.7 cmt. [24] ("The mere fact that advocating a legal position on behalf of one client might create precedent adverse to the interests of a client represented

by the lawyer in an unrelated matter does not create a conflict of interest.”). So, for example, a lawyer may litigate against a policy holder even though the insurer, which will have to pay the judgment, is a client in an unrelated matter.[14] That is *indirect* adversity to a current client, and it is permitted.

50. In relevant part, the provision’s purpose is to preserve a client’s trust, which may be eroded if the client reasonably perceives that its lawyer is betraying it by directly opposing it in a different matter. The relevant Comment accompanying Rule 1.7 explains: “Loyalty to a current client prohibits undertaking representation directly adverse to that client without that client’s informed consent. Thus, absent consent, a lawyer may not act as an advocate in one matter against a person the lawyer represents in some other matter, even when the matters are wholly unrelated. The client as to whom the representation is directly adverse is likely to feel betrayed, and the resulting damage to the client-lawyer relationship is likely to impair the lawyer’s ability to represent the client effectively.” Minn. Rule 1.7, cmt. [6] (italics omitted).

51. In contrast, the rule assumes that, in general, a current client cannot legitimately charge its lawyer with betrayal when the lawyer’s other representation, although contrary to the client’s economic or other interests, does not involve head-to-head adversity or the equivalent. An overbroad restriction, targeting *indirect* adversity, would

---

[14] *See* ABA Standing Comm. on Ethics & Prof. Responsibility, Formal Op. 05-435 (2004); *see also Wineries of the Old Mission Peninsula Ass’n v. Peninsula Twp.*, 2023 U.S. Dist. LEXIS 231733 (W.D. Mich. June 27, 2023). Likewise, a representation against a corporate client’s subsidiary is not “directly adverse” to client merely because the client will be financially harmed indirectly. *See, e.g.*, ABA Standing Comm. on Ethics & Prof. Responsibility, Formal Op.97-405 (1997).

undermine countervailing interests that the rules also seek to promote: It would unnecessarily deprive other clients of their choice of counsel and unnecessarily limit lawyers' access to other clients. A law firm's indirect adversity in an unrelated matter ordinarily will not undermine a sophisticated corporate client's trust. There is no reason to expand the restriction or to interpret it expansively, particularly given corporate clients' ability to contract for broader restrictions.[15]

52. In this case, Paul, Weiss's adversity to Kraft Heinz in the MDL is indirect, not direct, because the firm is not defending ASR/Domino in the individual action brought by Kraft Heinz. Paul, Weiss's defense of ASR/Domino in other cases included in the MDL in which Kraft Heinz is *not* a party, and Paul, Weiss's leadership role in the MDL, may be contrary to the company's litigation interests. But that is not enough to constitute direct adversity, even if Paul, Weiss's work in the other cases leads to judicial rulings or generates work product that may disadvantage Kraft Heinz.[16] Again, the rules concern themselves

---

[15] *See generally* Bruce A. Green & Eli Wald, Outside Counsel Guidelines: Power, Ideology and the Evolution of the Corporate Bar, 86 Ariz. L. Rev. 427 (2026).

[16] *See In re Rail Freight Fuel Surcharge Antitrust Litig.*, 965 F. Supp. 2d 104 (D.D.C. 2013); *Sumitomo Corp.* v. *J. P. Morgan & Co.*, No. 99 CIV. 4004 (JSM), 2000 WL 145747 (S.D.N.Y. Feb. 8, 2000); *see also* N.Y. City 2001-03 (2001) ("[A] lawyer defending a client in an action who determines that there are potential cross-claims between the lawyer's client and another party also represented by the same law firm in an unrelated matter may . . . limit her engagement to the defense of the case, and exclude representation of the client against the other client.") (relying on *Sumitomo Corp.* v. *J. P. Morgan & Co.*, *supra*); *see generally* Stephen Gillers, *"Directly Adverse Means* Directly *Adverse: How Courts Have Misread Rule 1.7(a)(1) and Why it Matters*, 98 Dev. L. Rev. 59, 72-74 (2020); *but see Arrowpac Inc. v. Sea Star Line LLC*, Nos. 3:12-cv-1180-J-32JBT et al., 2013 WL 5460027 (M.D. Fla. Apr. 30, 2013).

with questions of direct adversity and concerns over loyalty, not restrictions based on actions in collateral, indirect matters.

53. Kraft Heinz of course may terminate its relationship with Paul, Weiss in the Delaware matter should it choose to do so. But at this time there is no direct adversity that would require Paul, Weiss to abandon ASR/Domino or that would justify this Court's disqualification of the Firm, thereby disrupting ASR/Domino's choice of counsel.

**Conclusion**

54. For the reasons explained above, it is my opinion that the circumstances presented here do not show violations of the Minnesota Rules or require Paul, Weiss's disqualification. With respect to Rule 1.18, Plaintiffs have not shown that they provided Paul, Weiss with information that could be "significantly harmful" to them in this litigation. In any event, the lawyers who principally participated in the 2024 consultation left Paul, Weiss before Mr. Petkoski joined the Firm, there is no evidence that information allegedly disclosed during the consultation was transmitted to the lawyers representing ASR/Domino, and Paul, Weiss has implemented measures to prevent those lawyers from obtaining access to any such information. Disqualification therefore is not necessary to protect the interests that Rule 1.18 is intended to serve.

Nor does Rule 1.7 require Paul, Weiss to withdraw from its representation of ASR/Domino throughout the MDL. Paul, Weiss is not representing ASR/Domino directly against Kraft Heinz in the individual action brought by Kraft Heinz and its co-plaintiffs, and it has stated that it will not otherwise act directly against Kraft Heinz while Kraft Heinz remains a current client without its informed consent. The fact that Paul, Weiss continues

to represent ASR/Domino in other actions in the MDL, and that its work may indirectly affect Kraft Heinz's litigation interests, does not convert that representation into direct adversity for the purposes of Rule 1.7. In my opinion, the Minnesota Rules do not require the remedy Plaintiffs seek, and disqualifying Paul, Weiss would unnecessarily interfere with ASR/Domino's longstanding relationship with its chosen counsel.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: September 22, 2026

Bruce A. Green