**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MINNESOTA**

| | |
|---|---|
| **IN RE: GRANULATED SUGAR ANTITRUST LITIGATION** | MDL No. 24-03110 (JWB/ECW) |

**DECLARATION OF DJORDJE PETKOSKI**

I, Djordje Petkoski, pursuant to 28 U.S.C. § 1746, declare as follows:

1. I am a partner at Paul, Weiss, Rifkind, Wharton & Garrison LLP ("Paul, Weiss" or the "Firm"). This declaration is based on my personal knowledge.

2. My team and I have represented ASR Group International, Inc., American Sugar Refining, Inc., and Domino Foods, Inc. in various antitrust matters. While these companies are separate entities, I refer to them collectively as "ASR/Domino" for convenience. My representation of ASR/Domino began shortly after the Department of Justice ("DOJ") issued a Civil Investigative Demand ("CID") in May 2021 relating to a DOJ investigation into the proposed acquisition of Imperial Sugar by U.S. Sugar Corporation. My team and I worked with ASR/Domino to learn and understand their business, to collect and produce documents and data, and to interface with DOJ. I have continued to represent ASR/Domino in various antitrust matters ever since.

3. DOJ sued to block the Imperial acquisition in the District of Delaware in November 2021. My team and I represented ASR/Domino in connection with that litigation, including representing ASR/Domino personnel who testified in depositions and at trial.

4. The plaintiffs in this Litigation, including the class plaintiffs, base their claims against ASR/Domino on arguments made by the DOJ trial team in the Imperial merger litigation regarding alleged communications with Mr. Richard Wistisen.

5. On September 23, 2022, Judge Noreika ruled against DOJ in the Imperial merger litigation, declining to enjoin the acquisition. The Third Circuit upheld Judge Noreika's ruling on July 13, 2023.

6. While the parties were in discovery in the Imperial merger litigation, DOJ opened an investigation into potential information exchanges in the sugar industry. My team and I represented ASR/Domino in connection with that investigation.

7. While DOJ did not issue a formal closing letter, my understanding is that DOJ has closed the information exchange investigation. The last communication from the DOJ team was in December 2022.

8. The initial class action complaints in this Litigation were filed in March 2024. ASR/Domino again retained me and my team in connection with the Litigation. The class cases were consolidated in this District in June 2024. Judge Blackwell appointed me to the Defense Steering Committee on October 30, 2024.

9. At the time I started representing ASR/Domino, I was a partner at Shearman & Sterling LLP (which subsequently merged with Allen & Overy LLP). I joined Paul, Weiss on September 15, 2025, with two other partners from Allen Overy Shearman Sterling LLP ("A&O Shearman"), who have each worked on antitrust matters for ASR/Domino. Shortly after we joined Paul, Weiss, the core associate team who worked on the ASR/Domino matters described above also moved from A&O Shearman to Paul, Weiss.

10. I have continued to represent ASR/Domino in the same matters I handled for them at A&O Shearman since moving my practice to Paul, Weiss. The Paul, Weiss lawyers defending ASR/Domino have spent several thousand hours on this case since I joined the Firm. I estimate that I and the other lawyers who joined Paul, Weiss with me spent thousands of hours on this and related matters for ASR/Domino at our prior firm.

11. Brandon Fox of Jenner & Block LLP, counsel for the plaintiffs bringing the motion to disqualify Paul, Weiss ("Plaintiffs"), first contacted me about his clients' claims on November 26, 2025. Mr. Fox's letter proposed that ASR/Domino engage in pre-litigation settlement discussions with his clients.

12. Mr. Fox and I exchanged emails regarding scheduling of a preliminary call between January 16, 2026 and February 3, 2026.

13. After receiving Mr. Fox's letter, I ran a conflicts check that identified Kraft Heinz as a current client of the Firm but did not identify that former Paul, Weiss partners had pitched to represent Plaintiffs and others in 2024.

14. On February 6, 2026, Mr. Fox and I spoke about Plaintiffs' claims for the first time. The call was cordial. Mr. Fox reiterated that his clients were interested in pursuing a pre-litigation settlement. I explained that ASR/Domino were disappointed that their long-standing customers would be pursuing claims against them and that ASR/Domino viewed the claims made by the class plaintiffs as meritless. At the outset of the call, I advised Mr. Fox that I could not discuss any potential claims by Kraft Heinz because Kraft Heinz was a Paul, Weiss client. I recall that Mr. Fox addressed this at the end of the call, noting that he may be able to help with that. Mr. Fox also mentioned in passing that Paul, Weiss pitched to represent Plaintiffs. I recall that he said that some of his clients may view this as creating a conflict but

that he could help resolve the issue. Before Mr. Fox raised the issue, I did not know that anyone at Paul, Weiss had pitched to represent potential plaintiffs against ASR/Domino. At the end of the call, Mr. Fox and I agreed to reconnect after I relayed his message about a pre-litigation settlement to ASR/Domino. I told Mr. Fox that I would relay that message but that I did not expect that ASR/Domino would be interested in settlement given their strongly held view that they did not do anything wrong.

15. Mr. Fox and I next spoke about Plaintiffs' claims on February 20, 2026. During that call, I told Mr. Fox that I had not had the opportunity to meaningfully connect with ASR/Domino about settlement discussions. I suggested that we reschedule our call so that I could do so. We agreed to reschedule the call for February 27. Mr. Fox mentioned the pitch by the former Paul, Weiss partners. I reminded Mr. Fox that I had joined Paul, Weiss only months earlier and confirmed that none of the Paul, Weiss lawyers who worked on the 2024 pitch have performed work for ASR/Domino.

16. Mr. Fox and I next spoke about Plaintiffs' claims on February 27, 2026. It became clear during that call that a pre-litigation resolution of the claims was unlikely. I told Mr. Fox that ASR/Domino were not interested in making large settlement payments. I explained that looking at the allegations in the class complaints in the context of well-known industry facts it is clear that the antitrust allegations are without merit. I also told Mr. Fox that ASR/Domino were disappointed that their close customers were considering pursuing these claims and that an eventual lawsuit would have a negative impact on the underlying business relationships. Mr. Fox raised the pitch by the former Paul, Weiss partners. He said that the pitch materials included his clients' confidential information. He said that the pitch was made by "the group that left" Paul, Weiss. I recall Mr. Fox saying that William Isaacson and Jessica Phillips participated in

the pitch while they were at Paul, Weiss. Mr. Fox stated that his clients would seek to disqualify Paul, Weiss based on the pitch, and said that he would be sending me a letter to that effect.

17. On March 2, 2026, Mr. Fox sent me a letter objecting to Paul, Weiss's representation of ASR/Domino based on the 2024 pitch and the fact that Kraft Heinz is a current Paul, Weiss client. Mr. Fox also claimed that I threatened a business effect against his clients to deter them from filing suit and from seeking the disqualification of Paul, Weiss. (Fox Decl., Ex. C.) That characterization is inaccurate. I made no threat.

18. My statements were a straightforward, factual observation in the context of pre-litigation settlement discussions about the real-world impact on business relationships that inevitably arises when close business partners engage in litigation against each other, particularly over claims that ASR/Domino believe to be without merit. That observation is common sense, and neither improper nor threatening. As I wrote to Mr. Fox in response to his March 2, 2026 letter, "I did not make any 'threat of a business effect.' But it should come as no surprise that when close business partners sue each other, particularly over meritless claims, there is a real-world impact on their relationship. This has nothing to do with any 'market power,' and as your clients know, competition for the sale of sugar is intense." (Fox Decl., Ex. E.)

19. I have never accessed or viewed any alleged confidential information from Plaintiffs or other former prospective clients, including any pricing data, in connection with the 2024 pitch. I understand that I am screened from accessing such materials.

20. I have never met or spoken to William Isaacson, Jessica Phillips, or Kyle Smith. I have not discussed with any of them or anyone else any alleged confidential information from Plaintiffs or other former prospective clients related to the 2024 pitch. I understand that I am prohibited from doing so.

21. On August 28, 2026, Paul, Weiss participated in a meet and confer call between counsel for all plaintiffs and all defendants in the MDL. Prior to that call, I informed Mr. Fox that Paul, Weiss disagrees that it "has a conflict as to any of the plaintiffs represented by Jenner other than Kraft Heinz." (Fox Decl., Ex. I.) I also advised Mr. Fox that Paul, Weiss's participation on the meet and confer would be "limited to the plaintiffs represented by other firms in the MDL." (Fox Decl., Ex. I.) Paul, Weiss disputes Mr. Fox's characterization of Paul, Weiss's participation on the meet and confer call. Attached hereto as Exhibit A is a true and correct copy of the email sent to Mr. Fox about the call.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this 23rd day of September, 2026.

Djordje Petkoski