**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

| IN RE: GRANULATED SUGAR ANTITRUST LITIGATION | MDL No. 24-03110 (JWB/ECW) |
|---|---|
| This Document Relates To: *Mondelēz Global LLC et al. v. ASR Group International, Inc. et al.*, No. 0:26-cv-03528 | |

**DEFENDANTS ASR GROUP INTERNATIONAL, INC., AMERICAN SUGAR REFINING, INC., AND DOMINO FOODS, INC.'S MEMORANDUM OF LAW IN OPPOSITION TO THE MONDELĒZ PLAINTIFFS' MOTION FOR A RULE TO SHOW CAUSE**

# TABLE OF CONTENTS

INTRODUCTION ........................................................................................................ 1

FACTUAL BACKGROUND ............................................................................................ 3

ARGUMENT............................................................................................................... 12

I. The Mondelēz Plaintiffs' Motion Attempts to Improperly Shift the Burden of Proof and Should Be Treated as a Motion for Disqualification. ............................................................................. 12

II. The Mondelēz Plaintiffs' Motion for Disqualification Should Be Denied. ............................................................................................ 14

A. Disqualification Would Severely Prejudice ASR/Domino. ............. 16

B. Disqualification Would Delay the Administration of Justice in the MDL. ........................................................................... 21

C. Disqualification Would Provide a Tactical Advantage to the Mondelēz Plaintiffs. ............................................................ 23

D. Disqualification Is Not Necessary to Remedy Any Harm. .............. 25

CONCLUSION .......................................................................................................... 31

**INTRODUCTION**

The Mondelēz Plaintiffs'[1] Motion for a Rule to Show Cause is a strategic attempt to gain tactical advantage by seeking to disqualify ASR/Domino's[2] counsel of choice—an "extreme measure" reserved only for cases where disqualification is "absolutely necessary"—at a critical point in the case. In a nationwide class action with 76 Class Action Plaintiffs and 58 Direct Action Plaintiffs,[3] Paul, Weiss, Rifkind, Wharton & Garrison LLP ("Paul, Weiss") has a potential conflict with one—Kraft Heinz—which elected not to join the class action and, instead, chose to join four separate and unrelated companies in a direct action filed two years after the MDL was established. Maslon represents ASR/Domino in this matter as to Kraft Heinz, mitigating any conflict issue. To the extent further measures are necessary, the obvious solution is to sever Kraft Heinz, which would prevent the extreme prejudice ASR/Domino would suffer if its legal team was disqualified, serve the

[1] The "Mondelēz Plaintiffs" includes Mondelēz Global LLC, The Hershey Company, The J. M. Smucker Company, The Kraft Heinz Company ("Kraft Heinz"), and WK Kellogg Co. The Mondelēz Plaintiffs note in their memorandum that "Kellanova, Mars, Inc., General Mills, Inc., and McKee Foods, Inc. will join this motion" once their case is transferred to this MDL because "Kellanova was among the companies involved in the facts described in [the Mondelēz Plaintiffs'] motion." (ECF No. 762 at 1 n.1.) To the extent these additional plaintiffs join the Mondelēz Plaintiffs' motion, ASR/Domino include them in the term the "Mondelēz Plaintiffs." Unless otherwise stated, all references to "ECF No." refer to documents assigned ECF numbers in MDL No. 24-03110.

[2] "ASR/Domino" includes ASR Group International, Inc.; American Sugar Refining, Inc.; and Domino Foods, Inc.

[3] "Class Action Plaintiffs" refers to the Plaintiffs defined in the Amended Master Consolidated Complaint (ECF No. 827 at 1, 5–6) and Exhibit A of the Consumer Indirect Purchaser Plaintiffs' Amended Short Form Complaint (ECF No. 821 at 33–37). "Direct Action Plaintiffs" refers to the Plaintiffs defined in the Direct Action Plaintiffs' Designation of Liaison Counsel (ECF No. 829 at 1 n.1). "Plaintiffs" refers collectively to all Class Action and Direct Action Plaintiffs.

Court's interest in keeping the MDL moving forward, and is well within the Court's discretion. To do otherwise would be to allow the tail to wag the dog. The motion should be denied.

For over five years, ASR/Domino's lead counsel, Djordje Petkoski, and his team have represented ASR/Domino in matters directly related to this litigation—beginning with representing ASR/Domino during the Department of Justice's investigations and trial that included allegations that form the very basis of the claims asserted here. Mr. Petkoski and his team have developed unparalleled expertise in the sugar industry, ASR/Domino's business operations, and the legal issues at stake. Mr. Petkoski and his team have participated in multiple proceedings covering the same matters now at issue, defended four ASR/Domino witnesses in depositions, and successfully represented ASR/Domino's witnesses and interests at a four-day bench trial. And for nearly two years, he has served on the Defense Steering Committee in this very MDL—a position to which he has been appointed twice. ASR/Domino's trust and confidence in Mr. Petkoski and his team is the product of years of hard work and diligence by the legal team and a substantial financial investment on the part of ASR/Domino. This attorney-client relationship, and Mr. Petkoski's institutional knowledge, cannot be replicated.

The Mondelēz Plaintiffs did not object to the Judicial Panel on Multidistrict Litigation's Transfer Order bringing their action here. Instead, they filed their motion on the eve of a status conference, seeking an extraordinary rule to show cause that attempts to improperly shift the burden of proof onto ASR/Domino. The timing and circumstances of this motion belie any legitimate concern about the integrity of these proceedings.

Disqualification here would be devastating. ASR/Domino would lose the attorneys who know their business, the industry, and the issues better than anyone—lead lawyers who are mid-stream in preparing a massive document production and developing critical defense strategies. It would cause significant delay in the MDL where this Court has mandated accelerated progress. And it would reward the very tactical maneuvering that courts applying disqualification standards are instructed to guard against.

The Mondelēz Plaintiffs cannot meet their heavy burden. There is no genuine risk that confidential information will be used against them—Mr. Petkoski and his team never received any confidential information from the pitch process, Paul, Weiss implemented appropriate screening measures, and the Mondelēz Plaintiffs' failure to object to being transferred to the MDL contradict any claim of actual concern. Disqualification is not "absolutely necessary" and the motion should be denied.

## FACTUAL BACKGROUND

### A. May 2021 to November 2021: ASR/Domino Engage Djordje Petkoski to Respond to the DOJ's Antitrust Investigation.

In May 2021, the United States Department of Justice ("DOJ") initiated an investigation into the proposed acquisition of Imperial Sugar Company by U.S. Sugar Corporation, issuing a Civil Investigative Demand ("CID") to ASR/Domino. (Declaration of Dolly V. Davis Supporting Paul, Weiss' Opposition to the Mondelēz Plaintiffs' Motion for Rule to Show Cause ("Davis Decl.") at ¶ 4.) The investigation focused on pricing and competition in the sugar industry. (*Id.*) ASR/Domino retained Djordje Petkoski and his

team—then at Shearman & Sterling LLP (now A&O Shearman)—to represent them and respond to the CID. (*Id.* ¶ 5.)

Mr. Petkoski and his team, alongside ASR/Domino, invested substantial time, effort, and resources to learn the operations of ASR/Domino and the highly specialized and complex domestic and international sugar markets. They worked closely with ASR/Domino to collect documents and gather potentially responsive data and information, spending hundreds of hours reviewing and analyzing these materials. (Davis Decl. ¶ 6.)

**B. November 2021 to September 2022: The DOJ Files Suit, and Mr. Petkoski Represents ASR/Domino Through Trial.**

On November 23, 2021, the DOJ filed a civil antitrust lawsuit against U.S. Sugar Corporation, United Sugars Corporation, Imperial Sugar Company, and Louis Dreyfus Company LLC in the District of Delaware (*United States* v. *U.S. Sugar Corp.*, No. 21-cv-1644-MN), seeking to enjoin the Imperial Sugar acquisition. (Davis Decl. ¶ 7.) Although ASR/Domino were third parties in the litigation, their involvement was substantial, and the companies continued to rely on Mr. Petkoski and his team to represent their interests based on their effectiveness and ASR/Domino's substantial financial investment in their legal team's knowledge of the companies, the industry, and the specific issues raised in the lawsuit (*id.* ¶ 7)—knowledge and issues that are largely integral to this action.

Between February and March 2022, the DOJ deposed, and Mr. Petkoski and his team defended, the depositions of four ASR/Domino witnesses: Adam Whittaker, Domino Foods, Inc. Director of National Accounts; Alan Henderson, Domino Foods, Inc. Senior Vice President of Industrial Sales; Mark Olson, American Sugar Refining, Inc. Vice

President of Commodities Purchasing and Trading; and Rob Sproull, American Sugar Refining, Inc. Senior Vice President of Sales, Marketing and New Product Development. (Davis Decl. ¶ 8.) Preparing for and defending their depositions required extensive preparation. (*Id.* ¶ 9.) Mr. Petkoski and his team personally interviewed and prepared each witness over the course of multiple days—at considerable financial cost to ASR/Domino. (*Id.*) Plaintiffs in this MDL make allegations regarding each of these same four witnesses, essentially paraphrasing certain DOJ allegations and referencing documents that ASR/Domino produced in connection with the DOJ's litigation. (Davis Decl. ¶ 9.)

In April 2022, Mr. Petkoski and his team represented ASR/Domino's interests at a four-day bench trial, preparing and representing two ASR/Domino witnesses who were both called to testify by the DOJ. (Davis Decl. ¶ 10.) On September 23, 2022, the Court issued an opinion ruling against the DOJ, allowing the Imperial Sugar acquisition to proceed. (*Id.* ¶ 11.)

Through this work, Mr. Petkoski and his team developed an in-depth understanding of ASR/Domino's business operations, business strategies, customer relationships, competitive dynamics, information flows, and supply and demand conditions in the sugar industry, as well as the complex regulatory framework under the U.S. Sugar Program and its impact on sugar supply, prices, and competition. (Davis Decl. ¶ 13.) That work is highly relevant to this litigation where Plaintiffs make allegations about ASR/Domino's sales and pricing; sugar industry prices, competition, and market dynamics; and the relevance of Sugar Program regulations, as well as where Plaintiffs replicate and repurpose the allegations that were raised by the DOJ. (*See id.* ¶ 12.)

### C. 2022: The DOJ Investigates Alleged Information Exchange Among Sugar Producers, and ASR/Domino Again Rely on Mr. Petkoski.

During the DOJ merger litigation, the DOJ also opened an investigation into potential information exchange in the sugar industry. (Davis Decl. ¶ 14.) Based on ASR/Domino's substantial investment in the attorney-client relationship and Mr. Petkoski's deep knowledge of the companies, industry, and relevant facts, as well as his effective representation, ASR/Domino again retained Mr. Petkoski and his team. (*Id.* ¶ 15.) Mr. Petkoski and his team conducted an internal investigation, including interviewing key executives, sales personnel, and others at ASR/Domino regarding, among other things, the role of industry analysts in disseminating information to customers, the flow of market information in the sugar industry, competition in the industry, sugar supply, demand and pricing, and the USDA's regulatory role—each of which is at the center of this litigation. (*Id.* ¶ 16.) Mr. Petkoski and his team represented ASR/Domino diligently, capably, and successfully. While the DOJ has not issued a formal closing letter, ASR/Domino believe the DOJ has closed the investigation. (*Id.* ¶ 17.) The last communication from the DOJ team to ASR/Domino was on December 2, 2022. (*Id.*)

### D. March 2024 to January 2025: The First Class Action Complaint Is Filed, the MDL Is Established, and ASR/Domino Engage Mr. Petkoski to Defend Them.

On March 15, 2024, the first class action complaint, *Fowler* v. *ASR Group International, Inc.*, No. 1:24-cv-01972 (S.D.N.Y.), was filed against ASR/Domino. (Davis Decl. ¶ 18.) By June 2024, 45 separate complaints were filed across the country and then were centralized in this Court, each making allegations based on the DOJ's claims in the

2022 merger litigation trial and related public record. (*Id.*) Upon the filing of the *Fowler* Complaint, ASR/Domino again retained Mr. Petkoski and his team based on their high-quality and effective representation in the predecessor DOJ proceedings and their extensive knowledge of the issues, facts, documents, and witnesses critical to ASR/Domino's defense, as well as the trust Mr. Petkoski had built with ASR/Domino and their executives and anticipated witnesses. (*Id.* ¶ 19.)

On June 7, 2024, the Judicial Panel on Multidistrict Litigation ("JPML") issued a Transfer Order (ECF No. 1) centralizing approximately 45 related actions in this Court as MDL No. 3110, assigned to Judge Jerry Blackwell. (Davis Decl. ¶ 20.) On July 26, 2024, Mr. Petkoski and other members of his team appeared on behalf of ASR/Domino in the MDL. (*Id.*) The Honorable Judge Blackwell appointed Mr. Petkoski to the Defense Steering Committee on October 30, 2024, pursuant to Pretrial Order No. 4 (ECF No. 256). (*Id.* ¶ 21.)

### E. Summer 2024 to Fall 2024: The Mondelēz Plaintiffs Consider Bringing Their Own Direct Action Claims Against ASR/Domino.

During this same period, the Mondelēz Plaintiffs were separately evaluating potential counsel to bring their own direct action claims against ASR/Domino arising from the same alleged underlying conduct. (Declaration of Emily Newhouse Dillingham in Support of the Mondelēz Plaintiffs' Motion for Rule to Show Cause (ECF No. 766) ("Dillingham Decl.") ¶ 3.) This process continued through October 2024, and resulted in the Mondelēz Plaintiffs ultimately selecting Jenner & Block as their counsel, entering into formal engagement letters between August and October 2025. (*Id.* ¶¶ 13–14, 16.) However,

the Mondelēz Plaintiffs did not file a complaint until almost a year later, in July 2026. *See* Complaint, *Mondelēz Global LLC* v. *ASR Grp. Int'l, Inc.*, No. 26-cv-08849, ECF No. 1 (N.D. Ill. July 24, 2026).

### F. September 2025: Mr. Petkoski Moves to Paul, Weiss, and ASR/Domino Follow to Ensure Continuity of Representation.

On September 15, 2025, Mr. Petkoski and one of his team members, David Higbee, left A&O Shearman and joined Paul, Weiss, which immediately began representing ASR/Domino in this litigation. (Davis Decl. ¶ 22.) Mr. Petkoski filed a Notice of Change of Address (ECF No. 449) in this matter that same day, and his move was widely reported in the legal press. (*Id.*) Amelia Rasmussen and Jake Kotler, attorneys who were also part of the ASR/Domino team at A&O Shearman, joined Paul, Weiss on October 13, 2025, and November 10, 2025, respectively. (*Id.*) ASR/Domino fully transitioned the matter to Paul, Weiss to ensure continued representation by Mr. Petkoski and his team—the lawyers most deeply involved in the litigation and the predecessor proceedings stretching back to May 2021. (*Id.* ¶ 23.) In the year following the transition, Paul, Weiss partners Katherine Forrest and Paul Brachman, as well as a team of Paul, Weiss associates and counsel, have become integral members of ASR/Domino's defense team, adding significant specialized antitrust trial experience. (*Id.* ¶ 24.) Judge Blackwell reappointed Mr. Petkoski to the Defense Steering Committee on October 16, 2025, pursuant to Pretrial Order No. 10 (ECF No. 473). (*Id.* ¶ 25.)

### G. November 2025: The Mondelēz Plaintiffs Contact Mr. Petkoski at Paul, Weiss to Discuss Potential Settlement with ASR/Domino.

On November 26, 2025, Jenner & Block sent a letter to Mr. Petkoski at Paul, Weiss seeking pre-complaint discussions on behalf of the Mondelēz Plaintiffs. (Declaration of Brandon Fox in Support of the Mondelēz Plaintiffs' Motion for Rule to Show Cause (ECF No. 764) ("Fox Decl.") ¶¶ 2–3, 12, Ex. A.) The letter did not raise any concerns about a potential conflict of interest; rather, it stated that, if ASR/Domino did not respond by December 10, 2025, the Mondelēz Plaintiffs would "consider all available legal remedies." (*Id.*, Ex. A.)

### H. February 2026: The Mondelēz Plaintiffs Mention Potential Conflicts from Paul, Weiss' Representation of ASR/Domino.

ASR/Domino responded to the Mondelēz Plaintiffs' November 26, 2025 letter, and an initial call took place on February 6, 2026. (Fox Decl. ¶¶ 13–14.) During the call, Mr. Petkoski discussed Paul, Weiss' unrelated representation of Kraft Heinz and stated he did not intend to speak on behalf of ASR/Domino with respect to Kraft Heinz.[4] (*Id.* ¶ 14.) Also during a phone conversation with Mr. Petkoski in February 2026, Jenner & Block claims it raised for the first time that the Mondelēz Plaintiffs had potential conflict concerns relating to Paul, Weiss' receipt of allegedly confidential information during the 2024 pitch process. (*See id.* ¶ 14.)

[4] ASR/Domino objects to the use of any offers of compromise and/or negotiations for the purposes prohibited by Federal Rule Evidence 408.

### I. Late 2025 to Summer 2026: The Mondelēz Plaintiffs Escalate Communications About the Alleged Conflict with Paul, Weiss.

On March 2, 2026, the Mondelēz Plaintiffs sent a formal letter to Paul, Weiss requesting a written explanation of the firm's compliance with the prospective-client conflict rule, Rule 1.18 of the Minnesota Rules of Professional Conduct, and asked Paul, Weiss to contact Kraft Heinz directly to discuss the purported adversity created by its representation of ASR/Domino. (Fox Decl. ¶ 17, Ex. C.) Paul, Weiss' General Counsel, Kenneth M. Schneider, responded promptly by letter on March 6, 2026, confirming that the three partners involved in the pitch had left the firm in May 2025, that the two remaining lawyers who assisted with pitch preparations had been screened, and that there had been and would be no leakage of confidential information to any lawyer representing ASR/Domino. (*Id.* ¶ 18, Ex. D.) On March 27, 2026, the Mondelēz Plaintiffs responded, seeking additional disclosures beyond what Paul, Weiss had provided. (*Id.* ¶ 21, Ex. F.) Paul, Weiss replied by letter on April 6, 2026, reaffirming that the safeguards it had described—including the departure of the pitch partners, screening of the remaining lawyers, and electronic security of the pitch materials—had already adequately addressed any potential concerns, and reiterating that ASR/Domino would rely on separate counsel for any matters directly adverse to Kraft Heinz. (*Id.* ¶ 22; Ex. G.)

### J. July 24, 2026: The Mondelēz Plaintiffs File Their Complaint Over Two Years Into the MDL.

The Mondelēz Plaintiffs—including Kraft Heinz—did not file their Complaint until July 24, 2026, more than two years after the first class action complaint was filed in March 2024 and the JPML established the MDL in June 2024. Their Complaint, *Mondelēz Global*

*LLC* v. *ASR Group International, Inc.*, No. 26-cv-8849, ECF No. 1 (N.D. Ill. July 24, 2026), was filed in the Northern District of Illinois, not in this Court. By that time, Class Action Plaintiffs had already filed Complaints (*see* ECF No. 1), Amended and Consolidated Complaints (ECF Nos. 292–94), a Master Consolidated Complaint (ECF No. 332), and Short-Form Complaints (ECF Nos. 341–43). The Plaintiffs and Defendants had also engaged in extensive motions practice—including the partially successful motion to dismiss—and were well into fact discovery. (*See* Davis Decl. ¶ 26.)

On August 5, 2026, the JPML filed a Conditional Transfer Order bringing the Mondelēz Plaintiffs' action into the MDL. *Mondelēz Global LLC* v. *ASR Grp. Int'l, Inc.*, No. 26-cv-8849 (JWB/ECW), ECF No. 13 (D. Minn. Aug. 6, 2026). After transfer to this Court, the Mondelēz Plaintiffs filed an Amended Complaint in the MDL on September 4, 2026 (ECF No. 745).

### K. September 2026: The Mondelēz Plaintiffs Raise Their Desire to Disqualify Paul, Weiss From Representing ASR/Domino.

On September 1, 2026—despite not objecting to the JPML's August 5, 2026 Conditional Transfer Order bringing the action into the MDL—the Mondelēz Plaintiffs informed Paul, Weiss that they intended to file a disqualification motion. (Fox Decl. ¶ 32.) On the evening of September 8, 2026, the Mondelēz Plaintiffs entered an appearance in the MDL and filed their motion (ECF No. 759–60)—requesting a rule to show cause requiring ASR/Domino to prove why Paul, Weiss should not be disqualified—hours before the Court's September 9, 2026 status conference.

## ARGUMENT

The Mondelēz Plaintiffs' motion should be denied. As a threshold matter, the motion is improperly styled as a rule to show cause in an attempt to shift the burden of proof to ASR/Domino. It should instead be treated as a motion to disqualify, with the burden squarely on the Mondelēz Plaintiffs. On the merits, the Mondelēz Plaintiffs cannot meet the heavy burden required to justify this extreme measure. Disqualification would severely prejudice ASR/Domino by stripping them of counsel who have represented the companies for over five years across multiple related proceedings, including the DOJ trial, and this MDL. That institutional knowledge cannot be replicated. Disqualification would also cause significant delay in these proceedings at the very moment this Court has called for accelerated progress. It would also provide the Mondelēz Plaintiffs with a tactical advantage, allowing them to disqualify ASR/Domino's lead counsel now, after two years of litigation, despite the Mondelēz Plaintiffs knowing that Mr. Petkoski and his team at Paul, Weiss were leading ASR/Domino's defense and not objecting to being transferred into this MDL. Nor is removal necessary to remedy any claimed harm. There is no genuine risk that the Mondelēz Plaintiffs' confidential information will be used against them and less drastic measures are available to address any remaining concern.

### I. The Mondelēz Plaintiffs' Motion Attempts to Improperly Shift the Burden of Proof and Should Be Treated as a Motion for Disqualification.

A show-cause order is an extraordinary judicial tool for the court—not private litigants—that is typically reserved for contempt proceedings or situations where a party has failed to comply with a court order. *See* Fed. R. Civ. P. 11, 1993 Advisory Committee

Note (stating show-cause orders permit courts to act in the absence of a motion and "will ordinarily be issued only in situations that are akin to contempt of court"). Where, as here, the Mondelēz Plaintiffs' motion seeks disqualification of opposing counsel based on alleged conflicts of interest, the Court should treat the filing as a motion to disqualify. *See Nordgren* v. *Hennepin Cnty.*, 96 F.4th 1072, 1077 (8th Cir. 2024) ("[I]t is the substance of a motion rather than the form of a motion that is controlling." (citation modified)); *see also, e.g.*, *Rohm & Haas Co.* v. *Am. Cyanamid Co.*, 187 F. Supp. 2d 221, 223 (D.N.J. 2001) (treating motion for a show-cause order as motion to disqualify counsel); *Lastra* v. *Barnes & Noble Bookstore*, No. 11 CIV. 2173, 2012 WL 12876, at *9–10 (S.D.N.Y. Jan. 3, 2012) (same), *aff'd*, 523 F. App'x 32 (2d Cir. 2013).

Regardless of its form, the Mondelēz Plaintiffs cannot use the show-cause procedure to shift the burden of proof onto Paul, Weiss or ASR/Domino. *See Stevens Cnty. Soc. Serv. Dep't ex rel. Banken* v. *Banken*, 403 N.W.2d 693, 700 (Minn. Ct. App. 1987) (noting that show-cause posture does not alter the burden of proof); *see also Medtronic, Inc.* v. *Mirowski Fam. Ventures*, LLC, 571 U.S. 191, 192 (2014) (stating burden of proof is "'substantive' aspect of claim" and does not shift based on form of action (quoting *Raleigh* v. *Ill. Dep't. of Rev.*, 530 U.S. 15, 20–21 (1951))). The Mondelēz Plaintiffs, as the parties seeking disqualification, bear the heavy burden of proving that disqualification is warranted. *See Awnings* v. *Fullerton*, 912 F.3d 1089, 1095–96 (8th Cir. 2019). Because the Mondelēz Plaintiffs cannot meet that burden, the motion should be denied.

## II. The Mondelēz Plaintiffs' Motion for Disqualification Should Be Denied.

Disqualification of counsel is an "extreme measure" that is imposed only when "absolutely necessary." *Macheca Transp. Co.* v. *Philadelphia Indem. Co.*, 463 F.3d 827, 833 (8th Cir. 2006). This is because "[a] party's right to select its own counsel is an important public right and a vital freedom that should be preserved." *Id.* That right may be overridden only where the moving party demonstrates that counsel's conduct "threatens to work a continuing taint on the litigation and trial." *Mgmt. Registry, Inc.* v. *A.W. Cos., Inc.*, No. 0:17-CV-5009-JRT-KMM, 2021 WL 2434119, at *3 (D. Minn. June 15, 2021) (quoting *Arnold* v. *Cargill, Inc.*, Civ. No. 01-2086, 2004 WL 2203410, at *5 (D. Minn. Sept. 24, 2004)). Speculative concerns are insufficient; the moving party must show a genuine risk that confidential information will be unfairly used against it. *Id.* at *3, *6–7. Because of the potential for abuse by opposing counsel, disqualification motions are subject to "particularly strict scrutiny." *Awnings*, 912 F.3d at 1095 (quoting *Macheca Transp. Co.*, 463 F.3d at 833).

Importantly, a violation of the professional rules or the existence of a conflict does not mechanically result in disqualification. *See* Minn. R. Prof. Conduct, Scope ¶ 20 ("[V]iolation of a rule does not necessarily warrant any other nondisciplinary remedy, such as disqualification of a lawyer in pending litigation."); *Cent. Milk Producers Co-op.* v. *Sentry Food Stores, Inc.*, 573 F.2d 988, 991, 993 (8th Cir. 1978) (affirming denial of motion to disqualify despite violation of ethics rules); *see also Hempstead Video, Inc.* v. *Inc. Vill. of Valley Stream*, 409 F.3d 127, 137 (2d Cir. 2005) (where a conflict exists,

"[c]ourts should inquire on the facts of the case before them whether the practices and structures in place are sufficient to avoid disqualifying taint").

Instead, courts take a balanced approach and have broad discretion to determine whether disqualification is absolutely necessary or whether less extreme measures would suffice. *Gifford* v. *Target Corp.*, 723 F. Supp. 2d 1110, 1116 (D. Minn. 2010); *see also Mgmt. Registry, Inc.*, 2021 WL 2434119, at *3; *Arnold*, 2004 WL 2203410, at *13; *Wyeth* v. *Abbott Lab'ys*, 692 F. Supp. 2d 453, 457 (D.N.J. 2010). In exercising that broad discretion, the Court must weigh "the interests and motivations of the attorneys, the clients, and the public." *Gifford*, 723 F. Supp. 2d at 1116–17. Courts consider factors including (1) whether disqualification would prejudice the non-moving party, *see Arnold*, 2004 WL 2203410, at *14; (2) whether disqualification would delay the efficient administration of justice, *Glover* v. *Standard Fed. Bank*, No. CIV 97-2068 DWF SRN, 2001 WL 228440, at *2 (D. Minn. Mar. 6, 2001); (3) whether the timing and circumstances suggest the motion is a tactical maneuver rather than reflecting a legitimate concern, *see Macheca Transp. Co.*, 463 F.3d at 833; *Cent. Milk Producers Co-op.*, 573 F.2d at 992; and (4) whether the risk that confidential information will be unfairly used against the moving party is speculative, *see Mgmt. Registry, Inc.*, 2021 WL 2434119, at *3, *6–7.

When one or more of these factors are present, courts in this Circuit and across the country consistently deny disqualification. *See, e.g.*, *Cent. Milk Producers Co-op.*, 573 F.2d at 992–93; *Wyeth*, 692 F. Supp. 2d at 458–61; *Gartner, Inc.* v. *HCC Specialty Underwriters, Inc.*, 580 F. Supp. 3d 31, 40–41 (S.D.N.Y. 2022); *Hollis* v. *Ogeneski*, No. NNHFA144063759S, 2014 WL 7589285, at *7 (Conn. Super. Ct. Dec. 4, 2014). This case

is no different. Disqualification would severely prejudice ASR/Domino, would significantly delay the MDL proceedings, would provide the Mondelēz Plaintiffs with a tactical advantage, and would do so despite there being no genuine risk that confidential information will be misused. The Mondelēz Plaintiffs' motion should be denied.

### A. Disqualification Would Severely Prejudice ASR/Domino.

There is a strong presumption given to a party's fundamental right to choose its own counsel, which stems from the Due Process Clause of the U.S. Constitution. *Glover*, 2001 WL 228440, at *2; *Macheca Transp. Co.*, 463 F.3d at 833 (8th Cir. 2006). This right is "heavily implicated" where, as here, a motion seeks to disqualify lead counsel with a longstanding attorney-client relationship. *Glover*, 2001 WL 228440, at *3; *see also, e.g.*, *Wyeth*, 692 F. Supp. 2d at 458; *Gartner*, 580 F. Supp. 3d at 41; *Hollis*, 2014 WL 7589285, at *7. The presumption toward chosen counsel is at its strongest in complex cases like this one, where replacing experienced counsel risks depriving a party of the very expertise its defense demands. *See Arnold*, 2004 WL 2203410, at *14 (stating "there must be appropriate accommodations made to the ethical rules in a class action situation so that the unique purpose the class action serves is not judicially or otherwise nullified" and "recogniz[ing] the need for zealous advocates" in such cases); *see also Wyeth*, 692 F. Supp. 2d at 458 (stating in cases that "are more likely to involve intensely complex, specialized issues that require experienced, knowledgeable counsel, . . . mandatory disqualification may work prejudice to a party by depriving it of its counsel of choice").

In *Wyeth*, the court denied the plaintiff's motion to disqualify Howrey from representing Boston Scientific in a patent dispute, despite finding a Rule 1.7 concurrent

conflict because Howrey also represented the plaintiff in an unrelated matter. 692 F. Supp. 2d at 454, 458–61. The court emphasized the potential prejudice to Boston Scientific, reasoning that Boston Scientific had relied on Howrey "as one of [its] primary litigation counsel" for over a decade, and disqualification would deprive it of Howrey's "depth of experience and expertise." *Id.* at 460. The court held that, given the "historical relationship between BSC and Howrey," among other factors, it was "unable to see how the court-ordered severance of [Boston Scientific's] long-standing relationship with [Howrey] . . . will serve the interests of justice and fairness." *Id.* at 460–61.

Similarly, in *Gartner*, the court declined to disqualify Norton Rose Fulbright from representing insurers in COVID-19 coverage suits against Gartner, despite finding a concurrent conflict because the firm also represented Gartner in matters involving COVID-19 furloughs and layoffs. 580 F. Supp. 3d at 33, 37-39, 41. The insurers had a strong interest in retaining Norton Rose Fulbright for financial reasons and because it had represented them in similar matters. *Id.* at 41. The court found that replacing the firm would cause "serious prejudice" by forcing the insurers to "restart anew with a new litigation team." *Id.*

Here, Mr. Petkoski has represented ASR/Domino for over five years. He began by responding to a DOJ CID and representing the companies in related merger litigation from which the Plaintiffs in this litigation derived their allegations. (Davis Decl. ¶¶ 4–5, 7.) Over the next fifteen months, Mr. Petkoski and his team reviewed and produced documents and represented the companies' interests, defending depositions of four ASR/Domino witnesses. At a four-day bench trial, Mr. Petkoski prepared and represented two ASR/Domino witnesses. (*Id.* ¶ 10.) And in September 2022, the court declined to enjoin

the merger. (*Id.* ¶¶ 10–11.) This sustained, hands-on representation laid the foundation for Mr. Petkoski's depth of expertise in the sugar industry, ASR/Domino's business, and the facts underlying this litigation—knowledge that simply cannot be replicated by new counsel.

While discovery was in progress in the merger litigation, the DOJ opened an investigation into potential information exchange in the sugar industry. (Davis Decl. ¶ 14.) ASR/Domino retained Mr. Petkoski again. (*Id.* ¶ 15.) His team conducted an internal investigation and interviewed key executives and sales personnel. (*Id.* ¶ 16.) ASR/Domino understand that the DOJ has closed that investigation. (*Id.* ¶ 17.)

ASR/Domino again retained Mr. Petkoski and his team when the first antitrust class action complaint in this MDL was filed against ASR/Domino in March 2024. (Davis Decl. ¶ 18.) In the next three months, 44 related complaints followed. (*Id.*) The JPML issued a Transfer Order on June 7, 2024, centralizing those actions in this Court, and Mr. Petkoski and his team have consistently appeared on behalf of ASR/Domino in the MDL. (*Id.* ¶ 20.) Judge Blackwell appointed Mr. Petkoski to the Defense Steering Committee on October 30, 2024, a role he has held for nearly two years. (*Id.* ¶ 21.)

When Mr. Petkoski moved from A&O Shearman to Paul, Weiss in September 2025—along with key team members Amelia Rasmussen, Jake Kotler, and David Higbee—ASR/Domino immediately followed to ensure its advocacy in defending against these significant allegations was put forth by the lawyers most deeply steeped in its business and involved in the litigation. (Davis Decl. ¶¶ 22–23.) Judge Blackwell

reappointed Mr. Petkoski to the Defense Steering Committee on October 16, 2025. (*Id.* ¶ 25.)

Since the transition, the Paul, Weiss team has worked closely with other defendants on a partially successful motion to dismiss, quickly engaged in discovery—including meeting and conferring with Class Plaintiffs and third parties—briefed and argued motions on behalf of ASR/Domino and the Defendants, and collected, reviewed, and produced documents. (Davis Decl. ¶ 26.) The Paul, Weiss team has continued developing the record and ASR/Domino's defense strategy. (*Id.* ¶ 27.) They have prepared for class-certification challenges and worked closely with economists to develop defenses critical to ASR/Domino's defense. (*Id.* ¶ 28.) Mr. Petkoski and his team have developed an unparalleled understanding of ASR/Domino's business, including familiarity with ASR/Domino's transaction data and the proprietary systems in which it resides; the sugar industry; the relevant facts; and the companies' legal positions—institutional knowledge that cannot be replicated. (*Id.* ¶ 29.)

Disqualification at this stage would severely disrupt and weaken ASR/Domino's defense. This is not a routine commercial dispute—the allegations are complex and go to the core of ASR/Domino's business and, if not effectively defended, threaten to erode the trust that customers place in the companies. Replacement counsel would have to learn five years of factual history, the complex regulatory and litigation landscape, each witness's role within the companies, and the defense strategies developed over the past five years. (Davis Decl. ¶ 30.) The disruption would also extend well beyond learning the record. New counsel would not have the rapport and trust that Mr. Petkoski and his team have cultivated

with ASR/Domino as the product of years of navigating these serious allegations together and which is essential to ASR/Domino's ability to present an efficient and effective defense against claims of this magnitude. (*See id.* ¶ 33.) Mr. Petkoski and his team have spent many years building trust with key witnesses, including the four senior executives whose depositions they defended in the DOJ merger litigation and who are likely to be important witnesses in this litigation. (*See id.* ¶ 33.) New counsel would have to rebuild those relationships from scratch.

Given the case's complexity and the tight timeframe contemplated by the Court—with the parties engaged in intensive and accelerating discovery and preparation of motions to dismiss—it would be impossible for ASR/Domino to find replacement counsel with the trial experience, expertise, and knowledge that the current Paul, Weiss team possesses without significant delay to the proceedings and significant prejudice to ASR/Domino. (Davis Decl. ¶ 31.) For example, Paul, Weiss is currently responsible for ASR/Domino's document review and production, including running 183 agreed-upon search strings across dozens of custodians. (Sept. 9, 2026 Tr. (ECF No. 798) at 15:9–16.) At the September 9, 2026 status conference, Paul, Weiss estimated that completing the review and production for the current custodian set alone would require 25 to 40 contract attorneys working full-time for six to ten months. (*Id.* at 15:9–24, 19:9–19.) Disqualification would halt this project and require an entirely new legal team to get up to speed before they could assume that work, learn the search protocol and record, and potentially redo already completed work. A transition of this magnitude would add months of delay in the MDL and substantial

duplicative costs at the very moment the Court has called for accelerated progress. (Davis Decl. ¶ 30.)

ASR/Domino have already devoted substantial resources to this litigation, which has placed enormous financial strain on the companies. Disqualification would impose substantial additional cost and jeopardize their ability to defend the claims through trial. (Davis Decl. ¶ 32.) This prejudice would be further compounded by the tactical advantage the Mondelēz Plaintiffs would gain by removing the lawyers who have successfully represented ASR/Domino concerning these issues for over five years—including representing ASR/Domino's interests at trial and successfully concluding state and federal antitrust investigations. (*Id.* ¶ 34.) ASR/Domino chose Mr. Petkoski and the Paul, Weiss team because of the knowledge, trust, and confidence built through that representation. (*Id.* ¶ 33.) Forcing ASR/Domino to replace their lead counsel now would cause significant added cost, delay, and operational disruption. The certain and material prejudice to ASR/Domino weighs heavily in favor of denying the Mondelēz Plaintiffs' motion, especially where the Mondelēz Plaintiffs have not demonstrated any prejudice whatsoever from Paul, Weiss' continuing involvement in the MDL.

### B. Disqualification Would Delay the Administration of Justice in the MDL.

When ruling upon a motion for disqualification, "the Court may consider . . . the Court's docket, the judicial time invested, and other factors relevant to the efficient administration of justice." *Glover*, 2001 WL 228440, at *2; *see also Arnold*, 2004 WL 2203410, at *5–6 (noting the court's discretion to deny a motion to disqualify stems from "the control necessarily vested in courts to manage their own affairs so as to achieve the

orderly and expeditious disposition of cases." (quoting *Chambers* v. *NASCO, Inc.*, 501 U.S. 32, 43 (1991))). Delay is a central factor. *See Cent. Milk Producers Co-op.*, 573 F.2d at 992–93 (affirming denial of motion to disqualify counsel after five years of litigation because disqualification would cause "further harmful delay to all the parties" and thus "would not be in the best interests of justice"); *see also Enzo Biochem, Inc.* v. *Applera Corp.*, 468 F. Supp. 2d 359, 368 (D. Conn. 2007) (denying motion to disqualify counsel, reasoning, "as this case has been before the Court [for 2.5 years], disqualification would be imprudent in terms of the public's interest in efficient case management and utilization of judicial resources"); *Wyeth*, 692 F. Supp. 2d at 460 (same).

This MDL has been pending for well over two years. It involves over one hundred plaintiffs across three plaintiff classes, sixteen defendants, and allegations of potentially billions of dollars in damages from a purportedly widespread price-fixing conspiracy. (ECF Nos. 821, 827, 829.) It has generated nearly 1,000 ECF filings and nearly 100 orders. (Civil Docket, Case No. 24-md-03110-JWB-ECW.) The Court has presided over fifteen status conferences and contested motion hearings, including oral argument on Defendants' Motions to Dismiss (ECF No. 459), multiple hearings on discovery disputes (ECF Nos. 579, 629, 659), and a hearing on pending motions and case management (ECF No. 781), with more scheduled before this motion will be resolved. Disqualification of Paul, Weiss would disrupt all of it and result in significant delay.

For instance, as detailed above, ASR/Domino are mid-stream in a substantial document review and production effort supervised by Paul, Weiss. *See supra* Section II.A. New counsel would need months to learn the industry, the record, the defense strategy, and

the status of an ongoing production involving 183 agreed-upon search strings across dozens of custodians. That delay would not only impact ASR/Domino. The entire discovery schedule depends on the timely completion of ASR/Domino's production. Halting that process would ripple across the MDL, disrupting coordinated discovery and consuming judicial resources this Court has already committed to moving the case forward.

The Court itself has made clear that delay is unacceptable. At the September 9, 2026 status conference, it stated: "[T]his case is going to have to move." (Sept. 9, 2026 Tr. (ECF No. 798) at 32:10.) The Court reinforced that directive: "[L]et's step it up, and we can bring a bit more rigor to this, and I want to set a new pace of rhythm for the case . . . ." (*Id.* at 59:9–12.) The Court specifically called on leadership, including Mr. Petkoski, to help: "[A]t this rate, I'm not sure when or how we get across the finish line. So I'm going to be looking to see where and how I can pick up the pace and looking for leadership to . . . join in that." (*Id.* at 7:16–19.) Removing Mr. Petkoski now would do the opposite. It would bring the MDL to a halt, duplicate work already underway, and waste the Court's investment at the very moment the Court has called for accelerated progress. The impact on the efficient administration of justice and the public's interest in the efficient use of resources weighs heavily in favor of denying the motion.

### C. Disqualification Would Provide a Tactical Advantage to the Mondelēz Plaintiffs.

Given the potential for abuse by opposing counsel, courts apply strict scrutiny to disqualification motions, and will deny such a motion if there is evidence that the motion is motivated by strategic reasons rather than genuine concern about the integrity of the trial

process. *Awnings*, 912 F.3d at 1095 (applying strict scrutiny to disqualification motions "[b]ecause of the potential for abuse by opposing counsel" (quoting *Macheca Transp. Co.*, 463 F.3d at 833)); *Gifford*, 723 F. Supp. 2d 1110, 1117 (D. Minn. 2010) (same); *see also Cent. Milk Producers Co-op.*, 573 F.2d at 992 (cautioning that delay in filing disqualification motion can be "a tool to deprive [the] opponent of counsel of his choice after substantial preparation of a case has been completed"); *Wyeth*, 692 F. Supp. 2d at 459 (urging "extreme caution" because disqualification may encourage "vexatious tactics").

Here, the alleged conflicts are waivable, yet the Mondelēz Plaintiffs are not only declining to waive them, but are now weaponizing them two years into the litigation to seek to disqualify Paul, Weiss from representing ASR/Domino against each and every plaintiff in the three nationwide classes and multiple direct actions in this entire MDL. Additionally, the Mondelēz Plaintiffs are well-resourced corporate entities that conducted a formal Request for Proposal ("RFP") in 2024, solicited proposals from several major law firms—including Paul, Weiss—and ultimately selected Jenner & Block. (Dillingham Decl. ¶¶ 9–16.) A ruling granting disqualification under these circumstances would create a perverse incentive for well-resourced plaintiffs to conduct broad solicitations of prominent defense firms, share purportedly confidential information during the pitch process, decline to retain them, and later seek to disqualify them from representing an opponent—effectively using the RFP process as a sword to take experienced counsel off the table. The Court should be wary of endorsing a framework that could be exploited in this way.

### D. Disqualification Is Not Necessary to Remedy Any Harm.

The Mondelēz Plaintiffs cannot show that disqualification is "absolutely necessary." *See Macheca Transp. Co.*, 463 F.3d at 833; *Mgmt. Registry, Inc.*, 2021 WL 2434119, at *3. On the contrary, standard safeguards have eliminated any genuine risk that the purportedly confidential information that the Mondelēz Plaintiffs' shared with Paul, Weiss has been or ever will be used against them. In other words, the Mondelēz Plaintiffs have demonstrated zero harm. But regardless, the Court has multiple proven, workable alternatives to disqualification if it wants additional assurance.

#### i. There Is No Genuine Risk That Confidential Information Will Be Used Unfairly Against the Mondelēz Plaintiffs.

Disqualification is appropriate only when counsel's conduct threatens a continuing taint and creates a genuine, non-speculative risk that confidential information will be unfairly used. In evaluating this factor, the Court assesses the actual likelihood of misuse, not the mere possibility of access. *See Mgmt. Registry, Inc.*, 2021 WL 2434119, at *3. When, as here, the lawyers do not overlap, and an effective screen prevents disclosure, the risk is minimal and the extreme remedy of disqualification is inappropriate. *See Cent. Milk Producers Co-op.*, 573 F.2d at 992–93; *Wyeth*, 692 F. Supp. 2d at 459–60; *Hollis*, 2014 WL 7589285, at *3, *7.

The undisputed record confirms there is no genuine risk. The three Paul, Weiss partners who conducted the 2024 pitch left the firm in May 2025, months before Mr. Petkoski joined Paul, Weiss in September 2025 and before Paul, Weiss began representing ASR/Domino. (Fox Decl. ¶ 9.) The two remaining lawyers who assisted with pitch

preparations have been screened from all ASR/Domino matters and have confirmed that they have never shared confidential information from the Mondelēz Plaintiffs with the ASR/Domino legal team. (*See* Fox Decl. ¶ 18.)

With respect to Kraft Heinz, ASR/Domino have retained Maslon LLP as conflicts counsel to handle every matter directly adverse to Kraft Heinz, including Kraft Heinz-specific discovery, depositions, motions, expert work, and trial issues. ASR/Domino's retention of Maslon for this purpose ensures complete separation on all Kraft Heinz-adverse matters.

Moreover, the Mondelēz Plaintiffs' failure to object to being transferred to the MDL—despite actual knowledge that Mr. Petkoski and Paul, Weiss continued to serve in a defense leadership role—suggests they had no actual concerns that any alleged confidential information was being shared in a prejudicial way. Indeed, the Mondelēz Plaintiffs' first outreach to Paul, Weiss about the case sought pre-litigation settlement discussions and made no mention about any purported conflicts. This failure to object constitutes waiver. *See State ex rel. Swanson* v. *3M Co.*, 845 N.W.2d 808, 819 (Minn. 2014) (holding waiver of right to disqualify counsel can be established through circumstantial evidence such as "(1) the length of the delay in bringing the motion to disqualify, (2) whether the movant was represented by counsel during the delay, and (3) the reason for the delay"); *see also Blue Cross Blue Shield of Minn.* v. *Wells Fargo Bank, N.A.*, No. CV 11-2529 (DWF/KMM), 2017 WL 2483783, at *4 (D. Minn. June 8, 2017) (analyzing *Swanson* when discussing waiver of claims). At minimum, it reflects the absence of any genuine risk of taint, which weighs heavily against disqualification.

**ii. Conflicts Counsel Would Mitigate Any Claimed Risk.**

Alternatively, even if the Mondelēz Plaintiffs could establish a genuine risk of taint (they cannot), courts in such circumstances routinely use conflicts counsel and tailored screening in complex litigation, rather than imposing the extreme remedy of disqualifying lead counsel. For example, in *Wal-Mart Stores, Inc.* v. *Vidalakis*, No. 5:07-mc-00039, 2007 WL 4468688, at *3–5 (W.D. Ark. Dec. 17, 2007), the court denied a disqualification motion where conflicts counsel was to handle depositions, discovery, and trial issues involving the affected client and an information barrier remained in place. In *TQ Delta, LLC* v. *2Wire, Inc.*, No. 13-1835-RGA, 2016 WL 5402180, at *7 (D. Del. Sept. 26, 2016), the court declined to disqualify lead counsel and instead required conflicts counsel under a detailed protocol. In *High Point SARL* v. *Sprint Nextel Corp.*, 280 F.R.D. 586, 589 (D. Kan. 2012), the court noted that lead counsel remained in place while separate counsel handled discovery directed at the affected entity. These cases reflect a pragmatic and balanced approach that aims to preserve the principal attorney-client relationship while isolating only the work that creates a genuine concern. *See also United States* v. *Agosto*, 675 F.2d 965, 973–74 (8th Cir. 1982) (instructing district court to consider backup counsel arrangement as a less burdensome alternative to disqualification), *abrogated on other grounds by Flanagan* v. *United States*, 465 U.S. 259 (1984).

Thus, even if the Court were to find a genuine risk of taint, it could ensure Kraft Heinz's protection without disqualifying ASR/Domino's lead counsel from representing ASR/Domino against every single plaintiff across the broader MDL, which includes three nationwide classes and over one hundred named plaintiffs. (ECF Nos. 821, 827, 829.)

ASR/Domino's position is that the existing safeguards are more than sufficient to eliminate any concern raised by Kraft Heinz. The Maslon arrangement is not hypothetical; it is already in place and working. Maslon has appeared for ASR/Domino and is engaged to handle Kraft Heinz-specific discovery, depositions, motions, expert work, and trial issues. Paul, Weiss has advised that, while Kraft Heinz remains a current client, it will not enter an appearance for ASR/Domino in Kraft Heinz's direct action. No additional measures are necessary. *See, e.g.*, *Wal-Mart Stores, Inc.*, 2007 WL 4468688, at *3–5; *TQ Delta, LLC*, 2016 WL 5402180, at *7; *High Point SARL*, 280 F.R.D. at 589.

**iii. If the Court Has Concerns, Severance—Not Disqualification—Is Appropriate.**

Even if the Court had concerns regarding a potential conflict, it can resolve those concerns with a tool far less disruptive to this litigation and less prejudicial to ASR/Domino than disqualification: severing Kraft Heinz and its claims from the Mondelēz Plaintiffs' complaint.[5] *See, e.g.*, *In re LG Electronics Inc.*, No. 2023-148, 2023 WL 8889854, at *3 (Fed. Cir. Dec. 26, 2023) (finding no error in district court's denial of a motion to disqualify counsel due to a conflict of interest, and remedy of severance of the portion of the case involving the conflict to allow it to proceed separately with different counsel). "[O]n its own, the court may at any time, on just terms, add or drop a party." *See* Fed. R. Civ. P. 21.

[5] The Court could also recommend that the JPML remand Kraft Heinz's claims to the Northern District of Illi*nois. In re Activated Carbon-Based Hunting Clothing Mktg. & Sales Pracs.* Litig., 840 F. Supp. 2d 1193, 1197–98 (D. Minn. 2012) (recommending JPML remand transferred cases when coordinated proceedings no longer "promote[d] efficiency"). Once so remanded, the Northern District of Illinois can determine whether these claims should proceed in parallel or be severed at any point, including for tri*al. See* Fed. R. Civ. P. 21 (court has discretion to sever "at any time").

"[S]everance under Rule 21 is committed to the Court's sound discretion and in exercising that discretion, courts typically consider . . . judicial economy, efficiency, witness convenience, the location of and access to sources of proof, the potential for delay, and similar factors." *See Valspar Corp.* v. *E.I. DuPont de Nemours & Co.*, 15 F. Supp. 3d 928, 932 (D. Minn. 2014) (citation modified); *see also Longlois* v. *Stratasys, Inc.*, No. 13-CV-3345 (JNE/SER), 2014 WL 2766111, at *3 (D. Minn. June 18, 2014) (explaining that the Court can sever based upon considerations of judicial economy and efficiency "without first finding joinder to have been improper under Rule 20"); *Brodkorb* v. *Minnesota*, No. 12-CV-1958 (SRN/AJB), 2013 WL 588231, at *18 (D. Minn. Feb. 13, 2013) (dropping State of Minnesota as party under Rule 21 in "the interests of judicial economy and efficiency" because claims were asserted against entity of State, not the State itself).

*Acevedo* v. *Allsup's Convenience Stores, Inc.*, relied on by the District of Minnesota in *Longlois*, is instructive. 600 F.3d 516, 522 (5th Cir. 2010). In *Acevedo*, the Fifth Circuit affirmed a district court order denying joinder due to concerns about the impact upon judicial economy, reasoning that trying the claims together would be "too challenging logistically" given different employee working conditions and defenses applicable to each claim. *Id.*[6] Here, the judicial economy concerns created by disqualification would be far

[6] The Mondelēz Plaintiffs' overall claims contain analogous dissimilarities to the claims the *Acevedo* court refused to join—each had separate relationships with ASR/Domino that implicate different factual circumstances and defenses. Kraft Heinz does not have a right to be a co-plaintiff in this complaint simply because it and other Plaintiffs share the same counsel. *See, e.g.*, *In re Diet Drugs*, 325 F.Supp.2d 540, 541 (E.D. Pa. 2004) (holding that although all plaintiffs allege similar injuries, they did not "arise out of the same transaction, occurrence or series of transactions or occurrences" and "proceeding with this one action with multiple plaintiffs would severely impair the efficient

more pronounced than mere logistical challenges. Paul, Weiss has represented ASR/Domino for more than two years in this MDL, and over five years in related proceedings. (Davis Decl. ¶ 3.) Disqualifying it from representing ASR/Domino across all 76 Class Action and 58 Direct Action Plaintiffs due to a waivable and fully resolved conflict with a single plaintiff—Kraft Heinz—would cause tremendous prejudice to ASR/Domino and this litigation as a whole. *See Wyndham Assoc.* v. *Bintliff*, 398 F.2d 614, 620 (2d Cir. 1968) (noting "familiarity with the legal problems, attorneys, witnesses, and exhibits" in the case "will undoubtedly lighten the burden of litigants and courts alike").

This is especially true given the purported "conflict" in this case is not just late-breaking, but is potentially short-lived: Paul, Weiss represents Kraft Heinz in a single unrelated derivative shareholder action in Delaware where Kraft Heinz is a nominal defendant only and a motion to dismiss Kraft Heinz is pending. Opening Br., *In re The Kraft Heinz Company Derivative Litigation Consolidated*, C.A. No. 2019-0587-LWW (Del. Ch. July 21, 2026). If the Court has any real concerns pursuant to Plaintiffs' Motion, derailing the entire MDL while ASR/Domino attempt to retain and onboard new counsel is not the way to resolve them. Severance provides a viable alternative that would allow the MDL to proceed, isolating the delays and inefficiencies caused by a transition of counsel to Kraft Heinz's case only. The Court should consider severance long before it entertains the drastic remedy of disqualification.

administration of justice"). Broader severance of all Plaintiffs and claims in this lawsuit will likely ultimately be appropriate regardless of the Court's ruling on severance as an alternative remedy as to this particular motion.

Any of these options would be sufficient to address any residual concern without causing the significant prejudice to ASR/Domino, substantial delay, and potential endorsement of vexatious tactics that would come with disqualification.

## CONCLUSION

For the foregoing reasons, Defendants ASR/Domino respectfully request that the Court deny the Mondelēz Plaintiffs' Motion for a Rule to Show Cause and permit ASR/Domino to continue to be represented by Mr. Petkoski and his team at Paul, Weiss in this litigation. Alternatively, if the Court were to find a genuine risk of taint, ASR/Domino request that the Court adopt one of the less drastic measures described above rather than disqualifying their chosen counsel.

Respectfully submitted,

Dated: September 23, 2026

**MASLON LLP**

By: */s/ Steven L. Schleicher*
Steven L. Schleicher (#0260587)
Stephanie Laws (#0396174)
225 South Sixth Street, Suite 2900
Minneapolis, MN 55402
(612) 672-8200
Email: steve.schleicher@maslon.com
stephanie.laws@maslon.com

**ATTORNEYS FOR DEFENDANTS ASR GROUP INTERNATIONAL, INC., AMERICAN SUGAR REFINING, INC., AND DOMINO FOODS, INC.**