**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MINNESOTA**

| | |
|---|---|
| IN RE: GRANULATED SUGAR ANTITRUST LITIGATION | MDL No. 24-03110 (JWB/ECW) |
| **THIS DOCUMENT RELATES TO:**<br><br>*Mondelēz Global LLC et al. v. ASR Group International, Inc. et al.,* No. 0:26-cv-03528 | |

**FOOD MANUFACTURER PLAINTIFFS' REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF THEIR MOTION FOR A RULE TO SHOW CAUSE AS TO WHY PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP SHOULD NOT BE DISQUALIFIED FROM REPRESENTING ASR/DOMINO**

# TABLE OF CONTENTS


INTRODUCTION ........................................................................................ 1

ARGUMENT ............................................................................................. 3

I. Paul Weiss's Opposition Shows the Firm's Non-Compliance with Rule 1.18. ............ 3

A. Paul Weiss Received "Significantly Harmful" Information. ................................ 3

B. Paul Weiss Cannot Satisfy Any Element of Rule 1.18(d)(2)'s Safe Harbor. ............ 5

II. Paul Weiss Is Directly Adverse to Kraft Heinz, Even with Conflicts Counsel. .......... 9

III. ASR/Domino's Alternatives Do Not Cure the Conflicts, But the Food Manufacturer Plaintiffs' Solution Does. ........................................................................ 11

A. Severing or Remanding Kraft Heinz's Claims Would Not Cure the Conflicts and Would Cause Undue Burdens. ................................................... 12

B. The Food Manufacturer Plaintiffs Propose a Workable Solution. ...................... 13

CONCLUSION ........................................................................................ 14

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Arrowpac Inc. v. Sea Star Line, LLC*,
No. 3:12-cv-1180-J-32JBT, 2013 WL 5460027 (M.D. Fla. Apr. 30, 2013) ........ 9

*Benevida Foods, LLC v. Advance Mag. Publishers Inc.*,
No. 15-cv-2729, 2016 WL 3453342 (S.D.N.Y. June 15, 2016) ........ 8

*Export-Import Bank of Korea v. ASI Corp.*,
No. CV 16-2056-MWF, 2019 WL 8200603 (C.D. Cal. Jan. 16, 2019) ........ 7

*EZ Paintr Corp. v. Padco, Inc.*,
No. 4-81-92, 1983 WL 423 (D. Minn. Nov. 9, 1983) ........ 6, 7

*Fund of Funds, Ltd. v. Arthur Andersen & Co.*,
567 F.2d 225 (2d Cir. 1977) ........ 9, 10

*In re Cendant Corp. Sec. Litig.*,
124 F. Supp. 2d 235 (D.N.J. 2000) ........ 10

*In re LG Elecs. Inc.*,
No. 2023-148, 2023 WL 8889854 (Fed. Cir. Dec. 26, 2023) ........ 12, 13

*In re OneJet, Inc.*,
614 B.R. 522 (Bankr. W.D. Pa. 2020) ........ 4

*In re Rail Freight Fuel Surcharge Antitrust Litig.*,
965 F. Supp. 2d 104 (D.D.C. 2013) ........ 10

*Mgmt. Registry, Inc. v. A.W. Cos.*,
No. 17-cv-5009-JRT-KMM, 2021 WL 2434119 (D. Minn. June 15, 2021) ........ 4

*Olson v. Snap Prods., Inc.*,
183 F.R.D. 539 (D. Minn. 1998) ........ 8

*Residential Funding Co. v. Decision One Mortg. Co.*,
No. 14-cv-1737, 2015 WL 13657250 (D. Minn. Jan. 23, 2015) ........ 11

*SkyBell Techs., Inc. v. Ring, Inc.*,
No. SACV1800014, 2018 WL 6016156 (C.D. Cal. Sept. 18, 2018) ........ 4, 5

*Sumitomo Corp. v. J.P. Morgan & Co.*,
No. 99 Civ. 4004, 2000 WL 145747 (S.D.N.Y. Feb. 8, 2000) .................................. 10

*United States v. Santee Sioux Tribe of Neb.*,
254 F.3d 728 (8th Cir. 2001) .......................................................................... 3, 8

**Other Authorities**

ABA Formal Op. 09-455 (2009) .......................................................................... 7

ABA Formal Op. 492 (2020) ........................................................................ 3, 4, 5

Minn. R. Prof'l Conduct 1.0 .......................................................................... 5, 6

Minn. R. Prof'l Conduct 1.7 ...................................................................... 9, 11, 12

Minn. R. Prof'l Conduct 1.18 ........................................................... 1, 2, 3, 5, 7, 8

## INTRODUCTION

Paul Weiss wants it both ways. It asks this Court to decide the disqualification question now—on the limited record Paul Weiss provided—and deny relief. It simultaneously offers to provide additional information—but only *in camera*, despite Rule 1.18's requirement that it provide Food Manufacturer Plaintiffs with detailed information about its screen.[1] Moore Decl. ¶54.

If the Court treats the record as complete, Paul Weiss's opposition confirms what six months of evasion already suggested: Paul Weiss put no screen in place when it undertook representation of ASR/Domino, or over the next five months. There was no screen until after the Food Manufacturer Plaintiffs raised the issue. Paul Weiss's own declarations show some of the timeline: after receiving the Food Manufacturer Plaintiffs' letter, Mr. Petkoski ran a conflicts check in December 2025 that missed the 2024 pitch altogether but identified Kraft Heinz as a client. McCabe Decl. ¶12; Petkoski Decl. ¶13. It was only after the Food Manufacturer Plaintiffs raised conflict issues related to the pitch in an initial February 2026 meeting that Paul Weiss investigated and, at some later time, "set up a screen." McCabe Decl. ¶¶13-14. Paul Weiss does not explain why its conflicts and screening process failed until then.

---

[1] The reply cites the Food Manufacturer Plaintiffs' motion for a rule to show cause (ECF No. 763) as Mot., and ASR/Domino's and Paul Weiss's oppositions as ASR Opp. (ECF No. 848) and PW Opp. (ECF No. 842), respectively. It cites the declarations attached to those filings by last name of the declarant, with Professor Moore's supplemental declaration filed herewith as Suppl. Moore Decl.

Rule 1.18(d)(2)(i) requires that a screen be "timely." But the undisputed facts show it was untimely: the screen came after the Food Manufacturer Plaintiffs raised the conflict, not before or when the representation began. As a result, and as Paul Weiss's opposition admits, the Food Manufacturer Plaintiffs' information was unprotected from the 2024 pitch until sometime after February 2026. For several months after its representation of ASR/Domino began, Paul Weiss's ten-page proposal consisting of strategy for this case and "drafts thereof" were available on the firm's document-management system; and Kellanova's and WK Kellogg's pricing data remained in firm email accounts. McCabe Decl. ¶¶8-9. An associate who worked on the pitch remains at the firm, and a second lawyer remained until May 2026. *Id.* ¶7.

Those admissions cannot be squared with the opposition's central theme that whatever the Food Manufacturer Plaintiffs disclosed "left the Firm with the departed lawyers." PW Opp. 17. Rule 1.18's default is that where, as here, the attorneys have received "significantly harmful" information, the conflict is imputed to their firm *unless* the safe harbor of Rule 1.18(d)(2) is satisfied. On this record, Paul Weiss cannot satisfy the safe harbor's conjunctive elements.

Further, Paul Weiss should not be allowed to take positions in this MDL directly adverse to Kraft Heinz, its current client. Paul Weiss insists it can employ conflicts counsel for Kraft Heinz alone, but the only way to remedy the conflict Paul Weiss's own declarations now confirm is by using conflicts counsel for the entire Food Manufacturer Plaintiffs group. Mr. Petkoski also should not be permitted to continue on the Defendants' Steering Committee ("DSC"), where he is tasked with taking positions adverse to all

plaintiffs. This solution would resolve the conflict without disturbing Paul Weiss's role as ASR/Domino's lead defense counsel.

If the Court were to determine that it needs additional facts, it should require Paul Weiss to produce them to both the Court and the Food Manufacturer Plaintiffs. Paul Weiss cannot invoke a demanding disqualification standard as a shield while withholding the facts needed to apply that standard. *See United States v. Santee Sioux Tribe of Neb.*, 254 F.3d 728, 733 (8th Cir. 2001) ("[W]hen true facts relating to a disputed issue lie peculiarly within the knowledge of one party, it is fair to assign the burden of proof to that party.").[2] And while the issue of Paul Weiss's representation remains pending, the Court should preclude the firm from acting as counsel to ASR/Domino in a manner directly adverse to the Food Manufacturer Plaintiffs.

## ARGUMENT

### I. Paul Weiss's Opposition Shows the Firm's Non-Compliance with Rule 1.18.

#### A. Paul Weiss Received "Significantly Harmful" Information.

Paul Weiss does not dispute that Rule 1.18 forbids representing a party materially adverse to a prospective client in the same matter if the lawyer received information from the prospective client that "could be significantly harmful" to that person, subject to narrow exceptions. PW Opp. 14; Green Decl. ¶¶24 n.1, 26. Instead, Paul Weiss characterizes the information it received as not significantly harmful, PW Opp. 16-17, while not disputing that significantly harmful information includes "a party's assessment of its own claims and

---

[2] Internal citations and marks are omitted unless otherwise specified.

risk tolerance, its settlement authority, and its strategic vision to manage any litigation." PW Opp. 15; *see* Mot. 19-20 (quoting ABA Formal Op. 492 (2020)).

Paul Weiss failed to submit a declaration from any lawyer who attended the 2024 consultation or supported the pitch. The undisputed facts therefore show that Paul Weiss drafted a ten-page memo and attended an hour-long, in-person strategy session at which the Food Manufacturer Plaintiffs "explained their strategic thinking concerning[] the merits of the case, potential defenses, and litigation and settlement strategy." Dillingham Decl. ¶13.[3] Paul Weiss only disputes the legal conclusion that follows—whether those facts amount to "significantly harmful" information. *See* Suppl. Moore Decl. ¶¶11-20.

Paul Weiss's authority is inapposite. In *Management Registry, Inc. v. A.W. Cos.*, the movant asked the Court to *presume* counsel received confidential information because counsel attended a mediation. 2021 WL 2434119, at *5-6 (D. Minn. June 15, 2021). Unlike here, there was no evidence of confidential information flowing to that firm. *Id.* Similarly, in *In re OneJet, Inc.*, the information was not "significantly harmful" because it did "not consist of personal observations or strategic impressions." 614 B.R. 522, 532-33 (Bankr. W.D. Pa. 2020). But that same court recognized that discussing the "strategic vision to manage" the MDL would have satisfied the standard—and that was precisely the pitch's content here. This analysis aligns *OneJet* with *SkyBell Technologies, Inc. v. Ring, Inc.*,

[3] Paul Weiss claims that "purchasing data" is not significantly harmful because it could be discoverable. PW Opp. 15-16. But the firm's own authority recognizes that premature possession of a prospective client's financial information qualifies as significantly harmful. *See* ABA Formal Op. 492, at 6. Further, Paul Weiss is silent as to what it did with the data, even though it presumably analyzed the data to prepare for the pitch.

where the court held that the prospective client's claims, contentions, analysis of defenses, "financial position," and "settlement strategy" satisfied Rule 1.18(c)'s standard. 2018 WL 6016156, at *6 (C.D. Cal. Sept. 18, 2018). And while Paul Weiss is correct that *SkyBell* applied California's rules, the court would have reached the same result under Minnesota's: the ABA identified the same type of information as significantly harmful information in Formal Opinion 492. Mot. 19-22.[4]

### B. Paul Weiss Cannot Satisfy Any Element of Rule 1.18(d)(2)'s Safe Harbor.

Paul Weiss does not dispute that where Rule 1.18(d)(1) consent is unavailable, the firm is entitled to a safe harbor under Rule 1.18(d)(2) only if it: (i) took reasonable measures to limit exposure to no more information than reasonably necessary to determine whether to represent the prospective client; (ii) implemented a timely screen; and (iii) provided prompt written notice to the prospective client. Green Decl. ¶24 n.1.

On the first element, Paul Weiss offers no facts that it limited exposure during the pitch process. It instead tries to shift the burden by saying the Food Manufacturer Plaintiffs controlled the information flow. PW Opp. 19-20. But Rule 1.18 imposes obligations on the *lawyer*—not the prospective client. Suppl. Moore Decl. ¶¶21-23.

On the second element, Paul Weiss does not contest that a screen is timely only if implemented "as soon as practical after a . . . law firm knows or reasonably should know that there is a need for screening." *See generally* PW Opp.; Moore Decl. ¶48 (quoting Minn.

[4] Paul Weiss argues that the imputation of conflicts under Rule 1.10 has no application to Rule 1.18. PW Opp. 18 n.6. It is wrong. Comment 7 to Rule 1.18 states "***the prohibition in this rule is imputed to other lawyers as provided in Rule 1.10***." (emphasis added).

R. Prof'l Conduct 1.0 cmt. 10). Paul Weiss's expert argues only that the technical requirement is "beside the point." Green Decl. ¶46. But the following undisputed timeline shows that timely screening is "the point":

- September 15, 2025: Mr. Petkoski joined Paul Weiss, which began to represent ASR/Domino without instituting a screen. McCabe Decl. ¶¶2-3.

- September 19-22, 2025: Mr. Petkoski updated his appearance and sought DSC reappointment. PW Opp. 8.

- October 16, 2025: The Court reappointed Mr. Petkoski to the DSC. *Id.*

- Early December 2025: Mr. Petkoski ran conflicts after receiving the Food Manufacturer Plaintiffs' letter. That check identified Kraft Heinz as a current client but not the 2024 pitch. McCabe Decl. ¶12; Petkoski Decl. ¶13. Paul Weiss did not implement a screen or seek Kraft Heinz's consent.

- February 6, 2026: The Food Manufacturer Plaintiffs raised the 2024 pitch with Mr. Petkoski. This was the first time Mr. Petkoski learned of the pitch. Petkoski Decl. ¶14; Fox Decl. ¶14.

- Sometime after February 6, 2026: Paul Weiss "set up a screen." McCabe Decl. ¶14.

Thus, after *repeated* requests, Paul Weiss only now admits it imposed a screen *after* the Food Manufacturer Plaintiffs "raised concerns about the pitch," many months after Mr. Petkoski lateralled and the firm began to represent ASR/Domino. McCabe Decl. ¶¶3, 7, 13-14. This was not "as soon as practical after" it knew or reasonably should have known that there was a need for screening, as the rules require. Moore Decl. ¶¶48-52; Suppl. Moore Decl. ¶¶24-28; *EZ Paintr Corp. v. Padco, Inc.*, 1983 WL 423, at *4 (D. Minn. Nov. 9, 1983) (screen "must be constructed 'when the potentially disqualifying event occurred' (i.e. when the attorneys first joined the … firm)"). Paul Weiss reasonably should have known of the need for a screen when it took on the representation of ASR/Domino in

September 2025. The firm cleared conflicts for the Food Manufacturer Plaintiffs' matter in May 2024, with ASR/Domino named as a "likely defendant[]." Dillingham Decl. ¶¶4-5, 8, Ex. J. The Sugar MDL was not a related matter; it was the *same matter*.

A functioning lateral partner conflicts system should have flagged the matter before Mr. Petkoski joined the firm. *See* ABA Formal Op. 09-455 (2009) (before lawyer joins new firm, lawyer and firm are required "to detect and resolve conflicts of interest to protect their clients and former clients"). It should have flagged the issue again when Mr. Petkoski opened the ASR/Domino engagement. And it should have flagged the issue when Mr. Petkoski received the Food Manufacturer Plaintiffs' letter in December 2025 and ran conflicts. Suppl. Moore Decl. ¶¶24-28; *see Export-Import Bank of Korea v. ASI Corp.*, 2019 WL 8200603, at *9-12 (C.D. Cal. Jan. 16, 2019) (finding screen imposed shortly after opposing counsel raised conflict to law firm was untimely; noting "[c]ourts routinely disqualify counsel for failing to implement ethical screens before representing a prospective client"). Paul Weiss offers no explanation for these failures.[5]

The five-month gap between the lateral hires and the screen is where the prejudice lives. *See EZ Paintr Corp.*, 1983 WL 423, at *4-5. It is the period during which two unscreened attorneys—who prepared and supported the proposal—shared a firm with the ASR/Domino team; it is the period in which the pitch materials sat on Paul Weiss's

[5] Professor Green opines a screen was not required because "the Firm's defense of ASR/Domino was not yet adverse to Plaintiffs." Green Decl. ¶46 n.13. This is incorrect both because Rule 1.18 turns on a prospective relationship, and the 2024 consultation related to a representation of the Food Manufacturer Plaintiffs in a direct action against ASR/Domino in this same MDL. Dillingham Decl. ¶¶3-13.

document-management system, apparently with no access restrictions; and it is the period in which the pricing data sat in the firm's email accounts. McCabe Decl. ¶¶7-9. And because Mr. Petkoski was unaware of the pitch, his team would not have known to avoid the material.

Paul Weiss has the burden to establish the firm's compliance with the timely screen requirement in Rule 1.18(d)(2)(i). *See supra* at 3 (quoting *Santee Sioux Tribe*); *Benevida Foods, LLC v. Advance Mag. Publishers Inc.*, 2016 WL 3453342, at *13-14 (S.D.N.Y. June 15, 2016). Paul Weiss has not carried that burden. It has not explained why it failed to identify the conflict or set up a screen before February 2026. It has not identified the screened lawyers. It has not stated exactly when the screening began or was acknowledged. The absence of a full record creates the "legitimate doubt[]" resolved against the party invoking the safe harbor. *See Olson v. Snap Prods., Inc.*, 183 F.R.D. 539, 542 (D. Minn. 1998).

Finally, Paul Weiss did not provide the prompt written notice to the Food Manufacturer Plaintiffs required by Rule 1.18(d)(2)(ii). Paul Weiss argues that the press release of Mr. Petkoski's hiring, subsequent articles, and MDL court filings satisfied the requirement. But Comment 8 to Rule 1.18 requires prompt written notice, including "a description . . . of the screening procedures employed." It is not satisfied by actual or constructive notice from third parties as Paul Weiss suggests. Suppl. Moore Decl. ¶¶29-31. And the press release did not discuss the screening procedures that the Food Manufacturer Plaintiffs still seek a full description of.

## II. Paul Weiss Is Directly Adverse to Kraft Heinz, Even with Conflicts Counsel.

Paul Weiss concedes that it "cannot be directly adverse to Kraft Heinz." PW Opp. 11. Both oppositions argue, however, that so long as it has conflicts counsel as to Kraft Heinz, everything else is permissible "indirect" adversity. PW Opp. 24-30; ASR Opp. 1, 26. That argument fails. The firm's DSC membership requires Paul Weiss to advocate against Kraft Heinz in the MDL. ECF No. 193 at 6-8. That is not a "positional conflict[]" in which advocacy for one client "might create precedent adverse to" another in an unrelated case, PW Opp. 24-26; it is advocacy against the client in the client's own case constituting "direct" and "material" adversity. *See Arrowpac Inc. v. Sea Star Line, LLC*, 2013 WL 5460027, at *8-13 (M.D. Fla. Apr. 30, 2013) (granting Rule 1.7 motion where firm represented current client's adversary in four related cases, despite using conflicts counsel); *Fund of Funds, Ltd. v. Arthur Andersen & Co.*, 567 F.2d 225, 232-35 (2d Cir. 1977) (disqualifying counsel where conflicted firm continued to develop case against current client through separate counsel; duty of undivided loyalty cannot be evaded by delegating adverse suit to another firm); Suppl. Moore Decl. ¶¶33-35.

ASR/Domino's own description of Paul Weiss's work confirms the point. Paul Weiss is tasked with "develop[ing] the record and [defense] strategy," working with economists to analyze discovery, developing "economics-based defenses to the substantive claims," and preparing argument for the motion to dismiss. Davis Decl. ¶¶26-31. Although conflicts counsel will represent ASR/Domino vis-à-vis Kraft Heinz, it will be Paul Weiss's underlying work product driving the defense. *Id.* That is unworkable under Rule 1.7 while Mr. Petkoski remains on the DSC.

*Rail Freight* and *Sumitomo* do not hold otherwise. In *Rail Freight*, Oxbow was not a party to the MDL; it filed a separate action and intervened in the MDL only on discovery matters, which other counsel handled. *In re Rail Freight Fuel Surcharge Antitrust Litig.*, 965 F. Supp. 2d 104, 107-08 (D.D.C. 2013). In *Sumitomo*, the two actions were consolidated for pretrial purposes only, and the court emphasized that Paul Weiss was "not involved in attempting to establish wrongdoing by Chase or seeking a judgment that will directly impact Chase." *Sumitomo Corp. v. J.P. Morgan & Co.*, 2000 WL 145747, at *5 (S.D.N.Y. Feb. 8, 2000). Here, Kraft Heinz is a named party in an action transferred to this MDL; it is subject to common discovery, motion practice, and defense-leadership structure that Paul Weiss directs. *See Fund of Funds*, 567 F.2d at 232-35; Moore Decl. ¶¶56-64.

Paul Weiss tries to distinguish *In re Cendant Corp. Securities Litigation*, 124 F. Supp. 2d 235 (D.N.J. 2000)—which rejected this conflicts counsel workaround—on the ground that the client was a "key adverse witness" in the "very same action." PW Opp. 27. Here, however, Kraft Heinz is a *party* in the very same MDL, which creates a greater degree of adversity. Moore Decl. ¶¶56-64. And the coordination problem *Cendant* identified is already manifest: Paul Weiss claimed none of the Direct Action Plaintiffs ("DAPs")—including Kraft Heinz—was entitled to ASR/Domino's prior production. Fox Decl. ¶31, Ex. I; Petkoski Decl. ¶21. This undisputed incident flows directly from the scope of Mr. Petkoski's DSC mandate to negotiate discovery and settlement positions "on behalf of Defendants in all actions"—which necessarily includes Kraft Heinz's claims. ECF No. 193 at 6-8. The problem is not that conflicts counsel cannot work; both oppositions say it

can. PW Opp. 28-30; ASR Opp. 27-28. But the arrangement proposed and currently in place is unworkable.

Paul Weiss does not even attempt to explain how its plan for conflicts counsel works given that Kraft Heinz is prosecuting the case alongside the other Food Manufacturer Plaintiffs (who were also part of the group Paul Weiss pitched). Even in this MDL, Paul Weiss will presumably file a motion to dismiss the Food Manufacturer Plaintiffs' complaints, defend discovery propounded by them, conduct expert work adverse to them, and file dispositive motions against them. *See* Davis Decl. ¶¶26-31. Even outside of the Rule 1.18 issues discussed above, each of these actions would be directly adverse to Kraft Heinz and violate Rule 1.7.

## III. ASR/Domino's Alternatives Do Not Cure the Conflicts, But the Food Manufacturer Plaintiffs' Solution Does.

The Food Manufacturer Plaintiffs do not take lightly the disruption that a change to ASR/Domino's defense team would cause. But the Food Manufacturer Plaintiffs are the victims—like ASR/Domino—of Paul Weiss's failed procedure. They filed their motion after seeking a solution for several months, and even then, styled it as a rule to show cause so that Paul Weiss could come forward with a workable solution. *See* Mot.[6] As discussed

[6] The record shows an attempt at informal resolution rather than "strategic gamesmanship"—the Food Manufacturer Plaintiffs raised the issue on their first call with Paul Weiss. They attempted for several months to resolve their concerns without court intervention. They filed their motion before their first appearance in the case, waiting at Paul Weiss's request to allow the firm to first hire outside counsel. And there was no waiver, which requires intentional relinquishment of a known right; it cannot be implied from "mere inaction." *Residential Funding Co. v. Decision One Mortg. Co.*, 2015 WL 13657250, at *10 (D. Minn. Jan. 23, 2015).

above, it has not offered one. After explaining below why ASR/Domino's proposal does not work, the Food Manufacturer Plaintiffs offer one that would.

### A. Severing or Remanding Kraft Heinz's Claims Would Not Cure the Conflicts and Would Cause Undue Burdens.

ASR/Domino proposes severing Kraft Heinz's claims or remanding them to the Northern District of Illinois. ASR Opp. 28-30. This remedy is untenable for everyone except ASR/Domino and ignores the MDL's benefits.

ASR/Domino's proposal would mean that several defendants—not just ASR/Domino—would have to litigate the case in two judicial fora. It would mean judicial inefficiencies, potentially inconsistent rulings, uncoordinated discovery, and duplicative witness testimony. It would mean that Kraft Heinz would be severed from the MDL and other Food Manufacturer Plaintiffs because Paul Weiss—which pitched those plaintiffs to represent them as one—failed its conflicts process. It still would not solve the issue of Paul Weiss opposing experts that the Food Manufacturer Plaintiffs, including Kraft Heinz, will use to prosecute their case.

This remedy unfairly punishes Kraft Heinz—the client—for Paul Weiss's failure to comply with its obligation to both Kraft Heinz and ASR/Domino in managing the firm's conflicts. Suppl. Moore Decl. ¶36. Rule 1.7 places the obligation to resolve a concurrent conflict on the lawyer. *See* Minn. R. Prof'l Conduct 1.7 cmt. 4 (lawyer "ordinarily must withdraw" where one of the clients withholds consent). ASR/Domino relies on *In re LG Electronics Inc.* to support severance, but in that case the conflict related to a *former* client, was confined to a discrete portion of a case (infringement of one patent at issue), and did

not involve a steering-committee member. 2023 WL 8889854, at *3 (Fed. Cir. Dec. 26, 2023).

ASR/Domino's solution also would not solve the Rule 1.18 issue. Under ASR/Domino's proposal, the remaining Food Manufacturer Plaintiffs would participate in the MDL with Paul Weiss adverse to them, despite the firm's violation of Rule 1.18.

**B. The Food Manufacturer Plaintiffs Propose a Workable Solution.**

The Food Manufacturer Plaintiffs are sympathetic to ASR/Domino's concerns but do note that the institutional knowledge at the center of ASR/Domino's motion was developed at a different firm between 2021 and 2025. Davis Decl. ¶¶3-23. Paul Weiss's tenure in the MDL is one year, not "more than two years[.]" ASR Opp. 30; Davis Decl. ¶22. And the Food Manufacturer Plaintiffs raised these issues when they first discovered them several months ago. Fox Decl. ¶¶12-14. The Food Manufacturer Plaintiffs also note that the MDL proceeding is at a "reset" stage. 9/9/26 Tr. 6:01, 6:09 (ECF No. 798). It is still in early discovery stages, in part due to the lack of productions by ASR/Domino and other defendants. *Id.* at 6:09-8:03.

Nonetheless, the Court can resolve the conflicts issues by entering a detailed conflicts protocol in which: (1) Paul Weiss may continue as ASR/Domino's counsel generally; (2) Mr. Petkoski is removed from the DSC; (3) ASR/Domino hires conflicts counsel for the Food Manufacturer Plaintiffs' complaints; and (4) Paul Weiss is prohibited from coordinating with conflicts counsel on any matter within its mandate, including experts.

Paul Weiss could still: (a) attend to document production; (b) handle fact discovery as to the classes and remaining DAPs; (c) be responsible for filings unless they directly affect the Food Manufacturer Plaintiffs; and (d) prepare for ASR/Domino's trials against the classes and remaining DAPs. This proposal provides the proper balance and would create no pause in the schedule set at the September 28 hearing.

**CONCLUSION**

The Food Manufacturer Plaintiffs respectfully request that the Court grant the Motion and issue the Proposed Order, including the relief set forth herein.

Dated: September 28, 2026

Respectfully submitted,

*/s/ Brandon D. Fox*
Brandon D. Fox
Sati Harutyunyan
JENNER & BLOCK LLP
515 S. Flower Street, Suite 3300
Los Angeles, CA 90071
(213) 239-5100
bfox@jenner.com
sharutyunyan@jenner.com

Andrianna D. Kastanek
JENNER & BLOCK LLP
353 N. Clark Street
Chicago, IL 60654
(312) 222-9350
akastanek@jenner.com

Jariel A. Rendell
JENNER & BLOCK LLP
1099 New York Ave., N.W., Suite 900
Washington, DC 20001
(202) 639-6000
jrendell@jenner.com

*Counsel for the Food Manufacturer Plaintiffs*